FILED
2019 May-15  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

FILED

2019 MAY -3  P 12: 24

U.   COURT

|  |  |
|---|---|
| DERRICK JAMES WILLIAMSON, JR., PRO SE ) | |
| ) | |
| *PLAINTIFF* ) | **7:19-cv-00669-TMP** |
| ) | |
| V. ) | |
| ) | |
| ALABAMA DEPARTMENT OF MENTAL ) | JURY TRIAL DEMANDED |
| HEALTH AND MENTAL RETARDATION, ) | |
| ET AL ) | |
| ) | |
| *DEFENDANTS* ) | |
| ) | |

**COMPLAINT FOR VIOLATION OF CONSTITUTIONAL AND CIVIL RIGHTS, DISCRIMINATION, RETALIATION, CONSPIRACY, BREACH OF CONTRACT & VIOLATION OF STATE LAW**

**COMPLAINT AND REQUEST FOR PRELIMINARY INJUNCTION**

Plaintiff Derrick James Williamson, Jr. (hereinafter referred to as *"Plaintiff"*) brings this Complaint, herein sixteen claims of action, against Defendants Alabama Department of Mental Health and Mental Retardation (hereinafter referred to as *"ADMH"* or *"the department"*) and its employees, agents, successors in office, Commissioner Lynn Beshear, Associate Commissioner Zelda Diane Baugher, Director of Human Resources Lynn Hubbard, Facility Director Annie Delois Jackson, Personnel Manager Joe Long, Captain Robert Anderson, Jr., Senior Special Agent Joseph Rittner, and in support thereof allege the following upon information and belief:

## PLAINTIFF

1.      The Plaintiff is **Derrick James Williamson, Jr.** who resides at 8816 Old Greensboro Road APT 20104, Tuscaloosa, Alabama, 35405. Plaintiff may be reached at (205) 422-9664 or via email at aeonpctech@live.com.

2.      The Plaintiff is a *"Mental Health Security Officer II"* or *"Police Lieutenant"* as a designated working title established by the department. The Plaintiff is an African American employee which establishes operating under a *"protected class"* and the Plaintiff, along with all other police officers employed by department, are under a unilateral employment contract. Prior to a report of discrimination and unlawful/illegal conduct instituted by supervisory staff (initially on 12/6/2017), the Plaintiff was promoted within six months of employment, received *"exceeding standards"* performance appraisals, received a recommendation from senior leadership, and had received no disciplinary action from the department (including verbal counseling). The plaintiff currently possesses several professional certifications along with a Certificate in Law Enforcement (Academic), Advance Certificate in Law Enforcement (Academic), Associate of Science Degree in Criminal Justice, Associate of Applied Science Degree in Law Enforcement, Bachelor of Science of Criminal Justice, and will complete a Master of Science Degree in Justice Administration in May of 2019. The Plaintiff currently possesses approximately ten years of experience in public safety. Following complaints of discrimination, retaliation, and unlawful/illegal conduct regarding ADMH supervisory staff, the department and the Defendants have breached the referenced unilateral employment contract as well as conspired, retaliated, and violated the Plaintiff's rights established by law.

## DEFENDANTS

3.      The **Alabama Department of Mental Health and Mental Retardation**
(hereinafter referred to as *"ADMH"* or *"department"*) is a state agency tasked with overseeing
the State of Alabama's mission in combating mental illness. The department is headquartered at
100 North Union Street, Montgomery, Alabama, 36130. The department provides mental illness,
disability, and substance abuse services throughout the State of Alabama. The department is
headed by Commissioner Lynn Beshear who is appointed by the Governor. The Commissioner is
responsible for appointing Associate Commissioners who lead various divisions of the
department. The Associate Commissioner, Zelda Diane Baugher, is the head of the Division of
Mental Health and Substance Abuse and oversees all three state hospitals including Taylor
Hardin Secure Medical Facility (hereinafter referred to as *"THSMF"*) located at 1301 Jack
Warner Parkway NE, Tuscaloosa, Alabama, 35404. THSMF is the State of Alabama's only
forensic medical facility (mental health detention facility – as defined by law) and receives only
criminal commitments. The department classifies the facility as a "hospital" in most instances.
The department employs Police Officers under Alabama Code § 22-50-21 in which the
department designates a written title of *"Mental Health Security Officer"*. Each police officer
employed by the department are sworn law enforcement officers of the State of Alabama with
full arrest authority. The below Defendants are *state agents* acting under the *color of law*.

4.      **Commissioner Lynn Beshear** (hereinafter referred to as *"Beshear"*) is operating
from 100 North Union Street, Montgomery, Alabama, 36130. Beshear can be reached at (334)
242-3454 and via email at lynn.beshear@mh.alabama.gov. Claims are against Beshear in her
individual capacity and official capacity.

5.     **Associate Commissioner Zelda Diane Baugher** (hereinafter referred to as *"Baugher"*) is operating from 1305 James I. Harrison Jr. Parkway, Tuscaloosa, Alabama, 35403. Baugher can be reached at (205) 554-4302 and via email at diane.baugher@mh.alabama.gov. Claims are against Baugher in her individual capacity and official capacity.

6.     **Director of Human Resources Lynn Hubbard** (hereinafter referred to as *"Hubbard"*) is operating from 100 North Union Street, Montgomery, Alabama, 36130. Hubbard can be reached at (334) 242-3112 and lynn.hubbard@mh.alabama.gov. Claims are against Hubbard in her individual capacity and official capacity. Defendant is the Chief Human Resources Director for ADMH.

7.     **Facility Director Annie Delois Jackson** (hereinafter referred to as *"Jackson"*) is operating from 1301 Jack Warner Parkway NE, Tuscaloosa, Alabama, 35404. Jackson can be reached at (205) 462-4506 and annie.jackson@hardin.mh.alabama.gov. Claims are against Jackson in her individual capacity and official capacity. Defendant is the Facility Director and Appointing Authority of THSMF.

8.     **Personnel Manager Joe Long** (hereinafter referred to as *"Long"*) is operating from 1301 Jack Warner Parkway NE, Tuscaloosa, Alabama, 35404. Long can be reached at (205) 462-4511 and joe.long@hardin.mh.alabama.gov. Claims are against Long in his individual capacity and official capacity. Defendant is the Personnel Manager for THSMF.

9.     **Captain Robert Anderson, Jr.** (hereinafter referred to as *"Anderson"*) was previously operating from 1301 Jack Warner Parkway NE, Tuscaloosa, Alabama, 35401. Anderson can be reached at 390 Revere Road, Tuscaloosa, Alabama, 35405. Claims are against Anderson in his individual capacity and official capacity. Defendant is the Former Chief Law Enforcement Officer of THSMF following 37 years in such position.

10.    **Senior Special Agent Joseph Rittner** (hereinafter referred to as *"Rittner"*) is

operating from 100 North Union Street, Montgomery, Alabama, 36130. Rittner can be reached at

(334) 242-3274 and joseph.rittner@mh.alabama.gov. Claims are against Rittner in his individual

capacity and official capacity. Defendant is the Chief Law Enforcement Officer of ADMH

Bureau of Special Investigation (hereinafter referred to as *"BSI"*).

## JURISDICTION

11.    This action arises under the United States Constitution and laws of the United

States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 (federal question

jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental

jurisdiction – state law claims).

12.    Plaintiff's claims for declaratory and injunctive relief are authorized pursuant to

28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, Ex

Parte Young, and by the general legal and equitable powers of this Court. Plaintiff's claims for

damages are authorized pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, Title

VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, Alabama Code

§ 36-26A-5, and Alabama Code § 36-1-12(d) (Sovereign Immunity Exception). Plaintiff's clams

for preliminary injunctive relief are authorized pursuant to Rule 65 of the Federal Rules of Civil

Procedure.

## FACTS

13.    In order to understand the precursor of this Complaint; on 12/6/2017, the Plaintiff

made an initial verbal complaint of discrimination to his former immediate supervisor, Anderson.

Anderson was advised that his decisions were inconsistent with the decisions made in reference

to fellow co-workers who were Caucasian resulting in discrimination and disparate treatment

following the attempted administration of an annual performance appraisal. The Plaintiff alleged that Caucasian workers under Anderson's supervision always received highly favorable performance appraisals resulting in two-step pay raises and disciplinary action imposed on African Americans wasn't consistent with the practices imposed on Caucasian counterparts. The Plaintiff had received numerous reports of inconsistencies and discrimination upon his promotion to the facility. Anderson, while nervous and highly agitated, immediately notified Jackson after refuting the allegations. Anderson documented that the Plaintiff had "unsatisfactory cooperation" with coworkers in which he advised the Plaintiff had questioned the judgment of nursing staff when administering a Pro Re Nata (hereinafter referred to as *"PRN"*) which was, indeed, a duty assigned to the Plaintiff via the unilateral employment contract in order to "take charge" of such situations. Several other officers, including Bessie Carter and Lorenzo Gamble, had filed and voiced complaints regarding discriminatory practices, prior to the Plaintiff's promotion, which later led to the Plaintiff being interviewed and competitively selected by an external/impartial panel. THSMF had not been allowed to conduct its own interviews for law enforcement supervisory positions by the department's Human Resources Department.

14.     The Plaintiff had noted that a fellow law enforcement supervisor, Kevin McDaniel, who was indeed Caucasian, had questioned nursing staff in a similar matter and received no recourse for his action; Anderson was aware of this occurrence. Additionally, the unilateral employment contract authorized the Plaintiff to question matters concerning patient safety and in efforts to maintain detailed records of accounts of events resulting in forced medication administration.

15.     Anderson was able to reference one additional matter in this circumstance involving the change of computer monitor setups within THSMF's Control Room. The Plaintiff

was a supervisor, and in efforts to correct the unauthorized modification of monitor setups inside the Control Room by a Caucasian officer, Shane Pike, the Plaintiff restored the monitors to correct settings. Anderson was aware of this; as he was informed weeks prior that the officer had made unsanctioned modifications. Anderson did not administer disciplinary action or counsel the similarly situated Caucasian employee who was also under his supervision. The Plaintiff began drafting a written complaint regarding the situation in which Anderson became unsettled, advised that he would change the appraisal, and returned with modifications.

16. On 12/14/2018, the Plaintiff received a favorable performance appraisal which was revised by Anderson to portray factual information following the Plaintiff's verbal complaint and attempt to file a written complaint in regard to discrimination. Anderson's initial performance appraisal portrayed the Plaintiff's performance as *"meets standards"* while noting ill-cooperation with coworkers. The Plaintiff's subsequent performance appraisal was labelled as *"exceeds standards"*.

17. On 1/22/2018, Jackson was notified of criminal activity within Taylor Hardin Secure Medical Facility being prosecuted by the Tuscaloosa County District Attorney's Office (hereinafter referred to as *"DA"*) regarding a patient/inmate housed within the facility. This notification spawned from the Plaintiff's lawful authority established by Alabama state law to operate as a law enforcement officer in representation of the state. The Plaintiff referred a deposition (criminal complaint) to the DA for a determination in which a warrant was issued under the authority of the Assistant District Attorney Jonathan Cross. Jackson advised that officers should follow an administrative/non-criminal process in lieu of seeking criminal action and advised she wished to have a factor in law enforcement determinations. Jackson also advised

that everyone should be cognizant of media attention which is just as important as safety concerns which was rebutted by the Plaintiff.

18.    On 1/26/2018, Anderson was advised by the Plaintiff of potential ethical violations being committed by Jackson (Anderson's immediate supervisor) and the Plaintiff advised that he intended to contact external agencies regarding illegal activity. This concern was relayed to Jackson by Anderson.

19.    On 3/27/2018, Anderson administered a written memorandum following a complaint that a fellow law enforcement supervisor (Caucasian) was committing fraud in the theft of government time. The Plaintiff was advised by staff that this was not the first occurrence or presentation of such behavior by the referenced subject. Anderson had failed to adequately address these concerns on a former occasion. Staff advised that a former officer, who was indeed African American, had been accused of similar circumstances and Anderson actively sought his termination which was later enacted. Human Resources at THSMF advised the Plaintiff of this matter and had confirmed that the fellow law enforcement supervisor was indeed misrepresenting documented time in order to receive free paid time off. Anderson was notified by Human Resources as well of the incident and the provided memorandum addressed all staff of the Police Services Division rather than directing action or conducting discipline on the similarly situated Caucasian employee. The fellow law enforcement supervisor was under the supervision of Anderson.

20.    On 4/5/2018, Anderson presented evidence showing a Caucasian staff member physically harassing a patient to the Plaintiff. Anderson consciously and willingly avoided completing an incident report and declined to transmit the matter to appropriate staff.

21. On 5/2/2018, Anderson administered a written reprimand expressing the Plaintiff had violated a policy relating to legislative process. Anderson advised that the transmission of a bill speaking on mental health police authority, jurisdiction modifications, *inter alia*, by the Plaintiff violated ADMH policy. The Plaintiff was advised not to send any information pertaining to ADMH to any other agency without Anderson's or Jackson's expressed approval. Anderson advised the Plaintiff that the written reprimand had been instigated by Jackson. The Plaintiff filed a complaint regarding the reception of the written reprimand detailing civil rights and statutory violations but was declined an appeal by Beshear, Jackson, Long, Hubbard, Baugher, and department counsel. The Plaintiff advised Baugher that such a directive would hinder and intimidate contact with governing external agencies. Baugher advised, although poorly written, she saw no reason to rescind the issued reprimand while advising the Plaintiff to sue if he feels he has been harmed. Additionally, the Plaintiff filed detailed internal complaints regarding illegal activity in relation to Anderson and Jackson including discrimination to Beshear and Hubbard.

22. On 5/3/2018, the Plaintiff filed a complaint with the Alabama Attorney General's Office alleging unlawful conduct within the department. Beshear and Hubbard were directly notified of this occurrence by the Plaintiff.

23. On 5/4/2018, the Plaintiff was denied a promotion to Mental Health Special Agent I. The Plaintiff applied for the position setting forth the following requirements:

*"MINIMUM QUALIFICATIONS: Bachelor's degree in Criminal Justice. Public Safety, Law, Public/Business Administration, Psychology, Forensic Services, Homeland Security, or a related field, plus experience (24 months or more) in criminal investigative work with a law enforcement or regulatory agency. Experience in criminal investigative work above the minimum requirement may substitute for the bachelor's degree on a year-for-year basis."*

The Plaintiff was interviewed among several other applicants. Among the applicants, minorities were in possession of the indicated bachelor's degree (the Plaintiff and Frankie Gonzales, a Hispanic) while the selected Caucasian applicant (Kevin McDaniel) did not have a degree. It was noted by the Plaintiff that the interview panel asked questions which were subjective to having operated previously in a similar position. Rittner was aware of the selected subject's former and brief employment as an Investigator with the University of Alabama. Presented questions during the interview for ratings appeared to be geared towards the selected candidate's former employment. Defendants additionally deviated from the provided method of selection as stated below:

*"**METHOD OF SELECTION:*** *Applicants will be rated on the basis of an evaluation of their education, training, and experience and should provide adequate work history identifying experiences related to duties and minimum qualifications as mentioned above. All relevant information is subject to verification. Drug screenings and security clearance will be conducted on prospective applicants being given serious consideration for employment and whose job requires direct contact with clients."*

Defendants used a rating point system rather than relying on written documentation and the Plaintiff was advised that he received the "lowest score" while the department failed to produce proof of such to the EEOC. The indicated rating point system also contained a subjective component which was previously deemed insufficient. Of all the applicants, the Plaintiff possessed superior education (associates and bachelor's degree), extensive training, and was highly recommended by senior law enforcement officials within the department in a written recommendation but was still not selected. Plaintiff additionally provided seven alternate recommendations for his selection. The interview panel consisted of three Caucasians and one African American. Plaintiff additionally noted that several subjects within the department were under the perception that such position was particularly for the selected applicant; as if the decision was pre-determined.

24.     On 5/14/2018 it was reported to the Plaintiff by a fellow African American officer (Antonio Washington) that Anderson attempted to coerce him into resigning to seek external employment by offering to present a favorable recommendation. The event was perceived by the fellow officer to be retaliatory, discriminatory, and coercive.

25.     On 5/17/2018, Anderson revoked the Plaintiff's privileged and certified access to the National Crime Information Center (NCIC) as afforded by the Alabama Criminal Justice Information Center based upon arbitrary means. Anderson revised policy after stating the Plaintiff had violated policy in order to accommodate his actions. The Plaintiff later filed a complaint regarding this matter on 6/18/2018. Anderson was not certified on this system to make such a determination.

26.     On 5/30/2018, the Plaintiff was verbally counseled by Anderson for advising fellow law enforcement officers of a public safety concern regarding sexual abuse. Anderson stated that the information was sensitive although a fairly large amount of non-law enforcement staff was discussing the incident in confidence. The Plaintiff advised his staff in the confidence of a secure environment where only law enforcement staff were present in order to make them aware to pay special attention to the safety of a fellow co-worker who was non-law enforcement. This fellow co-worker was alleged to have transferred a sexually transmitted disease to a patient/inmate housed within the facility and information regarding these circumstances was circulating among staff as well as patients/inmates. Several patients/inmates had begun to target the alleged staff member. The Plaintiff advised of his first amendment right to protect the interest of the public and to ensure the safety/security of the staff as presented in his unilateral employment contract. Anderson additionally advised the Plaintiff that he did not "trust" him due to insufficient reasoning which was perceived by the Plaintiff to be discriminatory.

27.     On 6/8/2018, the Plaintiff filed an internal complaint regarding Anderson's inability to communicate with subordinate staff regarding safety concerns within the facility and a complaint regarding his sudden change in behavior towards the Plaintiff. The instance spawned from Jackson conducting an administrative investigation in lieu of requesting a criminal investigation regarding a staff being alleged to have had sexual intercourse with a mentally ill patient/inmate housed within THSMF. Jackson had also avoided notifying the department's BSI so that the event could be criminally investigated. Rittner later advised that he had handled this occurrence.

28.     On 6/15/2018, a meeting occurred with Jackson and Anderson in which a disagreement occurred with the Plaintiff. Jackson received a verbal complaint in regard to her illegal activity in making inappropriate decisions hindering the administration of justice from the Plaintiff. Jackson failed to address a hostile work environment concern (unlawful harassment - criminally) reported to the Plaintiff regarding two staff members (Justin Gosa and Tony Hinton). The party requesting to press charges in regard to this matter was African American. Jackson urged following administrative procedures regarding criminal behavior. Jackson advised taking immediate actions in emergency situations were authorized but minor violations should be presented to her prior. Jackson was advised by the Plaintiff that he would make decisions within his power (lawful authority as a peace officer) in the presence of inappropriate decisions rendered by THSMF administration which prevent the administration of justice; Jackson advised that she would terminate the Plaintiff's employment in such event. Jackson was then advised by the Plaintiff that he would seek court resolution (sue the department) in which Jackson replied that was "fucking fine!". The Plaintiff was advised by the District Attorney of Tuscaloosa

County, Hays Webb, to maintain his oath of office in the highest regards despite Jackson's behavior following an in-person meeting.

29. ADMH legal counsel advised that Jackson has the authority to circumvent lawful action pursuant to police powers in her position as appointing authority for THSMF via "instructing officers to not press charges"; this was expressed in an official position statement submitted to the Equal Employment Opportunity Commission (hereinafter referred to as *"EEOC"*). Particular reference to Alabama Code §§ 6-5-338, 15-27-18, 22-50-21, and 36-21-6.

30. On 6/19/2018, the Plaintiff filed a complaint of a hostile work environment to Hubbard regarding retaliation and discrimination in presenting arbitrary directives to prevent the Plaintiff from entering the facility early to witness inappropriate behavior. Hubbard promptly dismissed the complaint without sufficient investigation.

31. On 7/17/2018, the Plaintiff filed a complaint regarding the received reprimand on 5/2/2018. The Plaintiff presented violations of the unilateral employment contract and state law considerations. Hubbard dismissed the complaint without sufficient investigation or inquiry into legal aspects.

32. On or about 7/25/2018, the Plaintiff requested the assistance of Alabama State Employees Association (hereinafter referred to as *"ASEA"*) who declined to assist following a conversation with Baugher. ASEA advised that the Plaintiff potentially violated the department's computer usage policy and they would not assist with other matters in concern. The Plaintiff provided the department's computer usage policy which authorized business communication with external agencies and ASEA declined to respond. The Plaintiff was in direct contact with legal counsel employed by ASEA and his respective representative employed by the collective bargaining organization.

33.     On 7/27/2018, the Plaintiff was denied a promotion to Administrator II for lacking four months of experience.

34.     On 8/1/2018, the Plaintiff filed an internal complaint regarding Anderson in reference to unlawful firearms qualification procedures and ill-management of law enforcement certifications. Baugher, Jackson, and Hubbard were in receipt of this internal complaint and Rittner was notified of concerns regarding this event.

35.     On 8/2/2018, the Plaintiff was verbally counseled by Anderson following the Plaintiff's direct report of illegal activity being undertaken by a fellow officer who was Caucasian. The Plaintiff checked records which he had sufficient and authorized access to ascertain whether the department was following lawful standards regarding firearms qualifications. It became known that Anderson had unlawfully appointed a firearm's instructor (Tony Porter) and that officer had been unlawfully certifying firearms qualifications forms for over a decade. It was additionally reported by a fellow officer who was African American (Bessie Carter), that the "firearms instructor" was maintaining unlawful standards. During this conversation on 8/2/2018, the Plaintiff was yelled at and advised to not touch the firearms qualifications forms which were removed from the Plaintiff's access. Plaintiff was advised he was borderline insubordinate.

36.     Additionally, on this date, the Plaintiff filed an affidavit (complaint) with the Alabama Peace Officer Standards & Training Commission (hereinafter referred to as *"APOSTC"*) regarding Anderson's negligence leading to fellow law enforcement officer certification suspensions and unlawful activity regarding firearm certifications. Such complaint led to a prompt investigation by APOSTC, in which the Plaintiff received a phone call from APOSTC Investigator John Perdue, resulting in sanctions.

15

37.    On 8/17/2018, the Plaintiff filed a timely Equal Employment Opportunity
Commission (EEOC) charge of discrimination/retaliation (EEOC Charge No. 420-2018-02230)
in reference to the written reprimand, *inter alia*, received on 5/2/2018. Defendants Hubbard,
Long, and Jackson were notified directly by the Plaintiff.

38.    On 8/23/2018, the Plaintiff received a written warning. The presented written
warning included information which was not previously acted upon by the department. Jackson,
Baugher, Hubbard, and Rittner were directly involved in the administration of this disciplinary
action and refused to consider presented internal policy showing sufficient rebuttals and
exoneration. Furthermore, Anderson was released from his duties as Chief of Police due to the
Plaintiff's thorough documentation and complaint filed with APOSTC immediately preceding
his receipt of this warning. Plaintiff was advised by Senior Special Agent Joseph Rittner with the
department's BSI that he was receiving a "slap on the wrist" so that officials may establish a
foundation for how they wanted things to occur for the future in connection with the Plaintiff's
former supervision by Anderson. The presented warning advised that the Plaintiff had been
previously counseled and had numerous conversations with Jackson and failed to submit to her
authority. The Plaintiff has thoroughly expressed that he has the right to not submit to unethical,
immoral, and illegal practices as per APOSTC oath and public policy exception.

39.    The Plaintiff has conducted all duties according to public policy and ensuring that
appropriate safety, security, and well-being is provided to the staff, patients, and visitors
operating within the confines of THSMF. The Plaintiff has been proactive in his duties.

40.    On 8/28/2018, the Plaintiff filed a timely EEOC charge of retaliation (EEOC
Charge No. 420-2018-03769) in reference to the previous receipt of a written warning, *inter alia*,
on 8/23/2018. Defendants Jackson, Long, and Hubbard were directly notified by the Plaintiff.

41.     On or about 9/19/2018, the Plaintiff received a written reprimand in regard to an incident including arbitrary and un-factual information. A response was promptly filed in reference to this incident. Additionally, the Plaintiff received a notice of a pre-disciplinary conference (hereinafter referred to as *"PDC"*) for a separate incident which was scheduled for 9/28/2018.

42.     On 9/25/2018, the Plaintiff filed a timely EEOC charge of retaliation (EEOC Charge No. 420-2018-04087) in reference to receipt of a written reprimand (¶ 41), *inter alia*, on or about 9/19/2018. Defendants Jackson, Long, and Hubbard were directly notified by the Plaintiff.

43.     On 9/28/2018, Attorney William Dawson (hereinafter referred to as *"Dawson"*) was present for the PDC and refuted details in reference to this separate incident. Jackson acted as hearing officer. The Plaintiff presented ten defenses in relation to the presented charges and inevitably received a written warning on 10/17/2018 from Jackson. As no method existed to refute this action as well, a response was promptly filed.

44.     During this time, the Plaintiff was under consideration for employment with two respectable federal agencies (NSA and United States Secret Service) and was denied employment due to recent personnel issues within his current employment (referred to by one of the agencies as an *"unfavorable employment history"*).

45.     On 10/17/2018, the Plaintiff filed a timely EEOC charge of retaliation (EEOC Charge No. 420-2019-00234) in reference to the receipt of the additional disciplinary action and the effects of written disciplinary action on an impeding performance appraisal *inter alia*. Defendants Jackson, Long, and Hubbard were directly notified by the Plaintiff.

46.     On 10/19/2018, Dawson forwarded a letter requesting that re-consideration be made regarding the receipt of a written warning on 10/17/2018. The Defendant's counsel refuted the request and advised that no re-consideration would occur.

47.     On 10/20/2018, a performance appraisal was finalized and distributed to the Plaintiff which listed several inadequacies, false statements, and included documentation in relation to the previously presented discipline. The Plaintiff received a *"14.11"* which fell within a *"Partially Meets Standards (6.7 -16.6)"* category. It should be noted that the Plaintiff had never received a performance appraisal, within the history of an approximate two-year employment with the department, which was below *"Exceeds Standards (26.7 – 36.6)"*. The Plaintiff was also noted to have *"Unsatisfactory: Cooperation with Coworkers"* and *"Unsatisfactory: Compliance with Rules"* based upon the previous disciplinary action. The Plaintiff attempted to appeal to Baugher who stated she would not consider making revisions besides changing the date on the presented performance appraisal in support of information documented by Jackson. Hubbard was present for this meeting. The Plaintiff was not afforded a pay raise due this appraisal. Plaintiff attempted to transfer to an alternate location some time after but was advised by the department that he would be required to compete for the same position at a different location. Plaintiff chose not to compete to avoid further retaliatory action.

48.     Plaintiff's performance appraisal was then disseminated to the State of Alabama Personnel Department (hereinafter referred to as *"personnel department"*) for review and recording. The personnel department sanctioned the non-reception of a monetary performance increase.

49.     The Plaintiff also filed internal complaints alleging non-utilized whistleblower protection, policy violations by the Defendants, and for a second time, a hostile work environment during this time period.

50.     On 10/25/2018, the Plaintiff requested a meeting with Beshear, the Commissioner for the department. The department's Office of the Commissioner advised that the Plaintiff had been placed on a schedule to meet with the Commissioner upon her return to work.

51.     The Plaintiff additionally filed a notification of potential criminal violations regarding the received performance appraisal to Baugher on 10/25/2018.

52.     At some point following the onset of adverse actions by the department, the Plaintiff began experiencing physical symptoms of stress and was diagnosed with work-induced anxiety. The Plaintiff also suffered from panic attacks due to these employment discrepancies and such concerns are on-going.

53.     On 10/29/2018, the Plaintiff began Employee Assistance Program (hereinafter referred to as "EAP") counseling. The Plaintiff met with an assigned counselor (Marian Delouche) weekly in order to ease stress and anxiety related symptoms while maintaining prescribed medication.

54.     On 11/14/2018, the Plaintiff filed a complaint and request for an advisory opinion from the State of Alabama Ethics Commission (hereinafter referred to as "AEC") regarding unlawful conduct by Defendants Baugher and Jackson.

55.     On 11/16/2018, the Plaintiff applied for an Administrator II (Court Liaison) promotion. The Plaintiff received no invitation for interview despite being informed that he was indeed qualified following his inquiry sometime hereafter. The Plaintiff received no indication, letter, or phone call to advise that a different subject had been selected or that he was no longer

under consideration. The Human Resources department in Montgomery, Alabama, led by Hubbard, advised that the Plaintiff was not selected for preliminary interviews and declined to provide the race of the selected individual.

56.     On 11/17/2018, the Plaintiff filed a complaint regarding unlawful personnel matters with the personnel department including discrimination. Such complaint contained an affidavit clause signed by the Plaintiff. The Plaintiff specifically referenced governing statutes in his request and received no response from the personnel department. The Plaintiff had forwarded this complaint to Jackie Graham (Director of the State Personnel Department) and Alice Bryne (Assistant Director of the State Personnel Department).

57.     On 11/19/2018, the Plaintiff was declined a meeting with Beshear in reference to concerns regarding the department by the department's legal counsel although such meeting had been already scheduled. Beshear was advised and agreed to this action.

58.     On 11/20/2018, although the Plaintiff presented probable cause, the Plaintiff was advised by Rittner that *"the spirit of that law, or how that law was written, does not encompass Mrs. Jackson's actions"*. The Plaintiff advised Rittner that actions with probable cause are not within his purview to research case law and designate as "unfounded". The Plaintiff additionally advised that the matter should have been consulted with the DA for an appropriate determination of whether the DA would prosecute matters. Rittner is a law enforcement officer with the responsibility of conducting investigations into matters of misconduct by Facility Directors under ADMH. Rittner additionally disregarded a matter of hindering prosecution and obstruction regarding Jackson's ill report of criminal activity as mentioned in paragraph 27.

59.     On 12/10/2018, the Plaintiff was denied two promotions to Mental Health Security Officer III (Captain). The Plaintiff, as well as Jeremy Booth (Caucasian), were in

consideration for promotion within THSMF. The department conducted interviews in which the Plaintiff was advised that he did fairly well by Rittner who was acting on the panel. The Plaintiff was more qualified for the position based upon the combination of his post-secondary education (associates, bachelor's, and nearly completed master's degree), years of applicable experience, efforts to advance the Police Services Division, and his recommendation from senior law enforcement staff. Plaintiff additionally possessed a superior level of training and provided eight recommendations for his hire with a total of eleven signatures. Despite being better suited for the position, Jackson ultimately selected Booth. Jackson immediately placed Booth into an "Interim" status when Anderson was released from employment on 8/23/2019 until she was able to make an appointment following interviews. Individuals were under the perception that Booth was already made Captain prior to interviews and Booth's title was referenced by Jackson as "Captain" and "Chief" verbally and written prior to interviews although the Plaintiff was in consideration as well. The Plaintiff was additionally in consideration for this position at Bryce Hospital where a less qualified African American was selected following a verbal report to the Plaintiff that he had violated HIPAA by creating an organizational chart naming officers employed at both locations. The indicated officers were not patients of either facility and this chart indicated their placement so that internal law enforcement staff knew who was employed at each facility, therefore, presenting no HIPAA violation. Such notion was arbitrarily presented by Facility Director Audrey McShan to a fellow law enforcement officer working within Bryce Hospital.

60.    On 12/18/2018, the Plaintiff filed an additional complaint regarding unlawful personnel matters with the personnel department. The Plaintiff did not receive a response to this complaint as well.

61.    On 12/31/2018, the Plaintiff was in consideration for transfer to day-shift (6:00 AM to 2:00 PM). Officers who were currently working day-shift, through false information, presented a letter to Jackson refuting the Plaintiff's relocation to the shift based upon his previous whistle-blower activity and receipt of retaliatory disciplinary action. Officers presented their concerns in fact based upon the Plaintiff's diminished reputation due to the Defendant's actions.

62.    As the Plaintiff was also provided a copy of such letter from the officers, on 12/31/2018, the Plaintiff provided a written response to all officers who signed the indicated letter and to the addressees presenting clarity and transparency. The Plaintiff additionally provided a defamation/libel retraction letter to the officer (Darrin Paris) responsible for drafting and delivering the indicated letter according to Alabama Code § 6-5-185 establishing the Plaintiff and the officer for legal action. Officers advised the Plaintiff that such officer had conducted the action following its occurrence and as the officer's immediate supervisor, the Plaintiff reviewed the matter and consulted with Booth.

63.    On 2/4/2019, the Plaintiff was notified of a scheduled PDC on 2/7/2019 in regard to disseminating the retraction letter although the retraction letter was in accordance to Alabama Code § 6-5-185, a state law, in the Plaintiff's "personal capacity". Plaintiff chose not to file suit due to this intimidation and awaited the outcome of the scheduled PDC. The Plaintiff additionally requested an advisory opinion regarding the matter from the Ethics Commission; as the event conducted by the officers violated a statute under the Commission's purview.

64.    On 2/7/2019, the Plaintiff attended the scheduled PDC, presented numerous rebuttals to charges presented regarding his use of legal action, presented his unilateral employment contract as well as sufficient authority to refute policy violations, and notified the

Defendants of a potential violation of 42 U.S.C. § 1981 affording him a right to *"sue, be parties, give evidence"*. Jackson acted as hearing officer. Jackson was additionally informed by the Plaintiff of discriminatory concerns regarding the indicated officer who presented the retraction letter to her; this officer is Caucasian. Such officer had displayed several apprehensions regarding discrimination which were reported by fellow officers and such officer had presented an indifference to African American supervision, including the Plaintiff. Jackson did not act on or address this complaint of discrimination. Jackson acted solely on a statement that the Plaintiff had reviewed camera footage to ascertain details of the incident without any evidence to presented charges. It should be noted that the Plaintiff was a supervising officer of the indicated officers and was consulted by the Chief Law Enforcement Official regarding what the Plaintiff wished to do regarding the matter; presenting the decision as the Plaintiff's to make, seeing that he was their supervisor. The Plaintiff additionally had authorization to utilize the cameras in such an incident/matter by Jackson.

65.     On 2/14/2019, the Plaintiff was notified by Human Resources of Jackson's decision to suspend the Plaintiff for five days without pay. The Plaintiff had never been suspended by the department and Jackson superseded an initial one-day unpaid suspension. The Plaintiff promptly filed a formal complaint and appeal on this day in which Jackson was notified. Jackson additionally utilized former discipline to justify this decision and presented former charges in her decision in this matter.

66.     Additionally, on 2/14/2019, the Plaintiff forwarded a "letter of concern" to Beshear. Beshear was notified that Hubbard had not responded to concerns of a "Hostile Work Environment" and concerns of "Whistle-Blower Protection". In several complaints filed in regard to these concerns, Hubbard provided insufficient responses and conducted arbitrary

human resources investigations. Hubbard simply asked the Defendants their side of the story and weighed in their favor. Hubbard then chose not to respond to the Plaintiff's secondary complaints in violation of the unilateral employment contract. No evidence collection/retrieval was done in regard to concerns other than review of the presented disciplinary action. Beshear decided to not review these claims due to the previous review by her subordinates according to a letter provided to the Plaintiff. Baugher additionally refused to conduct a review, and according to several sources, Jackson and Baugher are close friends and such relationship has affected official decisions within the department; decisions in which the Plaintiff has been involved.

67.     On 3/1/2019, the Plaintiff was finally relocated to the 6:00 AM to 2:00 PM shift following a prolonged waiting period due to the previously submitted defamation (libel).

68.     On 4/1/2019, the Plaintiff was afforded a post-hearing regarding his unpaid five-day suspension. Facility Director II Eric Carpenter (hereinafter referred to as *"Carpenter"*) acted as Hearing Officer as appointed by Beshear. Carpenter was recently appointed as Jackson's new supervisor and is an agent of the department. Carpenter had been noticed by the Plaintiff to be discussing matters regarding his suspension prior to the hearing and the Plaintiff expected a biased decision regarding the matter; as Carpenter was a representative of the department and Jackson's supervisor.

69.     On 4/25/2019, Beshear upheld the instituted five-day suspension based upon the Carpenter's findings which presented no facts in the matter but ultimately presented that the Plaintiff stood up for his rights during his post-suspension hearing while presenting superficially plausible interpretations. Such findings additionally stated the Plaintiff responded with *"zealous threats and intimidation under the pretext of legal rights"*. Beshear presented that such findings were fact. ADMH Policy 60-102 states *"the complaint procedure is to be used for the purpose of*

*fact finding*. Carpenter additionally presented an interpretation that the Plaintiff was responsible for producing evidence for exoneration while Jackson, the individual bringing charges, presented no evidence in this matter besides a single statement made by the Plaintiff while ADMH Policy 60-102 states, *"the department's representative shall first present evidence to establish the charge(s)"*.

70.     The department afforded no protection to prevent retaliation in the filing of internal and external complaints to include complaints with the State Attorney General, Alabama Peace Officer Standards & Training Commission, and EEOC, all of which they received preceding notification of concerns.

71.     Long, as the facilities Personnel Manager, did not attempt to take action to alleviate concerns but had remained passive and unconcerned. Long additionally oversaw most of the matters presented in this Complaint and was responsible for substantiating as well as reviewing presented disciplinary action prior to administration according to Jackson.

72.     Hubbard, as the department's Human Resources Director operated insufficiently in managing concerns and unlawful conduct presented to her. Hubbard additionally oversaw many matters presented in this Complaint following the Plaintiff's direct referral of information.

73.     Beshear, as the department's ultimate leadership and Commissioner, avoided concerns and presented an indifference towards the Plaintiff's expressed need for further due process and review of matters while sanctioning decisions imposed. When concerns, discrepancies, and unbecoming conduct is presented to a chief official, there is then a moral obligation for an individual in such position to conduct a thorough review.

74.     Jackson, as THSMF's appointing authority and Director, has vigorously, capriciously, and arbitrarily taken a heightened scrutiny in the Plaintiff's employment while

disregarding the Plaintiff's presentation of rights, privileges, and the contract established by the department. Jackson has maintained a retaliatory standard and intimidated the Plaintiff on multiple occasions.

75.     Anderson and Rittner, as Chief Law Enforcement Officers, have presented discriminatory apprehensions while exercising discretion outside their scope of authority.

76.     Despite abundant internal complaints and external complaints which the Defendants were made aware of, Defendants Beshear, Baugher, Hubbard, and Long failed to take prompt and appropriate remedial action to protect the Plaintiff from discrimination and retaliation.

77.     After the Plaintiff complained about racial and retaliatory discrimination, the Plaintiff was disciplined for *"insubordination"*, *"exceeding scope of authority"*, *"inattention to job duties"*, *inter alia*, and the Plaintiff expressively presented his refutations, legal foundations, and profusely made the Defendants aware of civil rights and statutory violations while no such conduct was presented or documented prior to his complaints.

78.     These adverse employment actions were considered in diminishing the Plaintiff's life, liberty, and property interests and the Plaintiff has suffered emotional distress as a result of ongoing actions by the Defendants. Such disciplinary action, even non-adverse actions presented, would reasonably dissuade an employee from opposing unlawful and illegal actions and have substantially affected the Plaintiff's life, liberty, and property interest in continued and alternate employment.

## RIGHT TO SUE LETTERS FROM EEOC

79.     On 3/1/2019, the Plaintiff was provided a *"Notice of Suit Rights"* letter issued by the EEOC regarding the charge filed upon 8/28/2018 (Stamped received by the EEOC on 8/30/2018). Plaintiff had until 5/30/2019 to file a Complaint regarding this charge.

80.     On 3/27/2019, the Plaintiff was provided a *"Notice of Suit Rights"* letter issued by the EEOC regarding the charge filed upon 9/25/2018 (Stamped received by the EEOC on 9/27/2018). Plaintiff had until 6/25/2019 to file a Complaint regarding this charge.

81.     On 3/27/2019, the Plaintiff was provided a *"Notice of Suit Rights"* letter issued by the EEOC regarding the charge filed upon 10/17/2018 (Stamped received by the EEOC on 10/19/2018). Plaintiff had until 6/25/2019 to file a Complaint regarding this charge.

*8/17/2018: Charge of Discrimination/Retaliation undergoing administrative remedies*

*4/11/2019: Charge of Discrimination/Retaliation undergoing administrative remedies*

## FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 - FIRST AMENDMENT

## SPEECH, ASSOCIATION, ACCESS TO PRESS, REDRESS & PRIVACY

### *Beshear, Baugher, Hubbard, Long, Jackson & Anderson (Individual & Official Capacity)*

82.     Plaintiff hereby incorporates by reference paragraphs 17 - 18, 21 - 22, 26, 28 - 29, 34 - 36, 38, 51, 61 – 65, and 67.

83.     By reason of the aforementioned restriction imposed by abridging the *freedom of speech, freedom of association, access to the press*, and ability to *petition the government for a redress of grievances*, Defendants have deprived the Plaintiff of his right to engage in the listed rights in violation of clauses set forth in the First Amendment as applied to the states and their

political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

84.     Defendants' true purpose for instituting the verbal counseling and written discipline was to silence the Plaintiff, prevent Whistleblower Activity, and impose limitations on external contact regarding unlawful/illegal activity occurring within THSMF, a facility under the department.

85.     By reason of the aforementioned abridging of collective bargaining and utilizing a letter provided in the Plaintiff's "personal capacity" regarding charges of immorality and dishonesty, Defendants' deprived the Plaintiff of a right to privacy in his speech and an ability to remain anonymous in expressing, challenging, or reporting violations of law in direct violation of his First Amendment right to privacy.

86.     It is an expressed and inherent right that the Plaintiff be able to remain anonymous in reporting unlawful behavior to established regulatory agencies when acting outside the scope of his official law enforcement position.

87.     By reason of the aforementioned verbal discipline and written reprimand instituted on 5/2/2018 effecting the life, liberty, and property interest of the Plaintiff, the Defendants' imposed a prior restraint on his speech by requiring prior approval to disseminate information which was blatantly presented by the Plaintiff in regard to unlawful conduct. Such speech is of public interest.

88.     Any reasonable public official would and should be aware of these established rights at the time of referenced incidents within this Complaint; as they were clearly established at the time of occurrence.

89.    As a direct and proximate result of Defendants' violation of the First Amendment through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of constitutional rights and liberty interest, entitling him to declaratory and injunctive relief as well as damages in the individual capacity of the Defendants.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 - FIRST AMENDMENT RETALIATION

### *Beshear, Hubbard, Baugher, Jackson, Anderson (Individual & Official Capacity)*

90.    Plaintiff hereby incorporates paragraphs 17 – 18, 21 - 22, 26, 28 - 29, 34 - 36, 38, 51, and 61 - 68.

91.    Plaintiff engaged in protected speech by speaking with the Defendants regarding unlawful conduct and by speaking on matters of public concern in his drafted bill presented to his collective bargaining organization. Plaintiff engaged in protected speech when he reported violations of law and unlawful procedures, *inter alia*. The Plaintiff additionally engaged in protected speech when he responded professionally and lawfully to charges of immorality, dishonesty, and an ability to ineffectively lead; as a matter of public concern. Foremost, the Plaintiff presented speech in his "personal capacity" regarding defamation to a fellow public official which was additionally protected speech.

92.    By and through a written warning, written reprimand, five-day unpaid suspension based upon unfounded charges of dishonesty and immorality provided by fellow coworkers, and denied promotions, Defendants adversely affected the Plaintiff's employment.

93.    A person of ordinary firmness would be deterred from engaging in continued protected speech based upon the related adverse actions.

94.     Statements, documents, and discipline regarding law enforcement authority, the safety and security of mental health facilities containing criminally insane subjects, and charges of public official immorality and dishonesty are matters of public concern.

95.     The adverse actions taken by the Defendant were motivated by such protected speech; a causal connection exists in that the Plaintiff would have not received a written reprimand or five-day unpaid suspension if he had not engaged in protected speech.

96.     The Plaintiff's interest in commenting on matters of public concern outweighed the government's interest in efficiency. Such protected speech caused no disruption or ill-effect in governmental operation.

97.     Any reasonable public official would and should be aware of these established rights at the time of referenced incidents within this Complaint; as they were clearly established at the time of occurrence.

98.     Defendants retaliated against the Plaintiff for engaging in protected speech in violation of the First Amendment.

99.     As a direct and proximate result of the Defendants' violation through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of established rights and liberty/property interest, entitling him to declaratory and injunctive relief and damages in the individual capacity of the Defendants.

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – FIFTH AMENDMENT – DOUBLE JEOPARDY

#### *Beshear, Jackson & Long (Individual & Official Capacity)*

100.    Plaintiff hereby incorporates by reference paragraphs 21, 38, 41, 43, and 65.

101.    By reason of the aforementioned disciplinary action, Jackson unlawfully, maliciously, and capriciously exploited prior discipline in efforts to institute a five-day unpaid suspension of the Plaintiff. Such prior events were additionally listed within the instituted suspension served upon the Plaintiff. Long was responsible for the review and recommendation of such action but presented *deliberate indifference*. Beshear was responsible for the final review and adopted an arbitrary opinion from a biased hearing officer presenting *deliberate indifference*.

102.    Such exploitation placed the Plaintiff in jeopardy of life, twice, for the same offenses therefore presenting and resulting in a deprivation of the Plaintiff's life, liberty, and property interest.

103.    Any reasonable public official would and should be aware of these established rights at the time of referenced incidents within this Complaint; as they were clearly established at the time of occurrence.

104.    As a direct and proximate result of Defendants' violation of the Fifth Amendment through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of constitutional rights and liberty interest, entitling him to declaratory and injunctive relief as well as damages in the individual capacity of the Defendants.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT

### DUE PROCESS & EQUAL PROTECTION

***Beshear, Baugher, Hubbard, Long, Jackson, Anderson (Individual & Official Capacity)***

105.    Plaintiff hereby incorporates by reference paragraphs 13 – 81.

106. By reason of the aforementioned deprivations, limitations, and discrimination, Defendants have unconstitutionally deprived the Plaintiff of the equal protection of the law and due process guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; Defendants have prevented the Plaintiff from exerting his rights free of limitation, retaliation, and/or obstruction.

107. By reason of the aforementioned post-suspension hearing occurring after the deprivation of property (five-day unpaid suspension), Defendants violated the Plaintiff's due process rights as established under the fourteenth amendment.

108. By reason of the aforementioned hearings, Defendants deprived the Plaintiff of his essential right to an *unbiased/impartial decisionmaker*. Per the record herein, Jackson has acted arbitrarily, capriciously, and maliciously presenting erroneous and distorted conceptions to support actions against the Plaintiff. Director of Mental Health Facilities Eric Carpenter (hereinafter referred to as *"Carpenter"*) is an agent of the department of which the Plaintiff alleges is retaliating, conspiring, and discriminating against him. As an agent of ADMH, such hearing officers are subject to the interest of the department and are not neutral in regard to the Plaintiff.

109. Beshear appointed Carpenter for the suspension hearing who in turn presented substantial opinion against the Plaintiff rather than facts while presenting predisposition and *deliberate indifference* to the matters at hand.

110. The Plaintiff was additionally deprived of property interest based upon insufficient evidence to support the findings; presenting inappropriate procedural due process.

111. By reason of the aforementioned written reprimand instituted on or about 9/19/2018, the Plaintiff was deprived of an opportunity to present written or oral objections prior

to the administration of disciplinary action hereinafter causing an erroneous deprivation of the Plaintiff's private interest to external employment.

112.    Any reasonable public official would and should be aware of these established rights at the time of referenced incidents within this Complaint; as they were clearly established at the time of occurrence.

113.    As a direct and proximate result of Defendants' violation of the Equal Protection Clause and due process provisions of the Fourteenth Amendment through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief as well as damages in the individual capacity of the Defendants.

## FIFTH CAUSE OF ACTION

### 42 U.S.C. § 1983 - 42 U.S. CODE § 1981(b)(c) – BREACH OF CONTRACT

#### *All Defendants Excluding ADMH (Individual & Official Capacity)*

114.    Plaintiff hereby incorporates by reference paragraphs 13 – 81.

115.    Defendants, by acting willfully, unlawfully, in bad faith, and under mistaken interpretations of law, caused a breach of a binding and unilateral employment contract established by department's copious personnel manuals as commenced on November 16, 2016. An additional unilateral contract exists between Jackson, Anderson, and the Plaintiff through a *"Position Classification Questionnaire – Form 40"* as commenced on 8/9/2017.

116.    Through discrimination, the Plaintiff, a member of a protected class, was deprived of his right to *make and enforce contracts* by Anderson, Beshear, Baugher, Hubbard and Long, all of which are Caucasian. Defendant Jackson, although African American, presented *deliberate*

*indifference* and malicious motives through solely utilizing information presented by staff who were undeniably all Caucasian.

117.    Defendants improperly, without sufficient reasoning, instituted disciplinary action not coinciding with personnel procedures set forth in such contract. Particular reference is given to ADMH Policy 60-40 setting forth "Progressive Discipline".

118.    Defendants violated this unilateral contract through imposing restrictions, limitations, and alterations to assigned duties and responsibilities as outlined in this contract. Particular reference is given to the Plaintiff's responsibility to *"maintain safe and secure environment for patients, staff, visitors"*, to *"conduct investigations"*, and to *"perform duties as Police Officer, make arrest, etc."*

119.    Defendants violated this unilateral employment contract through the implication that conducted activities by the Plaintiff were in violation of this unilateral employment contract. Actions conducted by the Plaintiff were not in violation of prescribed policy regarding the written reprimand instituted on 5/2/2018 in that ADMH Policy 40-10 sets forth that acceptable uses of electronic mail included *"communicating in a professional manner with parties outside the department for business purposes"*. Other disciplinary actions presented similar discrepancies.

120.    Defendant Jackson violated this unilateral contract through threatening the termination of the Plaintiff in the event he expressed or utilized conditions set forth within this contract. Particular reference is given to ADMH Policy 60-40 which defines cause of action for termination includes *"documented involuntary personnel action applied by the appointing authority based on a serious violation(s) or repeated violation(s) of departmental rules or policies, or uncorrected conduct preceded by due process procedure."* The plaintiff has not

violated the unilateral employment contract and such threats amount to a violation of provisions

set forth in ADMH Policy 70-5 giving rise to improper employee conduct, ADMH Policy 19-12

presenting that the Plaintiff should have been afforded *"reasonable measures to protect"* him

from retaliation, and ADMH Policy 70-35 which should have protected the Plaintiff from threats,

intimidation, and retaliation. Defendant Rittner additionally violated such contract by not

following ADMH Policy 70-35 advising that *"the appropriate investigating person or entity*

*shall present such facts to the district attorney or other prosecuting authority for consideration*

*of initiation of criminal proceedings"* following being advised by the Plaintiff.

121.   Defendant Jackson deliberately and maliciously failed to follow ADMH Policy

60-112 *("Pre-Disciplinary Conference")* setting forth herein:

*"All information presented at the pre-disciplinary conference should be taken into consideration prior to making a decision whether or not to take disciplinary action.*

*In the case of a suspension or termination the burden of proof lies with the appointing authority."*

As Jackson provided insufficient evidence, and in cases, no evidence to support her findings.

122.   Defendants Beshear, Baugher, Hubbard, Jackson, and Anderson deliberately and

capriciously failed to follow ADMH Policy 70-35 *("Threatening or Intimidating a Witness")*

setting forth herein:

*"It shall be a violation of this policy for any employee to communicate or to conspire with another person to communicate in any manner or by any means, any threat, intimidation, retaliation, or harassment against an employee who has reported an incident of abuse/neglect or any other departmental policy violation or violation of any criminal statute or is a witness or a potential witness in a departmental investigation.*

*Threat, intimidation, retaliation, and harassment as used in this policy include, but are not limited to, threats of physical harm, threats of damage to or destruction of property, acts of intimidation, acts of retaliation, or acts of harassment.*

*Any employee who threatens, intimidates, retaliates against, or harasses another employee or conspires with another person to threaten, intimidate, retaliate against or harass an employee*

*who has reported an incident of abuse or neglect or is a witness or potential witness in a departmental investigation shall be subject to termination.*

*Any employee who violates this policy shall be subject to termination. No lesser disciplinary action shall be allowed and mitigating circumstances shall not apply except as set forth in this paragraph."*

Jackson threatened, intimidated, and retaliated against the Plaintiff according these provisions within the unilateral employment contract. It should be noted that this policy specifically references *"Title 36-26A-1, Code of Alabama, 1975 ("The State Employees Protection Act", also known as the "whistleblower" act)"*. In the event the Plaintiff was afforded adequate protections by Beshear and sufficient investigations were conducted by the other Defendants, Jackson would have been disciplined.

123.    Defendant Beshear, Hubbard, and Long violated this unilateral contract through ill-response and ill-investigation of the Plaintiff's reports of discrimination, retaliation, hostile work environment, *inter alia*. Defendants additionally failed to provide whistle-blower protection according to this contract. Particular reference given to ADMH Policy 19-12 stating *"The Alabama Department of Mental Health shall take reasonable measures to protect employees from retaliation for reporting abuse, neglect, exploitation, or other mistreatment of individuals in the care of DMH or for reporting other illegal acts by employees, when such reports are made by the employee in good faith"* and ADMH Policy 60-77 advising that *"A hostile work environment or on the job harassment will not be tolerated"*.

124.    Defendant Anderson violated this unilateral contract through imposing discipline outside the scope of established policies and procedures, acting beyond his authority. Anderson additionally violated this contract through imposing limitations on established provisions within such contract. Defendants acted beyond their scope of authority as established by such contract.

125.    Unilateral employment contract violations presented in paragraphs 115-124 are not all-inclusive. Additional matters are set forth in the Plaintiff's responses to adverse employment actions.

126.    As a direct and proximate result of the Defendants' violation of the unilateral employment contract through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of established rights and liberty interest, entitling him to declaratory and injunctive relief and damages in the individual capacity of the Defendants.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 - 42 U.S.C. § 1981 – EQUAL RIGHTS

### *Beshear, Baugher, Hubbard, Long, Jackson, Anderson (Individual & Official Capacity)*

127.    Plaintiff hereby incorporates by reference paragraphs 13 – 81.

128.    By reason of the aforementioned deprivation of civil and constitutional rights, Defendants have intentionally deprived the Plaintiff of the full and equal benefit of all laws as enjoyed by white citizens.

129.    Punishment in relation to incidents were not comparative to punishment issued to Caucasian counterparts and Defendants were cognizant of this which is *indicia* of discrimination. Race was a motivating factor in decisions made.

130.    Plaintiff was deprived of his *right to sue, be a party to legal action, and to give evidence* by and through a five-day unpaid suspension.

131.    Plaintiff, as a citizen and Alabama state employee, was entitled to due process protection of freedom from arbitrary action which jeopardized his property interest in his public

employment in that he should have not been subjected to written disciplinary action directly affecting life, liberty, and property interest without due process.

132.    Defendants caused abridgment of sufficiently and well-known rights established by the United States Constitution and were sufficiently informed following actions to offer an opportunity to amend. Defendants refused to amend or revise presenting a *deliberate indifference*.

133.    Plaintiff also was entitled to liberty interest in his reputation as an honest and ethical public employee. The Defendants' actions and refused consideration deprived the Plaintiff of these rights.

134.    Any reasonable public official would and should be aware of these established rights at the time of referenced incidents within this Complaint; as they were clearly established at the time of occurrence.

135.    As a direct and proximate result of the Defendants' violation through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of established rights and liberty interest, entitling him to declaratory and injunctive relief and damages in the individual capacity of the Defendants.

### SEVENTH CAUSE OF ACTION

### 42 U.S.C. § 1983 - 42 U.S. CODE § 1981 – DISCRIMINATION

#### *Rittner, Hubbard and Anderson (Individual & Official Capacity)*

136.    Plaintiff hereby incorporates by reference 13 – 15, 19 – 21, 23 – 24, 31, 35, and 55.

137.    Plaintiff, as an African American, is a member of a protected class, and thus also has the clearly established statutory right under 42 U.S.C. § 1981 to be free from racially

motived actions and decisions in employment. At the time of the presented events within this Complaint, the Plaintiff had a clearly established constitutional right to be free from racial discrimination and the right to enjoy the equal protection of the laws.

138. Punishment in relation to incidents were not comparative to punishment issued to Caucasian counterparts and Defendants were cognizant of this which is *indicia* of discrimination.

139. Plaintiff applied for and was most qualified for the applied promotion indicated in paragraph 23 and the Plaintiff was not selected in lieu of the selection of a less qualified Caucasian. Plaintiff was highly qualified for the applied promotion indicated in paragraph 55 and was not interviewed, selected, or notified.

140. Anderson engaged in conduct described within this complaint willfully, maliciously, and in bad faith, presenting a reckless disregard for the Plaintiffs rights. Anderson administered an unlawful written reprimand and presented actions limiting the Plaintiff's privileges of employment while not conducting actions comparably to similarly situated Caucasian employees.

141. Hubbard and Rittner, through subjective selection procedures and the selection of a Caucasian applicant over a more qualified African American applicant, discriminated against the Plaintiff in a promotion selection. Hubbard, through arbitrary and unlawful means, denied the Plaintiff a full and equal consideration for promotion through discrimination.

142. Plaintiff's race was a motivating factor in the decisions to conduct the described actions. Defendants' conduct was undertaken with the purpose of depriving Plaintiff of the equal protection and benefits of the law and equal privileges and immunities under the law in violation of 42 U.S.C. § 1981.

143.    Any reasonable public official would and should be aware of these established

rights at the time of referenced incidents within this Complaint; as they were clearly established

at the time of occurrence.

144.    As a direct and proximate result of the Defendants' violation through willful,

malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered

irreparable harm, including the loss of established rights and liberty/property interest, entitling

him to declaratory and injunctive relief and damages in the individual capacity of the

Defendants.

## ·    EIGHTH CAUSE OF ACTION

### 42 U.S.C. § 1983 - 42 U.S. CODE § 1981 – RETALIATION

#### *Baugher, Hubbard, Jackson, Anderson, and Rittner (Individual & Official Capacity)*

145.    Plaintiff hereby incorporates by reference paragraphs 13, 21, 23, 30, 35, 37 - 38,

40 - 43, 45, 47, 55, 59, 64, 65, and 69.

146.    Plaintiff engaged in protected activity when he complained about discrimination

based upon race as well as disparate treatment on 12/6/2017 and 5/2/2018.

147.    Plaintiff engaged in protected activity when he filed Equal Employment

Opportunity Charges (EEOC) on 8/17/2018, 8/28/2018, 9/25/2018, and 10/19/2018 alleging

discrimination and retaliation.

148.    Plaintiff was subjected to arbitrary and unlawful disciplinary action, prevented

from relocating to an alternate shift where he would gain a superior role as lead supervisor,

declined privileges of employment, suspended without pay for five days, and denied promotions

in which scrutiny ensured within his employment. Plaintiff was denied a promotion to Mental

Health Special Agent despite being most qualified. Plaintiff was denied a promotion to Mental

Health Security Officer III (Captain) despite being most qualified. Plaintiff was deliberately avoided from consideration for promotion to Administrator II (Court Liaison) despite being highly qualified in retaliation of events described herein. All such actions occurred following protected activity.

149.    There was a causal connection between the Plaintiff's complaints and the materially adverse actions taken against the Plaintiff. A special focus exists in relation to *temporal proximity* based upon when adverse actions were conducted by the Defendants.

150.    The retaliation endured by the Plaintiff would dissuade a reasonable employee from making complaints of discrimination, disparate treatment, as well as filing EEOC charges.

151.    Race was a motivating factor in actions imposed. Similarly situated employees who are Caucasian had been allowed to violate policy and procedure without recourse or disciplinary action under the Defendant's supervision and received sufficient considerations and/or promotions.

152.    Defendants retaliated against the Plaintiff for engaging in protected activity in violation of 42 U.S. Code § 1981.

153.    As a direct and proximate result of the Defendants' violation through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of established rights and life, liberty, and property interest, entitling him to declaratory and injunctive relief and damages in the individual capacity of the Defendants.

## NINTH CAUSE OF ACTION

## 42 U.S. CODE § 1985(2) – CONSPIRACY

*Beshear, Baugher, Jackson, Anderson, Rittner (Individual & Official Capacity)*

154.    Plaintiff hereby incorporates by reference paragraphs 13 - 81.

155.    By reason of the aforementioned underlying wrong as expressed in this complaint,

Defendants, along with the personnel department and ASEA, separate entities, agreed to

accomplish an unlawful end and conspired against the Plaintiff. Plaintiff asserts that Rittner

(BSI) should additionally be considered as a separate entity for the purpose of a conspiracy in

that he operated as a representative of the State of Alabama in use of his authority as a law

enforcement officer.

156.    Defendants deprived the Plaintiff of equal protection and privileges of the laws

through wrongful conduct expressed herein and *deliberate indifference* to civil and constitutional

rights while exceeding their scope of authority. Plaintiff was additionally treated differently than

similarly situated Caucasian employees with the same authority as the Plaintiff.

157.    The Plaintiff received a written reprimand directly limiting fundamental rights.

The Plaintiff received an arbitrary and capricious performance appraisal which was disseminated

from the Defendants to the personnel department. The Plaintiff also filed complaints with the

personnel department who willingly declined to respond to concerns of unlawful conduct. The

Plaintiff referred the written reprimand in reference to paragraph 21 to ASEA who refused to

assist based upon arbitrary cause following their communication with Baugher. Jackson, along

with Long, instituted a five-day un-paid suspension in direct violation of 42 U.S.C. 1981 which

authorization was disseminated to the personnel department who enacted such suspension.

ASEA agreed with department while being cognizant of unlawful actions, the personnel

department failed to address unlawful actions, and Rittner allowed unlawful conduct despite his

authority, furthering this conspiracy.

158.     Defendants conspired for the purpose of impeding, hindering, and obstructing the Plaintiff in regard to a due course of justice in state courts.

159.     Defendants conspired for the purpose of injuring the Plaintiff in lawfully enforcing, or attempting to enforce, the right of employees (persons) for the equal protection of the laws.

160.     The Plaintiff has suffered declined life, liberty, and property interest in direct effect of the disseminated performance appraisal along with preceding disciplinary action. Such entitles him to declaratory and injunctive relief and damages in the individual capacity of the Defendants.

## TENTH CAUSE OF ACTION

### 42 U.S. CODE § 1985(3) – CONSPIRACY

#### *Hubbard, Long, Baugher, Jackson, Anderson, Rittner (Individual & Official Capacity)*

161.     Plaintiff hereby incorporates by reference paragraphs 13 – 81.

162.     By reason of the aforementioned underlying wrong as expressed in this complaint, Defendants, along with the personnel department and ASEA, separate entities, agreed to accomplish an unlawful end and conspired against the Plaintiff. Plaintiff asserts that Rittner (BSI) should additionally be considered as a separate entity for the purpose of a conspiracy in that he operated as a representative of the state of Alabama in use of his authority as a law enforcement officer.

163.     Defendants deprived the Plaintiff of equal protection and privileges of the laws through discrimination, retaliation, civil rights violations, and *deliberate indifference* to civil and constitutional rights. Plaintiff was additionally treated differently than similarly situated Caucasian employees with the same authority as the Plaintiff.

164.    The Plaintiff received a written reprimand directly limiting fundamental rights. The Plaintiff received an arbitrary and capricious performance appraisal which was disseminated from the Defendants to the personnel department. The Plaintiff also filed complaint with the personnel department who willingly declined to respond to concerns of unlawful conduct. The Plaintiff referred the written reprimand in reference to paragraph 21 to ASEA who refused to assist based upon arbitrary cause following their communication with Baugher. Jackson, along with Long, instituted a five-day un-paid suspension in direct violation of 42 U.S.C. 1981 which authorization was disseminated to the personnel department who enacted such suspension.

165.    The Plaintiff has suffered declined liberty interest in direct effect of the disseminated performance appraisal along with preceding disciplinary action. Plaintiff additionally has suffered a property interest injury and has been deprived of privileges available to Caucasian citizens.

## ELEVENTH CAUSE OF ACTION

### 42 U.S. CODE § 1986 – ACTION FOR NEGLECT TO PREVENT

### *Beshear, Baugher, Hubbard, Long (Individual & Official Capacity)*

166.    Plaintiff hereby incorporates by reference paragraphs 13 – 81.

167.    By reason of the aforementioned violation of 42 U.S. Code § 1985(2) and 42 U.S. Code § 1985(3), Defendants are hereby liable under 42 U.S. Code § 1986 for failing to prevent or aid in the prevention of such wrongful act(s). Defendants had power to prevent the alleged wrongs as presented within this complaint. Beshear is the supervisory oversight for the entire department, Baugher is the supervisory oversight for all of the department's mental health facilities, Hubbard is the supervisory oversight for human resources for the entire department, and Long is the supervisory oversight for Human Resources within THSMF.

168.    As a direct and proximate result of the Defendants' violation through willful,

malicious, and arbitrary lack of action within their scope of authority, the Plaintiff has suffered

irreparable harm, including the loss of established rights and liberty interest, entitling him to

declaratory and injunctive relief and damages in the individual capacity of the Defendants.

## TWELFTH CAUSE OF ACTION

### TITLE VII, 42 U.S.C. §§ 2000E TO 2000E-17 – RETALIATION

#### *Alabama Department of Mental Health & Mental Retardation (ADMH)*

169.    Plaintiff hereby incorporates by reference paragraphs 13, 21, 23, 30, 35, 37 - 38,

40 - 43, 45, 47, 55, 59, 64, 65, and 69.

170.    Plaintiff engaged in protected activity when he complained of discrimination

based upon race as well as disparate treatment on 12/6/2017 and 5/2/2018.

171.    Plaintiff engaged in protected activity when he filed Equal Employment

Opportunity Charges (EEOC) on 8/17/2018, 8/28/2018, 9/25/2018, and 10/19/2018.

172.    There was a causal connection between the Plaintiff's complaints and the

materially adverse actions taken against the Plaintiff by ADMH. A special focus exists in

relation to temporal proximity based upon when adverse actions were conducted by the

Defendants.

173.    The retaliation endured by the Plaintiff would/has dissuade(d) a reasonable

employee from making complaints of discrimination, disparate treatment, as well as filing EEOC

charges.

174.    ADMH retaliated against the Plaintiff for engaging in protected activity in

violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

## THIRTEENTH CAUSE OF ACTION

## ALABAMA CODE § 36-26A-3 – STATE EMPLOYEES PROTECTION ACT (ASEPA)

### *Beshear, Baugher, Hubbard, Long, Jackson (Individual Capacity)*

175.    Plaintiff hereby incorporates by reference paragraphs 13, 21, 23, 30, 35, 37 - 38, 40 - 43, 45, 47, 55, 59, 64, 65, and 69.

176.    Plaintiff engaged in protected activity by reporting a violation of law pursuant to Alabama Code § 36-26A-3 via affidavits under affirmation, witnessed and signed before a notary public.

177.    Plaintiff engaged in protected activity when he filed Equal Employment Opportunity Charges (EEOC) on 8/17/2018, 8/28/2018, 9/25/2018, and 10/19/2018 via affidavits under affirmation.

178.    Plaintiff engaged in protected activity when he filed criminal charges by and through affidavits transmitted to state courts pursuant to his lawful authority as a law enforcement officer of the State of Alabama.

179.    Plaintiff, in the transmitted affidavits under affirmation, reported violations of law and rules promulgated pursuant to the laws of the State of Alabama.

180.    Plaintiff's terms, conditions, and privileges of employment were directly affected by and through discrimination for filing such affidavits.

181.    There was a causal connection between the Plaintiff's affidavit and the materially adverse action taken against the Plaintiff by Baugher, Hubbard, Long, and Jackson. A special focus exists in relation to temporal proximity based upon when the adverse action (discrimination) was conducted by the Defendants.

182.    The discrimination would dissuade a reasonable employee from reporting violations of law and rules promulgated by the State of Alabama.

183.     Beshear, Baugher, Hubbard, Long, and Jackson, discriminated against the

Plaintiff for engaging in protected activity through willful, capricious, and arbitrary actions

beyond their scope of authority (filing affidavits under affirmation alleging unlawful conduct) in

violation of Alabama Code § 36-26A-3.

## FOURTEENTH CAUSE OF ACTION

## BREACH OF CONTRACT – STATE LAW CLAIM

### *Beshear, Baugher, Hubbard, Long, Jackson, Anderson (Individual Capacity)*

184.     Plaintiff hereby incorporates by reference paragraphs 13 – 81.

185.     Defendants, by acting willfully, unlawfully, in bad faith, and under mistaken

interpretations of law, caused a breach of a binding and unilateral employment contract

established by department's copious personnel manuals as commenced on November 16, 2016.

An additional unilateral contract exists between Jackson, Anderson, and the Plaintiff through a

*"Position Classification Questionnaire – Form 40"* as commenced on 8/9/2017.

186.     Defendants improperly, without sufficient reasoning, instituted disciplinary action

not coinciding with personnel procedures set forth in such contract. Particular reference is given

to ADMH Policy 60-40 setting forth "Progressive Discipline".

187.     Defendants violated this unilateral contract through imposing restrictions,

limitations, and alterations to assigned duties and responsibilities as outlined in this contract.

Particular reference is given to the Plaintiff's responsibility to *"maintain safe and secure

environment for patients, staff, visitors"*, to *"conduct investigations"*, and to *"perform duties as

Police Officer, make arrest, etc."*

188.     Defendants violated this unilateral employment contract through the implication

that conducted activities by the Plaintiff were in violation of this unilateral employment contract.

Actions conducted by the Plaintiff were not in violation of prescribed policy regarding the written reprimand instituted on 5/2/2018 in that ADMH Policy 40-10 sets forth that acceptable uses of electronic mail included *"communicating in a professional manner with parties outside the department for business purposes"*. Other discipline presented similar discrepancies.

189.    Defendant Jackson violated this unilateral contract through threatening the termination of the Plaintiff in the event he expressed or utilized conditions set forth within this contract. Particular reference is given to ADMH Policy 60-40 which defines cause of action for termination includes *"documented involuntary personnel action applied by the appointing authority based on a serious violation(s) or repeated violation(s) of departmental rules or policies, or uncorrected conduct preceded by due process procedure."* The plaintiff has not violated the unilateral employment contract and such threats amount to a violation of provisions set forth in ADMH Policy 70-5 giving rise to improper employee conduct, ADMH Policy 19-12 presenting that the Plaintiff should have been afforded *"reasonable measures to protect"* him from retaliation, and ADMH Policy 70-35 which should have protected the Plaintiff from threats, intimidation, and retaliation. Defendant Rittner additionally violated such contract by not following ADMH Policy 70-35 advising that *"the appropriate investigating person or entity shall present such facts to the district attorney or other prosecuting authority for consideration of initiation of criminal proceedings"* following being advised by the Plaintiff.

190.    Defendant Jackson deliberately and maliciously failed to follow ADMH Policy 60-112 *("Pre-Disciplinary Conference")* setting forth herein:

*"All information presented at the pre-disciplinary conference should be taken into consideration prior to making a decision whether or not to take disciplinary action.*

*In the case of a suspension or termination the burden of proof lies with the appointing authority."*

As Jackson provided insufficient evidence, and in cases, no evidence to support her findings.

191.    Defendants Beshear, Baugher, Hubbard, Jackson, and Anderson deliberately and

capriciously failed to follow ADMH Policy 70-35 *("Threatening or Intimidating a Witness")*

setting forth herein:

*"It shall be a violation of this policy for any employee to communicate or to conspire with another person to communicate in any manner or by any means, any threat, intimidation, retaliation, or harassment against an employee who has reported an incident of abuse/neglect or any other departmental policy violation or violation of any criminal statute or is a witness or a potential witness in a departmental investigation.*

*Threat, intimidation, retaliation, and harassment as used in this policy include, but are not limited to, threats of physical harm, threats of damage to or destruction of property, acts of intimidation, acts of retaliation, or acts of harassment.*

*Any employee who threatens, intimidates, retaliates against, or harasses another employee or conspires with another person to threaten, intimidate, retaliate against or harass an employee who has reported an incident of abuse or neglect or is a witness or potential witness in a departmental investigation shall be subject to termination.*

*Any employee who violates this policy shall be subject to termination. No lesser disciplinary action shall be allowed and mitigating circumstances shall not apply except as set forth in this paragraph."*

Jackson threatened, intimidated, and retaliated against the Plaintiff according these provisions

within the unilateral employment contract. It should be noted that this policy specifically

references *"Title 36-26A-1, Code of Alabama, 1975 ("The State Employees Protection Act",*

*also known as the "whistleblower" act)"*. In the event the Plaintiff was afforded adequate

protections by Beshear and sufficient investigations were conducted by the other Defendants,

Jackson should have been disciplined.

192.    Defendant Beshear, Hubbard, and Long violated this unilateral contract through

ill-response and ill-investigation of the Plaintiff's reports of discrimination, retaliation, hostile

work environment, *inter alia*. Defendants additionally failed to provide whistle-blower

protection according to this contract. Particular reference given to ADMH Policy 19-12 stating

*"The Alabama Department of Mental Health shall take reasonable measures to protect employees from retaliation for reporting abuse, neglect, exploitation, or other mistreatment of individuals in the care of DMH or for reporting other illegal acts by employees, when such reports are made by the employee in good faith"* and ADMH Policy 60-77 advising that *"A hostile work environment or on the job harassment will not be tolerated"*.

193.    Defendant Anderson violated this unilateral contract through imposing discipline outside the scope of established policies and procedures. Anderson additionally violated this contract through imposing limitations on established provisions within such contract. Defendants acted beyond their scope of authority as established by such contract.

194.    Unilateral employment contract violations presented in paragraphs 184-193 are not all-inclusive. Additional matters are set forth in the Plaintiff's responses to adverse employment actions.

195.    As a direct and proximate result of the Defendants' violation of the unilateral employment contract through willful, malicious, and arbitrary actions beyond their scope of authority, the Plaintiff has suffered irreparable harm, including the loss of established rights and liberty interest, entitling him to declaratory and injunctive relief and damages in the individual capacity of the Defendants.

## FIFTEENTH CAUSE OF ACTION

## DEFAMATION – STATE LAW CLAIM

### *Jackson (Individual Capacity)*

196.    The Plaintiff hereby incorporates by reference paragraphs 38, 41, 43, 46, and 47.

197.    Jackson published by means of written discipline (libel) false statements of fact pertaining to and directly relating to the Plaintiff's character, conduct in official duties, and behavior.

198.    Jackson was aware that several statements therein were false and operated with a reckless disregard of whether other statements were false through botched, malicious, and capricious administrative investigations.

199.    Jackson disseminated such statements to a third party.

200.    Jackson operated with actual malice to defame the Plaintiff.

201.    Jackson therefore committed the act of defamation by and through published libel naming and referencing the Plaintiff in false respects and pretenses.

202.    As a direct and proximate result of the Defendant's defamation through willful, malicious, and arbitrary actions, the Plaintiff has suffered irreparable harm, including the loss of established rights and liberty interest, entitling him to injunctive relief and damages in the individual capacity of the Defendant.

## SIXTEENTH CAUSE OF ACTION

## NEGLIGENCE (RETENTION & SUPERVISION) – STATE LAW CLAIM

### *Beshear & Baugher (Individual Capacity)*

203.    The Plaintiff hereby incorporates by reference paragraphs 13 – 81.

204.    At all times material, Jackson and Anderson was employed by ADMH and/or was under Defendant's direct supervision and control when they committed the wrongful and retaliatory acts alleged herein.

205.    At all times material, Defendants' should reasonably have known of Jackson's and Anderson's retaliatory/discriminatory propensities and unfitness for duty, and despite such

knowledge, Defendants failed to provide reasonable supervision of Jackson and Anderson and failed to remove Jackson and Anderson from a position of trust and authority over the Plaintiff.

206.    Jackson and Anderson engaged in the wrongful conduct while acting in the course and scope of his/her employment with ADMH and/or accomplished the retaliatory/discriminatory acts by virtue of job-created authority assigned by Beshear and Baugher.

207.    Beshear and Baugher failed to exercise appropriate and ordinary care in the supervision of Jackson and Anderson in their assignment and failed to prevent the foreseeable misconduct of Jackson and Anderson leading to the harm of the Plaintiff.

208.    Beshear and Baugher failed to exercise appropriate and ordinary care in the decision to retain Jackson although Jackson violated ADMH Policy 70-35 by intimidating the Plaintiff.

209.    Beshear and Baugher were sufficiently notified of the conduct on several occasions to include 10/20/2018, 5/2/2019, and via receipt of EEOC charges. Defendants were additionally unaware of Anderson's ill-law enforcement certification oversight and his unlawful firearms procedures instituted for the department until notification by the Plaintiff.

210.    As a direct result of Defendants' willful and negligent conduct, Plaintiff has suffered the injuries and damages described herein, including the loss of established rights and liberty interest, entitling him to injunctive relief and damages in the individual capacity of the Defendant.

## IRREPARABLE HARM, INJURY & ADVERSITY

211.    The Plaintiff has suffered from anxiety, panic attacks, undue emotional and physical stress, lost wages, lost opportunities for internal promotions and external employment

consideration, diminishment of reputation, and declined life, liberty, and property interest following the Defendant's discrimination, deprivation of rights, and retaliation. Plaintiff additionally has suffered embarrassment among his peers who previously looked highly upon him.

212.    Prior to the Plaintiff's initial report of unlawful/illegal procedures and discrimination, the Plaintiff was promoted within six months of his employment from Police Officer (Mental Health Security Officer I) to Police Lieutenant (Mental Health Security Officer II), received *exceeding standards* performance appraisals, received a signed recommendation from senior officials, and was acknowledged for his dedication to the advancement of the Police Services Division. While the EEOC conducts an indebt investigation into remaining charges and during the progress of this suit, it is within this Court's power and jurisdiction to provide a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Based upon the vast information available in this Complaint and in evidence, established pre-text by circumstantial evidence (*temporal proximity*), and written documentation violating the Plaintiff's established rights, it is expected that the Plaintiff will gain *success on the merits*. In the event a preliminary injunction is not ordered, the Plaintiff will continue to sustain *irreparable injury* by and through mental anguish, anxiety, undue stress, defamation, violations of civil rights, and will be declined several external/internal employment considerations based upon an increasingly unfavorable ADMH personnel file(s). As matters concerning discriminatory retaliation involve adverse employment actions, such as mentioned in this Complaint, these actions unquestionably dissuade a reasonable employee from complaining of discrimination which presents a *harm to other parties* who should enjoy and are entitled to the same rights. At this point, the injury far *outweighs the potential harm of an injunction* at this time. The Plaintiff anticipates the

Defendants shall terminate employment in the very near future as retaliation for the filing of

EEOC charges, filing of internal/external complaints, and the filing of this Complaint through

additional unlawful means. Finally, all matters of illegal conduct by governmental entities and

their agents, civil rights violations, discrimination, and retaliation are matters of *public concern*

as they violate established rights. This petition/application for Preliminary Injunction *serves the*

*public interest* in presenting an opportunity of temporary relief when the totality of the

circumstances warrants immediate action in unlawful employment practice as well as

discriminatory and retaliatory matters.

213.    Matters of arbitrary, capricious, and unlawful discipline imposed as referenced in

this Complaint have resulted in a deprivation of the Plaintiff's life, liberty, and property interest

and would *dissuade a reasonable worker from making or supporting a charge of discrimination*

or reporting unlawful conduct.

214.    As the Plaintiff has actively sought alternate employment, including with federal

agencies who conduct extensive background investigations (Federal Clearance investigations)

while acquiring and reviewing the Plaintiff's current employment personnel file, his employment

has become unfavorable to external employment agencies/organizations. As the Plaintiff has an

ultimate goal to obtain federal employment, matters in this Complaint present and have caused a

substantial declination of life, liberty, and property interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following prayer for relief:

### *Alabama Department of Mental Health and Mental Retardation*

A.    Enjoin Defendant ADMH from (<u>preliminarily</u> and retrospectively):

a. subjecting employees to discrimination and disparate treatment based upon race, color, and/or national origin; and

b. retaliating against employees who engage in activity protected under Title VII;

B.     Order Defendant ADMH to develop and implement appropriate and effective measures designed to prevent discrimination and retaliation, including but not limited to policies, mandatory training for employees and managers, and a grievance procedure encompassing all forms of written discipline which effect performance appraisals (life, liberty, and property interest);

C.     Order Defendant ADMH to develop appropriate and effective measures to receive complaints of discrimination, harassment, and retaliation as well as a sufficient process for investigating such complaints through an established departmental division (supplemental to Director of Human Resources);

D.     Order uncompetitive promotion of the Plaintiff to a position comparable to the positions he was denied promotion. Such promotion should at least be of Pay Grade 76 ($44,640.00 - $67,660.80) under ADMH's salary scale. Comparable positions known include Mental Health Special Agent I and Mental Health Security Officer IV (Major). Such relief may be omitted if satisfied under other provisions herein;

E.     Award compensatory damages in excess of **$150,000** to the Plaintiff to fully compensate him for injuries caused by Defendant ADMH's retaliatory conduct, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991. ADMH has employees in excess of 500;

F.      Award Plaintiff back-wages or back-pay pursuant to Title VII. Such relief may be omitted if satisfied under other provisions herein;

G.      Award such additional relief as justice may require in relation to the Plaintiff's Title VII actions together with the Plaintiff's court costs;

*Sovereign immunity abrogated by Congress pursuant to 1972 amendments to Title VII; authority established under § 5 of the Fourteenth Amendment.*

### *Defendants Beshear, Baugher, Hubbard, Long, Jackson, Anderson & Rittner*

H.      Enjoin Defendants from (preliminarily and permanently):

   a.   subjecting employees to discrimination and disparate treatment based upon race, color, and/or national origin;

   b.   retaliating against employees who engage in activity protected under the First Amendment, 42 U.S.C. § 1981, Alabama Code § 36-26A-3, Title VII, and other statutes applicable to this Complaint; and

   c.   violating the presented statutes, laws, and contract referenced herein;

I.      Enjoin Defendants' speech, privacy, and due process restrictions, obstructions, retaliation, limitations, and its application to Plaintiff's rights set forth in this Complaint;

J.      Declaratory judgment ascertaining a civilian supervisor's right and/or scope of authority to circumvent/mitigate law enforcement officer action/discretion under the State of Alabama pursuant to the Tenth Amendment of the United States Constitution and/or other statutes governing such acts;

K.      Order Beshear, Hubbard, Jackson, and Long to remove and/or remand record (written, recorded, and/or physical) of disciplinary matters from the Plaintiff's personnel files or

other files which may affect the Plaintiff's life, liberty, or property interest in relation to this Complaint;

L.      Order Defendant Beshear to uncompetitively promote the Plaintiff to a position comparable to the positions he was denied promotion. Such promotion should at least be of Pay Grade 76 ($44,640.00 - $67,660.80) under ADMH's salary scale. Comparable positions known include Mental Health Special Agent I and Mental Health Security Officer IV (Major). Beshear, according to applicable law, has such authority and is ultimately responsible for the actions of the Human Resources department of ADMH. Such relief may be omitted if satisfied under other provisions in paragraph D;

M.      Order Defendant Jackson to remove records including libelous statements from the Plaintiff's personnel file(s) in such event that such charges cannot be proved pursuant to Alabama Code § 6-5-187. Such relief does not impose a prior restraint on the Defendant's speech based upon public official First Amendment protections. Such relief may coincide with other relief requested in this Complaint. Alternate relief coinciding with such order may omit provisions of this request;

N.      Preliminarily and permanently, enjoin Defendants in the verbal and physical dissemination of record of discipline/adverse action/negative connotations in relation to this Complaint to parties seeking reference or recommendation;

O.      Award Plaintiff back-wages or back-pay pursuant to Alabama Code § 36-26A-5. Such relief may be omitted if satisfied under other provisions herein;

P.      Award Plaintiff compensatory and/or punitive damages against Defendant Jackson in her individual capacity in excess of **$85,000**, and whatsoever other damages the Court deems just and equitable;

Q. Award Plaintiff compensatory and/or punitive damages against Defendants Baugher, Hubbard, and Long, severally, and in their individual capacity, in an amount in excess of **$30,000**, and whatsoever other damages the Court deems just and equitable;

R. Award Plaintiff compensatory and punitive damages against Defendants Anderson and Rittner, in their individual capacity, in an amount in excess of **$25,000**, and whatsoever other damages the Court deems just and equitable;

S. Grant such other and/or further relief as this Court should find just and proper. *Injunctions, in part, available via Ex Parte Young exception to Sovereign Immunity. Civil liability in individual capacities pursuant to Alabama Code § 36-1-12(d) Sovereign Immunity exception.*

## JURY DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Seventh Amendment of the United States Constitution, and herein such other statutes which allow such demand.

## CERTIFICATION & CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

1) *Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;*

2) *Is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law;*

3) *The factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and*

4) *The complaint otherwise complies with the requirements of Rule 11.*

The Plaintiff, Derrick James Williamson, Jr., agrees to provide the Clerk's Office with any changes to address where case-related papers may be served. The Plaintiff understands that his failure to keep a current address on file with the Clerk's Office may result in the dismissal of this case.

The Plaintiff, Derrick James Williamson, Jr., additionally requests **electronic service** and waives the right to personal service and service by first-class mail pursuant to Rule 5(b)(2) of the Federal Rules of Civil Procedure, except with regard to service of a summons and complaint.

## HTML FORMAT REQUESTED

**Date:** Tuesday, May 3, 2019

Derrick James Williamson, Jr., Pro-Se
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405
**Cellphone:** (205) 422-9664
**Email:** aeonpctech@live.com