FILED

2019 Aug-09  PM 12:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

**EXHIBIT 1**

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | |
|---|---|
| | FEPA |
| X | EEOC |

**CHARGE NUMBER**

420·2018·02230

and EEOC

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Derrick Williamson, Jr. | (205) 422-9664 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 8816 Old Greensboro Road Apt. 20104 | | 1991 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Department of Mental Health | Over 500 | (205) 462-4500 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1301 Jack Warner Parkway Northeast Tusc. AL 35404-1060 | | Tusc. |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] AGE
[X] RETALIATION  [ ] NATIONAL ORIGIN  [ ] DISABILITY  [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)
May 2018

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am an African American man who began working at Taylor Hardin Secure Medical Facility on 11/16/16. I am a Mental Health Security Officer II, and my working title is Police Lt. My direct supervisor is Captain Robert Anderson, who is the Acting Chief. Mr Anderson issued me a non legitimate written reprimand on 5/2/18 because of my race. I have challenged this reprimand to no avail. In the last 6 months I complained that I was being racially discriminated against to the Chief and to his boss, Director Annie Jackson, who is African American. I applied for a promotion to a Special Agent in May 2018, but this discriminatory write up served to block me from advancing. A less qualified white male named Kevin McDaniel was selected for the job, and I understood he did not meet the minimum qualifications for that job. In addition I have been discriminated against in wages as the white officers received higher raises than me and other African American employees. In summary, I have been discriminated against because of my race and retaliated against for complaining of discrimination. The discrimination and retaliation has been in the form of wages, disciplines, evaluations, selection decisions (promotions) and other terms, conditions and privileges of employment.

AUG 17 2018

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 8/17/18 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |
| Date   Charging Party (Signature) | (Day, month, and year) |

# EXHIBIT 2

# RE: EEOC Discrimination Charge - Courtesy Notification

### Jackson, Annie

Fri 8/17/2018 3:09 PM

To: Williamson, Derrick <Derrick.Williamson@Hardin.mh.alabama.gov>;

Cc: Long, Joe <Joe.Long@hardin.mh.alabama.gov>; Anderson, Bobby <Bobby.Anderson@hardin.mh.alabama.gov>; Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>;

Appreciate the courtesy notice

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
**Taylor Hardin Secure Medical Facility**
**Tuscaloosa, Alabama  35404**
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**From:** Williamson, Derrick
**Sent:** Friday, August 17, 2018 2:31 PM
**To:** Jackson, Annie
**Cc:** Long, Joe; Anderson, Bobby; Hubbard, Lynn
**Subject:** EEOC Discrimination Charge - Courtesy Notification

Good afternoon,

As a professional courtesy, I am advising of the filing of an **Equal Employment Opportunity Commission (EEOC) charge filed for discrimination as of 8/17/2018**.
As I've made several complaints within the facility and to Central Office Human Resources, I will not reiterate issues of concern in this notification.
Responses in reference to certain issues are still pending reception from Central Office and are well beyond an acceptable time frame for a response (100 days+).
I attempted to resolve issues within the department but concerns are not being properly addressed.

Thank you,





**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone**: (205) 792-2089

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.
You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

# EXHIBIT 3

# EXHIBIT 3

EEOC Action Pending

 Williamson  Derrick

Good morning,

Be formally advised, by the reception of this email, that Equal Employment Opportunity Commission (EEOC) inquiry/charge 420-2018-02230 is in progress for several concerns of discrimination. Please forward to individuals needing notification of this information.

Thank you,

**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSO/I*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa  Alabama  35404-1060
**Email:** derrick.williamson@mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone** (205) 752-2089

*Blessed are the peacemakers; for they shall be called the children of God. - Matthew 5:9*

# EXHIBIT 4

**EXHIBIT 4**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**RSA UNION BUILDING**

100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

September 19, 2018

U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street
Birmingham, Alabama 35205

### RE: **EEOC Charge No. 420-2018-02230 - Derrick Williamson, Jr.**

Dear Sir/Madam:

In response to the request for a statement of our position with respect to the allegations contained in the above-referenced charge, the Alabama Department of Mental Health (hereinafter referred to as the "the Department") denies the Charging Party's allegations of discrimination and submits the following response:

### CHARGE OF DISCRIMINATION

*"I am an African American man who began working at Taylor Hardin Secure Medical Facility on 11/16/16. I am a Mental Health Security Officer II, and my working title is Police Lt. My direct supervisor is Captain Robert Anderson, who is the Acting Chief. Mr. Anderson issued me a non legitimate written reprimand on 5/2/18 because of my race. I have challenged this reprimand to no avail. In the last 6 months I complained that I was being racially discriminated against to the Chief and to his boss, Director Annie Jackson, who is African American. I applied for a promotion to a Special Agent in May 2018, but this discriminatory write up served to block me from advancing. A less qualified white male named Kevin McDaniel was selected for the job, and I understood he did not meet the minimum qualifications for that job. In addition I have been discriminated against in wages as the white officers received higher raises than me and other African American employees. In summary, I have been discriminated against because of my race and retaliated against for complaining of discrimination. The discrimination and retaliation has been in form of wages, disciplines, evaluations, selection decisions (promotions) and other terms, conditions and privileges of employment."[1]*

### ORGANIZATION DESCRIPTION

The Department is an Alabama state agency that provides mental illness, intellectual disability, and substance abuse services throughout Alabama, which includes operating three residential treatment hospital facilities for individuals with mental illness. The Department is headed by a Commissioner appointed by the Governor. The Commissioner of the Department of

---

[1] The Charging Party's statements are in italics.

1

**1**

Mental Health is Lynn Beshear. The Commissioner in turn appoints Associate Commissioners to head the various divisions of the Department. The Associate Commissioner for the Division of Mental Health and Substance Abuse is head of the Department's three state hospitals. The Associate Commissioner for the Division of Mental Health and Substance Abuse is Diane Baugher.

One of the Department's three state hospital facilities is the Taylor Hardin Secure Medical Facility (hereinafter "THSMF"), which is a psychiatric hospital facility of the Department and was established in 1981. Located at 1301 Jack Warner Parkway, NE, Tuscaloosa, Alabama 35404, THSMF is responsible for providing comprehensive psychiatric evaluation/treatment to criminal court committed patients from throughout Alabama and forensic/psychological evaluations to Alabama Circuit Courts. Most of the patients at THSMF are committed to the Department by Circuit Courts in connection with a criminal case. It is the only maximum security forensic psychiatric state hospital facility operated by the Department. The facility contains 140 patient beds. Ms. Annie Jackson is the Acting Facility Director at THSMF and she directly supervises all departments at THMSF.

THSMF has a Police Department for protection of the facility and its patients. (EXHIBIT A). The Police Department is supervised by a Police Chief. The Police Chief is supervised by the Facility Director. (EXHIBIT B). The Facility Director is supervised by the Associate Commissioner for Mental Health and Substance Abuse.

## RESPONSE TO SPECIFIC CHARGES

*Charge:* "I am an African American man who began working at Taylor Hardin Secure Medical Facility on 11/16/16. I am a Mental Health Security Officer II, and my working title it Police Lt. My direct supervisor is Captain Robert Anderson, who is the Acting Chief."

*Response:* It is agreed that Williamson is an African American male who is a Mental Health Security Officer II at THSMF. He was hired at THSMF on June 1, 2017. (EXHIBIT C). His hiring as a Mental Health Security Office II was in fact a promotion from his previous position as Mental Health Security Officer I at Bryce Hospital. (EXHIBIT C). He was hired as a Mental Health Security Officer I at Bryce Hospital on or about November 16, 2016. (EXHIBIT D). It is agreed that his direct supervisor at all material times was Robert Anderson, an African American male. Robert Anderson's direct supervisor was Facility Director Annie Jackson, an African American female.

*Charge:* "Mr. Anderson issued me a non-legitimate written reprimand on 5/2/18 because of my race. I have challenged this reprimand to no avail."

*Response:* The reprimand issued to Williamson on May 2, 2018 was for a violation of Department Policy 15-1. (EXHIBIT E). Williamson had previously suggested proposed legislation for the Department internally at THSMF. He was instructed that any proposed legislation had to be vetted through the chain of command at THSMF pursuant to Policy15-1. (EXHIBIT E). When Williamson perceived the process was not moving fast enough and that the chain of command was not cooperating, he then contacted a representative of the Alabama State Employees Association

2

**2**

**EXHIBIT 4**

(ASEA) for assistance with promoting the proposed legislation. This was a clear violation of Policy 15-1. (EXHIBIT F). Police 15-1 applies equally to all Department employees. (EXHIBIT F). Williamson was warned not to go outside the process provided under Policy 15-1 and chose to do so anyway. This was also a violation of Policy 70-5 forbidding insubordination. (EXHIBIT G).

Policy 15-1 clearly establishes that priorities for proposed legislation on behalf of the Department are ultimately the prerogative of the Commissioner and have to be vetted through the Commissioner. Williamson failed and refused to do so.

***Charge:*** *"In the last 6 months I have complained that I was being racially discriminated against to the Chief and to his boss, Director Annie Jackson, who is African American."*

***Response:*** Williamson has complained to Robert Anderson and Annie Jackson that he was being discriminated on the basis of his race for complaining about a memo from Anderson to the entire THSMF Police Department. (EXHIBIT H). The memo instructed all police department employees not to enter the secure area of the facility prior to their assigned shift. (EXHIBIT H). This memo was issued in response to complaints that officers arriving early to their shift in the secure area was disrupting police operations. (EXHIBIT H). Williamson apparently interpreted this directive as targeting him individually even though it was addressed to the entire police force. He further interpreted this directive as a creating a "hostile work environment" because it altered his previous habit of arriving well in advance of his shift. (EXHIBIT H). Williamson complained about this memo to the Human Resources Director at the Department. (EXHIBIT H). The Director's response correctly pointed out that this memo from Anderson was issued for a sound business reason to the entire police force and in no way targeted Williamson due to his race. (EXHIBIT H).

***Charge:*** *"I applied for a promotion to Special Agent in May 2018, but this discriminatory write up served to block me from advancing. A less qualified white male named Kevin McDaniel was selected for the job, and I understood he did not meet the minimum qualifications for that job."*

***Response:*** The Department posted an open position for Mental Health Special Agent I on or about March 9, 2018. (EXHIBIT I). Williamson along with others applied for this position. Only applicants who met the minimum qualifications were interviewed for the position. (EXHIBIT I). The qualified applicants were interviewed by a diverse interview panel in an open and competitive hiring process. (EXHIBIT I). Each applicant received a score from the interview panel based upon each panel member's assessment of the applicant. (EXHIBIT I). Williamson received the lowest score from the interview panel and was not selected as a finalist. (EXHIBIT I). His 5/2/2018 reprimand was not a factor in the hiring process because the interview panel did not have access to his personnel file so they had no knowledge of any reprimands received by Williamson or any other applicant. (EXHIBIT I). Therefore, the 5/2/18 reprimand could not and did not impact his hiring as a Mental Health Special Agent I.

**3**

**EXHIBIT 4**

*Charge:* *"In addition I have been discriminated against in wages as the white officers have received higher raises than me and other African American employees."*

*Response:* The Department asserts that its employees are not weighed against each other with regard to awarding annual raises but rather it bases annual raises on individual performance in conjunction with the assigned job duties. Williamson was originally hired by the Department as a Mental Health Security Officer I at Bryce Hospital in 2016. He was given a raise after his 6 month probationary period ended. He was later hired at his current position as Mental Health Police Officer II at THSMF in 2017. This was a promotion to a higher job classification which also included a raise in pay. Williamson has failed to demonstrate that he has been denied raises on any basis, much less a discriminatory basis. He has presented no evidence that other officers, regardless of race, have been given higher raises. This is a broad, conclusory allegation with no supporting evidence provided.

*Charge:* *"In summary, I have been discriminated against because of my race and retaliated against for complaining of discrimination. The discrimination and retaliation has been in the form of wages, disciplines, evaluations, selection decisions (promotions) and other terms, conditions and privileges of employment."*

*Response:* This statement is essentially a summary and restatement of the Charging Party's previous allegations. The Department has responded appropriately above. The Department restates its denial of any allegations of discrimination.

## CONCLUSION

In conclusion, the Department denies that it or any of its employees has discriminated or retaliated against Derrick Williamson, Jr. on the basis of race. Any and all actions taken toward Williamson were conducted in accordance with Departmental policies and were applied in a non-discriminatory manner.

Should you have any further questions, please feel free to contact me.

Sincerely,

Edward C. Hixon

Edward C. Hixon
Assistant Attorney General

4

**4**

**EXHIBIT 4**

# EXHIBIT A

**EXHIBIT 4**

**TAYLOR HARDIN SECURE MEDICAL FACILITY**

NUMBER:     THSMF Policy 170-15

SUBJECT:    Security/Police
TITLE:      Police Officers, Authority of THSMF Police Services

EFFECTIVE:   01-26-84     REVIEWED:              CHANGED:   03-15-18

RESPONSIBLE
OFFICE:            Director of Police Services

APPROVED: _Anne Johnson, Facility Director_

## I.  POLICY STATEMENT:

    Taylor Hardin Secure Medical Facility (THSMF) Police Officers shall have the authority to arrest intruders, trespassers, and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals.  Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings, or lands or arrest them and may, without warrant arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant.  Such police officer shall have authority to summon a posse comitatus.

(Reference: Section 22-50-21, Code of Alabama, 1975)

6

EXHIBIT 4

# EXHIBIT B

7

## TAYLOR HARDIN SECURE MEDICAL FACILITY

NUMBER:   THSMF Supplement to ADMH Policy 1-5

SUBJECT:   Organization and Mission
TITLE:     Organizational Chart

EFFECTIVE:   01-26-84   REVIEWED:                    CHANGED:   06-13-18

RESPONSIBLE
OFFICE:              Facility Director

APPROVED: _____

## I. POLICY STATEMENT:

Information about the structure of the organization of the Alabama Department of Mental Health (ADMH) and the Taylor Hardin Secure Medical Facility (THSMF) shall be available to all employees.

The organizational chart of THSMF is attached to this policy.

**8**

# Taylor Hardin Secure Medical Facility



Annie D. Jackson
Facility Director

Diane Baugher, Associate Commissioner for
Mental Health and Substance Abuse Services

November 16, 2017

Att #1 to THSMF Supplement to DMH Policy 1-5

**EXHIBIT 4**

9

**EXHIBIT 4**

# EXHIBIT C

**10**

**EXHIBIT 4**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-556-7060
WWW.MH.ALABAMA.GOV



JAMES V. PERDUE
COMMISSIONER

ANNIE D. JACKSON,
MSW, LCSW, MPA, CPM
ACTING
FACILITY DIRECTOR

May 5, 2017

Derrick James Williamson, Jr.
925 17th Avenue East, Apt. 209
Tuscaloosa, AL 35404

RE:  Promotion - Exempt Classification
Security Officer II (S3000)
Announcement #17-03

Dear Mr. Williamson:

I am pleased to acknowledge your acceptance of our offer of promotion from your current position in the Mental Health Security Officer I (S2000) classification at Bryce Hospital to a position in the Mental Security Officer II (S3000) classification at the Taylor Secure Medical Facility effective June 1, 2017. Understand this appointment is contingent on our verification of a satisfactory pre-employment drug screen and criminal background check in accordance with Department of Mental Health policy and verification you currently meet all necessary special requirements as specified on the job announcement for this position.

Your salary in the Security Officer I classification immediately prior to the promotion will be at $1,447.30 semi-monthly; $34,735.20 annually; (range 67 / step 06). Upon promotion to the Security Officer II classification you will receive a 2-step promotional increase, which will bring your semi-monthly salary to $1,520.40 semi-monthly; $36,489.60 annually; (range 71 / step 04). Because state payroll is processed one pay period in arears your increase will first appear on your semi-monthly payroll beginning June 30, 2017 for the pay period ending June 15, 2017. As a result of the increase your annual raise month will change to June. Should you qualify for a probationary increase at the completion of your working test period your annual raise month will again be adjusted accordingly.

You will be required to satisfactorily complete a working test period to determine your ability and/or willingness to perform the duties and responsibilities of the Mental Health Security Officer II classification. You will be eligible for a working test increase at the satisfactory completion of your working test period based on your working test performance appraisal. The working test period will cover your first six (6) months of employment, but may be extended in three (3) month increments up to one year if necessary but in no case can the working test period be extended beyond one (1) year in total duration.

**EXHIBIT 4**

Derrick James Williamson
May 5, 2017

Failure to demonstrate satisfactory completion of your working test period, which includes failure to satisfactorily complete designated training; failure to acquire job specific competencies, related knowledge, skills and abilities; inability / unwillingness to perform assigned job duties satisfactorily and/or any other reason that deems you unsuitable for continued service in this classification, will result in demotion or termination of employment.

If you should have a question or need additional information, please do not hesitate to call.

Sincerely,

Annie D. Jackson, MSW, LCSW, MPA, CPM
Interim Facility Director

ADJ/mm

c:     Personnel File

**12**

**EXHIBIT 4**

# EXHIBIT D

**13**

**EXHIBIT 4**





STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**BRYCE HOSPITAL**
1651 RUBY TYLER PARKWAY
TUSCALOOSA, ALABAMA 35404
205-507-8000
WWW.MH.ALABAMA.GOV

ROBERT BENTLEY
GOVERNOR

JAMES V. PERDUE
COMMISSIONER

SHELIA T. PENN
FACILITY DIRECTOR

November 14, 2016

Mr. Derrick Williamson
925 17th Avenue East Apt 209
Tuscaloosa, AL 35404

Dear Williamson:

This letter is to acknowledge your acceptance of our **conditional** offer of employment as a M. H. Security Officer I. This offer is contingent upon receipt of an **official transcript** from the university from which you received your degree and successful completion of a pre-employment physical (if applicable), drug test, security and reference checks.

**Please report to the new campus of Bryce Hospital at 8:00 a.m. on Wednesday, November 16, 2016,** and sign in as a visitor at the Bryce Hospital Police Department, which is located under the Bryce Hospital sign in the main circle. You will then be escorted to Staff Development. To assist you in completing the forms necessary to begin your employment, please bring your **Social Security card** and be prepared to designate at least two beneficiaries for your retirement benefits. You will also be asked to **provide the names, addresses, birth dates and social security numbers of these beneficiaries.**

Your semi-monthly rate of pay will be $1,412.60, which is an annual salary of $33,902.40. The State of Alabama's payroll system operates one pay period in arrears. Therefore, you will receive your **first paycheck on Friday, December 16, 2016, for the time worked during the period of November 16, 2016, through November 30, 2016**.

The Alabama Department of Mental Health (ADMH) contributes $825 toward health insurance coverage for each employee. Your monthly premiums for individual and family coverage will be automatically payroll deducted. Effective January 1, 2016, the employee's monthly premium for individual coverage is $115. This amount can be reduced by earning the non-tobacco user's discount of $60 and the Wellness discount of $25, which will result in a cost to you of $30 for individual coverage. Additional information about these discounts will be provided during orientation.

You will also be given the opportunity to enroll your eligible dependents under a health insurance plan. The rate to cover dependents if you do not include a spouse is $305 ($115 for yourself and $190 for your dependents) per month, regardless of the number of dependents you enroll. This rate can be reduced to $220 if you earn the discounts for a non-tobacco user and the Wellness program. The rate to cover dependents if you include a spouse is $440 ($115 for yourself and $325 for your dependents, including a spouse) per month. This rate can be reduced to $305 as follows: (1) If your spouse is eligible for the spousal surcharge waiver, this amount can be reduced by $50; (2) If your spouse earns the non-tobacco user's discount, the amount is reduced

**14**

**EXHIBIT 4**

Mr. Derrick Williamson
Page 2
November 14, 2016

by $60; and (3) If your spouse earns the Wellness discount, the amount is reduced by $25. This rate can be further reduced to $220 if you also earn the discounts for a non-tobacco user and the Wellness program.

Dental coverage will be offered as a separate plan with a monthly premium of $8 for single and $15 for family coverage.

Should you choose to provide insurance coverage for your dependents, this amount will be automatically payroll deducted from the second check you receive each month. The State Employees' Insurance Board (SEIB) requires documentation to verify the status of all dependents included in family insurance coverage. Necessary documentation includes: (1) marriage certificate, (2) birth certificate, (3) adoption certificate, or (4) guardian order of appointment, and (5) social security cards for all dependents. **Please bring the appropriate documents with you on your first day of employment if you desire dependent coverage.**

In accordance with the Immigration and Control Act of 1986, it is our policy to hire only United States citizens and aliens who are lawfully authorized to work in the United States. On the date of your appointment, you will be required to complete a form developed by the U. S. Citizenship and Immigration Services (USCIS), which is operated by the Department of Homeland Security (DHS). In order to verify your employment eligibility, appropriate documentation must be provided, such as a U. S. passport, Alien Registration Card (with photograph), **OR** a valid State issued driver's license, U. S. Military Card, **AND** a Social Security card, birth certificate, or employment authorization document issued by the DHS.

In accordance with departmental personnel regulations, you will be required to serve a minimum of six (6) months in a working test period. You will participate in a new employee orientation session that is designed to familiarize you with policies and procedures and the services we provide.

We welcome your association with Bryce Hospital and look forward to your arrival. If you have any questions, please contact me in the Human Resources Department at (205) 507-8200 before the start of work.

Sincerely,

*Deborah W. Marks*

Deborah W. Marks
Director of Human Resources

/dwm

pc:    Capt. Noah Reaves, BHPD
        Personnel File

**15**

EXHIBIT 4

# EXHIBIT E

**EXHIBIT 4**

## THSMF POLICE SERVICES

### COUNSELLING FORM

| DATE | 03/13/2018 | SHIFT | 02pm-10pm |
|------|-----------|-------|-----------|

### TYPE OF COUNSELLING BEING ISSUED

| LETTER OF INFORMATION EDUCATION | | VERBAL | | WRITTEN WARNING | | WRITTEN REPRIMAND | X |
|---|---|---|---|---|---|---|---|

| NAME OF OFFICER RECEIVING COUNSELLING | Derrick Williamson, Lieutenant |
|---|---|

### REASON FOR COUNSELLING

Violation DMH Policy 15-1 "Organizational Planning" #2 "b" states "The proposed legislation or request shall be submitted to the appropriate facility committee and the facility director for consideration". On serval occasions you have been instructed not to send anything to an outside agency that has not been reviewed and approved by the Director of Police Services and Facility Director. On February 20, 2018, 06:37pm, Lt. Williamson, you sent a "State Mental Health Police Officer Bill-8.31.17pdf" to Jason_Manasco@asea.org which violated the above policy. Lt. Williamson, you are not to send any information pertaining to the Department of Mental Health, Taylor Hardin Secure Medical Facility to any other agency, personal without the approval of the Director of Police Services and/or Facility Director.

### LIST CORRECTIVE ACTIONS TO BE TAKEN BY SUPERVISOR

Lt. Williamson is to submit all information related to Department of Mental Health and/or Taylor Hardin Secure Medical Facility for review and approval by the Director of Police Services and/or Facility Director.

| SIGNATURE OF OFFICER | _Refused to Sign DW_ | DATE | 5/2/2018 |
|---|---|---|---|

| SIGNATURE OF SUPERVISOR | _Bobby Anderson_ | DATE | 3/13/18 |
|---|---|---|---|

| PERSONNEL OFFICE | | DATE | |
|---|---|---|---|

Officer given Original

**Copies given to**

Personnel Office

Director Police

Supervisor File

**17**

EXHIBIT 4

# EXHIBIT F

**EXHIBIT 4**

# State of Alabama
# Department of Mental Health

NUMBER:     15-1

SUBJECT:    Organizational Planning
TITLE:      Legislative Review and Submission

EFFECTIVE: 8/11/92          REVIEWED: 12/3/08          CHANGED: 01/16/16

RESPONSIBLE OFFICE:     Legislative Liaison

APPROVED: _James V Hale_

## I.    POLICY:

The Department of Mental Health will propose needed legislation and will review, track, and respond to legislative bills introduced during regular and special sessions which are of interest or concern to the department, recipients and stakeholders.

## II.    STANDARDS:

1.    Providing responses or comments concerning proposed or introduced legislation:

    a.    The Legislative Liaison will monitor, analyze, track, and report on legislation and budget initiatives that impact or could impact the Department of Mental Health and keep appropriate internal stakeholders apprised of any related bill activity, movement or amendments.

        i.    During the legislative sessions, a Departmental Legislative Tracking Report will be distributed periodically on the status of bills of interest (House and Senate).

        ii.    Staff receiving this report will be encouraged to respond to the Legislative Liaison concerning bills relative to professional interest, or other areas of concern that impact the day to day operations or service delivery system.

    b.    The Legislative Liaison will maintain a library of all legislative bills (House and Senate) in which the Department has an interest and which are being tracked or reported.

**19**

**EXHIBIT 4**

DMH Policy 15-1

      i.     The Legislative Liaison will provide copies of legislative bills, upon request, to appropriate parties for review.

      ii.    Since the time allotted for response is frequently limited, proposed responses should be sent to the Legislative Liaison for coordination and action by the Commissioner. Each Division may establish an internal protocol concerning distribution of information copies of proposed responses.

2.    To initiate or submit Legislation:

    a.    Any employee may submit proposed legislation or a request that legislation be drafted for department consideration.

    b.    The proposed legislation or request shall be submitted to the appropriate facility committee and the facility director for consideration. Central Office employees shall submit to the appropriate committee or Office Director.

    c.    The receiving director will forward the proposed legislation, with comments to the appropriate Associate Commissioner or return it to the originator.

    d.    The Associate Commissioner or designee will review and comment on the proposed legislation and then forward it for further review to the other Associate Commissioners, Division committees, the Commissioner, and other staff with the expertise to be of assistance in review of the proposal. A copy of the proposed legislation will be submitted by the Legislative Liaison to the Management Steering Committee for review and comment.

    e.    The Associate Commissioner will place on the agenda for discussion and approval at the Commissioner's weekly staff meeting.

    f.    If the proposed legislation has been approved by the Commissioner, it will be submitted to the Governor's Office for review and comment.

3.    All proposed legislation will be approved for submission to the Legislature by the Commissioner and submitted to the Legislature by the Legislative Liaison.

**20**

EXHIBIT 4

# EXHIBIT G

**EXHIBIT 4**

# State of Alabama
# Department of Mental Health

NUMBER:      70-5

SUBJECT:     Employee Conduct and Performance
TITLE:       Employee Conduct and Accountability

EFFECTIVE: 4/4/88          REVIEWED: 12/4/14          CHANGED: 7/16/12

RESPONSIBLE OFFICE:     Administration/Personnel

APPLICABLE TO:          All Divisions

APPROVED:

## I.    POLICY:

All Department employees will adhere to accepted standards of professional and personal conduct. Violation of these standards may result in disciplinary action.

## II.    STANDARDS:

1.    The listing of violations below is not meant to be all inclusive and does not imply that discipline may not be imposed for other sufficient reasons. Unacceptable conduct is defined as, but not limited to, the following:

    a.    Client abuse, mistreatment, neglect or exploitation

    b.    Reporting to work while incapacitated or intoxicated from the use of alcohol or drugs

    c.    Use or possession of alcohol or unauthorized possession of drugs or drug paraphernalia at any time on any Department property

    d.    Sleeping on duty

    e.    Persistent absenteeism

    f.    Persistent tardiness

    g.    Un-excused absence

    h.    Insubordination

    i.    Abandonment of job

    j.    Commission or conviction of a felony, or a misdemeanor involving moral turpitude

    k.    Carrying or use of firearm, or any lethal weapon on Department property at any time by any person who is not a sworn law

**22**

enforcement officer or who does not have signed written permission to hunt on DMH lands

l.   Theft of State, employee, visitors or client property

m.   Gambling on Department property

n.   Fighting on Department property

o.   Failure to abide by established standards of dress and grooming

p.   Failure to abide by traffic rules and regulations

q.   Leaving work station without permission

r.   Disruptive or disorderly conduct of any kind

s.   Violation of safety rules

t.   Inattention to job duties

u.   Sexual harassment

v.   Abuse and/or unauthorized use of Facility vehicles, machinery, or equipment

x.   Participation in unauthorized activity or solicitation on department property

y.   Unauthorized use of telephone equipment

z.   Unauthorized use of bulletin boards

aa.   Alteration and/or falsification of Department and/or facility documents/records

bb.   Failure to perform the job properly

cc.   Use of abusive or threatening language

dd.   Violation of specific Department/Division/Facility rules, regulations, and policies

ee.   Violation of Department Policy on Drug Free Workplace

ff.   Violation of Department policies on Investigations and/or Employee Cooperation in Investigations

gg.   Violation of client confidentiality, including unauthorized disclosure of protected health information (PHI).

2.   All Department employees are expected to cooperate with and to show respect for their co-workers at all times. Cooperation with co-workers is defined as the extent to which an employee works with and does not hinder co-workers to ensure that work unit goals and directives are accomplished. Failure to do so may result in disciplinary action.

## III.   REFERENCES:

1.   Health Insurance Portability and Accountability Act of 1996

2.   U.S. Department of Health & Human Services security and privacy regulations

3.   DMH Policies 19-10, 19-5, 70-20, 70-25, 60-42, 60-46, 60-44, 70-30, 60-77, 90-5, 185-20, 105-5, 80-10, 80-20.

**EXHIBIT 4**

# EXHIBIT H

**EXHIBIT 4**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
**RSA UNION BUILDING**
100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

June 22, 2018

Derrick Williamson, Jr.
Mental Health Security Officer II
Taylor Hardin Secure Medical Facility

Dear Officer Williamson:

I have reviewed your complaint of June 19, 2018, regarding allegations of a hostile work environment created by MH Security Officer III, Bobby Anderson, who is the director of security services at Taylor Hardin Secure Medical. In regards to a memo issued to security services staff on June 19, you state: "My African American race, at the time of this complaint, is the one of two reasons which could pertain to this directive." ADMH Policy 60-77, On the Job Harassment/Hostile Work Environment, specifically states, "in order to validate the complaint under this policy it must be established that the offending party brought into issue race, color, religion, gender, national origin, age, disability, veteran status, or sexual orientation." Simply being a member of a different race than that of your supervisor does not meet that standard.

The memo which precipitated this complaint was issued to all officers on all shifts and did not single out any particular race. According to Officer Anderson, (as relayed by Facility Director Annie Jackson) there were complaints regarding the disruption of the work environment caused by several individuals who came in early and went to control. Based on this, there appears to be a sound business reason for the issuing of the memo.

You also stated, "At the time of this complaint, it is viewed that the actions taken reflect my consistent entry of secure area prior to shift to enter the police supervision office for communication based practices." I can only infer from this statement that you believe this memo was to address your work behavior only and not that of other staff. If your supposition were true, this also would not establish a hostile work environment based on race.

In conclusion, your allegation of a hostile work environment cannot be substantiated. Should you need further guidance concerning this matter, please let me know.

Sincerely,

*Lynn Hubbard*

Lynn Hubbard
Director of Human Resources

Cc:    Annie Jackson, Facility Director
       Joe Long, Facility Personnel Manager

Serve • Empower • Support

**25**

**EXHIBIT 4**

# EXHIBIT I

**26**

**EXHIBIT 4**

## AFFIDAVIT OF LYNN HUBBARD

STATE OF ALABAMA
COUNTY OF MONTGOMERY

Before me the undersigned, a Notary Public in and for the State of Alabama, personally appeared Lynn Hubbard, who is known to me and who, being first duly sworn, did depose and say as follows:

My name is Lynn Hubbard. I am employed as the Director of the Bureau of Human Resources Management at the Alabama Department of Mental Health. By reason of my position I am authorized and qualified to make this affidavit. I am custodian of records for the Bureau of Human Resources Management.

I hereby certify that the document attached hereto is a true and correct copy of the "ANNOUNCEMENT TO FILL A NON-MERIT POSITION" for Mental Health Special Agent I. This announcement was posted by the Alabama Department of Mental Health on or about March 9, 2018. Derrick Williamson, Jr., applied for this position. Williamson is currently employed as Mental Health Security Officer II at Taylor Hardin Secure Medical Facility.

The applicants for this position who met the minimum qualifications were interviewed individually by a diverse interview panel in an open and competitive hiring process. Each applicant received a score from the interview panel based upon each panel member's assessment of the applicant. Derrick Williamson Jr. received the lowest score from the interview panel and was not selected as a finalist for the position.

Williamson's personnel file was not available to the members of the interview panel. The interview panel was not aware of any reprimands received by Williamson in connection with

1

**27**

**EXHIBIT 4**

his position as a Mental Health Security Officer II at Taylor Hardin Secure Medical Facility.

Therefore, reprimands were not a factor for Williamson or any other applicants in the interview

or hiring process for the Mental Health Special Agent I position.

I have read this statement and affirm to the truth and accuracy of the facts contained herein.

Lynn Hubbard
Lynn Hubbard

Sworn to before me and subscribed in my presence this the 19th day of
September, 2018.

Notary Public
My Commission Expires:

**My Commission Expires:**
**March 1, 2022**

2

**28**

**EXHIBIT 4**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**RSA UNION BUILDING**
100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

## ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
## EQUAL OPPORTUNITY EMPLOYER

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Mental Health Special Agent I | **NUMBER:** | 18-06 |
| **JOB CODE:** | S7000 | **DATE:** | 03/9/2018 |
| **SALARY RANGE:** | 76 ($43,339.20 - $65,690.40) | **PCQ#:** | 8813191 |

**JOB LOCATION:**   **Administrative Base:**           **Work Location:**
Department of Mental Health      1305 James L. Harrison, R. Parkway
RSA Union Building             Tuscaloosa, Alabama 35405
100 North Union Street
Montgomery, Alabama 36130

**MINIMUM QUALIFICATIONS:**  Bachelor's degree in Criminal Justice, Public Safety, Law, Public/Business Administration, Psychology, Forensic Services, Homeland Security, or a related field, plus experience (24 months or more) in criminal investigative work with a law enforcement or regulatory agency. *Experience in criminal investigative work above the minimum requirement may substitute for the Bachelor's degree on a year-for-year basis.*

**NECESSARY SPECIAL REQUIREMENTS:**  Must possess APOST certification established by the Alabama Peace Officers Standards and Training Act as a certified law enforcement officer. Must also possess a valid driver's license.

**KIND OF WORK:**  This is responsible investigative work of a confidential nature concerning incidents involving consumers and employees, of the Alabama Department of Mental Health. Conducts investigations of a variety of conditions relating to consumer and employee conduct, care, and security practices. Investigates alleged or suspected violations of laws and statutes. Conducts field investigations to ascertain facts and obtains evidence of incidents involving homicides, suicides, escapes, thefts, drug violations, abuse and neglect complaints, and other violations of criminal statutes. Evaluates and prepares investigative reports for presentation to a superior agent, supervisor, or other officials, if required. Gives testimony at criminal justice system proceedings and administrative hearings. Conducts training for other law enforcement agencies.

**REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:**  Knowledge of the rules of evidence and the application of constitutional law to criminal cases. Knowledge of criminal law, legal rights of individuals involved in crimes, laws of evidence, and court procedures.

Serve • Empower • Support

**29**

**EXHIBIT 4**

Announcement #18-06
MH Special Agent I
Page 2

Knowledge of the criminal justice system.  Ability to prepare detailed and summary reports of evidence surrounding a case.  Ability to plan the work involved in criminal investigations and work multiple cases assigned.  Ability to preserve evidence and information.  Ability to perform the physical duties involved in conducting investigations.  Ability to conduct training sessions for other law enforcement agencies.  Ability to communicate effectively both orally and in writing.  Ability to utilize a computer, internet resources, and various software packages.  Ability to travel extensively throughout the state.  Ability to work nights and weekends.

**METHOD OF SELECTION:**   Applicants will be rated on the basis of an evaluation of their education, training, and experience and should provide adequate work history identifying experiences related to duties and minimum qualifications as mentioned above.  All relevant information is subject to verification.  Drug screenings and security clearance will be conducted on prospective applicants being given serious consideration for employment and whose job requires direct contact with clients.

**HOW TO APPLY:**  Use an official application for Professional Employment (Exempt Classification) which may be obtained from this office, other Department of Mental Health Facility Personnel Offices, or by visiting our website at www.mh.alabama.gov.  **Only work experience detailed on the application will be considered.**  Additional sheets, if needed, should be in the same format as the application.  Resumes will not be accepted in lieu of an official application.   Applications should be returned to Human Resource Management, Department of Mental Health, P.O. Box 301410, Montgomery, Alabama 36130-1410 or RSA Union Building, 100 North Union Street, Montgomery, Alabama 36104.  Copies of License/ Certifications should be forwarded with your application.   An official copy of academic transcripts is required and must be forwarded by the school, college, or university to the personnel office at the above address.

**DEADLINE:**  <u>March 23, 2018</u>

**30**

# EXHIBIT 5

**EXHIBIT 5**

# WIGGINS CHILDS
# PANTAZIS FISHER
# GOLDFARB
Advocates & Litigators

November 26, 2018

ROBERT L. WIGGINS, JR
DENNIS G. PANTAZIS
ANN K. WIGGINS
SAMUEL FISHER
DEBORAH A. MATTISON
JON C. GOLDFARB
GREGORY O. WIGGINS
ROCCO CALAMUSA, JR
BRIAN CLARK
RUSSELL W. ADAMS
CRAIG L. LOWELL
CANDIS A. McGOWAN
TEMPLE D. TRUEBLOOD
H. WALLACE BLIZZARD
KEVIN W. JENT
JENNIFER WIGGINS SMITH
ROBERT J. CAMP
RACHEL LEE McGINLEY
JOSHUA R. GALE·
L. WILLIAM SMITH
D. G. PANTAZIS JR
SIDNEY JACKSON
PATRICK L. PANTAZIS
LACEY DANLEY
EVAN D PANTAZIS
CHRISTINA MALMAT

ERIC C. SHEFFER
STAFF ATTORNEY

SANDRA DUCA
TIMOTHY B. FLEMING·
TERRILL W. SANDERS
OF COUNSEL
Not Licensed in Alabama·

ROBERT F. CHILDS, JR
(1947-2018)

**VIA ELECTRONIC MAIL**
Investigator Andre Williams
Equal Employment Opportunity Commission
Ridge Park Plaza
1130 22nd Street South
Birmingham, Alabama  35205

RE:     **CHARGE NO:**      **420-2018-02230**
        **Charging Party:**     **Mr. Derrick Williamson**
        **Respondent:**         **Ala Dept. Mental Health**

Dear Investigator  Williams:

The Respondents' position statement is premised upon a blatant misrepresentation of facts.  The Respondent incorrectly states that Mr. Williamson's supervisor, whom he complained gave him discriminatory reprimands and upon which his claims of retaliation are premised, is also an African-American. "It is agreed that his direct supervisor at all times was Robert Anderson, **an African-American male**." Def's Position Statement at 2 (emphasis added).  A review of the charge shows that Respondent did not assert that Anderson is African-American.  Chief Anderson is white as shown in the picture of Chief Anderson attached hereto as Exhibit A. Moreover, Lynn Hubbard, the defendants' Director of Human Resources, admits Mr. Anderson's race in her response to Mr. Williamson which the Respondents attach as Exhibit H to their position statement.  There, Ms. Hubbard stated, "Simply being a different race than your Supervisor does not meet this standard." *Id.* at paragraph 1.

Moreover, the Respondent fails to demonstrate that any white employee who has complained of discrimination has ever been disciplined

An Alabama Limited Liability Company
The Kress Building • 301 19th Street North • Birmingham, AL 35203
205-314-0500 main • 205-254-1500 fax
WASHINGTON, D.C • DELAND, FLORIDA
wigginschilds.com

**1**

November 26, 2018
Page 2

for exercising their First Amendment and statutory rights to consult their legal counsel. Mr. Williamson was given a written warning for contacting his State Employee Association Counsel in violation of those rights. Moreover, the Respondents failed to follow their own progressive discipline policy in giving Mr. Williamson a written warning for his first offense which is itself indicia of retaliation.

We now turn to the "affidavit" of Lynn Hubbard which is legally deficient for several reasons. First, the affidavit does not state that it is based on personal knowledge and purports to state the knowledge of others with no basis for that knowledge. Simply because the panel members did not have Mr. Williamson's personnel file in no way supports an inference that they did not know of the reprimands, disciplines and complaints of discrimination and retaliation or that they were not told that Mr. Williamson's promotion was undesirable. No affidavits from the panel members denying such knowledge were provided.

The position statement and Hubbard's "testimony" is also legally deficient because the respondent fails to articulate any reason **from the actual decision maker**. Hubbard is not a decisionmaker for the promotion. Similarly, there is no indication that the panel of interviewers were the decisionmakers or that their ratings were actually relied upon by whomever made the decision. We ask that you require the Respondent to identify the decisionmaker or decisionmakers and articulate their reasons for selecting Mr. McDaniel rather than Mr. Williamson.

"[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reason for its adverse employment decision, and that reason 'must be legally sufficient to justify a judgment for the defendant.'" *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998)(quoting *Texas Dep 't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). This reason must be articulated by the individual who made the decision to take the adverse action. See Walker,158 F.3d at 1181 &n.8 ("The defendant cannot testify in abstract terms as to what might have motivated the decision-maker; it must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision."). The articulation must also include evidence of what the decisionmaker knew and when he knew it. *Steger v. General Elec. Co.*, 318 F.3d 1066, 1076 (11' Cir. 2003)(emphasis supplied)("The evidence must include facts which show *what the decision-maker knew at the time when the decision was made"); Turnes v. AmSouth Bank NA*, 36 F.3d 1057 (11th Cir. 1994)("AmSouth came forward with no explanation of why it rejected Turnes based on what it knew when it rejected him. Therefore, Turnes' prima facie case stands unrebutted, and discrimination is established.'")(citation omitted). The reason must also be the reason that was "actually relied on" by the decisionmaker in deciding to discharge the plaintiff. *Increase Minority Participation by Change Today*

**2**

**EXHIBIT 5**

November 26, 2018
Page 3

*of Northwest Florida (IMPACT) v. Firestone,* 893 F.2d 1189, 1194 (11'" Cir. 1990)("This Court has expressly held that under *Burdine,* there must be 'evidence that asserted reasons for discharge *were actually relied on'* or 'the reasons are not sufficient to meet the defendant's rebuttal burden.")(emphasis supplied).

Ms. Hubbard states that all those who met minimum qualifications were interviewed but does not state the basis of this knowledge. The stated minimum qualifications for the position are:

> **MINIMUM QUALIFICATIONS:** Bachelor's degree in Criminal Justice, Public Safety, Law, Public/Business Administration, Psychology, Forensic Services, Homeland Security, or a related field, plus experience (24 months or more) in criminal investigative work with a law enforcement or regulatory agency. *Experience in criminal investigative work above the minimum requirement may substitute for the Bachelor's degree on a year-for-year basis.*

Exhibit B attached hereto.

The Respondent failed to produce any admissible evidence that Kevin McDaniel met these stated minimum qualifications. Hubbard does not state that she herself reviewed his minimum qualifications or made a determination that he met them. Upon information and belief, Mr. McDaniel does not have a bachelor degree and does not have the **6 years** of investigatory experience that would be required in its absence. McDaniel's position at Mental Health did not require such investigation. The Respondent did not produce Mr. McDaniel's application and work experience which would answer this question. We ask that you request his application and supporting documents to determine whether or not he actually met minimum qualifications.

It should also be noted that the job announcement states that the decision will be based on **an evaluation of written materials**

> **METHOD OF SELECTION**: Applicants will be rated on the basis of an evaluation of their education, training, and experience and should provide adequate work history identifying experiences related to duties and minimum qualifications as mentioned above. All relevant information is subject to verification. Drug screenings and security clearance will be conducted on prospective applicants being given serious consideration for employment and whose job requires direct contact with clients.

**3**

**EXHIBIT 5**

November 26, 2018
Page 4

*Id.*

      The job announcement does not mention or contemplate an interview by a panel based on questions and factors outside the written materials.  Why was the stated method of selection changed?  No explanation for this change is proffered.  We ask that you request the reason for this change in the selection process and request the actual notes and scores set forth by the panelists to determine whether the same panelists interviewed Mr. Williamson and Mr. McDaniel, whether they were asked the same questions, whether the questions were job related, and how their responses were evaluated.

      If you have any additional questions, please do not hesitate to give me a call.  My direct dial is (205) 314-0544.  I also appreciate the extension.

                Very truly yours,

                Russell W. Adams

**4**

**EXHIBIT 5**

# EXHIBIT A

**EXHIBIT 5**



**6**

**EXHIBIT 5**

# EXHIBIT B

**EXHIBIT 5**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
RSA UNION BUILDING
100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

### ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
### EQUAL OPPORTUNITY EMPLOYER

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Mental Health Special Agent I | **NUMBER:** | 18-06 |
| **JOB CODE:** | S7000 | **DATE:** | 03/9/2018 |
| **SALARY RANGE:** | 76 ($43,339.20 - $65,690.40) | **PCQ#:** | 8813191 |

**JOB LOCATION:**   **Administrative Base:**
Department of Mental Health
RSA Union Building
100 North Union Street
Montgomery, Alabama 36130

**Work Location:**
1305 James L. Harrison, R. Parkway
Tuscaloosa, Alabama 35405

**MINIMUM QUALIFICATIONS:** Bachelor's degree in Criminal Justice, Public Safety, Law, Public/Business Administration, Psychology, Forensic Services, Homeland Security, or a related field, plus experience (24 months or more) in criminal investigative work with a law enforcement or regulatory agency. *Experience in criminal investigative work above the minimum requirement may substitute for the Bachelor's degree on a year-for-year basis.*

**NECESSARY SPECIAL REQUIREMENTS:** Must possess APOST certification established by the Alabama Peace Officers Standards and Training Act as a certified law enforcement officer. Must also possess a valid driver's license.

**KIND OF WORK:** This is responsible investigative work of a confidential nature concerning incidents involving consumers and employees, of the Alabama Department of Mental Health. Conducts investigations of a variety of conditions relating to consumer and employee conduct, care, and security practices. Investigates alleged or suspected violations of laws and statutes. Conducts field investigations to ascertain facts and obtains evidence of incidents involving homicides, suicides, escapes, thefts, drug violations, abuse and neglect complaints, and other violations of criminal statutes. Evaluates and prepares investigative reports for presentation to a superior agent, supervisor, or other officials, if required. Gives testimony at criminal justice system proceedings and administrative hearings. Conducts training for other law enforcement agencies.

**REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:** Knowledge of the rules of evidence and the application of constitutional law to criminal cases. Knowledge of criminal law, legal rights of individuals involved in crimes, laws of evidence, and court procedures.

**EXHIBIT 5**

Announcement #18-06
MH Special Agent I
Page 2

Knowledge of the criminal justice system.  Ability to prepare detailed and summary reports of evidence surrounding a case.  Ability to plan the work involved in criminal investigations and work multiple cases assigned.  Ability to preserve evidence and information.  Ability to perform the physical duties involved in conducting investigations.  Ability to conduct training sessions for other law enforcement agencies.  Ability to communicate effectively both orally and in writing.  Ability to utilize a computer, internet resources, and various software packages.  Ability to travel extensively throughout the state.  Ability to work nights and weekends.

**METHOD OF SELECTION:**  Applicants will be rated on the basis of an evaluation of their education, training, and experience and should provide adequate work history identifying experiences related to duties and minimum qualifications as mentioned above.  All relevant information is subject to verification.  Drug screenings and security clearance will be conducted on prospective applicants being given serious consideration for employment and whose job requires direct contact with clients.

**HOW TO APPLY:**  Use an official application for Professional Employment (Exempt Classification) which may be obtained from this office, other Department of Mental Health Facility Personnel Offices, or by visiting our website at www.mh.alabama.gov.  **Only work experience detailed on the application will be considered.**  Additional sheets, if needed, should be in the same format as the application.  Resumes will not be accepted in lieu of an official application.   Applications should be returned to Human Resource Management, Department of Mental Health, P.O. Box 301410, Montgomery, Alabama 36130-1410 or RSA Union Building, 100 North Union Street, Montgomery, Alabama 36104.  Copies of License/ Certifications should be forwarded with your application.   An official copy of academic transcripts is required and must be forwarded by the school, college, or university to the personnel office at the above address.

**DEADLINE: March 23, 2018**

**9**

# EXHIBIT 6

**EXHIBIT 6**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22ⁿᵈ Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 212-2100
FAX (205) 212-2105
Website www.eeoc.gov

Respondent: Alabama Department of Mental Health
EEOC No: 420-2018-02230

Mr. Derrick Williamson
8816 Old Greensboro RD
Apt. 20104
Tuscaloosa, AL 35405

Dear Mr. Williamson:

The Commission has received your request for a Notice of Right to Sue in the above referenced charge. Your request has been forwarded to the U.S. Department of Justice (DOJ) for action. That Agency will act on your request as soon as possible and issue the Notice directly to you.

If you have any questions, please contact Andre Williams, Investigator, at (205) 212-2147.

Sincerely,

6/13/19

Date Mailed

Bradley A. Anderson
District Director

Copy: Alabama Department of Mental Health
c/o Edward C. Hixon
P.O. Box 301410
Montgomery, AL 36130-1410

**EXHIBIT 7**



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7018 1830 0000 1246 3136

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , FMP, PHB, Room 4701*
*Washington, DC 20530*

July 09, 2019

Mr. Derrick Williamson
8816 Old Greensboro Rd.
Apt. 20104
Tuscaloosa, AL 35405

Re:  EEOC Charge Against Alabama Dept. of Mental Health
      No. 420201802230

Dear Mr. Williamson:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

    The investigative file pertaining to your case is located in the EEOC Birmingham District Office, Birmingham, AL.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                         Sincerely,

                                         Eric S. Dreiband
                                         Assistant Attorney General
                                         Civil Rights Division

                                    by   *Karen L. Ferguson*
                                         Karen L. Ferguson
                                         Supervisory Civil Rights Analyst
                                         Employment Litigation Section

cc: Birmingham District Office, EEOC
    Alabama Dept. of Mental Health

# EXHIBIT 8

**EXHIBIT 8**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 420-2018-03769 and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Derrick James Williamson, Jr.** | **(205) 422-9664** | **01/25/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| **8816 Old Greensboro RD APT 20104, Tuscaloosa, Alabama, 35405** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Alabama Department of Mental Health (Taylor Hardin Secure Medical Facility)** | **500+** | **(205) 462-4500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1301 Jack Warner Parkway NE, Tuscaloosa, Alabama, 35404** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **N/A** | **N/A** | **N/A** |

| Street Address | City, State and ZIP Code |
|---|---|
| **N/A** | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

Latest: **8/23/2018**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am an African American man who is being discriminated against while employed in a Mental Health Security Officer II (Police Lieutenant) position. A written warning (disciplinary action) and/or adverse action took place on 8/23/2018 after an immediate supervisor was terminated. Officials, including the author of the written warning, were notified of an EEOC charge filed on 8/17/2018. Officials issued the written warning indicating that I exceeded my scope of authority while under <u>inadequate</u> supervision. Officials used several items of hearsay from facility staff and even the terminated supervisor to substantiate the issued warning. Officials were advised of protected activity on several occasions covered under state and federal statute but disregarded concerns by continuing adverse action which was unwarranted. The written warning effects my consideration for supervisory positions and a previous unsubstantiated written reprimand caused my non-selection of promotion. The written warning additionally poses violations of my constitutional rights to report illegal activity and I was advised that I could be terminated if I violate any provisions listed. I believe that I am being retaliated against due to the filing of the EEOC charge established on 8/17/2018. I believe that this retaliation is based upon aspects of race due to an Associate Commissioner (Caucasian) who is deliberately instructing a Facility Director (African American) to discriminate and/or retaliate against me. I believe the indicated Facility Director (Annie Jackson) has been coerced into to following orders furthering this discrimination in efforts to affect a termination of my employment at a later date. This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **8/28/2018** — Date — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# EXHIBIT 9

# EEOC Charge 420.2018.02230

## Williamson, Derrick

Tue 8/28/2018 11:17 PM

To:Jackson, Annie <Annie.Jackson@hardin.mh.alabama.gov>;

Cc:Reaves, Noah <Noah.Reaves@bryce.mh.alabama.gov>; Long, Joe <Joe.Long@hardin.mh.alabama.gov>; Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>;

Good evening,

Please be advised that an additional **Equal Employment Opportunity Commission (EEOC) charge** in supplement to charge **420-2018-02230** has been filed per my legal counsel.
The additional charge references retaliation in lieu of protected activity covered under federal and state law.

Thank you,

**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone**: (205) 792-2089

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.

You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

# EXHIBIT 10

**EXHIBIT 10**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**RSA UNION BUILDING**

100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY. ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



LYNN T BESHEAR
COMMISSIONER

October 12, 2018

U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street
Birmingham, Alabama 35205

    RE:    **EEOC Charge No. 420-2018-03769 - Derrick Williamson, Jr.**

Dear Sir/Madam:

In response to the request for a statement of our position with respect to the allegations contained in the above-referenced charge, the Alabama Department of Mental Health (hereinafter referred to as the "the Department") denies the Charging Party's allegations of discrimination and submits the following response:

## CHARGE OF DISCRIMINATION

*"I am an African American man who is being discriminated against while employed in a Mental Health Security Officer II (Police Lieutenant) position. A written warning (disciplinary action) and/or adverse action took place on 8/23/2018 after an immediate supervisor was terminated. Officials, including the author of the written warning, were notified of an EEOC charge filed on 8/17/2018. Officials issued the written warning indicating that I exceeded my scope of authority while under inadequate supervision. Officials used several items of hearsay from facility staff and even the terminated supervisor to substantiate the issued warning. Officials were advised of protected activity on several occasions covered under state and federal statute but disregarded concerns by continuing adverse action which was unwarranted. The written warning effects my consideration for supervisory positions and a previous unsubstantiated written reprimand caused my non-selection of promotion. The written warning additionally poses violations of my constitutional rights to report illegal activity and I was advised that I could be terminated if I violate any provisions listed. I believe that this retaliation is based upon aspects of race due to an Associate Commissioner (Caucasian) who is deliberately instructing a Facility Director (African American) to discriminate and/or retaliate against me. I believe the indicated Facility Director (African American) has been coerced into following orders furthering this discrimination in efforts to affect a termination of my employment at a later date. This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of my employment."*

**1**

**EXHIBIT 10**

## ORGANIZATION DESCRIPTION

The Department is an Alabama state agency that provides mental illness, intellectual disability, and substance abuse services throughout Alabama, which includes operating three residential treatment hospital facilities for individuals with mental illness. The Department is headed by a Commissioner appointed by the Governor. The Commissioner of the Department of Mental Health is Lynn Beshear. The Commissioner in turn appoints Associate Commissioners to head the various divisions of the Department. The Associate Commissioner for the Division of Mental Health and Substance Abuse is head of the Department's three state hospitals. The Associate Commissioner for the Division of Mental Health and Substance Abuse is Diane Baugher.

One of the Department's three state hospital facilities is the Taylor Hardin Secure Medical Facility (hereinafter "THSMF"), which is a psychiatric hospital facility of the Department and was established in 1981. Located at 1301 Jack Warner Parkway, NE, Tuscaloosa, Alabama 35404, THSMF is responsible for providing comprehensive psychiatric evaluation/treatment to criminal court committed patients from throughout Alabama and forensic/psychological evaluations to Alabama Circuit Courts. Most of the patients at THSMF are committed to the Department by Circuit Courts in connection with a criminal case. It is the only maximum security forensic psychiatric state hospital facility operated by the Department. The facility contains 140 patient beds. Ms. Annie Jackson is the Acting Facility Director at THSMF and she directly supervises all departments at THMSF.

THSMF has a Police Department for protection of the facility and its patients. The Police Department is supervised by a Police Chief. The Police Chief is supervised by the Facility Director. The Facility Director is supervised by the Associate Commissioner for Mental Health and Substance Abuse.

## RESPONSE TO SPECIFIC CHARGES

The Department incorporates by reference its previous response to EEOC Charge No. 420-2018-02230, submitted on September 19, 2018, involving the same Charging Party and allegations as the Charge herein.

***Charge:*** *"I am an African American man who is being discriminated again while employed in a Mental Health Security Officer II (Police Lieutenant) position. A written warning (disciplinary action) and/or adverse action took place on 8/23/2108 after an immediate supervisor was terminated. Officials, including the author of the written warning, were notified of an EEOC charge filed on 8/17/2018. Officials issued the written warning indicating that I exceeded my scope of authority while under underline inadequate supervision."*

***Response:*** It is agreed that Williamson is an African American male who is a Mental Health Security Officer II at THSMF. Williamson was issued a writing warning for multiple violations of Department Policy 70-5 dating back to September of 2017. (EXHIBIT A, EXHIBIT B). All violations specified in the written warning were documented and occurred prior to the filing of Williamson's EEOC charge on 8/17/2018. Therefore, there was no retaliation involved.

2

**2**

**EXHIBIT 10**

Moreover, none of the instances cited in the written warning involved matters that were caused by inadequate supervision. In fact, it was well documented that Williamson repeatedly ignored clear instructions by supervisors. Williamson is in a supervisory position and cannot plead ignorance of Department policy.

***Charge:*** *"Officials used several items of hearsay from facility staff and even the terminated supervisor to substantiate the issued warning. Officials were advised of protected activity on several occasions covered under state and federal statute but disregarded concerns by continuing adverse action which was unwarranted."*

***Response:*** Williamson does not specify what he means by "items of hearsay" used to substantiate the written warning. The Department can only **assume** he means that the written warning was based partially on verbal reports by THSMF employees to supervisors. A verbal report is a legitimate basis for disciplinary action. The hearsay allegation is irrelevant. The disciplinary process is not a court of law with rules of evidence prohibiting use of hearsay.

***Charge:*** *"The written warning effects my consideration for supervisory positions and a previous unsubstantiated written reprimand caused my non-selection of promotion. The written warning additionally poses violations of my constitutional right to report illegal activity and I was advised that I could be terminated if I violate any provisions listed. I believe that I am retaliated against due to the filing of the EEOC charger established on 8/17/2018."*

***Response:*** This was previously addressed in the Department's response to EEOC Charge No. 420-2018-02230. The prior reprimand was fully substantiated. Prior disciplinary action had nothing to do with Williamson's failure to obtain another position. He was interviewed along with other qualified applicants by a diverse interview panel in an open and competitive hiring process. He received the lowest score from the interview panel and was not selected as a finalist for the position. The interview panel did not have access to his personnel file and therefore had no knowledge of any reprimands.

The written warning of 8/23/2018 did not discipline Williamson for reporting illegal activity or otherwise. The warning speaks for itself that he was disciplined for multiple violations of Policy 70-5.

***Charge:*** *"I believe that this retaliation is based upon aspects of race due to an Associate Commissioner (Caucasian) who is deliberately instructing a Facility Director (African American) to discriminate and/or retaliate against me. I believe the indicated Facility Director (Annie Jackson) has been coerced into following order furthering this discrimination in efforts to affect a termination of my employment at a later date."*

***Response:*** The written warning was administered by THSMF Facility Director Annie Jackson, an African American female. The Caucasian Associate Commissioner had no role in this written warning. Therefore, there is no evidence of racial motivation or discrimination by the Associate Commissioner nor any coercion.

**3**

**EXHIBIT 10**

*<u>Charge:</u>* *"This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment."*

*<u>Response:</u>* The Department acknowledges that disciplinary action against an employee may affect performance evaluations if the disciplinary action is related to job performance. The Department has demonstrated that the written warning was solely related to Williamson's job performance was not retaliation in any form.

<div align="center">

**CONCLUSION**

</div>

In conclusion, the Department denies that it or any of its employees has discriminated or retaliated against Derrick Williamson, Jr. on the basis of race. Any and all actions taken toward Williamson were conducted in accordance with Departmental policies and were applied in a non-discriminatory manner.

Should you have any further questions, please feel free to contact me.

Sincerely,

Edward C. Hixon
Assistant Attorney General

4

**4**

**EXHIBIT 10**

# EXHIBIT B

**EXHIBIT 10**

# State of Alabama
# Department of Mental Health

NUMBER:   70-5

SUBJECT:   Employee Conduct and Performance
TITLE:   Employee Conduct and Accountability

EFFECTIVE: 4/4/88          REVIEWED:  12/4/14          CHANGED: 7/16/12

RESPONSIBLE OFFICE:   Administration/Personnel

APPLICABLE TO:          All Divisions

APPROVED:

I.   **POLICY:**

    All Department employees will adhere to accepted standards of professional and personal conduct. Violation of these standards may result in disciplinary action.

II.   **STANDARDS:**

1.   The listing of violations below is not meant to be all inclusive and does not imply that discipline may not be imposed for other sufficient reasons. Unacceptable conduct is defined as, but not limited to, the following:
    a.   Client abuse, mistreatment, neglect or exploitation
    b.   Reporting to work while incapacitated or intoxicated from the use of alcohol or drugs
    c.   Use or possession of alcohol or unauthorized possession of drugs or drug paraphernalia at any time on any Department property
    d.   Sleeping on duty
    e.   Persistent absenteeism
    f.   Persistent tardiness
    g.   Un-excused absence
    h.   Insubordination
    i.   Abandonment of job
    j.   Commission or conviction of a felony, or a misdemeanor involving moral turpitude
    k.   Carrying or use of firearm, or any lethal weapon on Department property at any time by any person who is not a sworn law

**6**

enforcement officer or who does not have signed written permission to hunt on DMH lands

l.    Theft of State, employee, visitors or client property

m.    Gambling on Department property

n.    Fighting on Department property

o.    Failure to abide by established standards of dress and grooming

p.    Failure to abide by traffic rules and regulations

q.    Leaving work station without permission

r.    Disruptive or disorderly conduct of any kind

s.    Violation of safety rules

t.    Inattention to job duties

u.    Sexual harassment

v.    Abuse and/or unauthorized use of Facility vehicles, machinery, or equipment

x.    Participation in unauthorized activity or solicitation on department property

y.    Unauthorized use of telephone equipment

z.    Unauthorized use of bulletin boards

aa.    Alteration and/or falsification of Department and/or facility documents/records

bb.    Failure to perform the job properly

cc.    Use of abusive or threatening language

dd.    Violation of specific Department/Division/Facility rules, regulations, and policies

ee.    Violation of Department Policy on Drug Free Workplace

ff.    Violation of Department policies on Investigations and/or Employee Cooperation in Investigations

gg.    Violation of client confidentiality, including unauthorized disclosure of protected health information (PHI).

2.    All Department employees are expected to cooperate with and to show respect for their co-workers at all times. Cooperation with co-workers is defined as the extent to which an employee works with and does not hinder co-workers to ensure that work unit goals and directives are accomplished. Failure to do so may result in disciplinary action.

### III.    REFERENCES:

1.    Health Insurance Portability and Accountability Act of 1996

2.    U.S. Department of Health & Human Services security and privacy regulations

3.    DMH Policies 19-10, 19-5, 70-20, 70-25, 60-42, 60-46, 60-44, 70-30, 60-77, 90-5, 185-20, 105-5, 80-10, 80-20.

**7**

# EXHIBIT 11

EXHIBIT 11

# RESPONSE TO POSITION STATEMENT
## WILLIAMSON & ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
## CHARGE: 420-2018-03769

Dear Investigator Iran Cruz,

The respondents present that multiple violations used to substantiate a "written warning" issued on 8/23/2018 occurred prior to the filing of charge *420-2018-02230*. I do not deny that the referenced events occurred prior to the filing of charge *420-2018-03769*. Although the utilized events occurred prior, I have an exceptional knowledge of Alabama Department of Mental Health policy in which I have provided extraordinary defensive responses for the decisions in which I've made; all of which were indeed according to the department's policy which they failed to acknowledge. The respondents were insufficiently aware of their own policies and when I presented their policies to show that my decisions were based upon their written standards, I was shunned in a professional atmosphere. If we review those decisions and compare them with department policy, it will be apparent that I did not violate policy and procedure. In efforts to intimidate me against additional charges of discrimination, respondents utilized these events to issue a written warning to deter me from expressing my rights and utilizing above average knowledge of department policies. Therefore, with temporal proximity and insufficient reasoning for the issuance of this written warning, respondents indeed retaliated against me for the initial report of discrimination. I have never pleaded ignorance of department policy.

I also consider that the reason my supervisor was forced to retire, I presented the department with information pertaining to legal regulations for law enforcement operations. Captain Robert Anderson, Jr. (Chief) had been in his current position for approximately 37 years and had run the department to his liking contrary to laws governing the Alabama Peace Officer Standards & Training Commission (APOSTC). I notified the commission of Anderson's illegal conduct and he also reported it to the department. Following his complaint of illegal conduct which also affected his employment, respondents advised that I was inadequately supervised in a meeting with Facility Director Annie Jackson, Associate Commissioner Zelda Diane Baugher, and Senior Special Agent Joseph Rittner. I was then presented with disciplinary action. A response of insufficient disciplinary action to a report of illegal activity is also perceived as a Whistleblower Protection Act violation.

Respondents advise that a *"verbal report is a legitimate basis for disciplinary action"* and that *"the disciplinary process is not a court of law with rules of evidence prohibiting use of hearsay"*. While the presented argument may be applicable in the private industry, public service employment is governed with a higher standard. If I deny allegations set forth, I am entitled to a review a chain of command leading up to the Commissioner of the Alabama Department of Mental Health Lynn Beshear and may dispute a "final decision" by the department in judicial proceedings. This is outlined in *Alabama Code 22-50-19: Judicial Review of Final Order or Decision by Department*. Respondents denied a meeting with the referenced commissioner out of spite which has delayed a "final decision" resting with the Commissioner. It is perceived that the purpose of a Human Resources Director is to secure facts with all available evidence when a dispute occurs in response to

**1**

**EXHIBIT 11**

disciplinary action in a public service environment. Respondents also circumvented that option by not allowing the facility's Human Resource Director review the proposed written warning.

Respondents advise that *"the Caucasian Associate Commissioner had no role in this written warning"* which is boldly fallacious. Associate Commissioner Zelda Diane Baugher was present for the administering of this written warning and Facility Director Annie Jackson consulted with Baugher. In the event that Baugher was not involved with this disciplinary action, she would have not been present for its administration. It should be noted that Baugher is the direct supervisor of Jackson and they have a personal relationship which exceeds work standards. Although there is no direct evidence, I believe circumstantial evidence exists in Baugher's presence during disciplinary action being administered and her professional, as well as, personal influence over Jackson.

## CONCLUSION

In conclusion, respondents present information pertaining to the validity of the issuance of this written warning but fail to present how I violated department policy. I am in possession of all written disciplinary action and my responses to substantiate my decisions. Respondents retrieved whatever information was available to them to present a written warning to dissuade my use of the Equal Employment Opportunity Commission (EEOC) in matters involving the department. This action is also presented as a Whistleblower Protection Act violation. This written warning follows the direct notification of EEOC activity within several days which signifies temporal proximity and pretext. Respondents retaliated following two circumstances to dissuade myself: Whistleblower Activity and EEOC Activity which was warranted.

Thank you,

Derrick James Williamson, Jr.
8816 Old Greensboro Road APT 20104
Tuscaloosa, Alabama, 35405

**2**

# EXHIBIT 12

**EXHIBIT 12**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Derrick J. Williamson, Jr.
    8816 Old Greensboro Rd.
    Apt. 20104
    Tuscaloosa, AL 35405

From: **Birmingham District Office**
      **Ridge Park Place**
      **1130 22nd Street**
      **Birmingham, AL 35205**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **420-2018-03769** | **IRAN CRUZ,** Investigator | **(205) 212-2134** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

MAR 1 2019

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

*(Date Mailed)*

cc:    **STATE OF ALABAMA, DEPARTMENT OF MENTAL HEALTH**
       **c/o Eddie Hixon, Assistant Attorney General**
       **RSA Union Building, 100 North Union Street**
       **P.O. Box 301410**
       **Montgomery, AL 36130**

# EXHIBIT 13

**EXHIBIT 13**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 420-2018-04087 |
| | | and EEOC |

| State or local Agency, if any | | |
|---|---|---|

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Derrick James Williamson, Jr.** | **(205) 422-9664** | **01/25/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| **8816 Old Greensboro RD APT 20104, Tuscaloosa, Alabama, 35405** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Alabama Department of Mental Health (Taylor Hardin Secure Medical Facility)** | **500+** | **(205) 462-4500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1301 Jack Warner Parkway NE, Tuscaloosa, Alabama, 35404** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **N/A** | **N/A** | **N/A** |

RECEIVED
U.S. EEOC

SEP 27 2018

Birmingham District Office

| Street Address | City, State and ZIP Code |
|---|---|
| **N/A** | |

DISCRIMINATION BASED ON (check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **12/6/2017**  Latest **9/21/2018**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am an African American man who is being discriminated/retaliated against while employed in a Mental Health Security Officer II (Police Lieutenant) position. A written reprimand (disciplinary action) and/or adverse action took place on 9/21/2018. The written reprimand documented an incident in which a Caucasian female disrespected my position to make a decision by policy. A pre-disciplinary conference has been scheduled for a separate incident in which a different staff member provided a false statement against me. Director Annie Jackson has targeted out of spite due to reports made to external agencies in reference to illegal conduct. In a previous reprimand, Jackson and other officials indicated that I may not report such allegations without their approval, to external agencies. Human Resources officials within the department refused to rescind or alter the reprimand when advised of a violation of employee rights. The referenced reprimand and retaliation by Jackson have caused two denial of promotions, heightened emotional distress, anxiety, and an increased need to locate other employment. Jackson and several other officials received direct notification of concerns of discrimination and the previous filed EEOC charges. To the best of my knowledge and belief, Jackson is targeting my employment to circumvent lawful methods of operating the facility and to retaliate for my effort to resolve issues of discrimination and illegal conduct. Jackson is not an immediate supervisor and has micro-managed to conduct the listed actions. A current timeline has been attached to this charge. This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 9/25/2018 _____ _____ Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

1

**EXHIBIT 13**

EEOC Form 5 (11/09)

| | |
|---|---|
| **CHARGE OF DISCRIMINATION**<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To:   Agency(ies) Charge No(s):<br><br>☐ FEPA<br>☒ EEOC |

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| | |
|---|---|
| 5/5/2017 | Exceeding standards performance appraisals received without any issues noted. (Bryce Hospital) |
| 6/16/2017 | Promoted to Lieutenant after six months of employment |
| 12/6/2017 | Issues of discrimination reported to Robert Anderson, Jr. by completing a performance appraisal which showed insufficient details of my performance. Comparisons made to Caucasian officers who always received favorable (exceeding standards) appraisals and were allowed to do inappropriate things without disciplinary action.<br>• Caucasian supervisors consistently received exceeding standards appraisals<br>• Caucasian supervisor noted as "stealing time" according to Human Resources. It was also reported that this supervisor had stolen time years prior. This supervisor was promoted to the position listed on 5/4/2018.<br>• Caucasian supervisors noted and witnessed as insubordinate without consequences.<br>• Several complaints of discriminatory practices reported to Human Resources by other officers who received discriminatory appraisals, insufficient disciplinary action, unfair promotion decisions, etc.<br>• Several direct and indirect rules implemented which targeted my privileges. |
| 12/14/2017 | Exceeding standards performance appraisals received without any issues noted after Anderson revised to avoid a filed complaint of discrimination. It should be noted that Director Annie Jackson approved this appraisal without noting any issues (Taylor Hardin Secure Medical Facility). |
| 1/24/2018 | Anderson written up for insufficient supervision. |
| 1/26/2018 | Notice of potential ethical violations by Director Annie Jackson to Captain Robert Anderson. Anderson was advised that I intended to file complaints with external public organizations. |
| 2/20/2018 | Legislation draft resent to Jackson and union attorney (Alabama State Employees Association) for review. |
| 5/2/2018 | Re-iteration of discriminatory practices made directly to Robert Anderson, Jr. who immediately reported to Director Annie Jackson. |

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct. | NOTARY – *When necessary for State and Local Agency Requirements*<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **9/25/2018**<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

**2**

**EXHIBIT 13**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | |

| | | and EEOC |
|---|---|---|
| | *State or local Agency, if any* | |

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

| | |
|---|---|
| 5/2/2018 | Written reprimand received ordering no contact with external agencies in regard to the Alabama Department of Mental Health. Reprimand also violated rights enumerated under Alabama Code 25-7-6. |
| 5/2/2018 | Formal complaints filed internally against Director Annie Jackson and Captain Robert Anderson, Jr. |
| 5/2/2018 | Formal complaints referred to Attorney General's Office (notification of referral to ADMH officials). |
| 5/3/2018 | Notified by facility HR Director Joe Long that a complaint cannot be filed against a written reprimand. No formal grievance procedure. |
| 5/3/2018 | Meeting with Jackson occurred where she stated that I would not be promoted if I didn't follow her protocols (no written protocols in relation to her requests). |
| 5/4/2018 | Denied promotion to ADMH Special Agent. Caucasian co-worker selected. |
| 5/17/2018 | National Criminal Information Center/Law Enforcement Tactical System privileges revoked based upon insufficient information. Anderson had to consult with external sources to gain an understanding of these systems. Anderson was not certified to use this system but removed my privileges to prevent my inquiries into criminal activity. It should be noted that his removal of privileges in this instance constituted a criminal act (Obstructing Governmental Operations). |
| 6/15/2018 | Disagreement occurred with Jackson in reference to handling criminal matters. Issues of Obstructing Governmental Operations referenced. Jackson was advised that I would make decisions within my power in which she advised that she would terminate if I did. Jackson was advised that I would "sue the hell out of the department" in a normal tone in which she responded, "That's fucking fine!" - Recorded statement |
| 7/16/2018 | Jackson's refusal to rescind reprimand after complaint filed. |
| 7/27/2018 | Denied promotion to Administrator IV. Lacking 4 months in required experience. |

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| 9/25/2018 <br> *Date*     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> *(month, day, year)* |

**3**

**EXHIBIT 13**

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |
| | and EEOC |

State or local Agency, if any

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

| | |
|---|---|
| 8/2/2018 | Alabama Peace Officer Standard's & Training Commission complaint filed against Anderson detailing rule violations and illegal conduct. |
| 8/17/2018 | Attorney obtained after receiving inadequate responses from Alabama Department of Mental Health Central Office (Human Resources) - 100+ days of no response |
| 8/17/2018 | Equal Employment Opportunity Commission charge filed by representing attorney after receiving insufficient response from personnel |
| 8/23/2018 | Robert Anderson, Jr. forced to retire (immediately but effective 10/1/2018) for ill-supervision and potential revocation of Alabama Peace Officer Certification. |
| 8/23/2018 | Written warning received from Director Annie Jackson stating un-investigated information and re-iteration to not exceed scope of authority. No statement taken of my account or due process. |
| 8/28/2018 | Equal Employment Opportunity Commission charge filed without current attorney for retaliation |
| 9/21/2018 | Written reprimand received for issue in which no interview was conducted of me to determine/consider my interpretation. No due process afforded. Report was filed of incident and no effort to assess circumstances was made, other than reviewing the incident report. No proof available besides written statements. |
| 9/21/2018 | Pre-disciplinary conference scheduled for different situation in which written statements were only proof available. My report of the matter versus another staff member. Attorney will be attending on the selected date. |
| 9/28/2018 | Scheduled pre-disciplinary conference |

It should also be noted that no disciplinary action took place prior to the 12/6/2017 notification of discriminatory conduct.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 9/25/2018 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

**4**

# EXHIBIT 14

**EXHIBIT 14**

# Read: 9/25/2018: Notice of EEOC Charge

### Long, Joe

Wed 9/26/2018 7:57 AM

To: Williamson, Derrick <Derrick.Williamson@Hardin.mh.alabama.gov>;

Importance: High

Your message

To: Long, Joe
Subject: 9/25/2018: Notice of EEOC Charge
Sent: Tuesday, September 25, 2018 11:04:07 PM (UTC-06:00) Central Time (US & Canada)

was read on Wednesday, September 26, 2018 7:57:03 AM (UTC-06:00) Central Time (US & Canada).

**1**

# 9/25/2018: Notice of EEOC Charge

### Williamson, Derrick

Tue 9/25/2018 11:04 PM

Sent Items

To:Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>;

Cc:Long, Joe <Joe.Long@hardin.mh.alabama.gov>;

Importance: High

Sensitivity   Confidential

📎  1 attachments (439 KB)

9.25.2018 - Charge of Discrimination (Retaliation).pdf;


Good evening,

Please be advised of a newly filed Equal Employment Opportunity Commission (EEOC) Charge in supplement  to the previous filed charges.
You may review the charge in its entirety as attached.

Thank you,

**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone**: (205) 792-2089

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.
You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

# EXHIBIT 15

**EXHIBIT 15**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
RSA UNION BUILDING

100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

November 30, 2018

U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street
Birmingham, Alabama 35205

RE: **EEOC Charge No. 420-2018-04087 - Derrick Williamson, Jr.**

Dear Sir/Madam:

In response to the request for a statement of our position with respect to the allegations contained in the above-referenced charge, the Alabama Department of Mental Health (hereinafter referred to as the "the Department") denies the Charging Party's allegations of discrimination and submits the following response:

## CHARGE OF DISCRIMINATION

*"I am an African American man who is being discriminated/retaliated against while employed in a Mental Health Security Officer II (Police Lieutenant) position. A written reprimand (disciplinary action) and/or adverse action took place on 9/21/2018. The written reprimand documented an incident in which a Caucasian female disrespected my position to make a decision by policy. A pre-disciplinary conference has been scheduled for a separate incident in which a different staff member provided a false statement against me. Director Annie Jackson has targeted out of spite due to reports made to external agencies in reference to illegal conduct. In a previous reprimand, Jackson and other officials indicated that I may not report such allegations without their approval, to external agencies. Human Resources officials within the department refused to rescind or alter the reprimand when advised of a violation of employee rights. The referenced reprimand and retaliation by Jackson have caused two denial of promotions, heightened emotional distress, anxiety, and an increased need to locate other employment. Jackson and several other officials received direct notification of concerns of discrimination and previous filed EEOC charges. To the best of my knowledge and belief, Jackson is targeting my employment to circumvent lawful methods of operating the facility and to retaliate for my effort to resolve issues of discrimination and illegal conduct. Jackson is not an immediate supervisor and has micro-managed to conduct the listed actions. A current timeline has been attached to the charge. This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment."*

1

**1**

**EXHIBIT 15**

## ORGANIZATION DESCRIPTION

The Department is an Alabama state agency that provides mental illness, intellectual disability, and substance abuse services throughout Alabama, which includes operating three residential treatment hospital facilities for individuals with mental illness. The Department is headed by a Commissioner appointed by the Governor. The Commissioner of the Department of Mental Health is Lynn Beshear. The Commissioner in turn appoints Associate Commissioners to head the various divisions of the Department. The Associate Commissioner for the Division of Mental Health and Substance Abuse is head of the Department's three state hospitals. The Associate Commissioner for the Division of Mental Health and Substance Abuse is Diane Baugher.

One of the Department's three state hospital facilities is the Taylor Hardin Secure Medical Facility (hereinafter "THSMF"), which is a psychiatric hospital facility of the Department and was established in 1981. Located at 1301 Jack Warner Parkway, NE, Tuscaloosa, Alabama 35404, THSMF is responsible for providing comprehensive psychiatric evaluation/treatment to criminal court committed patients from throughout Alabama and forensic/psychological evaluations to Alabama Circuit Courts. Most of the patients at THSMF are committed to the Department by Circuit Courts in connection with a criminal case. It is the only maximum security forensic psychiatric state hospital facility operated by the Department. The facility contains 140 patient beds. Ms. Annie Jackson is the Acting Facility Director at THSMF and she directly supervises all departments at THMSF.

THSMF has a Police Department for protection of the facility and its patients. The Police Department is supervised by a Police Chief. The Police Chief is supervised by the Facility Director. (EXHIBIT A). The Facility Director is supervised by the Associate Commissioner for Mental Health and Substance Abuse.

## RESPONSE TO SPECIFIC CHARGES

The Department incorporates by reference its previous responses to the charging party's prior EEOC charges, involving the same Charging Party and allegations as the Charge herein.

*Charge:* *I am an African American man who is being discriminated/retaliated against while employed in a Mental Health Security Officer II (Police Lieutenant) position.*

*Response:* The Department agrees that the Charging Party is an African American male employed by the Department as a Mental Health Security Officer II. The Department denies any discrimination or retaliation against the Charging Party.

*Charge:* *A written reprimand (disciplinary action) and/or adverse action took place on 9/21/2018. The written reprimand documented an incident in which a Caucasian female disrespected my position to make a decision by policy.*

*Response:* The Department acknowledges that a written reprimand was issued to the Charging Party on September 21, 2018. (EXHIBIT B). The written reprimand was issued for clear violations of Department and THSMF policies. A "Code Red" (patient altercation) was called by

2

**2**

direct care staff. (EXHIBIT B) THSMF Police Officers are required to respond to a "Code Red" in order to secure the area until direct care staff can complete all necessary medical interventions. (EXHIBIT C). The police officer on scene is not allowed to call a "Code Green" (i.e. resumption of normal operations) until direct care staff have completed all necessary medical interventions. (EXHIBIT C). This is a medical determination made by medical staff, not the police officers. (EXHIBIT C). The Charging Party called a "Code Green" prematurely without receiving instructions from medical staff. (EXHIBIT B). This action created an unnecessary safety risk to patients and employees and was a clear violation of policy. Whether the Charging Party felt disrespected or not is irrelevant. He clearly exceeded his authority which placed others in potential danger.

*Charge: A pre-disciplinary conference has been scheduled for a separate incident in which a different staff member provided a false statement against me.*

*Response:* The incident which is the subject of the pre-disciplinary conference ("PDC") referenced herein has been addressed by the Department in its response to the Charging Party's EEOC Charge Number 420-2019-00234 submitted on November 27, 2018. The Department adopts its response as if set fully forth herein.

*Charge: Director Annie Jackson has targeted out of spite due to reports made to external agencies in reference to illegal conduct. In a previous reprimand, Jackson and other officials indicated that I may not report such allegations without their approval to external agencies. Human Resources officials within the department refused to rescind or alter the reprimand when advised of a violation of employee rights.*

*Response:* The Charging Party is apparently frustrated by persons in his chain of command directing him not to file criminal charges against patients at THSMF caught committing certain criminal acts. As has been pointed out to him previously, THSMF is a psychiatric hospital. All of the patients at THSMF are mentally ill and have been admitted by court orders arising out of criminal charges. Some of the patients are there because they have been found not guilty by reason of mental disease or defect. Many of the patients are there to be evaluated for their mental competency to stand trial. Others are there because they have been found incompetent to stand trial by a court and need ongoing psychiatric treatment.

Therefore, most criminal acts occurring within the confines of THSMF (i.e. nonviolent crimes involving contraband) are not treated as matters for referral to the criminal justice system for prosecution. Rather, they are treated clinically by the medical professionals at THSMF as part of the patient's ongoing mental illness. Also, it would be futile to prosecute every criminal act occurring inside THSMF because the alleged perpetrators (i.e. patients) are already in THSMF because they have been charged with a crime that cannot likely be prosecuted due their mental illness. In other words, judgment and discretion have to be exercised in deciding whether to prosecute a THSMF patient for a criminal act committed inside THSMF. That judgment and discretion must be exercised by those in the chain of command over the Charging Party. Therefore, if the Facility Director determines in her judgment, or after consultation with other Department personnel, that prosecution is not prudent under the circumstances, then it is within her authority

3

**3**

to instruct subordinates within the THSMF Police not to press criminal charges. The Charging Party has refused to follow such instructions in the past despite being counseled on this matter. This is insubordination which is also a violation of ADMH Policy.

***Charge:*** *"The referenced reprimand and retaliation by Jackson have caused two denial of promotions, heightened emotional distress, anxiety, and an increased need to locate other employment."*

***Response:*** The Department denies that the Charging Party has been denied two promotions for any reason. The Charging Party has interviewed for only one additional position at ADMH since being hired as a Mental Health Security Officer II. The facts and circumstances of the interview process and hiring of another qualified candidate were addressed by the Department in its response to the Charging Party's EEOC Charge Number 420-2018-02230 submitted on September 19, 2018. The Charging Party has not been interviewed for any other positions since that time. Assuming the Charging Party has interviewed for positions with other employers that did not hire him, the Department has no knowledge or control over the hiring practices of third parties.

The Department has no knowledge of the Charging Party's "heightened emotional distress," "anxiety," and "increased need to locate other employment." However, the Department denies any such conditions were caused discrimination or retaliation at the Department.

***Charge:*** *Jackson and several other officials received direct notification of concerns of discrimination and previous filed EEOC charges.*

***Response:*** The Department acknowledges that the Charging Party has accused Department employees of discrimination verbally, in writing, and through formal EEOC Charges. The Department denies that it has discriminated against the Charging Party.

***Charge:*** *To the best of my knowledge and belief, Jackson is targeting my employment to circumvent lawful methods of operating the facility and to retaliate for my effort to resolve issues of discrimination and illegal conduct. Jackson is not an immediate supervisor and has micro-managed to conduct the listed actions. A current timeline has been attached to the charge.*

***Response:*** The Department denies that it has targeted, discriminated against, or retaliated against the Charging Party. Any and all actions taken by the Department have been for violations of ADMH policy and procedure.

The Department denies that Jackson is not the Charging Party's supervisor to the extent that she is the supervisor of the entire THSMF, including its police department. While not his "immediate supervisor," Jackson has supervisory authority over the entire facility. She is part of the Charging Party's chain of command and has supervisory authority over the Charging Party's job functions. The Charging Party has continually refused to recognize this authority and asserts that he can take any actions he sees fit as a Mental Health Security Officer II without input or supervision by Jackson. This attitude constitutes insubordination and violates ADMH Policy 70-5. This issue was previously addressed in part in the Department's response to the Charging Party's EEOC Charge Number 420-2018-02230.

4

**4**

**EXHIBIT 15**

**_Charge:_** *This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment.*

**_Response:_** The Department acknowledges that disciplinary action against an employee may affect their performance evaluation if the disciplinary action is related to job performance.   The Department has demonstrated that any disciplinary action was solely related to Williamson's job performance and was not retaliation in any form.

## CONCLUSION

In conclusion, the Department denies that it or any of its employees has discriminated or retaliated against Derrick Williamson, Jr. on the basis of race. Any and all actions taken toward Williamson were conducted in accordance with Departmental policies and were applied in a non-discriminatory manner.

Should you have any further questions, please feel free to contact me.

Sincerely,

Edward C. Hixon
Assistant Attorney General

5

**5**

**EXHIBIT 15**

# EXHIBIT A

**EXHIBIT 15**

TAYLOR HARDIN SECURE MEDICAL FACILITY
POLICE SERVICE POLICY

Policy no: 200
**Page: 1 of 1**

## SUBJECT: CHAIN of COMMAND, POLICE SERVICES

I    **Policy**

Taylor Hardin Secure Medical Facility (THSMF) Police Services has a clear and established Chain of Command that each officer (Police, Lieutenant, Communication) is to follow in relations to concerns, complaints or any problem involving staffing issues, personal issues or employment. Failure to utilize the Chain of Command will result in serious disciplinary actions ranging from a written reprimand to the termination of employment.

II.    **Procedures**

1.  If an officer has a complaint or problem that involves Police Services procedures, operations or employment is to seek resolution of the problem/issue by;

    - First going to their immediate supervisor, if the problem/issue cannot be resolved to satisfaction at the immediate supervisor level, then the officer is to formally request in writing approval to proceed to the Director of Police Services. A written summary of the problem/issue is to be forwarded to the Director of Police Services.

    - Upon receipt of the written summary the Director of Police Services will schedule a date and time for a meeting with the officer to resolve the problem/issue, if a resolution cannot be met to the officer's satisfaction, then the officer must make a formal request in writing to proceed up to the administrative level ultimately to the Facility Director/designee if necessary.

    - If the Director of Police Services is not available, the 1st shift lieutenant is designated as in charge of Police Services and its operations. In the event both the Director of Police Services and 1st shift lieutenant is unavailable the next available lieutenant will assume the responsibilities of Police Services.

2.  The Chain of Command will be;



APPROVED BY: _Bobby Anderson_

Director of Police Services

Revised on: 3/7/2017

**7**

**EXHIBIT 15**

TAYLOR HARDIN SECURE
MEDICAL FACILITY          No.:  ___201___

Police Services          Page:  ___1 of 2___

SUBJECT:   Director of Police Services

POLICY

The Director of Police Services shall serve as the Chief Law Enforcement Officer of the
Taylor Hardin Secure Medical Facility (THSMF) Police Services and shall be responsible
for the overall operation of the THSMF Police Department and the proper and efficient
enforcement of all laws, rules and regulations of the Department of Mental Health
(DMH). The Director of Police Services shall promulgate such orders as the Facility
Director may deem proper in conformity to the laws, rules and regulations of the DMH.

PROCEDURE

The Director of Police Services shall fulfill the following duties:

1.   Direct supervision of the Police Lieutenants and indirect supervision of Police
     Officers and Communications Officers in the protection and security of the
     facility against fire, theft, vandalism and disorder among patients, staff, and
     visitors to the Facility;

2.   Supervision of work assignments and work schedules of Police Services
     personnel;

3.   Transportation of patients to and from other DMH facilities, hospitals/medical
     offices and community placements; /Court

4.   Planning and implementation of proper procedures for escaped patients;

5.   Supervision and coordination of searches of patients, staff, and facility grounds
     for contraband materials;

6.   Supervision and coordination of search and processing of new admissions and the
     inventory of their possessions to secure unauthorized materials;

7.   Make arrests as necessary;

8.   Plan and schedule in-service training for Police Services personnel;

9.   Supervise operation of the Key Control System;

**8**


**EXHIBIT 15**



No.: 201

Page: 2 of 2

10. Provide assistance to other law enforcement agencies as required and/or requested with the approval of the Facility Director;

11. Manage Police Services budget, planning and expenditures;

12. Make daily reports to the Facility Director/Designee. Conduct special investigations for the facility as required;

13. Investigate accidents, disturbances and unusual occurrences and make written reports;

14. Be responsible for verifying that officers' timecards are properly filled out;

15. Review all written reports to ensure proper completion/documentation;

16. Inspect and instruct in proper care and usage of assigned equipment;

17. Remain on-call for emergencies; and,

18. Perform other related duties as required.

**NOTE:** **THIS LIST SHOULD BE USED AS A GUIDE IN THE PERFORMANCE OF THE DUTIES OF THE DIRECTOR OF POLICE SERVICES, NOT AS A COMPLETE LISTING OF ALL RESPONSIBILITIES.**

APPROVED: _Bobby Anderson_     Revised: 01-26-11
Director of Police Services

**9**

**EXHIBIT 15**

# EXHIBIT B

# EXHIBIT 15





STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
### TAYLOR HARDIN SECURE MEDICAL FACILITY
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON,
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

September 19, 2018

## WRITTEN REPRIMAND

ISSUED TO:          Derrick Williamson, SO II

This **Written Reprimand** is for violations of ADMH Policy 70-5, "Employee Conduct and Accountability; II. STANDARDS: 1 (s) – Violation of safety rules; 1 (bb) – Failure to perform job properly, and 2. All Department employees are expected to cooperate with and to show respect to their co-workers at all times, and violation of THSMF Policy 115-10 (1), "Code Red," III. Procedure: Police Services item 15. "Once the situation is under control, the Police Officer shall instruct that a Code Green should be issued. A Code Green indicates that:

> a. Interventions are completed
> b. The situation is under control, _AND_
> c. Normal program activities can resume."

On August 23, 2018, at approximately 5:30 p.m., a Code Red was called on the CARE program. A CRNP responded to the code and began to assess the situation and identify necessary interventions. She took care of the assaulted patient as he requested medical attention. During this time, the other two (2) patients involved continued to require staff interventions to prevent another altercation. The RNs in the nursing station were preparing PRN medications for administration. After the first PRN medication was administered and while the CRNP was still writing orders to send the attacked patient to the Emergency Room at the hospital for evaluation, a Code Green was called by you as you were walking out of the patient's room. The CRNP told you that she was not ready for the Code Green since she was still writing orders on the attacked patient. You responded to her that you believed the situation was under control.

Therefore you violated THSMF Policy 115-10 (1), "Code Red." By calling the Code Green without ensuring all interventions had been completed. The additional interventions for this situation included moving two of the patients involved since they were roommates, administration of PRN medication for one of the other patients involved in the code, assessing the other two patients involved in the fight, and determining if there was an immediate need to move a patient to the ACE program due to aggressive behaviors.

Serve • Empower • Support

11

**EXHIBIT 15**

This also resulted in a violation of ADMH Policy 70-5, "Employee Conduct and Accountability; II. STANDARD: 1 (s) – Violation of safety rules; by calling the Code Green prior to appropriate interventions being done to ensure patient safety. Further, by ignoring the CRNP when she instructed you that the Code Green was out of order, you violated Standard 2 of this policy by hindering her ability to accomplish her directives regarding patient safety. These violations constitute a failure to perform the job properly.

Further violations of policy will result in more severe disciplinary action.

Supervisor Signature _____ Date of Meeting: 09/21/18

Employee Signature _____ 9/21/18

Employee's signature denotes receipt and not necessarily agreement. Employee may be subject to further disciplinary action for refusal to sign. Employee may submit comments to be attached to this action.

xc:     Personnel File

**12**

**EXHIBIT 15**

# EXHIBIT C

**EXHIBIT 15**

## TAYLOR HARDIN SECURE MEDICAL FACILITY

NUMBER:    THSMF Policy 115-10(1)

SUBJECT:   Safety
TITLE:     Code Red

EFFECTIVE:   09-14-84    REVIEWED:            CHANGED:   12-20-17

RESPONSIBLE
OFFICE:              Police Services

APPROVED: _Anne Jackson, Faculty Director_

### I. POLICY STATEMENT:

Taylor Hardin Secure Medical Facility (THSMF) shall have an organized system for responding to situations of patient aggression or threat of aggression.

### II. STANDARDS:

1. CODE RED procedures shall be utilized any time:

   a. staff are in need of assistance with an aggressive/assaultive patient.
   b. when the situation demands additional staff assistance, (i.e., the location or intensity is such that the staff members available are not sufficient to control the situation).
   c. to expedite getting enough staff to a location, so that imminent aggression or other problems are prevented.

2. A CODE RED constitutes a judgment call. Staff should not hesitate to contact the Control Room for CODE RED broadcast.

3. All staff in the facility have a responsibility to respond appropriately during a CODE RED.

4. Each staff member has a responsibility to recognize that a CODE RED is an emergency situation and to comply with policies/procedures/guidelines/instructions etc.

5. Calls to the Control Room and switchboard operator will be limited to emergencies during a CODE RED event.

6. Only essential pages should be made during a CODE RED.

**14**

# EXHIBIT 15

THSMF Policy 115-10(1)

7. All Forensic Technicians (FT)/Forensic Technician Supervisor (FTS)/Registered Nurses (RN)/Licensed Practical Nurses (LPN) should return from meals or breaks in the event of a CODE RED to their assigned program or to the CODE RED location as appropriate.

8. In the event that additional staff members are needed to assist with the CODE RED, an additional CODE RED message will be issued. If an additional CODE RED message is issued, all available male staff should respond as specified.

## III. PROCEDURE:

**ALL STAFF**

1. The staff member(s) in need of assistance should telephone the Control Room at extension 4911 and state "CODE RED at (location)." The Control Room Officer will announce a "CODE RED" over the intercom system. The intercom message should be broadcast as follows:

    "CODE RED – (Location), CODE RED – (Location)"

2. The message should be repeated again if additional help is needed. In the event of an additional message, all available male staff should respond to the CODE RED location to assist or relieve others as instructed.

3. The following staff should respond when a CODE RED is broadcast:

    a. Police Officers
    b. any Psychiatrist
    c. Nursing Shift Supervisor and assigned program nurse and CODE RED RN, as applicable.
    d. three assigned FTs (one from each program)
    e. and/or other FTs as available.

4. All other staff should remain at their respective duty stations unless called to assist or assigned other specified functions related to the CODE RED situation.

5. Travel into and out of the secure area should involve only staff members assisting with the emergency situation.

## GENERAL INFORMATION RELATED TO CODE RED MANAGEMENT

6. Staff at the CODE RED location should remove uninvolved patients away from the CODE activity and instruct patients to return to their rooms, if the CODE RED is occurring on that program.

**15**

**EXHIBIT 15**

7. Discontinue auditory stimulation; turn off the television.

8. In a CODE RED situation, all patient traffic within the facility should be halted (e.g. traffic from the program to the dining room area). Patients and staff that are already in the hallways should stop until staff responders have passed in the hallways. Staff member(s) and patients may then proceed to their destination, if their destination is not the site of the CODE RED situation, based on the escorting staff member(s)' judgment.

9. Patients should not be allowed to enter a CODE RED location (program, dining room, etc.) until a CODE GREEN is issued.

10. Patients at off-program areas, along with sufficient staff, should remain in place until a CODE GREEN message is broadcast.

## PROGRAM SHIFT SUPERVISOR

11. Each program Shift Supervisor shall designate one (I) FT (where it will not compromise security and patient care) to respond to any CODE RED.

12. CODE RED Team assignments will be indicated on Employee Assignment Sheet.

## POLICE SERVICES

13. The first Police Officer to arrive on the scene takes control of the situation. After communication with the patient and assessment of the situation, the officer plans the safest method of intervention by the Code Team participating as required, and ensures that the patients' welfare is protected.

14. The Police Officer determines the appropriateness of contacting the Director of Police Services and the Facility Director/ designee based on the seriousness of the situation.

15. Once the situation is under control, the Police Officer shall instruct that a CODE GREEN should be issued. A CODE GREEN indicates that:

    a. Interventions are completed,
    b. The situation is under control, **AND**
    c. Normal program activities can resume.

16. The Control Room Operator will announce a "**CODE GREEN**" over the telephone and intercom speaker system. The message should be broadcast as follows:

    **CODE GREEN** – (location), **CODE GREEN** – (Location)

**16**

**EXHIBIT 15**

THSMF Policy 115-10(1)

**PSYCHIATRIST**

17. The first psychiatrist to arrive on the scene assesses the situation, collaborates with the RN/Officer-in-Charge, and determines the appropriate intervention.

18. The psychiatrist orders appropriate treatment for the specific situation.

**PROGRAM RN/CODE RED RN**

19. Directs activities related to patient care.

20. Ensures collaboration with the Officer-in-Charge and psychiatrist.

21. Ensures appropriate supervision of other areas, such as the bathroom.

22. Ensures appropriate supplies are available.

**NURSING SHIFT SUPERVISOR**

23. Ensures psychiatrists' orders are carried out.

24. Coordinates temporary reassignment of patients/staff if needed.

25. Ensures that the restraint chair is available if needed.

26. Ensures appropriate documentation after the event is under control.

**FORENSIC TECHNICIANS ON CODE RED TEAM**

27. Obtain the code keys from the nursing station and proceed to the code location.

28. Manage the patient's behavior using approved CPI techniques as directed by the Police Officer and assist with interventions identified by the RN and psychiatrist.

29. Return to assigned duty station when CODE GREEN is issued.

**PROGRAM STAFF**

30 Program staff shall remove patients from the emergency area and assist with maintaining security.

31. The Program Shift Supervisor/designee at the nursing station shall keep the phone available to call for additional staff or the Facility Director as instructed by the Police Officer.

**17**

**EXHIBIT 15**

THSMF Policy 115-10(1)

**CODE REDS AT RECREATIONAL/EDUCATIONAL LOCATIONS (In addition to other CODE RED procedures, the following procedures should be implemented.)**

32. Recreation/Education Activities: Recreation staff should secure hazardous items and check for any missing items.

33. Ballfield:

    a. Move involved patients away from problem area.
    b. Assemble patients by programs.
    c. Nursing Service should verify presence of all patients in the area ASAP; advise Control Room.
    d. *Be alert to the possibility of an escape attempt – CODE I*.

**ADDITIONAL CODE RED ANNOUNCEMENT**

34. Additional available FT/FTS staff and those male staff members trained in seclusion or restraint should respond to the CODE RED location to assist as instructed. The program supervisor may instruct additional FTs to respond based upon the situation.

35. Male staff members who do not routinely receive training in seclusion or restraint: Report to a location outside of the CODE RED area to relieve those specially trained male staff members (FT/FTS or others) to assist at the site of the CODE RED.

36. Nursing staff should provide appropriate assignments/instructions to male staff members reporting to other locations, so that additional FT/FTS staff may respond to the CODE RED location. Possible support assignments may include:

- Monitoring patient bathroom.
- Giving attention to "high-risk" patients.
- Staffing the nurse's station.

**18**

# EXHIBIT 16

# RESPONSE TO POSITION STATEMENT
WILLIAMSON & ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
## CHARGE: 420-2018-04087

Dear EEOC Investigator,

The Respondents' indicates that Ms. Annie Jackson (Director of Taylor Hardin Secure Medical Facility - THSMF) is the direct supervisor of all departments of THSMF. It should be noted that Jackson supervises the appointed directors of each department within the facility as indicated in Respondents' EXHIBIT A. Jackson does not directly supervise these departments. Additionally, THSMF does not have its own "police department" but employs Alabama Peace Officer Standards' and Training Commission (APOSTC) commissioned police officers under State of Alabama Code 22-50-21 establishing the following:

*"The State Mental Health Officer may appoint or employ one or more suitable persons to act as police officers to arrest intruders, trespassers, and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals.  Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings, or lands or arrest them and may, without warrant, arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant.  Such police officer shall have authority to summon a posse comitatus."*

THSMF also employs a Police Captain and not a Police Chief. The Police Captain, although, is the chief law enforcement official within the facility.

The Respondents' state that Mr. Williamson received a legitimate written reprimand on September 21, 2018 in regards to calling a "Code Green" during a "Code Red (patient altercation)". Mr. Williamson provided a formal response to the provided reprimand detailing documented false information and the Respondents' willingness to bypass Mr. Williamson's due process rights. Mr. Williamson was reprimanded based upon a Caucasian Female's interpretation of the matter at hand who was fairly disrespectful and was not asked to provide a statement in regards to the matter. The department currently acknowledges Alabama State Employees Association (ASEA) as the department's collective bargaining agency. In the event the matter was presented for

**1**

**EXHIBIT 16**

review, Mr. Williamson would have had the opportunity to request counsel to represent him in this matter. Jackson presented the reprimand after receiving statement from Pilkinton and purposely circumvented acquiring Mr. Williamson's interpretation and/or observation. Mr. Williamson's response to Respondent's EXHIBIT B is provided as EXHIBIT 1. The Respondent clearly took advantage of the presented opportunity to retaliate against Mr. Williamson based upon previous EEOC charges and inflated an issued in which Mr. Williamson did have authority as indicated in EXHIBIT 1. Jackson was also in possession of access to video footage to compare with Pilkinton's statement but failed to do so or deliberately omitted findings. The Respondent may wish to also clarify the presented matter in their provided policy; as Mr. Williamson could not ascertain that Stephanie Pilkington was "acting" as a Psychiatrist during this matter. Mr. Williamson was also overseen during this disciplinary action by an Interim Captain who occupied the same classification as Mr. Williamson. The indicated individual, Jeremy Booth, was significantly close to Mr. Williamson's former supervisor, Robert Anderson, Jr., and appears to share his discriminatory approach. Mr. Williamson is well aware of his rights and has actively presented such rights to the Respondents' who fail to acknowledge such.

The Respondents' fail to address the issue of the established pre-disciplinary conference in reference to this charge; as they have stated that this is addressed in a subsequent charge of discrimination as charge number 420-2019-00234. Comments cannot be provided in regards to this matter until a position statement is received in regards to this charge.

The Respondents' address circumstances regarding the reporting of illegal activity and advise that Mr. Williamson is "apparently frustrated". Mr. Williamson's perceived frustrations are irrelevant to the facts at hand. THSMF, according to the Respondent, houses "some" patients who are defined as mentally ill and are being mentally evaluated. On numerous occasions, Mr. Williamson has noted illegal activity (conspiracy schemes) being led by "patients" at THSMF. The department has additionally made arrests in regards to the indicated schemes for conspiracy. A significant amount of THSMF patients arrive at THSMF for mental evaluation, promote prison contraband and other illegal activity, and are found mentally competent. Additionally, Mr. Williamson met with and spoke to senior officials with the Tuscaloosa County District Court and Mr. Williamson received a warrant of arrest on a current patient after expressing all details to Senior Assistant District Attorney Johnathan Cross. Attorney Cross agreed with Mr. Williamson's perspective and sanctioned the issuance of an arrest warrant upon a patient currently housed at the facility. Following this rightful authority, the Respondents' issued a written reprimand preventing external contact in regards to ADMH with any external agency unless prior approved. The justification was that Mr. Williamson found probable cause and presented details showing that the indicated patient was competent while promoting prison contraband. The Respondents fail to make the distinction that THSMF is considered a "detention facility" by Alabama State Law and the department's Special Agents have recently, also, used the charge of Promoting

**2**

Prison Contraband to effect an arrest. The department's Special Agents have also investigated several cases against current patients at the facility and are currently seeking indictment on several for incidents which occurred while the patients/suspects were housed at the facility. It should be noted that Mr. Williamson's authority (powers of arrest) and the department's Special Agent's power of arrest are derived from the same statute presented earlier in this response. All of ADMH's Special Agents are Caucasian.

With the above information at hand, Mr. Williamson has been well within his assigned authority by state law to conduct actions of affecting arrest and seeking criminal prosecution. The Respondents' indicate that contraband matters are not treated as matters of criminal prosecution. Mr. Williamson has personally confiscated narcotics from patients but has not pursued criminal prosecution according to the department's standards but has referred his concerns to management. The indicated issue above is the one time Mr. Williamson has retrieved a warrant of arrest against a patient. However, Mr. Williamson has also led investigations against staff in which several criminal acts have been committed. Jackson (Facility Director) specifically advised Mr. Williamson not to exercise his authority against staff unless she reviewed matters prior. Matters which were presented to Jackson resulted in no furtherance of the administration of justice. It should be noted that Jackson is not a law enforcement officer, possesses no criminal justice education, and is not certified as a law enforcement officer. Jackson's behavior would clearly be defined as Hindering Prosecution under Alabama Code 13A-10-43 to 13A-10-44. Prior to concerns of discriminatory retaliation, Mr. Williamson conducted investigations and made arrests of staff without issue. It should also be noted that the discretion of the use of Mr. Williamson's arrest authority is provided to him, not a non-law enforcement official such as Ms. Jackson. The Respondents' willingly admit to Ms. Jackson committing the criminal offense of Obstructing Governmental Operations and Hindering Prosecution as listed in Alabama Criminal Code. It should also be noted that Mr. Williamson's job description includes his ability to conduct investigations and enforce federal and state law as defined in EXHIBIT 3. This is a violation of written contract between the Respondents' and Mr. Williamson; as he has signed that he would conduct the indicated duties. Mr. Williamson also contends that he has been insubordinate because his job description provides the indicated authority and based upon acceptable standards, he may reject a directive/order which is illegal, immoral, and/or unethical. Mr. Williamson advised the Respondents' of illegal conduct along with discriminatory practices and has actively been retaliated against. He provided copies of EEOC charges filed directly to individuals in question.

The Respondents' state that Mr. Williamson was not denied two promotions. Mr. Williamson, along with the position of Mental Health Special Agent, applied for an Administrator II (Clinical Investigator) position at the Respondents' Bryce Hospital location within the month of July 2018. Mr. Williamson, at the time of application, had been currently employed by the Alabama Department of Mental Health for 22 months. The provided requirements advised that 24 months within the "mental health field" was required and Mr.

**3**

**EXHIBIT 16**

Williamson was not considered. The Respondents' failed to identify or specify what constituted a "mental health field" in which Mr. Williamson felt inspired to apply because he traditionally worked with the mentally ill while employed in a correctional officer position with the St. Clair County Sheriff's Office, similar to his current position with the ADMH. Mr. Williamson is also aware that mental health experience has been computed with the use of external agencies/areas of employment (non-mental health department/agencies) for other applicants. Nonetheless, Mr. Williamson was only shy by two months of what the Respondents' considered the "mental health field" and would have begun employment following those two months due to the extended selection process. Mr. Williamson is also personally aware that the selected candidate was fresh out of college and lacking this required experience. This ill consideration also follows the initial charge of discrimination in which Mr. Williamson subsequently began experiencing retaliation. We requested that you determine whether other candidates were eliminated from this process and attempt to ascertain whether other individuals were interviewed who did not successfully meet the provided minimum qualifications. We also request the qualifications of the selected individual.

The Respondents' state that they were unaware of Mr. Williamson's heightened emotional distress, anxiety, and increased need to locate other employment. Whether the Respondents' were aware of such is irrelevant in this charge, although, the Respondents' had to be aware of Mr. Williamson seeking external employment; as a Department of Homeland Security Background Investigator interviewed several individuals at the facility for Mr. Williamson's background investigation. Mr. Williamson, a formerly praised employee with exceeding standards performance appraisals, began receiving insufficient and spurious disciplinary action following the expression of his initial concerns of discrimination. The Respondents' also failed to address Mr. Williamson's complaint of a hostile work environment and whistle blower violations, leading to distress in his inability to remedy his concerns.

The Respondents' acknowledges receipt of Mr. Williamson's discriminatory concerns but denies causation. The Respondents' statement is insufficient to present non-discriminatory motives. Mr. Williamson clearly began experiencing discrimination and/or retaliation from the Respondents' following his report of discrimination. The Respondents' state that any and all actions taken have been for violations of ADMH Policy and procedure but Mr. Williamson clearly presents the fact that the Respondents' are not following their established policy.

The Respondents' state that Mr. Williamson has failed to acknowledge supervisory authority of Jackson. Mr. Williamson contends and provides sufficient documentation to show that he has operated under authority designated to him by the department in EXHIBIT 2 and by the State of Alabama. It should be noted that Mr. Williamson does not assert his authority under the provided job description, although it does provide for

**4**

**EXHIBIT 16**

authority for conducted actions; Mr. Williamson asserts his authority as a sworn law enforcement officer of the State of Alabama. Mr. Williamson took an oath which presented the below statement(s):

*"Uphold and enforce the criminal laws and constitution of the United States" and "Neither will I be influenced in the discharge of my duty by fear, promise of favor or affection, or the hope for or offer of reward"*

The Respondents' actively employ law enforcement officers who are also bound by the indicated statements and are also expected to execute duties vested to them. This would not constitute insubordination seeing that the department actively requires its law enforcement officers to be certified under APOSTC who administers the same oath to all graduating law enforcement officers. Unfortunately, Mr. Williamson has completed the same actions as other law enforcement officers of the department but has in turn been subjected to discrimination and retaliation. Senior Special Agent Joseph Rittner, Special Agent Kevin McDaniel, Lieutenant Jeremy Booth, Officer William Hicks. Officer Shane Pike, all of which are Caucasian, have made similar arrests and have taken the same approach as Mr. Williamson while employed by the department without reprisal and/or retaliation. Mr. Williamson is an educated African American. The respondents' are aware and wish to limit his abilities due to his race without disrupting the abilities of Caucasian co-workers.

The Respondents' acknowledge that Mr. Williamson's significantly lowered performance appraisal score directly relates to his ability to receive a raise. Mr. Williamson was not afforded a two-step pay raise (approximately 5%) due to the Respondent's discriminatory nature. Mr. Williamson's performance went from "exceeding standards" to "partially meeting standards" following his report of discriminatory conduct and illegal activity. Mr. Williamson was also not selected for a promotion to Special Agent with the department's Bureau of Special Investigation. The department selected a non-qualified and Caucasian individual and avoided hiring an African American who was well qualified for that positon.

If you have any additional questions, please do not hesitate to give me a call. My direct dial is (205) 314-0544.

Very truly yours,

Russell W. Adams

**5**

EXHIBIT 16

# EXHIBIT 1

**EXHIBIT 16**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

**WRITTEN REPRIMAND RESPONSE**
**(ISSUED ON 9/19/2018)**

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

# INITIAL REPRIMAND RESPONSE

Reference: Response to Written Reprimand

1) The Certified Nursing Practitioner Stephanie Pilkinton advised that I "stole her Code Green" in a very confrontational matter and Pilkinton did not advise that further interventions were being made or initiated.
2) Pilkinton advised that I "stole her Code Green" in the presence of Officer Michael Kelley while leaving the program. Pilkinton then advised that she was attempting to relocate a patient from the program in which she did not.
3) Pilkinton was passively aggressive during this situation and from my recollection, there were no PRNs issued after I advised a Code Green.
4) The indicated Code Red policy applies to all police officers on the property and if there isn't sufficient clarification in the policy that states this police officer is to consult with a Certified Nursing Practitioner then changes should be made.
5) All Code Greens in the past have been called after 1) the patients are no longer aggressive 2) PRNs have been administered 3) necessary separations have been completed
6) The indicated Code Red lasted approximately 25 minutes which required staff to remain on the program.
7) Code Reds have never, in my approximate two years, have been held until emergency room orders are completed.
8) The CNRP was not ignored. If the Code Green was insufficient based upon all previous occurrences and Pilkinton's disrespectful tone and statement of "you stole my Code Green" did not significant her interventions were not completed.
9) If the indicated Code Green was not appropriate, an additional Code Red should have been called in order to identify and acknowledge that a secondary issue of concern existed. No additional Code Red was called.

- It should also be noted that no consultation or verbal counseling occurred prior to the issuance of this reprimand.
- I was not questioned or asked for my account of the incident prior to this decision.
- It appears that a bias exists with the issuance of this reprimand and I believe that its issuance is not appropriate without checks and balances.
- This reprimand was not the decision of an internal investigation conducted by the facilities clinical investigator which also poses concerns.
- It appears that I am being targeted following several complaints and Equal Employment Opportunity Commission charges and after Jackson requested a "self-rating" for my personal performance appraisal scheduled for December 2018.

**7**

**EXHIBIT 16**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**WRITTEN REPRIMAND RESPONSE**
**(ISSUED ON 9/19/2018)**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

# INCLUSIONS

10/29/2018 7:37 PM

Below are subsequent additions are reviewing footage and documents in relation to this incident. It appears that information was falsified to justify the issuance of a written reprimand.

## AUTHORITY ESTABLISHMENT

"Therefore you violated THSMF Policy 1115-10(1), "Code Red." By calling the Code Green without ensuring all interventions had been completed."

According to the same policy referenced:

### *"POLICE SERVICES*

*13. The first Police Officer to arrive on the scene takes control of the situation. After communication with the patient and assessment of the situation, <u>the officer plans the safest method of intervention by the Code Team participating as required,</u> and ensures that the patients' welfare is protected."*

According to this policy, sufficient grounds existed to establish an appropriate method of intervention. In this instance, Certified Nursing Practitioner Stephanie Pilkinton was also purview to establishing intervention in reference to the following section:

*"15. Once the situation is under control, the Police Officer shall instruct that a CODE GREEN should be issued. A CODE GREEN indicates that:*

  *a. Interventions are completed,*
  *b. The situation is under control, **AND***
  *c. Normal program activities can resume.*

*17. The first psychiatrist to arrive on the scene assesses the situation, collaborates with the RN/Officer-in-Charge, and determines the appropriate intervention."*

Video footage clearly shows Pilkinton did not collaborate with me as the policy states she is required to. If interventions were unknown other than PRNs, I acted upon the appropriate information available to me at the time the decision was made. Within my employment at Taylor Hardin Secure Medical Facility, a Code Red has never surpassed the administration of PRNs.

## FALSIFIED INFORMATION

**A violation of *ADMH Policy 70-5 – Employee Conduct and Accountability* is being reported.**

*aa. Alteration and/or falsification of Department and/or facility documents/records*

**8**

**EXHIBIT 16**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**WRITTEN REPRIMAND RESPONSE**
**(ISSUED ON 9/19/2018)**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

"On August 23, 2018, at approximately 5:30 p.m., a Code Red was called on the CARE program."

1. Code Red was called at 1718 (5:18 PM) according to video footage and Police Services Daily Activity Report.
2. Code Green was called at 1732 (5:32 PM) according to Police Services Daily Activity Report.
   a. Video footage shows me exiting the patient's room
   b. Contact is made with Certified Nursing Practitioner at 1734 (5:34 PM) according to video.

"Moving two of the patients involved since they were roommates, administration of PRN medication for one of the other patients involved in the code, assessing the other two patients involved in the fight, and determining if there was an immediate need to move a patient to the ACE program due to aggressive behaviors."

3. No additional PRNs administered on any other involved patients according to video footage up until Certified Nursing Practitioner Stephanie Pilkinton leaves the program and thirty minutes following her leave.
4. No patients relocated at the time of incident according to video footage.
5. Pilkinton briefly speaks with patient which did not constitute intervention.
6. Medication pass is called at 1744 (5:44 PM) according to video footage.

"You responded to her that you believed the situation was under control"

1. Falsified information and/or hearsay without the presence of a written and signed statement.

### DUE PROCESS VIOLATIONS

1. No interview conducted of the accused (myself) as a standard procedure when hearsay is involved.
2. No interview conducted of Officer Michael Kelley as a standard procedure when hearsay is involved.
   a. Kelley was in direct contact when statements were made pertaining to Pilkinton's "objection" in which she advised "You stole my Code Green"
3. Inability to defend against allegations according to policy and procedure.

**DERRICK JAMES WILLIAMSON, JR.**
Police Lieutenant
Alabama Department of Mental Health

**9**

**EXHIBIT 16**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**

**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

## WRITTEN REPRIMAND RESPONSE
### (ISSUED ON 9/19/2018)

**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Work Cellular Phone:** (205) 792-2089
**Work Office Phone:** (205) 462-4554

**10**

EXHIBIT 16

# EXHIBIT 2

**EXHIBIT 16**

## TAYLOR HARDIN SECURE MEDICAL FACILITY

NUMBER:   THSMF Policy 115-10(1)

SUBJECT:   Safety
TITLE:   Code Red

EFFECTIVE:   09-14-84   REVIEWED:   CHANGED:   11-09-15

RESPONSIBLE
OFFICE:   Security Services

APPROVED: _Dr. Barbra G. Jackson_

### I. POLICY STATEMENT:

Taylor Hardin Secure Medical Facility (THSMF) shall have an organized system for responding to situations of patient aggression or threat of aggression.

### II. STANDARDS:

1. CODE RED procedures shall be utilized any time:

   a. staff are in need of assistance with an aggressive/assaultive patient.
   b. when the situation demands additional staff assistance, (i.e., the location or intensity is such that the staff members available are not sufficient to control the situation).
   c. to expedite getting enough staff to a location, so that imminent aggression or other problems are prevented.

2. A CODE RED constitutes a judgment call. Staff should not hesitate to contact the Control Room for CODE RED broadcast.

3. All staff in the facility have a responsibility to respond appropriately during a CODE RED.

4. Each staff member has a responsibility to recognize that a CODE RED is an emergency situation and to comply with policies/procedures/guidelines/instructions etc.

5. Calls to the Control Room and switchboard operator will be limited to emergencies during a CODE RED event.

6. Only essential pages should be made during a CODE RED.

**12**

7. All Forensic Technicians (FT)/Forensic Technician Supervisor (FTS)/Registered Nurses (RN)/Licensed Practical Nurses (LPN) should return from meals or breaks in the event of a CODE RED to their assigned program or to the CODE RED location as appropriate.

8. In the event that additional staff members are needed to assist with the CODE RED, an additional CODE RED message will be issued. If an additional CODE RED message is issued, all available male staff should respond as specified.

## III.PROCEDURE:

### ALL STAFF

1. The staff member(s) in need of assistance should telephone the Control Room at extension 235 and state "CODE RED at (location)." The Control Room Officer will announce a "CODE RED" over the intercom system. The intercom message should be broadcast as follows:

   "CODE RED – (Location), CODE RED – (Location)"

2. The message should be repeated again if additional help is needed. In the event of an additional message, all available male staff should respond to the CODE RED location to assist or relieve others as instructed.

3. The following staff should respond when a CODE RED is broadcast:

   a. Police Officers
   b. any Psychiatrist
   c. Nursing Shift Supervisor and assigned program nurse and CODE RED RN, as applicable.
   d. three assigned FTs (one from each program)
   e. and/or other FTs as available.

4. All other staff should remain at their respective duty stations unless called to assist or assigned other specified functions related to the CODE RED situation.

5. Travel into and out of the secure area should involve only staff members assisting with the emergency situation.

### GENERAL INFORMATION RELATED TO CODE RED MANAGEMENT

6. Staff at the CODE RED location should remove uninvolved patients away from the CODE activity and instruct patients to return to their rooms, if the CODE RED is occurring on that program.

7. Discontinue auditory stimulation; turn off the television.

8. In a CODE RED situation, all patient traffic within the facility should be halted (e.g. traffic from the program to the dining room area). Patients and staff that are already in the hallways should stop until staff responders have passed in the hallways. Staff member(s) and patients may then proceed to their destination, if their destination is not the site of the CODE RED situation, based on the escorting staff member(s)' judgment.

9. Patients should not be allowed to enter a CODE RED location (program, dining room, etc.) until a CODE GREEN is issued.

10. Patients at off-program areas, along with sufficient staff, should remain in place until a CODE GREEN message is broadcast.

## PROGRAM SHIFT SUPERVISOR

11. Each program Shift Supervisor shall designate one (1) FT (where it will not compromise security and patient care) to respond to any CODE RED.

12. CODE RED Team assignments will be indicated on Employee Assignment Sheet.

## SECURITY

13. The first Police Officer to arrive on the scene takes control of the situation. After communication with the patient and assessment of the situation, the officer plans the safest method of intervention by the Code Team participating as required, and ensures that the patients' welfare is protected.

14. The Police Officer determines the appropriateness of contacting the Director of Security Services and the Facility Director/ designee based on the seriousness of the situation.

15. Once the situation is under control, the Police Officer shall instruct that a CODE GREEN should be issued. A CODE GREEN indicates that:

   a. Interventions are completed,
   b. The situation is under control, **AND**
   c. Normal program activities can resume.

16. The Control Room Operator will announce a **"CODE GREEN"** over the telephone and intercom speaker system. The message should be broadcast as follows:

   **CODE GREEN** – (location), **CODE GREEN** – (Location)

**14**

## PSYCHIATRIST

17. The first psychiatrist to arrive on the scene assesses the situation, collaborates with the RN/Officer-in-Charge, and determines the appropriate intervention.

18. The psychiatrist orders appropriate treatment for the specific situation.

## PROGRAM RN/CODE RED RN

19. Directs activities related to patient care.

20. Ensures collaboration with the Officer-in-Charge and psychiatrist.

21. Ensures appropriate supervision of other areas, such as the bathroom.

22. Ensures appropriate supplies are available.

### NURSING SHIFT SUPERVISOR

23. Ensures psychiatrists' orders are carried out.

24. Coordinates temporary reassignment of patients/staff if needed.

25. Ensures that the restraint chair is available if needed.

26. Ensures appropriate documentation after the event is under control.

## FORENSIC TECHNICIANS ON CODE RED TEAM

27. Obtain the code keys from the nursing station and proceed to the code location.

28. Manage the patient's behavior using approved CPI techniques as directed by the Police Officer and assist with interventions identified by the RN and psychiatrist.

29. Return to assigned duty station when CODE GREEN is issued.

## PROGRAM STAFF

30 Program staff shall remove patients from the emergency area and assist with maintaining security.

31. The Program Shift Supervisor/designee at the nursing station shall keep the phone available to call for additional staff or the Facility Director as instructed by the Police Officer.

**CODE REDS AT RECREATIONAL/EDUCATIONAL LOCATIONS (In addition to other CODE RED procedures, the following procedures should be implemented.)**

32. Recreation/Education Activities: Recreation staff should secure hazardous items and check for any missing items.

33. Ballfield:

   a. Move involved patients away from problem area.
   b. Assemble patients by programs.
   c. Nursing Service should verify presence of all patients in the area ASAP; advise Control Room.
   d. *Be alert to the possibility of an escape attempt – CODE 1*.

**ADDITIONAL CODE RED ANNOUNCEMENT**

34. Additional available FT/FTS staff and those male staff members trained in seclusion or restraint should respond to the CODE RED location to assist as instructed. The program supervisor may instruct additional FTs to respond based upon the situation.

35. Male staff members who do not routinely receive training in seclusion or restraint: Report to a location outside of the CODE RED area to relieve those specially trained male staff members (FT/FTS or others) to assist at the site of the CODE RED.

36. Nursing staff should provide appropriate assignments/instructions to male staff members reporting to other locations, so that additional FT/FTS staff may respond to the CODE RED location. Possible support assignments may include:

   - Monitoring patient bathroom.
   - Giving attention to "high-risk" patients.
   - Staffing the nurse's station.

**16**

**EXHIBIT 16**

# EXHIBIT 3

**EXHIBIT 16**

# POSITION CLASSIFICATION QUESTIONNAIRE

### STATE OF ALABAMA
Personnel Department

PCQ #: _____

1. Employee's
   Name:   Lt. Derrick Williamson                                    (For Dept Use Only)

2. Classification   MH Security Officer II          5.   Division   Secure Medical Facility

3. Working Title   Lieutenant                       6.   Section or Unit   6090 – Police

4. Department   Mental Health                        7.   Work Location   Tuscaloosa

8. Name and Title of immediate supervisor (person who assigns you work)   Major Bobby Anderson

   Director of Security Services

9. Position is:   Full-time   X   part-time _____ permanent   X   temporary _____

10. SUPERVISION EXERCISED: Only complete this section if you complete performance appraisals or actually participate in rating
    other employees. If you function as a lead worker and only assign work, then list that responsibility in item 11B as a duty.

    a.   Total number of employees that you supervisor:   _____
    b.   Percentage of time spent on supervision and related duties:   _____
    c.   If you directly supervise 5 or less employees, give names and titles. If the DIRECTLY supervise 5 or more employees
         give the number and official classification of each.

| MH Security Officer I's - 4 | |
|---|---|
| | |
| | |
| | |

    d.   As a supervisor, do you: (Check the activities you perform)
         Make daily work assignments?                              X
         Approve and Disapprove leave requests?                    X
         Reassign job duties on permanent basis?                   ____
         Interview and make hiring recommendations?                ____
         Recommend disciplinary actions?                           X
         Prepare and conduct performance appraisals?               X

11. DESCRIPTION OF DUTIES PERFORMED:

    a.   In one or two sentences, describe the major purpose of this position.

Supervising Police Officers, Communications Officers, evaluating officers job performance; Ensure shift coverage; Maintain safe and
secure environment for patients, staff and visitors; Ensure patients are transported to different out of facility appointments.

**18**

**EXHIBIT 16**

b.   Duty Statement (Complete Column C first)
- In Column A, indicate PERCENTAGE of time spent on each duty (total should not exceed 100%)
- In Column B, rate your duties as to their IMPORTANCE. VI-Very Important I-Important SI-Somewhat Important
- In Column C, describe in detail each of your permanent duties and responsibilities using our OWN words

| A * | B rating | Description of Duties |
|---|---|---|
| 1 | I | This employee routinely works with adult mentally ill patients; however, will be trained and competent to assess and treat geriatric patients and adolescents as assigned. |
| 20 | VI | Supervise staff assigned to shift. |
| 2 | VI | Insure adequate shift coverage. |
| 1 | I | Conduct security assessments. |
| 5 | I | Prepare Police Reports. |
| 5 | I | Conducts investigations. |
| 1 | I | Reviews reports written by police officers. |
| 8 | I | Conducts internal/external security checks. |
| 5 | I | Conducts security key checks. |
| 1 | SI | Conducts equipment checks. |
| 2 | I | Transports patients to outside facility appointments. |
| 2 | I | Make reports to Director of Police Services. |
| 0 | SI | Serve legal documents to patients and staff. |
| 10 | I | Evaluates performance of officers. |
| 0 | SI | Does admissions and discharges. |
| 1 | I | Conducts patient searches, program searches, room searches. |
| 10 | I | Monitors other staff for safety and security |
| 5 | SI | Conducts in-service classes. |
| 1 | I | Performs emergency maintenance as required. |
| 20 | I | Does all duties listed in Security Officer I, Form 40. |

(Attach additional sheets if necessary)

**19**

12. DECISION MAKING: Give example(s) of the more important decisions you make while performing the duties of this position. Then list the possible effect of error(s) on the organization or general public.

Allowing individuals or items in secure area, also determining escape risk as this would create a breach in security by possible escape or injury to patients, visitors or staff.

13. FINANCIAL RESPONSIBILITY: If you have responsibility for controlling and/or authorizing the expenditure of funds, please describe and indicate approximate amount controlled.

N/A

14. WORK GUIDELINES: (Only include written guidelines) List the specific laws, regulations, instructions, manuals, or procedures that must be followed in performing the job and describe how you use them.

| LIST ITEM | HOW USED |
|---|---|
| SMF Policies | As guidelines |
| DMH Policies | As guidelines |
| Title 13A | Performing duties as Police Officer, make arrest, etc. |
| Title 32A | Performing duties as Police Officer, make arrest, etc. |
| FCC Regulations | Radio procedures, etc. |
| | |
| | |

15. SUPERVISION RECEIVED:

How is your work reviewed? (Check one)

_____ Supervisor reviews most or all of my work while it is being done.

_____ Supervisor spot checks my work as it is being done.

_____ Supervisor reviews most or all of my work after completion.

__X__ Supervisor spot checks my work after completion.

_____ Supervisor does not review my work.

_____ Other. (describe fully) General administrative review.

16. WORK CONTACTS: With whom, outside of co-workers in this unit, must this position regularly come in contact?

| Who Contacted | How (Phone/in person, etc. | Purpose of contact | How often |
|---|---|---|---|
| Doctors | Phone/in person | Codes | Daily |
| Nursing Staff | Phone/in person | Codes | Daily |
| Administrators | Phone/in person | Concerning patients | Daily |
| Psychologist | Phone/in person | Concerning security assessments | Weekly |
| Personnel | Phone/in person | Concerning, time/holidays, leave, etc. | Weekly |

**20**

**EXHIBIT 16**

17. EQUIPMENT USED: List any equipment used regularly in your work. Give percent of time spent in operation of each. For vehicles and construction and maintenance equipment operated, indicate capacity, e.g., tonnage, yardage.

| | |
|---|---|
| NCIC Computer | Metal detector |
| Switchboard | Patrol Car |
| Base Radio | TV monitors |
| Control Room Panel | Phone |

a.  Does this position require typing?             b.  Does this position require taking shorthand?

   X   No                                             X   NO
      YES—Give % of time spent typing___%             _____ YES—Give % of time spent in shorthand _____%

## ITEMS TO BE COMPLETED BY IMMEDIATE SUPERVISOR AND/OR APPOINTING AUTHORITY

18.  Are the statements of the employee accurate and complete?  (Indicate inaccuracies and incomplete items)

Yes

19.  If duties are for reallocation of position, what additional and/or more complex duties have been added to this position to warrant relocation.

No

20.  List any required licenses, registrations, certifications, or special requirements necessary to perform the job.

Law Enforcement Academy, County Commission, Fire Arms Qualifications.

21.  Check below the type of supervision provided by the immediate supervisor to this position.

     CLOSE/HANDS ON             OR             X  GENERAL/ADMINISTRATIVE

22.  Additional information and comments (additional sheets may be attached, if necessary).

| Item # | |
|---|---|
| | |
| | |
| | |

## VERIFICATION - READ CAREFULLY BEFORE SIGNING

I hereby certify that I have read the above and verify that it is, to the best of my knowledge, correct and accurate.  I understand that disciplinary action could be taken against anyone who knowingly provides false information.

| | | | |
|---|---|---|---|
| Signature of Incumbent | Date | | Telephone # (ATTNET) |
| Signature of Supervisor | Date | Title/Classification | Telephone # (ATTNET) |
| Signature of Appointing Authority | Date | | Telephone # (ATTNET) |

QUESTIONNAIRES NOT SIGNED BY ALL PARTIES WILL BE RETURNED

**21**

# EXHIBIT 17

**EXHIBIT 17**

EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Derrick J. Williamson, Jr.<br>8816 Old Greensboro RD<br>Apt. 20104<br>Tuscaloosa, AL 35405 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street<br>Birmingham, AL 35205 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
|  | **ANDRE D. WILLIAMS,** | | |
| **420-2018-04087** | **Investigator** | | **(205) 212-2147** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| **X** | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

MAR 2 7 2019

*(Date Mailed)*

cc:  **Alabama Department of Mental Health**
**c/o Eddie Hixon**
**Post Office Box 301410**
**Montgomery, AL 36130**

# EXHIBIT 18

**EXHIBIT 18**

EEOC Form 5 (11/09)

RECEIVED

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 420-2019-00234 |

and EEOC

U.S. EEOC
Birmingham District Office
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Derrick James Williamson, Jr. | (205) 422-9664 | 01/25/1991 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8816 Old Greensboro RD APT 20104, Tuscaloosa, Alabama, 35405 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Alabama Department of Mental Health (Taylor Hardin Secure Medical Facility) | 500+ | (205) 462-4500 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1301 Jack Warner Parkway NE, Tuscaloosa, Alabama, 35404 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| N/A | N/A | N/A |

| Street Address | City, State and ZIP Code |
|---|---|
| N/A | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12/6/2017    Latest: 10/11/2018

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am an African American male who is being subjected to retaliation employed in a Mental Health Security Officer II (Police Lieutenant) position with the Alabama Department of Mental Health. On 10/17/2018, a written warning dated for 10/11/2018 was provided in response to a pre-disciplinary conference (PDC) which occurred on 9/28/2018. Ten defenses which exonerated any wrong-doing resulted in Director Annie Jackson (Facility Director) imposing a written warning without sufficient documentation or response. A representing attorney who attended the pre-disciplinary conference as a witness believed that the provided response would be adequate and overly sufficient to exonerate wrong-doing alleged. My current supervisor, Jeremy Booth, also stated that my response was "good" and sufficient. In efforts to retaliate, Jackson did not consider the provided information (my written response) to make an appropriate determination and based her actions/response on Equal Employment Opportunity Commission (EEOC) actions. Jackson has been requested to provide an adequate response to the indicated PDC instead of the following: "I have carefully considered the information presented at our conference and it is my conclusion that you did violate the above-mentioned policies. Therefore, this letter will serve as a **Written Warning**". The listed action, along with prior actions, will prevent adequate consideration for an upcoming promotion opportunity which Jackson is aware of. A current and updated timeline has been attached to this charge. This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10/17/2018 _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# EXHIBIT 19

# EEOC Charge 10.17.18 & Pending Charge History

## Williamson, Derrick

Wed 10/17/2018 10:33 PM

Sent Items

To:Long, Joe <Joe.Long@hardin.mh.alabama.gov>;

Cc:Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>;

Importance: High

Sensitivity   Confidential

📎  1 attachments (148 KB)

10.17.18 - Charge of Discrimination (Retaliation).pdf;

Good evening,

The referenced charge from earlier today is attached.

The following are pending/former charges with their disposition:

Charge 420-2018-02230 - 5/2/2018 - EEOC Investigation Phase
Charge 420-2018-03769 - 8/20/2018 - EEOC Investigation Phase
Charge 420-2018-04087 - 9/27/2018 - Pending Review

Thank you,



**DERRICK J. WILLIAMSON, JR., BS, AS, NP, AAN**
*Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway Northeast
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4554
**Work Cellular Phone**: (205) 792-2089

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**EXHIBIT 19**

# Read: EEOC Action Pending

### Long, Joe

Wed 10/17/2018 3:34 PM

To:Williamson, Derrick <Derrick.Williamson@Hardin.mh.alabama.gov>;

Importance: High

Your message

To: Long, Joe
Subject: EEOC Action Pending
Sent: Wednesday, October 17, 2018 3:22:35 PM (UTC-06:00) Central Time (US & Canada)

was read on Wednesday, October 17, 2018 3:34:52 PM (UTC-06:00) Central Time (US & Canada).

**3**

**EXHIBIT 19**

# Read: EEOC Action Pending

### Booth, Jeremy

Wed 10/17/2018 8:45 PM

To:Williamson, Derrick <Derrick.Williamson@Hardin.mh.alabama.gov>;

Importance: High

Your message

To: Booth, Jeremy
Subject: EEOC Action Pending
Sent: Wednesday, October 17, 2018 3:22:35 PM (UTC-06:00) Central Time (US & Canada)

was read on Wednesday, October 17, 2018 8:45:54 PM (UTC-06:00) Central Time (US & Canada).

**4**

**EXHIBIT 19**

# Read: EEOC Charge 10.17.18 & Pending Charge History

### Long, Joe

Thu 10/18/2018 7:30 AM

To:Williamson, Derrick <Derrick.Williamson@Hardin.mh.alabama.gov>;

Importance: High


Your message

To: Long, Joe
Subject: EEOC Charge 10.17.18 & Pending Charge History
Sent: Wednesday, October 17, 2018 10:33:21 PM (UTC-06:00) Central Time (US & Canada)

was read on Thursday, October 18, 2018 7:30:41 AM (UTC-06:00) Central Time (US & Canada).

# EEOC Action Pending

### Williamson, Derrick

Wed 10/17/2018 3:22 PM

Sent Items

To:Long, Joe <Joe.Long@hardin.mh.alabama.gov>;

Cc:Jackson, Annie <Annie.Jackson@hardin.mh.alabama.gov>; Booth, Jeremy <Jeremy.Booth@hardin.mh.alabama.gov>; Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>;

Importance: High

Sensitivity   Confidential

Good afternoon,

This email serves as notice of a fourth EEOC charge of retaliation to be filed as soon as Attorney Goldfarb and Attorney Dawson reviews provided documentation. Once the draft has been reviewed, a copy of this action shall be forwarded directly to Lynn Hubbard and Joe Long to disseminate to appropriate individuals. Additionally, a request for an appropriate response to the indicated PDC is being requested (insufficient details) and will be forwarded once reviewed them as well.

CC: Jeremy Booth, Acting Director of Police Services (Due to PDC involvement which occurred on 9/28/18)

Thank you,



**DERRICK J. WILLIAMSON, JR., BS, AS, NP, AAN**
*Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway Northeast
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4554
**Work Cellular Phone:** (205) 792-2089

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies

**6**

of it from your system, and destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

# EXHIBIT 20

**EXHIBIT 20**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**RSA UNION BUILDING**

100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



LYNN T BESHEAR
COMMISSIONER

November 27, 2018

U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22ⁿᵈ Street
Birmingham, Alabama 35205

RE:   **EEOC Charge No. 420-2019-00234 - Derrick Williamson, Jr.**

Dear Sir/Madam:

In response to the request for a statement of our position with respect to the allegations contained in the above-referenced charge, the Alabama Department of Mental Health (hereinafter referred to as the "the Department") denies the Charging Party's allegations of discrimination and submits the following response:

## CHARGE OF DISCRIMINATION

*"I am an African American male who is being subjected to retaliation employed in a Mental Health Security Officer II (Police Lieutenant) position with the Alabama Department of Mental Health. On 10/17/2018, a written warning dated for 10/11/2018 was provided in response to a pre-disciplinary conference (PDC) which occurred on 9/28/2018. Ten defenses which exonerated any wrong-doing resulted in Director Annie Jackson (Facility Director) imposing a written warning without sufficient documentation or response. A representing attorney who attended the pre-disciplinary conference as a witness believed that the provided response would be adequate and overly sufficient to exonerate wrong-doing alleged. My current supervisor, Jeremy Booth, also stated that my response was "good" and sufficient. In efforts to retaliate, Jackson did not consider the provided information (my written response) to make an appropriate determination and based her actions/response on Equal Employment Opportunity Commission (EEOC) actions. Jackson has been requested to provide an adequate response to the indicated PDC instead of the following: "I have carefully considered the information presented at our conference and it is my conclusion that you did violate the above-mentioned policies. Therefore, this letter will serve as a **Written Warning**." The listed action, along with prior actions, will prevent adequate consideration for an upcoming promotion opportunity which Jackson is aware of. A current and updated timeline has been attached to this charge. The instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment."*

1

**1**

## ORGANIZATION DESCRIPTION

The Department is an Alabama state agency that provides mental illness, intellectual disability, and substance abuse services throughout Alabama, which includes operating three residential treatment hospital facilities for individuals with mental illness. The Department is headed by a Commissioner appointed by the Governor. The Commissioner of the Department of Mental Health is Lynn Beshear. The Commissioner in turn appoints Associate Commissioners to head the various divisions of the Department. The Associate Commissioner for the Division of Mental Health and Substance Abuse is head of the Department's three state hospitals. The Associate Commissioner for the Division of Mental Health and Substance Abuse is Diane Baugher.

One of the Department's three state hospital facilities is the Taylor Hardin Secure Medical Facility (hereinafter "THSMF"), which is a psychiatric hospital facility of the Department and was established in 1981. Located at 1301 Jack Warner Parkway, NE, Tuscaloosa, Alabama 35404, THSMF is responsible for providing comprehensive psychiatric evaluation/treatment to criminal court committed patients from throughout Alabama and forensic/psychological evaluations to Alabama Circuit Courts. Most of the patients at THSMF are committed to the Department by Circuit Courts in connection with a criminal case. It is the only maximum security forensic psychiatric state hospital facility operated by the Department. The facility contains 140 patient beds. Ms. Annie Jackson is the Acting Facility Director at THSMF and she directly supervises all departments at THMSF.

THSMF has a Police Department for protection of the facility and its patients. The Police Department is supervised by a Police Chief. The Police Chief is supervised by the Facility Director. The Facility Director is supervised by the Associate Commissioner for Mental Health and Substance Abuse.

## RESPONSE TO SPECIFIC CHARGES

The Department incorporates by reference its previous responses to the charging party's prior EEOC charges, involving the same Charging Party and allegations as the Charge herein.

***Charge:*** *"I am an African American male who is being subjected to retaliation employed in a Mental Health Security Officer II (Police Lieutenant) position with the Alabama Department of Mental Health. On 10/17/2018, a written warning dated for 10/11/2018 was provided in response to a pre-disciplinary conference (PDC) which occurred on 9/28/2018"*

***Response:*** The Department agrees that the Charging Party is an African American male employed as a Mental Health Security Officer II and that he was issued a written warning after a pre-disciplinary conference (hereinafter "PDC"). The Department denies that the Charging Party is being subjected to retaliation. The written warning was for clear violation of Department policy.

The Charging Party went to a patient's room on 8/20/2018 to conduct a search of the patient. EXHIBIT A, EXHIBIT B. The patient was on 1:1 continuous observation pursuant to THSMF Policy 19-20(1). EXHIBIT C. The Charging Party was aware of the patient's 1:1 status and that he could not be left alone. Policy 19-20(1) requires continuous observation of a patient

2

**2**

when instituted by a psychiatrist, physician or registered nurse when needed to ensure the safety or decrease the risk of harm to the patient or others. EXHIBIT C. The observation must be within arm's length of the patient unless the patient is in a single bedroom and in bed. EXHIBIT C. In that case visual observation from the doorway is allowed. EXHIBIT C.

When the Charging Party began to search the patient, he instructed the Forensic Technician (hereinafter "FT") that was watching the patient to report to his supervisor. The FT left the patient's room leaving the Charging Party alone with the patient. After completing his search, the Charging Party left the patient alone in his room with no observation without waiting for the FT to return. The Charging Party admitted at the PDC that he knew the patient was not to be left alone when on 1:1 status under hospital policy. He stated it was not his responsibility to observe the patient in the FT's absence and therefore he did not remain in the room. The Charging Party's supervisor stated at the PDC that it was longstanding practice at THSMF for police officers to relieve FTs temporarily when a patient is on continuous observation.

Leaving a patient alone while on 1:1 supervision constitutes neglect pursuant to Department Policy 19-10. EXHIBIT D. The Charging Party was given the written warning for clear violation of Department policy which potentially put the safety of a patient at risk.

The Charging Party was notified of potential disciplinary action by letter dated 9/20/2018. EXHIBIT A. He was further informed of right to a PDC which was scheduled for 9/28/2018. EXHIBIT A. The PDC was conducted on 9/28/2018 with the Charging Party, his attorney, Facility Director Annie Jackson, Human Resource Director Joe Long, and Acting Police Chief Jeremy Booth. The Charging Party was issued a written warning for violation of policy on 10/11/2018. EXHIBIT B.

*Charge:* *"Ten defenses which exonerated any wrong-doing resulted in Director Annie Jackson (Facility Director) imposing a written warning without sufficient documentation or response. A representing attorney who attended the pre-disciplinary conference as a witness believed that the provided response would be adequate and overly sufficient to exonerate wrong-doing alleged. My current supervisor, Jeremy Booth, also stated that my response was "good" and sufficient.*

*Response:* The Department acknowledges that the Charging Party presented defenses at the PDC. The Department denies that the defenses exonerated the Charging Party from any wrongdoing. The Department has no knowledge of the opinion allegedly expressed by the "representing attorney" but would deny any such opinion is determinative of the outcome in this matter. The Department has no knowledge of the opinion allegedly expressed by Jeremy Booth but denies that Booth opposed the written warning issued to the Charging Party.

*Charge:* *"In efforts to retaliate, Jackson did not consider the provided information (my written response) to make an appropriate determination and based her actions/response on Equal Employment Opportunity Commission (EEOC) actions."*

*Response:* The Department denies that Jackson retaliated or failed to consider the information provided by the Charging Party to make an appropriate determination. Jackson's determination

3

**3**

**EXHIBIT 20**

was based upon established Department policy and statements made at the PDC. The fact that the Department did not agree with the Charging Party's position does not constitute retaliation.

***Charge:*** *"Jackson has been requested to provide an adequate response to the indicated PDC instead of the following: 'I have carefully considered the information presented at our conference and it is my conclusion that you did violate the above-mentioned policies.' Therefore, this letter will serve as a* ***Written Warning****."*

***Response:*** Jackson is not required by Department policy to provide any additional response to the Charging Party's defenses presented at the PDC. The written warning provided the Charging Party adequately explained the basis for the warning. The fact that the Charging Party does not subjectively consider Jackson's response "adequate" is not evidence of retaliation.

***Charge:*** *"The listed action, along with prior actions, will prevent adequate consideration for an upcoming promotion opportunity which Jackson is aware of. A current and updated timeline has been attached to this charge. This instance of retaliation is in the form of discipline which will be reflected on performance evaluations, effect selection decisions (promotions), and result in negative terms, conditions, and privileges of employment."*

***Response:*** The Department acknowledges that disciplinary action against an employee may affect performance evaluations if the disciplinary action is related to job performance. The Department has demonstrated that the written warning was solely related to Williamson's job performance and was not retaliation in any form.

However, as previously pointed out in prior responses, the charging party previously interviewed for another position at the Department and was not chosen for the position. He was interviewed by a panel along with other applicants and scored the lowest of the applicants. The interview panel was not privy to his personnel file containing disciplinary information, so it did not impact any hiring decisions. Any future job opportunities within the Department would be subject to the same procedure. If the Charging Party is referring to potential employment outside of the Department, the Department has no control of what factors are considered by third parties in their hiring practices.

**CONCLUSION**

In conclusion, the Department denies that it or any of its employees has discriminated or retaliated against Derrick Williamson, Jr. on the basis of race. Any and all actions taken toward Williamson were conducted in accordance with Departmental policies and were applied in a non-discriminatory manner.

Should you have any further questions, please feel free to contact me.

**EXHIBIT 20**

Sincerely,

Edward C. Hixon
Assistant Attorney General

**5**

**EXHIBIT 20**

# EXHIBIT A

**EXHIBIT 20**



KAY IVEY
GOVERNOR

**STATE OF ALABAMA**
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

ANNE D. JACKSON,
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

September 20, 2018

Lt. Derrick J. Williamson, Jr.
8816 Old Greensboro Road, Apt. 20104
Tuscaloosa, AL 35405

Dear Mr. Williamson:

You are being considered for disciplinary action for violation of ADMH Policy 19-10, "Abuse, Neglect, Mistreatment and Exploitation;" Neglect is defined per the ADMH Incident Management Plan as follows: The failure to carry out a duty through reckless conduct, carelessness, inattention, or disregard of duty, whereby the client is exposed to harm or risk of harm, and includes but is not limited to:

    o   Failure to appropriately supervise or otherwise leaving client areas unattended
    o   Failing to ensure client's basic needs for safety, nutrition, medical care, and personal attention are met...;

THSMF Policy 19-10, "Abuse, Patient;" ADMH Policy 70-5, "Employee Conduct and Accountability;" II. STANDARDS: 1 (t) – Inattention to Job duties, and THSMF Policy 19-20(1), "Constant Observation of Patients "

On August 20, 2018, you came to the ACE program to do a room search of patient (06 504299) (CS) at approximately 7:21:32 p.m. At approximately 7:23:07 p.m. the Forensic Technician (FT) assigned 1:1 constant observation left the patient's room after being told by you to leave. At 7:25:24 p.m. you exited the patient's bedroom and entered the Nurses Station and exited the Nurses Station at approximately 7:26:47 p.m. and opened the program door and talked with another patient with the program door propped open until approximately 7:28:18 p.m. During the time that you left the patient's bedroom at 7:25:24 p.m. until the Forensic Technician entered the bedroom at 7:27:15 p.m., the patient was alone in his bedroom and not on 1:1 constant observation. Since you told the FT to leave the patient's bedroom, it was your responsibility to ensure that the FT resume his duties.

You have received the following disciplinary actions:

    •  Counseling dated 08-23-18, Written Warning for alteration and/or falsification of Department and/or facility documents/records, failure to perform job properly; in demonstrating a pattern of exceeding the scope of his authority and insubordination
    •  Counseling dated 05-02-18, Written Reprimand for violation of ADMH Policy 15-1, "Organizational Planning."

**EXHIBIT 20**

September 20, 2018
D     K J. Williamson, Jr.
Page 2 of 2

Before any action is taken on the above information, I wish to inform you that you have a right to a Pre-Disciplinary Conference. This conference has been scheduled for **Friday, September 28, 2018, at 2:30 p.m.** in the Director's Conference Room. If you fail to attend this pre-disciplinary conference, a decision will be rendered based on the information available. At this conference you may present oral and/or written statements. According to ADMH Policy 50-12, "Pre-Disciplinary Conference," an employee is allowed one representative of their choice if so desired. The employee may consult with their representative during the meeting; however, the employee is expected to present their side of the issue.

Sincerely,

Annie D. Jackson, MSW, LICSW, PIP, MPA, CPM
Facility Director

pc:     Jeremy Booth, Acting Director of Police Services
        Investigation File
        Personnel File

Employee's signature

Date: 9/21/18

Will you be attending this conference? ___✓___ Yes  _____ No

Employee's signature does not denote agreement; only acknowledges that employee received a copy of disciplinary action.

8

**EXHIBIT 20**

# EXHIBIT B

# EXHIBIT 20

STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
## TAYLOR HARDIN SECURE MEDICAL FACILITY
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4300
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, IXP, MPA, CPM
FACILITY DIRECTOR

October 11, 2018

Lt. Derrick J. Williamson, Jr.
8816 Old Greensboro Road, Apt. 20104
Tuscaloosa, AL 35405

Dear Mr. Williamson:

On September 28, 2018, a Pre-Disciplinary Conference was held with you for your violation of ADMH Policy 19-10, "Abuse, Neglect, Mistreatment and Exploitation;" Neglect is defined per the ADMH Incident Management Plan as follows: The failure to carry out a duty through reckless conduct, carelessness, inattention, or disregard of duty, whereby the client is exposed to harm or risk of harm, and includes but is not limited to.

    o   Failure to appropriately supervise or otherwise leaving client areas unattended
    o   Failing to ensure client's basic needs for safety, nutrition, medical care, and personal attention are met  .;

THSMF Policy 19-10, "Abuse, Patient;" ADMH Policy 70-5, "Employee Conduct and Accountability;" II. STANDARDS: 1 (t) – Inattention to Job duties, and THSMF Policy 19-20(1), "Constant Observation of Patients."

On August 20, 2018, you came to the ACE program to do a room search of patient (06 5D4299) (CS) at approximately 7:21:32 p.m. At approximately 7:23.07 p.m. the Forensic Technician (FT) assigned 1 1 constant observation left the patient's room after being told by you to leave. At 7:25:24 p.m. you exited the patient's bedroom and entered the Nurses Station and exited the Nurses Station at approximately 7.26.47 p.m. and opened the program door and talked with another patient with the program door propped open until approximately 7:28:18 p.m. During the time that you left the patient's bedroom at 7:25:24 p.m. until the Forensic Technician entered the bedroom at 7:27:15 p.m., the patient was alone in his bedroom and not on 1·1 constant observation. Since you told the FT to leave the patient's bedroom, it was your responsibility to ensure that the FT resume his duties.  ·

You have received the following disciplinary actions:

    •  Counseling dated 08-23-18, Written Warning for alteration and/or falsification of Department and/or facility documents/records, failure to perform job properly; in demonstrating a pattern of exceeding the scope of his authority and insubordination
    •  Counseling dated 05-02-18, Written Reprimand for violation of ADMH Policy 15-1, "Organizational Planning."

**10**

**EXHIBIT 20**

I have carefully considered the information presented at our conference and it is my conclusion that you did violate the above mentioned policies. Therefore, this letter will serve as a *Written Warning.*

Sincerely,

Annie D. Jackson, MSW, LICSW, PIP, MPA, CPM
Facility Director


pc:    Jeremy Booth, Acting Director of Police Services
      Investigation File
      Personnel File

Employee's signature                              Date: 10/17/18

Employee's signature does not denote agreement; only acknowledges that employee received a copy of disciplinary action.

**11**

**EXHIBIT 20**

# EXHIBIT C

**12**

## TAYLOR HARDIN SECURE MEDICAL FACILITY

NUMBER:   THSMF Policy 19-20(1)

SUBJECT:   Client/Patient Observation
TITLE:     Constant Observation of Patients

EFFECTIVE:   07-03-91     REVIEWED:            CHANGED:   01-24-17

RESPONSIBLE
OFFICE:              Director of Nursing/Director of Clinical Services

APPROVED:_____

### I.  POLICY STATEMENT:

Determination of the type of staff observation required for patients is based on the level needed to ensure a safe, secure and therapeutic environment.

Constant observation is continuous observation of a patient by a program staff member, who shall remain within arm's length of the patient to ensure the safety of the patient and decrease risk of harm to the patient or to others. When the patient is in a single bedroom and is in bed, only constant visual observation is required by monitoring from the doorway.

### II.  INDICATIONS FOR USE:

A.    May be instituted by a general physician, psychiatrist, or registered nurse, for use only when less restrictive alternative measures are determined unsuccessful or not feasible. Reasons for use include, but are not limited to, the following:
1.    Suicide precautions;
2.    Self-injurious or potentially self-injurious behavior;
3.    Sudden, frequent changes in mood;
4.    Changes in behavior previously recognized as preludes to agitation;
5.    Violent behavior; or
6.    Implementation of physician's orders for medical procedures such as nothing by mouth, sleep deprived EEG, or if the patient requires assistance for compliance.
7.    Elevated Fall Risk.
8.    Newly admitted juvenile patients until evaluated by a psychiatrists.

**EXHIBIT 20**

THSMF Policy 19-20 (1)

**III:   PROCEDURAL CONSIDERATIONS AND DOCUMENTATION REQUIREMENTS**

A.   Psychiatrist, General Physician, or RN initiating constant observation:

   1.   Immediately notify the program RN of the need for constant observation.

   2.   Enter a progress note at the initiation of the constant observation status to include the reason for constant observation and notification of appropriate staff.

B.   Psychiatrist or General Physician:

   1.   Provide written order or sign telephone order for initiation of the constant observation status within twenty-four (24) hours.

   2.   Review the patient within twenty-four (24) hours of initiation of constant observation and document findings in the progress note section of the patient's health record.

   3.   Review at a minimum of four (4) days per week and document the condition of the patient and the need to continue or discontinue the observation status in the progress note section of the patient's health record.

   4.   Document evaluation of the patient at the time of discontinuation of constant observation.

   5.   Provide a written order on the Physician's Order Sheet to discontinue constant observation (telephone orders are prohibited).

C.   Program RN

   1.   Initiation:

      i.   Assess the patient for behavior and/or condition warranting constant observation.
      ii.   Assign a staff member to observe the patient. Staff members working an eight-hour shift should be assigned to monitor a 1:1 (constant) observation patient for only four (4) consecutive hours at a time.
      iii.   Notify the Psychiatrist or General Physician (as appropriate based on the reason for initiation of constant observation) for orders within one (1) hour of initiation of constant observation if implemented by the RN.

**14**

        iv.    Obtain and document the physician's telephone orders and observation status on the Physician Order sheet.

        v.    Enter a progress note including rationale for constant observation, notification of the Psychiatrist/General Physician, any special instructions given and education provided to the patient regarding constant observation procedures.

2.    Maintenance:

        i.    Review and initial the Special Observation Flow Sheet (THSMF-MR-220, Attachment 1) form at least every four (4) hours to ensure the patient is being observed properly and his needs are being met.

        ii.    Document in the progress notes every four (4) hours information that includes the patient's condition, maintenance of proper observation, and staff member assigned, results of any room checks for potentially dangerous items, identified patient needs and other pertinent information.

        iii.    Document the patient's observation status and other significant information on the Shift Report.

D.    Forensic Technician Supervisor (FTS) Note: The following functions must be performed by the Program RN in the absence of an FTS.

1.    Assign staff members who are working an eight-hour shift to monitor a 1:1 or 2:1 (constant) observation patient for four hours at a time only. Initiate the Special Observation Flow Sheet by completing top portion.

2.    Notify the dining room staff of the need for use of Styrofoam plates and disposable utensils for patients on constant observation for psychiatric reasons.

3.    Assign a staff member to check the room once during each shift and ensure removal and appropriate storage/disposition of any dangerous or questionable items.

4.    Notify the Program Nurse of the results of room checks and any issues that are identified.

E.    Forensic Technician (FT) Assigned:

1.    Maintain constant visual observation and remain within arm's length of the patient at all times during the four-hour period, except when the patient is in his bed. Only constant visual observation from the doorway is required if the patient is in bed in a single bedroom.

**EXHIBIT 20**

THSMF Policy 19-20 (1)

2. If the patient is in bed, ensure the patient's head and neck stay uncovered at all times

3. Escort the patient to the bathroom at all times. The commode/shower areas must be checked for dangerous or questionable items before the patient enters. Remain within arm's length of the patient while he showers or uses the commode. (Allow the patient privacy while showering and/or in a commode stall without jeopardizing safety, unless the patient needs assistance.)

4. Escort the patient to the dining room ensuring the patient on constant observation for psychiatric reason uses only disposable utensils that are returned with the Styrofoam plate after meals.

5. Notify the Program Nurse of potentially significant behaviors or any time a behavior change is noted and document the same in a progress note.

6. Assist with checking the room during each shift. Ensure removal of any dangerous or questionable items and report room checks to the Program RN.

7. Never leave the patient until relieved by someone as approved by the Program RN/FTS unless intervening in a potentially life-threatening event.

8. Document the patient's behavior every fifteen (15) minutes on the Special Observation Flow Sheet using the appropriate codes.

F. Treatment Team:

1. Review the Observation Status of all patients during treatment team and document pertinent information in the treatment team notes.

2. Modify the treatment plan to reflect the problems necessitating constant observation, as well as documentation of interventions to alleviate such problems.

3. Ensure notification of the Facility Director and Director of Clinical Services of patients remaining on constant observation for longer than five (5) days.

4. Coordinate a Special Treatment Team Review for any patient remaining on constant observation for seven (7) days.

**16**

**EXHIBIT 20**

# EXHIBIT D

**17**

**EXHIBIT 20**

## State of Alabama
## Department of Mental Health

NUMBER:   19-10

SUBJECT:   Recipient Protection
TITLE:       Abuse, Neglect, Mistreatment, and Exploitation

EFFECTIVE: 3/27/90       REVIEWED:  8/3/16       CHANGED: 1/16/14

RESPONSIBLE OFFICE:   MHSAS

APPROVED: _James V Perkins_

### I.    POLICY:

Any form of recipient abuse, neglect, exploitation or mistreatment will not be tolerated. The DMH will immediately investigate and provide for appropriate legal and administrative actions based upon such investigation in any state-operated facility. (Reference DMH Incident Management Plan)

### II.    PURPOSE:

This policy establishes standards for addressing findings of recipient abuse, neglect, mistreatment, exploitation, and other similar incidents in all DMH facilities. While this policy also attempts to ensure consistent and equitable treatment of both employees and recipients, it is not intended to ignore extenuating circumstances and the individuality of situations that arise; but rather, to be the starting point and common ground from which decisions are to be made.

### III.    STANDARDS:

1.   It is the responsibility of DMH employees to treat all recipients with dignity and respect, to ensure that all recipients receive appropriate care and treatment, and to provide all recipients with protection from abuse and neglect, mistreatment or exploitation. (Reference Department Policy Number 20-40, "Protection from Harm")

2.   Employees found in violation of this policy shall be subject to disciplinary actions as follows. Facilities will utilize progressive discipline as appropriate and to the extent possible (see DMH Policy Number 60-40, "Progressive Discipline"); however, the DMH reserves the right to take more or less stringent disciplinary action as applicable to the offense(s) by the employee.

**18**

# EXHIBIT 20

DMH Policy 19-10

    a.    **Physical Abuse** as defined in the DMH Incident Management Plan shall result in disciplinary action of termination.

    b.    **Verbal Abuse** as defined in the DMH Incident Management Plan shall result in disciplinary actions ranging from a minimum of written reprimand to termination.

    c.    **Sexual Abuse** as defined in the DMH Incident Management Plan shall result in termination.

    d.    **Neglect** as defined in the DMH Incident Management Plan shall result in disciplinary actions ranging from a minimum of written reprimand to termination.

    e.    **Exploitation** as defined in the DMH Incident Management Plan shall result in disciplinary actions ranging from a minimum of written reprimand to termination.

    f.    **Mistreatment** as defined in the DMH Incident Management Plan shall result in a minimum of written reprimand to termination.

3.    Employees who fail to report incidents of recipient abuse, neglect, mistreatment, or exploitation or employees who withhold information regarding abuse, neglect, etc. during an investigation, or employees who withhold information regarding recipient abuse when questioned during an investigation regarding recipient abuse, neglect, etc. shall be subject to disciplinary actions ranging from a minimum of written reprimand to termination. (Reference Department Policy Number 80-20, "Employee Cooperation in Investigations")

4.    Deviations from the above standards can be made when extenuating circumstances warrant imposing either more or less severe penalty. Extenuating circumstances include those factors related to a given offense that would serve to support the action or non-action in the interest of fairness and objectivity. Extenuating circumstances may include, but are not limited to such factors as: the employee's work history; severity of the offense; and other mitigating and aggravating factors. When extenuating circumstances are identified, the circumstances must be recorded in the employee's personnel record. Should such circumstances indicate lesser disciplinary penalties than those required by this policy, prior written approval of the appropriate Associate Commissioner shall be obtained.

5.    As a preventive measure and to enhance DMH employee skills in areas related to this policy, each DMH facility shall develop and provide annual training on this policy. Additionally, training on acceptable Crisis Intervention and Management of Aggressive Behavior techniques shall be provided to employees having direct responsibility for recipient care and supervision.

**19**

**EXHIBIT 20**

DMH Policy 19-10

6.    All DMH employees shall be governed by this policy and made aware of its contents.

7.    The DMH Commissioner may initiate an investigation of alleged or suspected abuse, neglect, mistreatment, or exploitation in state-operated facilities.

IV.   **References:**

DMH Incident Management Plan
Employee Cooperation in Investigations, Policy Number 80-20
Notification of Special Incidents, Policy Number 19-70.
Protection From Harm, Policy Number 20-40.
Reporting of Abuse to DHR, Policy Number 19-25.
Title 13A-6-60, *Code of Alabama, 1975.* [Criminal Code: Sexual Abuse]
Title 13A-6-61, *Code of Alabama, 1975.*
Title 13A-6-65, *Code of Alabama, 1975.*
Title 13A-6-66, *Code of Alabama, 1975.*
Title 13A-6-70, *Code of Alabama, 1975.*
Title 26-16-1, *Code of Alabama, 1975.* [Child Abuse & Neglect Prevention Act]
Title 26-16-2, *Code of Alabama, 1975.*
Title 26-16-13, *Code of Alabama, 1975.*
Title 38-9-2, *Code of Alabama, 1975.* [Adult Protective Services Act]
Title 38-9-7, *Code of Alabama, 1975.*

**20**

**EXHIBIT 20**

## TAYLOR HARDIN SECURE MEDICAL FACILITY

NUMBER:   THSMF Supplement to ADMH Policy 19-10

SUBJECT:   Client/Patient Protection
TITLE:   Abuse, Patient

EFFECTIVE:   01-26-84   REVIEWED:   CHANGED:   01-24-17

RESPONSIBLE
OFFICE:   Director's Office

APPROVED:_____

### I.  STANDARDS:

1.  It shall be the responsibility of all employees to immediately report any type of patient abuse, neglect, exploitation, or mistreatment.

2.  Any employee who sees, hears, suspects, or otherwise has knowledge of possible abuse, neglect, exploitation, or mistreatment is to immediately notify the Control Room and complete the ADMH Incident Report form. The Control Room will notify the Facility Director/designee.

3.  The ADMH Incident Report form and all photographs, statements, and documents are to be forwarded promptly to the Facility Director or designee.

4.  All incidents will be immediately referred to the RN for assessment of the patient(s) involved. The RN will notify the physician if injury is suspected or noted, and the Police Officer will photograph area as indicated.

5.  On admission, a patient suspected or alleged to have been subjected to abuse or neglect shall have an assessment conducted with the consent of the patient/guardian. A patient shall be scanned and examined for bruises, skin tears, fractures, and signs of bleeding that may signal abuse.

6.  A written policy statement regarding abuse and neglect will be provided to each staff member upon employment or promptly thereafter. Patients and their family members will be educated regarding the facility policy statement regarding abuse and neglect.

7.  Staff will be provided in-service during New Employee Orientation and annually thereafter about patient abuse, neglect, mistreatment, and exploitation.

**21**

# EXHIBIT 21

**EXHIBIT 21**

# RESPONSE TO POSITION STATEMENT
## WILLIAMSON V. ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
## CHARGE: 420-2019-00234

### EXHIBIT INDEX

1. PDC Response
2. Alabama Department of Mental Health (THSMF Policy 19-20(1))
3. Representation declination of Written Warning
4. Letter requesting additional information

### DISCREPANCIES & RESPONSES

The respondents' allege that the reasoning for the administering of a written warning in this matter was because of a violation of department policy. A review of the presented policy which exonerates me in this matter is presented in the written response to the Pre-Disciplinary Conference (PDC) which is attached as **EXHIBIT 1**.

The respondents' state *"the charging party's supervisor stated at the PDC that it was longstanding practice at THSMF for police officer to relieve FTs temporarily when a patient is on continuous observation"*. With this being a long-standing practice of the department, nonetheless, it clearly presents a violation of the department's policy on patient supervision as indicated in **EXHIBIT 1** and **EXHIBIT 2**. The department was reminded of its own police and procedure in this PDC as the entirety of **EXHIBIT 1** was read:

1. *1:1 observation responsibility:*

    a. *Taylor Hardin Secure Medical Facility Policy 19-20(1) states "Constant observation is continuous observation of a patient by a **program staff member**, who shall remain within arm's length of the patient to ensure the safety of the patient and decrease risk of harm to the patient or to others. When the patient is in a single bedroom and is in bed, only constant visual observation is required by monitoring from the doorway."*

        i. *It should be distinguished that my position is not of a "program staff member".*

    b. *Taylor Hardin Secure Medical Facility Policy 19-20(2) states "Forensic Technician (FT) Assigned. 1) Observe patient carefully at the specified intervals (every five [5] minutes unless otherwise ordered). 2)Document observation every five (5) or ten (10) minutes per order on the Special Observation Flow Sheet using appropriate codes. 3) Notify the Program Nurse of potentially significant behaviors or any time a behavior change is noted and document the same in a progress note.*

        i. *It should be distinguished that my position is not of a "Forensic Technician (FT)".*

**1**

**EXHIBIT 21**

2. *It was not my responsibility to remain with the patient seeing that I do not follow under any of the provisions listed above nor am I trained to operate in such positions. I can simply identify issues outlined in policy and advise what policy states and/or recommends.*

With the above information presented, there was a legitimate defense in this matter and it was not my responsibility to supervise the patient. It was also corrected in **EXHIBIT 1** that I did not inform the staff member to leave the room or to immediately report to his supervisor, the staff member was informed of adequate policies and procedures regarding the presented circumstances. With a clear and distinct defense in this matter, the responsibility and policy violation lied with the staff who had already failed to report the alleged incident.

Respondents' fail to also acknowledge that police officers do not receive the required training to supervise patients within the hospital. Direct-care staff (forensic technicians) receive several weeks of additional training on medical principles which I was not purview to at the time of this incident. In typical hospitals who also follow similar procedures, security and/or police staff are not responsible or seen caring for the patients of hospitals. Additionally, Alabama state law clearly defines the responsibility of my employment as outlined in **Alabama Code 22-50-21**.

Respondents', just as in previous matters, capitalized on an opportunity where disciplinary action was unwarranted. To the assigned investigator, please consider that prior to the report of discriminatory practices, I received no disciplinary action at this place of employment, exceeding standards performance appraisals, a written recommendation from a former supervisor, and an honorary mention by a former supervisor. Following the report of verbal report of discrimination and involvement in EEOC activity, the department has severely scrutinized actions, has provided arbitrary and capricious disciplinary action, and has provided a severely lowered performance appraisal documented in a separate charge of retaliation. A timeline of events has been uploaded to review a temporal proximity regarding these matters. I request that former charges and their investigation be reviewed to assist in the determination of whether this matter was retaliatory of the respondents. In the event that prior behavior and methods of addressing disciplinary concerns matched what has followed a report of discrimination (verbal and written), a pretext would potentially not exist in this matter. Unfortunately, the presented case is sufficiently opposite.

Thank you,

**DERRICK JAMES WILLIAMSON, JR.**
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405
aeonpctech@live.com
(205) 422-9664

**2**

**EXHIBIT 21**

# EXHIBIT 1

**3**

**EXHIBIT 21**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**

**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 3S404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**PRE-DISCIPLINARY RESPONSE**
**9/28/2018**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

9/26/2018 10:47 PM

### BELOW IS THE WRITTEN STATEMENT PROVIDED TO CLINICAL INVESTIGATOR KIMBERLY MCALPINE. PLEASE REVIEW AREAS WHICH HAVE NOTES CLARIFYING ACTIONS TAKEN ACCORDING TO POLICY AND PROCEDURE.

On 8/20/2018, I entered the patient's room where Mental Health Worker I William Hamilton was located. The search was being conducted due to the review of video footage prior to the incident and the notification that the patient received a positive drug screening. Upon entry into the room, the patient was asked to place his hands on the wall so that a pat search could be conducted. The patient complied in which the pat search was completed. The patient voluntarily leaned against the wall facing the program door and placed his hands on the brick wall. The patient's arms and legs were patted to ensure he was not in possession of contraband. A "squat and cough" was not conducted during this search. From my recollection, Hamilton was present during this portion of the search. I asked Hamilton was the patient on 1:1 and he advised that he was. Hamilton then looked at the accountability sheet and advised "he didn't even complete the checks". Hamilton was asked to provide the accountability sheet in which I observed that several checks were not completed. Hamilton advised that he had just got with the patient several minutes prior. Hamilton was advised that the registered nurse needed to be notified of the incident. ████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████ A room search was conducted on the patient at that time in which the toilet was noticed to be cloudy and tobacco was located in a cup above his coat rack. Shower gel, located in a small cup, also appeared abnormal and was removed from the room for testing. It was known that the patient has previously housed narcotics inside shower gel and the shower gel was not a brand provided by the facility. The patient provided tobacco voluntarily which he located inside his room. The patient stated that someone had planted the tobacco and it was not his. The tobacco may have been handed over after Hamilton left the room to speak with the registered nurse. I entered the nurse's station and requested that staff request for the patient's doctor to come to the program. I asked Hamilton did he let the registered nurse know about the incident in which Forensic Technician Supervisor Sharon Johnson stated she had not yet. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████ Doctor Glenn reported to the program along with Certified Nursing Practitioner Stephanie Pilkinton. Both stated that the patient appeared to be "high" and Glenn stated that it was the "meth". The patient was later placed into the seclusion room per Glenn.

*\*\*Note: Patient's name has been redacted. – HIPAA Patient Confidentiality\*\**

### DEFENSES FOR CONSIDERATION FOR DISCIPLINARY ACTION

1. Forensic Technician Hamilton was never advised/asked/ordered to leave the patient's room. Hamilton was advised that a notification should be made to the Registered Nurse of the incident to ensure he was in compliance with the Alabama Department of Mental Health (ADMH) Incident Management Plan (IMP).

**4**

**EXHIBIT 21**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**PRE-DISCIPLINARY RESPONSE**
**9/28/2018**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

2. Hamilton was not advised of a method of notifying the Registered Nurse but personally chose to leave the patient's room immediately while aware he was assigned to 1:1 observation. Hamilton could have chosen to call the Registered Nurse to the patient's room seeing that he was located directly next to the nurse's station. Forensic Technicians are aware that Police Officers are not responsible for direct care tasks according to Taylor Hardin Secure Medical Facility (THSMF) policies.

3. I am not responsible for the supervision of Mental Health Workers and how they perceive statements made in reference to insufficiently completing their assigned tasks. The incompletion of the accountability checks was deemed a safety and security risk in which I advised Hamilton of appropriate action to take place.

4. Taylor Hardin Police Policy 204 states facility police officers are responsible for "The protection of life, property of the THSMF, maintaining a safe and secure environment, by maintaining order among the patients, staff and visitors. Being vigilant for suspicious/criminal or disruptive behavior or activity that could cause a breach in security, safety of the THSMF, taking appropriate actions that would maintain the security, safety of this facility."

   a. The appropriate action taken was recommending Hamilton notify the Registered Nurse as soon as possible.

5. Taylor Hardin Police Policy 203 states "Lieutenants are responsible for enforcing State/Federal, local laws and the policies and procedures of the DMH, THSMF, and police services."

   a. The above statement indicates that appropriate authority existed to advise Hamilton of appropriate procedure.

6. 1:1 observation responsibility:

   a. Taylor Hardin Secure Medical Facility Policy 19-20(1) states "Constant observation is continuous observation of a patient by a **program staff member**, who shall remain within arm's length of the patient to ensure the safety of the patient and decrease risk of harm to the patient or to others. When the patient is in a single bedroom and is in bed, only constant visual observation is required by monitoring from the doorway."

      i. It should be distinguished that my position is not of a "program staff member".

   b. Taylor Hardin Secure Medical Facility Policy 19-20(2) states "Forensic Technician (FT) Assigned. 1) Observe patient carefully at the specified intervals (every five [5] minutes unless otherwise ordered). 2) Document observation every five (5) or ten (10) minutes per order on the Special Observation Flow Sheet using appropriate codes. 3) Notify the Program Nurse of potentially significant behaviors or any time a behavior change is noted and document the same in a progress note.

      i. It should be distinguished that my position is not of a "Forensic Technician (FT)".

7. It was not my responsibility to remain with the patient seeing that I do not follow under any of the provisions listed above nor am I trained to operate in such positions. I can simply identify issues outlined in policy and advise what policy states and/or recommends.

8. The ADMH IMP was referenced in the proceeding's notification. According to the IMP, "Staff discovering incident or who have knowledge of incident: make an immediate verbal report of the incident to his/her supervisor". Hamilton was advised of how he should proceed after his discovery in which he should have coordinated with his supervisor to obtain appropriate relief prior to leaving the assigned room. Police Officers are not responsible for "Constant Observation of Patients"; this responsibility is designated to "program staff members".

**5**

**EXHIBIT 21**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**

**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**PRE-DISCIPLINARY RESPONSE**
**9/28/2018**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

9. "Since you told the FT to leave the patient's bedroom, it was your responsibility to ensure that the FT resume his duties"
   a. In correction, according to policy and procedure, I did not inform the Forensic Technician to leave the patient's room but advised of procedures outlined in the IMP.
   b. In correction, according to policy and procedure, I am not responsible for supervising Forensic Technicians as stated by Director Annie Jackson on February 14, 2018 via email. The statement listed in the pre-disciplinary conference notification provided by Jackson is contradictory to her provided directives.
   c. As Jackson has provided clear responsibilities for not supervising Forensic Technicians, it was not my responsibility to ensure the Forensic Technician returned to the patient's room. When Hamilton left the presence of the patient, regardless of my location, the infraction had already occurred.
10. In my professional opinion and from experience, advising Hamilton of IMP procedures was appropriate for the circumstances and allowed him to use his own professional judgment. Additionally, Hamilton has been employed with ADMH for over 7 years so guidance shouldn't have been required of me in this matter nonetheless.

The incident was based upon an inappropriate perception in which I cannot control how individuals perceive the department's Incident Management Plan and its directives. Based upon information referenced from sources approved by the facility, my responsibility was not to maintain "Constant Observation" with the patient nor does my provided Form 40 (List of duties sanctioned by the department) state such responsibility. To address the issue without violating proposed directives, Hamilton was informed of adequate procedure.

*It should also be noted that Director of Human Resources Joe Long attempted to conduct the assigned pre-disciplinary conference (PDC) two days early on 9/26/2018. Long advised at approximately 3:09 PM that the PDC was scheduled for this day which conflicted with information listed on the PDC notification. Long had been informed that an attorney would potentially be present on the correct date several days prior. Long was informed that I would not like to complete the PDC without counsel and contrary to the date listed. Long advised that he had been mistaken in reading his own PDC notification.*

Thank you,

**DERRICK JAMES WILLIAMSON, JR.**
*Police Lieutenant*
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Work Phone:** (205) 792-2089

**WILLIAM M. DAWSON**
*Representing Attorney*
Dawson Law, LLC.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama, 35209
bill@billldawsonlaw.com

**6**

EXHIBIT 21

# EXHIBIT 2

7

**EXHIBIT 21**

## TAYLOR HARDIN SECURE MEDICAL FACILITY

NUMBER:    THSMF Policy 19-20(1)

SUBJECT:    Client/Patient Observation
TITLE:        Constant Observation of Patients

EFFECTIVE:   07-03-91      REVIEWED:              CHANGED:   01-24-17

RESPONSIBLE
OFFICE:            Director of Nursing/Director of Clinical Services

APPROVED:_____

### I.  POLICY STATEMENT:

Determination of the type of staff observation required for patients is based on the level needed to ensure a safe, secure and therapeutic environment.

Constant observation is continuous observation of a patient by a program staff member, who shall remain within arm's length of the patient to ensure the safety of the patient and decrease risk of harm to the patient or to others. When the patient is in a single bedroom and is in bed, only constant visual observation is required by monitoring from the doorway.

### II.  INDICATIONS FOR USE:

A.    May be instituted by a general physician, psychiatrist, or registered nurse, for use only when less restrictive alternative measures are determined unsuccessful or not feasible. Reasons for use include, but are not limited to, the following:
1.    Suicide precautions;
2.    Self-injurious or potentially self-injurious behavior;
3.    Sudden, frequent changes in mood;
4.    Changes in behavior previously recognized as preludes to agitation;
5.    Violent behavior; or
6.    Implementation of physician's orders for medical procedures such as nothing by mouth, sleep deprived EEG, or if the patient requires assistance for compliance.
7.    Elevated Fall Risk.
8.    Newly admitted juvenile patients until evaluated by a psychiatrists.

**8**

THSMF Policy 19-20 (1)

## III: PROCEDURAL CONSIDERATIONS AND DOCUMENTATION REQUIREMENTS

A. Psychiatrist, General Physician, or RN initiating constant observation:

  1. Immediately notify the program RN of the need for constant observation.

  2. Enter a progress note at the initiation of the constant observation status to include the reason for constant observation and notification of appropriate staff.

B. Psychiatrist or General Physician:

  1. Provide written order or sign telephone order for initiation of the constant observation status within twenty-four (24) hours.

  2. Review the patient within twenty-four (24) hours of initiation of constant observation and document findings in the progress note section of the patient's health record.

  3. Review at a minimum of four (4) days per week and document the condition of the patient and the need to continue or discontinue the observation status in the progress note section of the patient's health record.

  4. Document evaluation of the patient at the time of discontinuation of constant observation.

  5. Provide a written order on the Physician's Order Sheet to discontinue constant observation (telephone orders are prohibited).

C. Program RN

  1. Initiation:

    i. Assess the patient for behavior and/or condition warranting constant observation.
    ii. Assign a staff member to observe the patient. Staff members working an eight-hour shift should be assigned to monitor a 1:1 (constant) observation patient for only four (4) consecutive hours at a time.
    iii. Notify the Psychiatrist or General Physician (as appropriate based on the reason for initiation of constant observation) for orders within one (1) hour of initiation of constant observation if implemented by the RN.

**9**

THSMF Policy 19-20 (1)

   iv. Obtain and document the physician's telephone orders and observation status on the Physician Order sheet.

   v. Enter a progress note including rationale for constant observation, notification of the Psychiatrist/General Physician, any special instructions given and education provided to the patient regarding constant observation procedures.

  2. Maintenance:

   i. Review and initial the Special Observation Flow Sheet (THSMF-MR-220, Attachment 1) form at least every four (4) hours to ensure the patient is being observed properly and his needs are being met.

   ii. Document in the progress notes every four (4) hours information that includes the patient's condition, maintenance of proper observation, and staff member assigned, results of any room checks for potentially dangerous items, identified patient needs and other pertinent information.

   iii. Document the patient's observation status and other significant information on the Shift Report.

D. Forensic Technician Supervisor (FTS) Note: The following functions must be performed by the Program RN in the absence of an FTS.

  1. Assign staff members who are working an eight-hour shift to monitor a 1:1 or 2:1 (constant) observation patient for four hours at a time only. Initiate the Special Observation Flow Sheet by completing top portion.

  2. Notify the dining room staff of the need for use of Styrofoam plates and disposable utensils for patients on constant observation for psychiatric reasons.

  3. Assign a staff member to check the room once during each shift and ensure removal and appropriate storage/disposition of any dangerous or questionable items.

  4. Notify the Program Nurse of the results of room checks and any issues that are identified.

E. Forensic Technician (FT) Assigned:

  1. Maintain constant visual observation and remain within arm's length of the patient at all times during the four-hour period, except when the patient is in his bed. Only constant visual observation from the doorway is required if the patient is in bed in a single bedroom.

**10**

2. If the patient is in bed, ensure the patient's head and neck stay uncovered at all times

3. Escort the patient to the bathroom at all times. The commode/shower areas must be checked for dangerous or questionable items before the patient enters. Remain within arm's length of the patient while he showers or uses the commode. (Allow the patient privacy while showering and/or in a commode stall without jeopardizing safety, unless the patient needs assistance.)

4. Escort the patient to the dining room ensuring the patient on constant observation for psychiatric reason uses only disposable utensils that are returned with the Styrofoam plate after meals.

5. Notify the Program Nurse of potentially significant behaviors or any time a behavior change is noted and document the same in a progress note.

6. Assist with checking the room during each shift. Ensure removal of any dangerous or questionable items and report room checks to the Program RN.

7. Never leave the patient until relieved by someone as approved by the Program RN/FTS unless intervening in a potentially life-threatening event.

8. Document the patient's behavior every fifteen (15) minutes on the Special Observation Flow Sheet using the appropriate codes.

F. Treatment Team:

1. Review the Observation Status of all patients during treatment team and document pertinent information in the treatment team notes.

2. Modify the treatment plan to reflect the problems necessitating constant observation, as well as documentation of interventions to alleviate such problems.

3. Ensure notification of the Facility Director and Director of Clinical Services of patients remaining on constant observation for longer than five (5) days.

4. Coordinate a Special Treatment Team Review for any patient remaining on constant observation for seven (7) days.

**EXHIBIT 21**

# EXHIBIT 3

**12**

**EXHIBIT 21**

**Law Office**
**DAWSON   LAW, LLC.**

William M. Dawson

1736 Oxmoor Road, #101
Birmingham, AL 35209

bill@billdawsonlaw.com

(205) 795-3512
(205) 870-7763   FAX
(205) 201-9005   cell

October 19, 2018

Ms. Annie D. Jackson
Facility Director
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, AL 35404-1060

                    Re:   Lt. Derrick Williamson, Jr.

Dear Ms. Jackson:

        In response to your letter of October 11, 2018 to Lt. Williamson regarding a
pre-disciplinary conference of September 28th, please note his objection to your
conclusion of a written warning.   He received your letter on October 17, 2018 and
forwarded it to me as his representative at the conference.

        I will not reiterate the extensive response he presented to you in writing. We
would ask that this warning be retracted and not be considered further in any fashion
which would harm his employment or advancement.

        To summarize, he never ordered or advised the Forensic Technician to leave
the patient's room and has no responsibility over the supervision of mental health
workers.   That this individual may have violated some procedure should not be
attributed to Williamson in any negative fashion.

        It remains the intention of my client to perform his duties in an efficient and
appropriate manner.   This punitive sanction of a written warning does appear to be
an effort to hinder his continued employment, and we would respectfully request
that your decision be reconsidered.

**13**

**EXHIBIT 21**

Sincerely,

William M. Dawson

WMD/hs

EXHIBIT 21

# EXHIBIT 4

**EXHIBIT 21**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**RESPONSE TO PDC DISPLINARY ACTION**

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

10/17/2018 2:44 PM

Upon review of the provided response to the Pre-Disciplinary Conference conducted on September 28th of 2018, sufficient details have not been provided to warrant disciplinary action. Jackson stated the following:

"I have carefully considered the information presented at our conference and it is my conclusion that you did violate the above mentioned policies. Therefore, this letter will serve as a **Written Warning**"

Jackson was provided with ten defenses which thoroughly documented my non-responsibility in this matter. If disciplinary action arising to the level of a <u>written warning</u> is imposed, a sufficient response detailing implications should be provided along with a properly formatted response.

Thank you,

**DERRICK JAMES WILLIAMSON, JR.**
Police Lieutenant
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Work Cellular Phone:** (205) 792-2089
**Work Office Phone:** (205) 462-4554

**WILLIAM M. DAWSON**
*Representing Attorney*
Dawson Law, LLC.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama, 35209
bill@billldawsonlaw.com

CC: Joe Long, Human Resources Director (Taylor Hardin Secure Medical Facility)
Jeremy Booth, Acting Director of Police Services

**16**

# EXHIBIT 22

**EXHIBIT 22**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Derrick J. Williamson, Jr.<br>8816 Old Greensboro RD<br>Apt. 20104<br>Tuscaloosa, AL 35405 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street<br>Birmingham, AL 35205 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | MICHAEL G. ALBERT, | |
| 420-2019-00234 | Investigator | (205) 212-2111 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**MAR 27 2019**

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

(Date Mailed)

cc: **ALABAMA DEPARTMENT OF MENTAL HEALTH**
**(TAYLOR HARDIN MEDICAL)**
**C/o Eddie Hixon**
**Assistant Attorney General**
**Post Office Box 301410**
**Montgomery, AL 36130**

# EXHIBIT 23

**EXHIBIT 23**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 420-2019-01887 <br> and EEOC |

| State or local Agency, if any | | |
|---|---|---|

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Derrick James Williamson, Jr. | (205) 422-9664 | 01/25/1991 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8816 Old Greensboro Road APT 20104, Tuscaloosa, Alabama, 35405 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Alabama Department of Mental Health | 500+ | (205) 462-4500 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1301 Jack Warner Parkway NE, Tuscaloosa, Alabama, 35404 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| N/A | N/A | N/A |

| Street Address | City, State and ZIP Code |
|---|---|
| N/A | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☒ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12/6/2017   Latest: 2/14/2019
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am an African American male employed with the State of Alabama Department of Mental Health (ADMH) as a Mental Health Security Officer II (Police Lieutenant). Previous charges filed are listed as 420-2018-00234, 420-2018-02230, 420-2018-03769, and 420-2018-4087. Department officials were notified of all the previously indicated charges. On 10/19/2018, a complaint of a hostile work environment and retaliation was filed with the department. The department has deliberately not responded to this complaint nor addressed indicated concerns. On 12/10/2018, an adverse employment action occurred in which I was not selected for promotion to Mental Health Security Officer III at my current assigned facility. The selected applicant is Caucasian, and it is believed he was selected to avoid my promotion due to retaliation for former EEOC charges. On 12/13/2018, an adverse employment action occurred in which I was not selected for promotion to Mental Health Security Officer III at a different facility. The selected candidate is African American but was unqualified for the position due to a lack of supervisory experience. The candidate was selected to avoid my promotion due to retaliation for former EEOC charges. Additionally, on 12/13/2018, the department attempted to circumvent an entitled shift re-assignment to 6 AM – 2 PM by conducting interviews. On 1/25/2019, an adverse employment action occurred in which I was notified that I was not selected for promotion to Administrator II at a different location. Application was submitted for the referenced position on 11/16/2018 and the department avoided notifying me by mail, electronic mail, or phone. Contact was made with a representative at the location who advised that I was not interviewed because I did not have experience comparable to other applicants although I met the minimum qualifications. The department avoided interviewing me due to retaliation for former EEOC charges. On 2/5/2019, a complaint of racial disparity was filed with an immediate supervisor. This complaint was inappropriately handled, and a written response was not provided. The indicated complaint detailed racial disparities in law enforcement officer salary and disciplinary action.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| 4/11/2019 <br> Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED U.S. EEOC — Birmingham APR 15 2019 District Office

1

**EXHIBIT 23**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |
| | | and EEOC |

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On 2/14/2019, a five-day suspension was instituted following involvement in state legal action involving defamation. A Pre-Disciplinary Conference (PDC) was scheduled prior to this decision. The department circumvented disciplinary action of the responsible parties and advocated for defamatory behavior which violated department policy and state law. Additionally, in a written response to PDC charges, a matter of discrimination was reported as the basis for the incident coming to the department's attention. The individual who reported the incident is a Caucasian subordinate who has engaged in numerous policy violations and has presented an ill-stance on African American supervision.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 4/11/2019 _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

**EXHIBIT 23**

Reference: Charge Filing
Date: 4/11/2019
To: EEOC Intake

     Please disregard the filing of this charge in the event that a similar charge was indeed received under my name against the *Alabama Department of Mental Health* during March of 2019. I believe I forwarded a charge but that charge of retaliation has yet to be added to the online system following approximately one month. In order to preserve the timeliness of filing charges alleging retaliation, this charge is being re-forwarded with revisions represent changes as of 4/11/2019.

Derrick James Williamson, Jr.
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405



RECEIVED
U.S. EEOC
APR 15 2019
Birmingham District Office

3

# EXHIBIT 24

**EXHIBIT 24**



ROBERT BENTLEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**RSA UNION BUILDING**
100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



JAMES V. PERDUE
COMMISSIONER

May 24, 2019

U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street
Birmingham, Alabama 35205

RE:     **EEOC Charge No. 420-2019-01887 – Derrick James Williamson, Jr.**

Dear Sir/Madam:

In response to the request for a statement of our position with respect to the allegations contained in the above-referenced charge, the Alabama Department of Mental Health (hereinafter referred to as the "the Department") denies the Charging Party's allegations of discrimination and submits the following response:

### CHARGE OF DISCRIMINATION

*"I am an African American male employed with the State of Alabama Department of Mental Health (ADMH) as a Mental Health Security Officer II (Police Lieutenant). Previous charges filed are listed as 420-2018-00234, 420-2018-02230, 420-2018-03769, and 420-2018-4087. Department officials were notified of all the previously indicated charges. On 10/19/2018, a complaint of a hostile work environment and retaliation was filed with the department. The department has deliberately not responded to this complaint nor addressed indicated concerns. On 12/10/2018, and adverse employment action occurred in which I was not selected for promotion to Mental Health Security Officer III as my current assigned facility. The selected applicant is Caucasian, and it is believed he was selected to avoid my promotion due to retaliation for former EEOC charges. On 12/13/2018, an adverse employment action occurred in which I was not selected for promotion to Mental Health Security Officer III at a different facility. The selected candidate is African American but was unqualified for the position due to a lack of supervisory experience. The candidate was selected to avoid my promotion due to retaliation for former EEOC charges. Additionally, on 12/13/2018, the department attempted to circumvent an entitled shift re-assignment to 6 AM – 2 PM by conduction interviews. On 1/25/2019, an adverse employment action occurred in which I was notified that I was not selected for promotion to Administrator II at a different location. Application was submitted for the referenced position on 11/16/2018 and the department avoided notifying me by mail, electronic mail, or phone. Contact was made with a representative at the location who advised that I was not interviewed because I did not have experience comparable to other applicants although I met the minimum qualifications. The department avoided interviewing me due to retaliation for former EEOC*

1

**EXHIBIT 24**

*charges. On 2/5/2019, a complaint of racial disparity was filed with an immediate supervisor. This complaint was inappropriately handled, and a written response was not provided. The indicated complaint detailed racial disparities in law enforcement officer salary and disciplinary action. On 2/14/2019, a five-day suspension was instituted following involvement in state legal action involving defamation. A Pre-Disciplinary Conference (PDC) was scheduled prior to this decision. The department circumvented disciplinary action of the responsible parties and advocated for defamatory behavior which violated department policy and state law. Additionally, in a written response to PDC charges, a matter of discrimination was reported as the basis for the incident coming to the department's attention. The individual who reported the incident is a Caucasian subordinate who has engaged in numerous policy violations and has presented an illstance on African American supervision. "*

## ORGANIZATION DESCRIPTION

The Department is an Alabama state agency that provides mental illness, intellectual disability, and substance abuse services throughout Alabama, which includes operating three residential treatment hospital facilities for individuals with mental illness. The Department is headed by a Commissioner appointed by the Governor. The Commissioner of the Department of Mental Health is Lynn Beshear. The Commissioner in turn appoints Associate Commissioners to head the various divisions of the Department. The Associate Commissioner for the Division of Mental Health and Substance Abuse is head of the Department's three state hospitals. The Associate Commissioner for the Division of Mental Health and Substance Abuse is Diane Baugher.

One of the Department's three state hospital facilities is the Taylor Hardin Secure Medical Facility (hereinafter "THSMF"), which is a psychiatric hospital facility of the Department and was established in 1981. Located at 1301 Jack Warner Parkway, NE, Tuscaloosa, Alabama 35404, THSMF is responsible for providing comprehensive psychiatric evaluation/treatment to criminal court committed patients from throughout Alabama and forensic/psychological evaluations to Alabama Circuit Courts. Most of the patients at THSMF are committed to the Department by Circuit Courts in connection with a criminal case. It is the only maximum security forensic psychiatric state hospital facility operated by the Department. The facility contains 140 patient beds. Ms. Annie Jackson is the Acting Facility Director at THSMF and she directly supervises all departments at THMSF.

THSMF has a Police Department for protection of the facility and its patients. The Police Department is supervised by a Police Chief. The Police Chief is supervised by the Facility Director. The Facility Director is supervised by the Associate Commissioner for Mental Health and Substance Abuse.

## RESPONSE TO SPECIFIC CHARGES

The Department incorporates by reference its previous responses to the charging party's prior EEOC charges, involving the same Charging Party and allegations as the Charge herein.

2

**EXHIBIT 24**

*Charge:* I am an African American male employed with the State of Alabama Department of Mental Health (ADMH) as a Mental Health Security Officer II (Police Lieutenant). Previous charges filed are listed as 420-2018-00234, 420-2018-00230, 420-2018-036769, and 420-2018-4087. Department officials were notified of all the previously indicated charges.

*Response:* The Department admits that the Charging Party is an African American male employed with the Department as a Mental Health Security Officer II. The Department acknowledges that the Charging Party filed previous EEOC charges and that the Department was notified of these charges. Every charge except 420-2018-02230 has been concluded with a finding of no discrimination. The Department has yet to receive a determination on Charge 420-2018-02230. The Department would also point out that the Charging Party filed a civil action against the Department, its Commissioner, Associate Commissioner, Director of Human Resources, THSMF Director, THSMF Personnel Manager, Bureau of Special Investigations Director, and a Retired THMSF Police Captain, on May 3, 2019 in the United States District Court for the Northern District of Alabama, Western Division, Case No. 7:19-cv-00669-TMP. (EXHIBIT A). This civil action includes sixteen counts, including (1) federal claims for multiple violations of 42 USC 1983, 42 USC 1981, 42 USC 1985, 42 USC 1986, Title VII of the Civil Rights Act and; (2) state law claims for whistleblower law violation, breach of contract, defamation, and negligent retention and supervision. This civil action alleges the same and/or similar conducted alleged in his five EEOC charges.

*Charge:* On 10/19/2018, a complaint of hostile work environment and retaliation was filed with the department. The department has deliberately not responded to this complaint nor addressed indicated concerns.

*Response:* The Department admits that the Charging Party filed a complaint on or near the date specified above expressing dissatisfaction with his Employee Performance Appraisal among other things. The Department denies that it has not responded to this complaint. At the Charging Party's request, ADMH Associate Commissioner Diane Baugher reviewed the Charging Party's complaint and Employee Performance Appraisal. Additionally, the Charging Party had the opportunity to meet with Associate Commissioner Baugher on or about 11/8/2018, to review the appraisal and to express any additional concerns to Baugher. Associate Commissioner Baugher upheld the Employee Performance Appraisal following this meeting.

*Charge:* On 12/10/2018, an adverse employment action occurred in which I was not selected for promotion to Mental Health Security Officer III at my current assigned facility. The selected applicant is Caucasian, and it is believed he was selected to avoid my promotion due to retaliation for former EEOC charges.

*Response:* The Department admits that the Charging Party was not selected for Mental Health Security Officer III at THSMF. The selected candidate had been a law enforcement officer with the Department since 2008. The Charging Party began employment as a law enforcement officer with the Department in 2016. Thus, the selected candidate had far more experience for the position.

3

*Charge:* *On 12/13/2018, an adverse employment action occurred in which I was not selected for promotion to Mental Health Security Officer II at a different facility. The selected candidate is African American but was unqualified for the position due to a lack of supervisory experience. The candidate was selected to avoid my promotion due to retaliation for former EEOC charges.*

*Response:* The Department admits that another African-American candidate was selected for the Mental Health Security Officer II position at Bryce Hospital (another hospital operated by the Department in Tuscaloosa). The Department denies that the selected candidate was unqualified for the position. The selected candidate had in fact been a law enforcement officer at Bryce Hospital since 2004. The Charging Party began employment as a law enforcement officer with the Department in 2016.

*Charge:* *Additionally, on 12/13/2018, the department attempted to circumvent an entitled shift re-assignment to 6 AM – 2 PM by conducting interviews.*

*Response:* The Department admits that the Director of Human Resources for Taylor Hardin initially announced interviews for shift re-assignment to the 6 AM – 2 PM shift after the supervisor of that shift was promoted. However, when it was pointed out to Human Resources that the shift re-assignment was to be based on seniority and not competitive interviews per Taylor Hardin policy, the Charging Party was re-assigned the 6 AM – 2 PM per his request because he had seniority. Therefore, the interviews were never conducted and the Charging Party was not adversely affected in any way. In fact, his request for re-assignment was granted.

*Charge:* *On 1/25/2019, an adverse employment action occurred in which was I was notified that I was not selected for promotion to Administrator II at a different location. Application was submitted for the referenced position on 11/16/2018 and the department avoided notifying me by mail, electronic mail, or phone. Contact was made with a representative at the location who advised that I was not interviewed because I did not have experience comparable to other applicants although I met the minimum qualifications. The department avoided interviewing me due to retaliation for former EEOC charges.*

*Response:* The Department admits that the Charging Party was not interviewed and not selected for the Administrator II position. The Department denies that he was not interviewed due to retaliation. As stated above, the Charging Party was not interviewed because there were numerous candidates with more education and experience that applied for the position. The Charging Party was among the least qualified applicants. While the Charging Party may have met the "minimum qualifications," the Department is not obligated to interview every applicant meeting "minimum qualifications" if there are sufficient applicants with more experience in the field. There were other applicants that were not interviewed other than the Charging Party for similar reasons. The Department interviewed and hired a far more experienced African-American candidate.

*Charge:* *On 2/5/2019, a complaint of racial disparity was filed with an immediate supervisor. This complaint was inappropriately handled, and a written response was not provided. The indicated complaint detailed racial disparities in law enforcement officer salary and disciplinary action.*

4

**EXHIBIT 24**

***Response:*** The Department admits that the Charging Party submitted memorandum to his immediate supervisor on or about 2/5/2019, raising multiple issues. It is unclear how the Charging Party contends that the complaint was "inappropriately handled" or why a written response was required. The memorandum raised the same or substantially similar issues raised by the Charging Party on multiple occasions.

***Charge:*** *On 2/14/2019, a five-day suspension was instituted following involvement in state legal action involving defamation. A Pre-Disciplinary Conference (PDC) was scheduled prior to this decision. The department circumvented disciplinary action of the responsible parties and advocated for defamatory behavior which violated department policy and state law. Additionally, in a written response to PDC charges, a matter of discrimination was reported as the basis for the incident coming to the department's attention. The individual who reported the incident is a Caucasian subordinate who has engaged in numerous policy violations and has presented an illstance on African-American supervision.*

***Response:*** The Department admits that the Charging Party was suspended for violation of multiple policies following a Pre-Disciplinary Conference. The Charging Party misused his authority at THSMF as well as misused THSMF equipment. The suspension followed repetitive disciplinary action due to multiple policy violations. The reasons for the suspension were clearly set out in a letter dated February 19, 2019. (EXHIBIT B).

## CONCLUSION

In conclusion, the Department denies that it or any of its employees has discriminated or retaliated against Derrick Williamson, Jr. on the basis of race. Any and all actions taken toward Williamson were conducted in accordance with Departmental policies and were applied in a non-discriminatory manner.

Should you have any further questions, please feel free to contact me.

Sincerely,

Edward C. Hixon

Edward C. Hixon
Assistant Attorney General

5

**EXHIBIT 24**

# EXHIBIT A

FILED
2019 May-03 PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

2019 MAY -3 P 12: 18

|  |  |  |
|---|---|---|
| DERRICK JAMES WILLIAMSON, JR., PRO SE | ) | |
| *PLAINTIFF* | ) | ( **7:19-cv-00669-TMP** |
| V. | ) | |
| ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, ET AL | ) | JURY TRIAL DEMANDED |
| *DEFENDANTS* | ) | |

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL AND CIVIL RIGHTS, DISCRIMINATION, RETALIATION, CONSPIRACY, BREACH OF CONTRACT & VIOLATION OF STATE LAW

### COMPLAINT AND REQUEST FOR PRELIMINARY INJUNCTION

Plaintiff Derrick James Williamson, Jr. (hereinafter referred to as *"Plaintiff"*) brings this Complaint, herein sixteen claims of action, against Defendants Alabama Department of Mental Health and Mental Retardation (hereinafter referred to as *"ADMH"* or *"the department"*) and its employees, agents, successors in office, Commissioner Lynn Beshear, Associate Commissioner Zelda Diane Baugher, Director of Human Resources Lynn Hubbard, Facility Director Annie Delois Jackson, Personnel Manager Joe Long, Captain Robert Anderson, Jr., Senior Special Agent Joseph Rittner, and in support thereof allege the following upon information and belief:

**EXHIBIT 24**

# EXHIBIT B

**EXHIBIT 24**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
### TAYLOR HARDIN SECURE MEDICAL FACILITY
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4600
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON,
MSW, LICSW, PIP, NPA, CPM
FACILITY DIRECTOR

February 13, 2019

Lt. Derrick J. Williamson, Jr.
8816 Old Greensboro Road, Apt. 20104
Tuscaloosa, AL 35405

Dear Mr. Williamson:

On February 7, 2019 a Pre-Disciplinary Conference was held with you for your violation of ADMH Policy 70-5, "Employee Conduct and Accountability;" II. STANDARDS: 1(r) – Disruptive Conduct of any kind, 1(v) – Abuse/and or unauthorized use of facility vehicle, machinery or equipment; ADMH Policy 70.5.cc Use of abusive or threatening language; ADMH Policy 115-20 (THSMF Supplement to ADMH Policy 115-20), "Video Surveillance," video surveillance at state operated hospitals in specified areas to enhance safety and security of recipients and staff and to monitor the quality of care provided, II. 4. – The video recordings may be used for investigative, quality assurance, or training activities with proper permission; and THSMF Police Service Policy 320, "Rules/Regulations/Conduct of THSMF Police Officers;" II.14. Any abuse or misuses of authority as a police officer, any type of unauthorized use of information, equipment, and II.15. Any conduct that is unbecoming of a THSMF Police Officer, or any misuse of official position as a Police Officer.

On December 31, 2018, you used the video camera system to search for staff who delivered letters to the Facility Director's Office, Director of Human Resources, the Director of Police Services, and to yourself. You discovered through the video camera system that a fellow officer had delivered letters to the individuals previously named. When question as to how you knew the officer had delivered letters you stated you saw it on camera. Subsequent to reviewing the camera, you sent this officer a document titled, "Retraction Request, Preceding Legal Action" in which you indicated he was "responsible for the delivery of the below indicated information *(referencing a Petition)* to Jennifer Porter, Jeremy Booth, Joe Long and potentially placed the below letter *(referencing a Petition)* in the 2nd shift supervisor's box." You requested a retraction of all details which represent hearsay... and you indicated the retraction was "limited to 10 days and action had a two-year statute of limitations." Further, you indicated others would receive the same retraction request when they were identified. This was viewed as retaliatory in nature of an individual you perceived as having delivered the petitions to administrative staff. You signed the Retraction Request, Preceding Legal Action as "Derrick James Williamson, Jr., Acting in a Personal Capacity.

February 13, 2019
Lt. Derrick J. Williamson, Jr.
Page 2 of 2

You have received the following disciplinary actions:

- Letter dated 05-02-18, Written Reprimand for violation of ADMH Policy 15-1, "Organizational Planning,"
- Letter dated 08-23-18, Written Warning for altercation and/or falsification of Department and/or facility documents/records; failure to perform job properly; in demonstrating a pattern of exceeding the scope of his authority and insubordination
- Letter dated 09-19-18, Written Reprimand for calling a Code Green (all clear) before all interventions had been completed by the Nurse Practitioner (CRNP)
- Letter dated 10-11-18, Written Warning for neglect and inattention to job duties and constant observation of a patient.

I have carefully considered the information provided at our conference and it is my conclusion that you did violate the above mentioned policies. Therefore, I am suspending you for five (5) days without pay, effective February 20, 2019 at 2:00 p.m. for your repetitive policy violations. As a leader and officer of the law, you are expected to conduct yourself in the highest standards. As an officer, you have sworn to be exemplary in obeying the law and regulations of the Alabama Department of Mental Health and Taylor Hardin Secure Medical Facility. You will return to work on February 27, 2019 at 2:00 p.m., as February 23 and 24, 2019, are your regularly scheduled off days.

Sincerely,

Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM
Facility Director

pc:    Captain Jeremy Booth
       Personnel File

Employee's signature

Date: 2/14/19

Employee's signature does not denote agreement; only acknowledges that employee received a copy of disciplinary action.

# EXHIBIT 25

**EXHIBIT 25**

# RESPONSE TO POSITION STATEMENT

## WILLIAMSON V. ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

# CHARGE: 420-2019-01887

## EXHIBIT INDEX

1. Williamson v. Alabama Department of Mental Health and Mental Retardation et al
2. Mental Health Security Officer III Announcement (THSMF)
3. Mental Health Security Officer III Announcement (Bryce Hospital)
4. Defamatory Letter & Response
5. Letter to Officer Darrin Paris
6. Pre-Disciplinary Conference Defenses
7. Administrator II (Court Liaison) Announcement

## RESPONSE TO RESPONDENTS' POSITION STATEMENT

### TITLE VII RETALIATION

Title VII of the Civil Rights Act of 1964 Section 2000e-3. [Section 704] sets forth the following:

*"(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings*

*It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor--management committee controlling apprenticeship or other training or retraining, including on—the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."*

### RIGHT TO SUE LETTERS & FILED CHARGES

1. On 8/17/2018 a charge of Discrimination/Retaliation was filed and a *"Notice of Suit Rights"* letter has been requested.
2. On 3/1/2019, a *"Notice of Suit Rights"* letter issued by the EEOC regarding the charge filed upon 8/28/2018 (Stamped received by the EEOC on 8/30/2018).
3. On 3/27/2019, a *"Notice of Suit Rights"* letter issued by the EEOC regarding the charge filed upon 9/25/2018 (Stamped received by the EEOC on 9/27/2018
4. On 3/27/2019, a *"Notice of Suit Rights"* letter issued by the EEOC regarding the charge filed upon 10/17/2018 (Stamped received by the EEOC on 10/19/2018).

### ARGUMENT

Respondents present that a lawsuit has been filed in the United States District Court for the Northern District of Alabama, Western Division which is impertinent to the matters pending for review by the Equal Employment Opportunity Commission (hereinafter referred to *"EEOC"*). The current assigned case number

**1**

regarding this suit is 7:19-00669-GMB and Respondents failed to attach the entirety of this suit which is presented as *EXHIBIT 1*.

It is undisputed that several EEOC charges have been filed and the following adverse actions have been presented for the EEOC's review regarding this charge:

1. 12/10/2018: Non-selection for promotion to Mental Health Security Officer III (Police Captain)
2. 12/13/2018: Non-selection for promotion to Mental Health Security Officer III (Police Captain)
3. 12/13/2018: Attempt to circumvent movement to alternate shift
4. 11/16/2018: Non-selection for promotion to Administrator II (Court Liaison)
5. 2/14/2019: Five-day suspension

As defined, retaliation for the purposes of Title VII is "adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F. 3d 1234, 1242–1243 (CA9 2000) and "the significance of any given act of retaliation will often depend on the particular circumstances." *Burlington Northern & Santa Fe (BNSF) Railway Co. v. White*, 548 U.S. 53 (2006).

On 12/10/2018 and 12/13/2018, I was denied two promotions to Mental Health Security Officer III (Captain/Chief of Police). Myself, as well as Jeremy Booth (Caucasian), were in consideration for promotion within Taylor Hardin Secure Medical Facility (hereinafter referred to as *"THSMF"*). The department conducted interviews in which I was advised that I did fairly well by Senior Special Agent Joseph Rittner who was acting on the panel. Rittner was previously alleged to have discriminated regarding a non-selection for promotion to Mental Health Special Agent I on or about 5/3/2018. Respondents present that Booth was more qualified due to his years of service with the department. According to the announcement regarding the promotion, seniority or years of service with the department was not a factor regarding this promotion (*EXHIBIT 2*):

*"METHOD OF SELECTION: Applicants will be rated on the basis of an evaluation of their training, experience and education, and should provide adequate work history identifying experiences related to the duties and minimum qualifications as mentioned above. All relevant information is subject to verification. Drug screening required. Security Clearances will be conducted on prospective applicants being given serious consideration for employment and whose job requires direct contact with clients."*

As the Respondents deemed me qualified for the position, I am within a protected class, and I was not selected for the position, they are required to "articulate some legitimate nondiscriminatory reason for [my] rejection" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Respondents focus on Booth having more "experience" but present that they were limiting this experience only to the Department of Mental Health which is also inconsistent with this job announcement's "Method of Selection". The announcement additionally presented that:

*"NECESSARY SPECIAL REQUIREMENTS: Must be certified as a Law Enforcement Officer by the Alabama Peace Officer Standards and Training (APOST) Commission and current with all required training and education required by APOST. Must pass a physical agility exam as set by the department. Must be 21 years of age with high personal and moral standards and must have a clean police and work record. Possession of a valid Alabama Driver's License required."*

Respondents were aware that Booth was not in possession of clean police record; as many subjects working within the Police Services Division were aware that Booth had been sanctioned at a former department for illegally disseminating criminal justice information and for committing adultery. The selecting official, Jackson, was well aware that Booth was unable to access criminal records due to prior unlawful circumstances. And as previously presented, the department stated, "*Security Clearances will be conducted on prospective applicants*

**2**

**EXHIBIT 25**

*being given serious consideration for employment and whose job requires direct contact with clients"* according to their proscribed announcement. The department failed to do so. Additionally, I was in possession of approximately 10 years applicable experience to the indicated job. I was additionally more qualified for the position based upon the combination of post-secondary education (Associates Degree, Bachelor's Degree, and nearly completed Master's Degree), efforts to advance the Police Services Division, and a recommendation from senior law enforcement staff who were retiring for the purpose of presenting the promotion opportunity. It should be noted that Booth was not in possession of any post-secondary education or such recommendation. I additionally possessed a superior level of training and provided seven alternate recommendations for my selection with a total of eleven signatures. I additionally presented two portfolios presenting my efforts to advance the Police Services Division. Despite being better suited for the position, Facility Director Annie Jackson ultimately selected Booth. Additionally, a rating system (using rating forms completed by the interview panel) has always been the method of selection and is vital to responding to the non-selection of this position. Respondents fail to mention my rating by the selection panel as a deterrence. No *objectively reasonable person* would have made such a decision. Jackson immediately placed Booth into an "Interim" status when Anderson was released from employment on 8/23/2019 until she was able to make an appointment following interviews. Individuals were under the perception that Booth was already made Captain prior to interviews and Booth's title was referenced by Jackson as "Captain" and "Chief" verbally and written rather than including the "Interim" designation prior to interviews although I was in consideration as well.

I was additionally in consideration for this position at Bryce Hospital where a less qualified African American was selected following a verbal report that I had violated HIPAA by creating an organizational chart naming officers employed at both locations. See *EXHIBIT 3* for position details. The indicated officers were not patients of either facility and this chart indicated their placement so that internal law enforcement staff knew who was employed at each facility, therefore, presenting no HIPAA violation. Such notion was arbitrarily presented by Facility Director Audrey McShan to a fellow law enforcement officer working within Bryce Hospital who advised me of the circumstances. Also, Respondents presented the same circumstance regarding Department of Mental Health experience which is insufficient to present a legitimate business reason for making such decision. The selected candidate, Marcus Owens, had illegitimately been placed in a supervisory position at the location by being designated (uncompetitive) as a Sergeant. The announcement required, at minimum, 12 months of supervisory experience which such illegitimate experience as a Sergeant did not meet minimum qualifications. Additionally, the rating system (using rating forms completed by the interview panel) has always been the method of selection and is vital to responding to the non-selection of this position. Respondents fail to mention my rating by the selection panel as a deterrence regarding this position as well.

As expressed previously, an adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe (BNSF) Railway Co. v. White*, 548 U.S. 53 (2006). Regarding the selection for shift relocation, Respondents attempted to circumvent their own policy to reasonably dissuade me from opposing discrimination. Following my complaint regarding the illegitimate selection procedure, Respondents attempted to correct their retaliation by retitling "interviews" to "meetings". The indicated meeting still occurred and I was not pleased with having to attend such meeting when Respondents were aware that I was highly capable of completing the newly assigned tasks as a day-shift Lieutenant. In efforts to find alternate methods to retaliate, Respondents' delayed the referenced shift-change for approximately three months until 3/1/2019 without sufficient justification and fail to mention this element as well. Such behavior would reasonably dissuade an employee such as myself and has led to the presented lawsuit in *EXHIBIT 1*.

On 2/14/2019, I was suspended for five-days based upon my response to a defamatory letter submitted by day-shift officers. The listed officers were aware of the prior discipline but were not informed of details regarding each event. I provided clarity through free speech as provided in *EXHIBIT 4* and requested retraction

**3**

of defamatory statements by the delivering officer. The included statements provided no basis for investigation seeing that no facts were presented. See *EXHIBIT 5*. As expressed within the filed lawsuit:

*"On 2/7/2019, the Plaintiff attended the scheduled PDC, presented numerous rebuttals to charges presented regarding his use of legal action, presented his unilateral employment contract as well as sufficient authority to refute policy violations, and notified the Defendants of a potential violation of 42 U.S.C. § 1981 affording him a right to "sue, be parties, give evidence". Jackson acted as hearing officer. Jackson was additionally informed by the Plaintiff of discriminatory concerns regarding the indicated officer who presented the retraction letter to her; this officer is Caucasian. Such officer had displayed several apprehensions regarding discrimination which were reported by fellow officers and such officer had presented an indifference to African American supervision, including the Plaintiff. Jackson did not act on or address this complaint of discrimination. Jackson acted solely on a statement that the Plaintiff had reviewed camera footage to ascertain details of the incident without any evidence to presented charges. It should be noted that the Plaintiff was a supervising officer of the indicated officers and was consulted by the Chief Law Enforcement Official regarding what the Plaintiff wished to do regarding the matter; presenting the decision as the Plaintiff's to make, seeing that he was their supervisor. The Plaintiff additionally had authorization to utilize the cameras in such an incident/matter by Jackson."*

See *EXHIBIT 6* for PDC Defenses

As presented during the referenced Pre-Disciplinary Conference, Jackson admitted to having provided me authority to use the camera system for the exact purpose she claims I committed policy violations. Jackson is the policy making authority for authorized use of the camera system at the location and my immediate supervisor sanctioned my ability to determine a course of action regarding the letter. The camera system had been used numerous times for conducting reviews regarding improper employee conduct. As previously stated, "articulate some legitimate nondiscriminatory reason for the employee's rejection" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Regarding the non-selection for promotion applied for on 11/16/2018, again, Respondents have failed to establish a legitimate reason for non-selection. Respondents state there were "numerous" candidates but fail to set forth how many candidates. Respondents state there were more experienced subjects within the field but establish nothing regarding preference for such individuals in their announcement (*EXHIBIT 7*) as they've done numerous times before. Respondents fail to explain why I was not notified regarding such circumstances prior to interview and why I was not notified that a selection had been made until I reached out to their Human Resources Department months later to determine a selection. Respondents, being sufficiently aware that I've opposed their selection procedures in the past, deviated from the traditional notification by mail that a candidate had been selected. Respondents fail to set forth what other applicants were discarded and not interviewed. Respondents advise that they hired another African-American candidate although they declined to provide race when questioned following inquires. Respondents additionally fail to identify the subject so that I may determine whether such information, not presented within an affidavit, is legitimate or true. Nonetheless, Respondents' fail to explain how they did not retaliate regarding this selection procedure and my consideration.

The Supreme Court has designated retaliation as an intentional act in response to a protected action. *Jackson v. Birmingham Bd. of Education*, 544 U.S. 167, 173-74 (2005). Prior to an initial report of unlawful/illegal procedures and discrimination, I was promoted within six months of employment from Police Officer (Mental Health Security Officer I) to Police Lieutenant (Mental Health Security Officer II), received exceeding standards performance appraisals, received a signed recommendation from senior officials, and was acknowledged for my dedication to the advancement of the Police Services Division. Following such reports, the department has taken heightened scrutiny in my employment and has deviated from their collectively

**4**

**EXHIBIT 25**

determined policies to find methods to retaliate against my employment. Based upon the foregoing circumstantial evidence, temporal proximity regarding reports of discrimination and EEOC charges, and illegitimate reasons regarding adverse actions, Respondents do not meet the burden expressed in *McDonnell* and do not establish genuine reasons for my non-selections. As presented, substantial circumstantial issues exists regarding the presented adverse actions and Respondents have deviated from their normal operations and written standards offering sufficient proof to establish causation.

**Date:** Friday, June 28, 2019

Respectfully Submitted,

Derrick James Williamson, Jr., Pro Se
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405
**Cellphone:** (205) 422-9664
**Email:** aeonpctech@live.com

**5**

**EXHIBIT 25**

# EXHIBIT 1

**6**

**EXHIBIT 25**

FILED

2019 May-15  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

FILED

2019 MAY -3  P 12: 24

|  |  |
|---|---|
| DERRICK JAMES WILLIAMSON, JR., PRO SE | ) ) |
| **_PLAINTIFF_** | ) ) |
| V. | ) ) ) |
| ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, ET AL | ) ) ) ) |
| **_DEFENDANTS_** | ) ) |

**7:19-cv-00669-TMP**

JURY TRIAL DEMANDED

### COMPLAINT FOR VIOLATION OF CONSTITUTIONAL AND CIVIL RIGHTS, DISCRIMINATION, RETALIATION, CONSPIRACY, BREACH OF CONTRACT & VIOLATION OF STATE LAW

### COMPLAINT AND REQUEST FOR PRELIMINARY INJUNCTION

Plaintiff Derrick James Williamson, Jr. (hereinafter referred to as *"Plaintiff"*) brings this

Complaint, herein sixteen claims of action, against Defendants Alabama Department of Mental

Health and Mental Retardation (hereinafter referred to as *"ADMH"* or *"the department"*) and its

employees, agents, successors in office, Commissioner Lynn Beshear, Associate Commissioner

Zelda Diane Baugher, Director of Human Resources Lynn Hubbard, Facility Director Annie

Delois Jackson, Personnel Manager Joe Long, Captain Robert Anderson, Jr., Senior Special

Agent Joseph Rittner, and in support thereof allege the following upon information and belief:

# ENTIRE COMPLAINT OMITTED (REDUNDANT)   7

EXHIBIT 25

# EXHIBIT 2

**8**

**EXHIBIT 25**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-556-7060
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

### AN EQUAL OPPORTUNITY EMPLOYER
### ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT SYSTEM POSITION

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Mental Health Security Officer III | **NUMBER:** | 18-10 |
| **JOB CODE:** | S4000 | **POSITION NO:** 8836079 | |
| **SALARY RANGE**: | 75 ($42,496.80 - $64,406.40) | **DATE:** | 10-19-18 |
| **JOB LOCATION:** | Taylor Hardin Secure Medical Facility 1301 Jack Warner Parkway Northeast Tuscaloosa, AL 35404 | | |

**MINIMUM QUALIFICATIONS**: High school diploma or GED equivalency, supplemented by an approved course conducted by a police academy. Considerable (48 months or more) recent experience of a responsible nature in police, security, or investigative work, including some (12 months or more) supervisory experience.

**NECESSARY SPECIAL REQUIREMENTS:** Must be certified as a **Law Enforcement Officer** by the Alabama Peace Officer Standards and Training (APOST) Commission and current with all required training and education required by APOST. Must pass a physical agility exam as set by the department. Must be 21 years of age with high personal and moral standards and must have a clean police and work record. Possession of a valid Alabama Driver's License required.

**KIND OF WORK**: This is responsible and administrative supervisory police work in protecting property and maintaining safety and security of a state forensic mental health facility and directing Police Services. An employee in this class supervises police activities at a state forensic mental health facility. Work involves safe guarding facility property, patients, and employees against fire, theft, vandalism, and other hazards. An important aspect of the work is the availability of the employee in time of emergencies and unexpected incidents. Assignments are received in the form of oral and written orders from the Facility Director/designee. Work conforms with established laws, rules and policies, and is reviewed through reports, conference and accomplishments. Perform other related duties.

Serve • Empower • Support

**9**

Announcement #18-10
MH Security Officer III
Page 2

**REQUIRED KNOWLEDGE, SKILLS AND ABILITIES**: Ability to communicate effectively, both orally and in writing. Ability to organize, plan and implement work in an independent manner. Knowledge of NCIC procedures. Knowledge of State laws and rules. Knowledge of mental health policing. Knowledge of security assessment information. Ability to work any assigned shift and overtime. Ability to maintain firearms qualifications. Ability to supervise a department.

**METHOD OF SELECTION**: Applicants will be rated on the basis of an evaluation of their training, experience and education, and should provide adequate work history identifying experiences related to the duties and minimum qualifications as mentioned above. All relevant information is subject to verification. Drug screening required. Security Clearances will be conducted on prospective applicants being given serious consideration for employment and whose job requires direct contact with clients.

**HOW TO APPLY**: Use an Application for Professional Employment, which may be obtained from this office. Application should be returned to the Personnel Office (at the address above) by **Until Filled** in order to be considered for this position. Do not return this application to the State Personnel Department. Copies of all licenses should be forwarded with your application. *A **COPY OF OFFICIAL COLLEGE/UNIVERSITY TRANSCRIPT FROM COLLEGE/ UNIVERSITY ATTENDED SHOULD ALSO BE FORWARDED TO THE PERSONNEL OFFICE (AT THE ADDRESS ABOVE). JCAHO ACCREDITED/EQUAL OPPORTUNITY EMPLOYER.**

*Only work experience detailed on the application form will be considered. Additional sheets, if needed, should be in the same format as the application. Resumes will not be accepted in lieu of an official application."*

Click Here to Apply:
http://www.mh.alabama.gov/Downloads/ADHR/ADHR_ApplicationForEmploymentExemptClassification.pdf

**10**

**EXHIBIT 25**

# EXHIBIT 3

**EXHIBIT 25**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**BRYCE HOSPITAL**
1651 RUBY TYLER PARKWAY
TUSCALOOSA, ALABAMA 35404-2990
Phone (205) 507-8200
Fax (205) 507-8352
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

AUDREY L. MCSHAN
INTERIM FACILITY DIRECTOR

## ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT SYSTEM POSITION
## AN EQUAL OPPORTUNITY EMPLOYER

**JOB TITLE**: Mental Health Security Officer III          **NUMBER:** 18-16

**JOB CODE**: S4000                                               **DATE:** October 19, 2018

**SALARY RANGE**: 75 ($42,496.80 - $64,406.40)          **POS. #:** 8826327

**JOB LOCATION**: Bryce Hospital
Tuscaloosa, Alabama

**MINIMUM QUALIFICATIONS:** High school diploma or GED equivalency, supplemented by an approved course conducted by a police academy. Considerable (48 months or more) recent experience of a responsible nature in police, security or investigative work, including some (12 months or more) supervisory experience.

**NECESSARY SPECIAL REQUIREMENTS**: Must be certified as a **Law Enforcement Officer** by the Alabama Peace Officer Standards and Training (APOST) Commission and current with all required training and education required by APOST. Must pass a physical agility exam as set by the department. Must be 21 years of age with high personal and moral standards and must have a clean police and work record. Possession of a valid Alabama Driver's License required.

**KIND OF WORK**: Oversees daily operations and administrative functions of the Bryce Hospital Police Department (BHPD). Ensures that all BHPD Officers meet and maintain all special requirements to perform the job in accordance with the Alabama Peace Officers Standards and Training Commission (APOSTC), the Deputy Sheriff's Commission, Certification of Appointment by the Commissioner of Mental Health, weapons qualifications and Continued Education hours so that BHPD Officers maintain their requirement credentials. Supervises and coordinates BHPD functions to ensure the protection of hospital grounds, patients, employees and visitors is maintained 24-hours a day by means of patrolling, attending to emergency situations, and other related interventions. Monitors the BHPD Office staff to ensure that when hospital staff and visitors come to the office or call, they are promptly and courteously assisted. Maintains communications with the Hospital Director/designee by promptly reporting critical or emergency situations occurring on Hospital grounds. Initiates corrective and/or disciplinary actions as necessary in accordance with the immediate supervisor's instructions when violations in department and hospital policies have occurred.

Serve • Empower • Support

**12**

Announcement #18-16
MH Security Officer III
Page 2

Reviews and assigns preliminary reports/investigations. Monitors video camera system. Plans/coordinates trips for the hospital patients and staff so that patient's treatment continues without delays. Ensures transportation vehicles are routinely checked and serviced by staff and any damages to the vehicles are reported. Perform other related duties as requested by the Facility Director/Designee.

**REQUIRED KNOWLEDGE, SKILLS AND ABILITIES:** Ability to maintain a safe and secure environment for patients, staff, visitors and others and provide protection for State property. Ability to deal tactfully with the public and to react calmly and efficiently in the event of an emergency. Ability to be objective and fair in all situations. Ability to deal with patients, employees, and others with respect to their rights. Ability to work with all age groups (adolescents, adults and geriatrics). Ability to be available in times of emergencies or other important matters concerning the Hospital and ability to be contacted (phone number, etc.). Must have good verbal and written communication skills. Ability to write factual/accurate, clear/legible reports. Ability to sustain attention required for video surveillance for long periods of time.

**METHOD OF SELECTION:** Applicants will be rated on the basis of an evaluation of their job-related training, abilities, experience, and education, and should provide adequate work history identifying experiences related to the duties and minimum qualifications as above mentioned. All relevant information is subject to verification. **Drug screening and security clearances will be conducted on prospective applicants being given serious consideration for employment whose job requires direct contact with patients.**

**HOW TO APPLY:** Use an Application for Professional Employment (Exempt Classification) which may be obtained from the website at www.mh.alabama.gov or Bryce Hospital, Human Resources Department. *Only work experience detailed on the application form will be considered. Additional sheets, if needed, should be in the same format as the application. Resumes will not be accepted in lieu of an official application.* Applications should be returned to Bryce Hospital, Human Resources Department, 1651 Ruby Tyler Parkway, Tuscaloosa, Alabama 35404 by: **UNTIL FILLED** in order to be considered for this position. **An official copy of academic transcripts is required and must be forwarded by the college or university to the Human Resources office at the above address.**

Click Here to Apply:
http://www.mh.alabama.gov/Downloads/ADHR/ADHR_ApplicationForEmploymentExemptClassification.pdf

**13**

EXHIBIT 25

# EXHIBIT 4

**EXHIBIT 25**

TO: Annie Jackson (THSMF Director)

From: All Dayshift Officers

Regarding: Dayshift Lieutenant Position

    In Regards to the Dayshift Lt. Position, we as first shift have no confidence in leadership of Lt. Williamson. He does not exhibit qualities of a leader and does not work well with other Officers. Williamson has shown poor judgement in several areas. He has been vindictive towards Officers and not always truthful. We know he has been written up and received numerous complaints from staff and administrators. We feel him coming to our shift would be a detrimental mistake and interfere with our mission in serving the facility. We as a shift have no confidence in Lt. Williamson.

**15**

**EXHIBIT 25**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**RESPONSE TO COMPLAINT**
**POTENTIAL DAY SHIFT ASSIGNMENT**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

**TO:** Day Shift Officers, Dir. Jackson, Capt. Booth

*In accordance with 1st Amendment of the United States, the following is presented to address a public safety and mission concern presented by day shift officers in regards to their knowledge of my action(s). The following is not meant to be construed as confrontational but is to impartially address the presented issues which have been directed towards Director Annie Jackson and me. An interference with the department's mission is to be taken seriously and appropriately addressed by all parties.*

On 12/31/2018 at approximately 1:52 PM, a letter was received addressed by envelope as "LT. WILLIAMSON" via the 2nd Shift box located in the Police Control Room. This letter stated the following:

*"In Regards to the Dayshift Lt. Position, we as first shift have no confidence in leadership of Lt. Williamson. He does not exhibit qualities of a leader and does not work well with other Officers. Williamson has shown poor judgement in several areas. He has been vindictive towards Officers and not always truthful. We know he has been written up and received numerous complaints from staff and administrators. We feel him coming to our shift would be detrimental mistake and interfere with our mission in serving the facility. We as a shift have no confidence in Lt. Williamson.*

*Blake Earnest, Rasheen Prewitt, Randall Hamilton, Darrin Paris, Shane Pike, Montoya Madden"*

In order to remain transparent and to express concern for the details listed, I have provided the following response to allegations and concerns presented. To the listed officers, whether the indicated complaint is/is not of validity, confidence is a foundational trait which is observed when working closely with an individual. Each of you, have not, in my personal opinion, had the appropriate opportunity to work alongside me in order to build such confidence and an individual should be afforded an opportunity to present who they are prior to judgment. As a supervisor, every decision made will not present positive results for the individuals involved since supervision requires the separation of one's personal standpoints and supervisory goals/responsibilities. In reference to the qualities of a leader, I've taken a very risky stance in order to advocate for the advancement of police services which includes seeking position classification changes, pay grade and salary increases, adding a police services section to the ADMH website, obtaining appropriate equipment (approximately $8,000 in equipment secured), establishing grant related assistance, revamping department forms, and maintaining administrative organization (binders, contacts, passwords, organization of control room, posting training, etc.). Additionally, I've personally presented resolutions and bills to advocate for defining of department related statutes (Alabama Code 22-50-21 & 36-21-2), one of which will guarantee subsistence pay of approximately $3,000 annually to your current salary. Education wise; I currently possess an Associate of Applied Science in Criminal Justice (3.18 GPA), Bachelor of Science in Criminal Justice (3.94 GPA), and am currently completing a Master of Science in Justice Administration (4.0 GPA). I also

**16**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

**RESPONSE TO COMPLAINT**
**POTENTIAL DAY SHIFT ASSIGNMENT**

possess an Advance Law Enforcement Certificate (ALEC) and Basic Law Enforcement Certificate (LEC) from an educational institution. Although education may not mean much to some, it provides a foundation in legal and lawful standards. The qualities of a leader, in my personal opinion, are ones the progress despite adversity and misfortune. A leader stands on an established foundation regardless of trials and tribulations presented. A leader places their employment at jeopardy to oppose unlawful and immoral standards while being cognizant of a political atmosphere. Unfortunately, a leader will not appease every individual or every follower (supervisor to subordinate) while conducting their duties. It is expected that a leader will not work well with everyone when an inappropriate foundation exists; as we are currently developing a foundation within THSMF Police Services. When a supervisor takes action on inappropriate conduct (illegal, immoral, and/or unethical), it is not expected that everyone will benefit from such a decision and a personal stake or negative affect should not sway their judgment.

The provided complaint addresses my poor judgement in "several areas" but does not present information or instances that can be addressed. I am not perfect, although, I attempt to make appropriate decisions when required and when initiative is warranted; decisions which are by policy and decisions which are moral, legal, and ethical. If more specific issues are presented, I'm quite sure I can alleviate concerns as long as there is no confidential conflict of information sought. The same response is provided in that I've been "vindictive towards officers and not always truthful". I cannot address these concerns when nothing specific has been presented but I can assure you all that decisions have been made in accordance to ethical, moral, and legal means. Officers will perceive supervisory action as vindictive initially; as this is a natural coping mechanism for some. Being vindictive also requires a personal stake or revengeful foundation. Officers will also typically have inadequate understandings; as every officer is not purview to confidential information. As everyone is aware, several issues have come to light in the past year which could have directly affected you're A.P.O.S.T.C. certifications. As a supervisor who was made aware, along with other authorities, I coordinated with the appropriate individuals to rectify these concerns. A.P.O.S.T.C. was already counteracting our department's decisions following officer certification difficulties. These issues were obvious and blatant; as officers were required to re-qualify under a certified firearms instructor.

As stated, and as I've been transparent about, I have received disciplinary action as stated. On 5/2/2018, I received a written reprimand for contacting the Alabama State Employees' Association (ASEA) to advocate for subsistence pay for police services. I was instructed to no longer establish contact with external agencies (regardless of cause). On 9/19/2018, I received a written reprimand for calling a "Code Green... too early" following a verbal disagreement with Certified Nursing Practitioner Stephanie Pilkinton who was acting as a Psychiatrist Designee. Pilkinton was disappointed because I did not coordinate with her prior to doing so. Other presented issues were of minor concern. In reference to receiving numerous "complaints", the reprimand from 9/19/2018 is the only complaint made to my knowledge. It is supposed,

**17**

**EXHIBIT 25**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**RESPONSE TO COMPLAINT**
**POTENTIAL DAY SHIFT ASSIGNMENT**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

that complaints which were not reviewed with my presence were invalidated if they exist. Matters involving other officers would present confidential issues which are not purview to officers listed on this complaint. When employed, especially when doing a job appropriately or "by the book", complaints are expected. When employed, mistakes will be made and unfortunately, there are consequences for actions which each of us should understand at this point in our careers.

In reference to my potential re-assignment to day shift, I am currently an evening shift supervisor. Each officer I currently supervise has advised they do not have concerns and work with me on a daily basis to secure the facility. An interference "with our mission" and my non-existent "qualities of a leader" should also be apparent on evening shift, if they exist. As everyone is aware, I commonly ask "questions, concerns, complaints?" to all officers to best ascertain which issues exist and day shift officers have not presented any concerns other than what has already been addressed. As you all should be aware, THSMF Police Services mission is as follows:

*"To provide professional, police presents to maintain order in a safe, secure, and therapeutic environment."*

Officers are also expected to follow the oath of office taken upon graduation from a Alabama Peace Officer Standards and Training Commission academy stating the following:

*As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.*

*I will keep my private life unsullied as an example to all and will behave in a manner, which does not bring discredit to me or my agency. I will maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the law and regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.*

*I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.*

**18**

**EXHIBIT 25**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**RESPONSE TO COMPLAINT**
**POTENTIAL DAY SHIFT ASSIGNMENT**



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

*I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of bribery nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.*

*I know that I alone am responsible for my own standard of professional performance and will take every opportunity to enhance and improve my level of knowledge and competence.*

*I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession... Law enforcement!*

If you were willing to sign the presented complaint for my <u>potential</u> shift re-assignment, then I also expect you to be honorable by being able to present these concerns directly. I remain professional and have always been willing to speak with officers regarding their concerns directly. If this had occurred prior to this complaint, I would have been understanding of the presented perception which every individual is entitled to have. In order to establish a foundation, we each have to communicate and, at least, attempt to understand one another. I am well aware that my principles are fairly different than some others but I strive to do the correct thing.

If you wish to voice additional concerns please do not hesitate to speak with me. If you wish for a witness to be present during the addressing of these matters, I'm quite sure that can be arranged. This letter will not be construed as positive to some but it is an expression of my transparency in this matter. This has been presented in a written format; as I believe a verbal discussion was avoided purposely.

I wish the best for each of you and thank you for presenting your concerns,

**DERRICK J. WILLIAMSON JR., BS, AAS, ALEC, LEC, NP**
Police Lieutenant
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Work Cellular Phone:** (205) 792-2089

**19**

EXHIBIT 25

# EXHIBIT 5

**EXHIBIT 25**

# RETRACTION REQUEST
## PRECEDING LEGAL ACTION

**Date:** 12/31/2018 8:47 PM
**To:** Darrin Paris
**From:** Derrick James Williamson, Jr.

In accordance with Alabama Code 6-5-185, describing the procedure of retraction of a matter of libel and/or slander, the presented statements provided on 12/31/2018 are requested to be retracted and/or modified and presented in the same fashion. You were responsible for the delivery of the below indicated information to Jennifer Porter, Jeremy Booth, Joe Long, and potentially placed the below letter in the 2nd shift supervisor's box:

*"In Regards to the Dayshift Lt. Position, we as first shift have no confidence in leadership of Lt. Williamson. He does not exhibit qualities of a leader and does not work well with other Officers. Williamson has shown poor judgement in several areas. He has been vindictive towards Officers and not always truthful. We know he has been written up and received numerous complaints from staff and administrators. We feel him coming to our shift would be a detrimental mistake and interfere with our mission in serving the facility. We as a shift have no confidence in Lt. Williamson."*

*Signatures listed: "Blake Earnest, Rasheen Prewitt, Randall Hamilton, Darrin Paris, Shane Pike, Montoya Madden"*

1. Leadership qualities are outlined in a formal response provided to you and others indicated.
2. What officers are you referencing? Only day shift officers have signed this complaint (you may secure additional signatures on a revised complaint).
3. What has not been truthful that you are aware of? Evidence supporting your findings?
4. Vindictive? Dates? Specific occurrences? This cannot be ascertained unless deliberately stated by the accused.
5. Poor judgment in what areas? Based upon what information? Evidence supporting your findings?
6. Numerous complaints? I've been transparent and have provided facts involving the complaints I've been questioned about to you and the indicated officers. I have only been provided with one complaint in approximately two years.

Please retract all details provided which represent ill knowledge or hearsay provided by another party which is not based upon presented facts along with evidence. As an individual who should be aware of the law, I expected that you will follow this request and follow up by providing information that can be validated. We previously had a discussion on 12/13/2018 while William Hicks was present which presented the idea that a mutation understanding has been met. You verbally stated that you no longer had anything against me or Hicks and shook both of our hands in agreeance. It appears that this conversation occurred under false pretenses. I, personally, have no ill-will towards you and have operated in a supervisory capacity in regards to matters of concern. Statements included which are considered libel are highlighted. Once other individuals are validated as involved in this matter, I will present retraction requests to them separately unless they sign an appropriate letter drafted by you.

It should be noted that retraction is limited to 10 days and action has a two year statute of limitations. Please provide a revised complaint to me and individuals who were provided with this letter.

Thank you for your cooperation,

Derrick James Williamson, Jr.
Acting in a Personal Capacity
(205) 422-9664

**21**

**EXHIBIT 25**

# EXHIBIT 6

**EXHIBIT 25**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

**PDC RESPONSE & CONCERNS**
*SCHEDULED: 2/7/2019*



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

2/24/2019 7:42 PM

## PRESENTED POLICY VIOLATIONS

- *ADMH Policy 70-5 "Employee Conduct and Accountability 1(r) – Disruptive Conduct of any kind, 1(v) – Abuse/and or unauthorized use of facility vehicle, machinery or equipment"*

- *ADMH Policy 70.5.cc "Use of abusive or threatening language"*

- *ADMH Policy 115-20 (THSMF Supplement to ADMH Policy 115-20) "Video Surveillance at state operated hospitals in specified areas to enhance safety and security of recipients and staff and to monitor the quality of care provided, II. 4 – The video recordings may be used for investigative, quality assurance, or training activities with proper permission"*

- *THSMF Police Policy 320 "Rules/Regulations/Conduct of THSMF Police Officers; II. 14. Any abuse of misuses of authority as a police officer, any type of unauthorized use of information, equipment, and II.15. Any conduct that is unbecoming of a THSMF Police Officer, or any misuse of official position as a Police Officer"*

## DEFENSES FOR CONSIDERATION FOR DISCIPLINARY ACTION

1. *"On December 31, 2018, you used the video camera system to search for staff who delivered letters to the Facility Director's Office, Director of Human Resources, the Director of Police Services, and to yourself. You discovered through the video camera system that a fellow officer had delivered letters to the individuals previously named. When question as to how you knew the officer had delivered letters you stated you saw it on camera"*

   **ADMH Policy 115-20 (THSMF Supplement to ADMH Policy 115-20)** states the following in inclusion to the presented policy violations:

   *"Only persons authorized by the Facility Director/designee or Director of Security Services shall be allowed to view the surveillance recordings of an incident. The use of surveillance recording system shall be for official facility business only."*

   a. I am an authorized user of the indicated camera system in respect to a provided list of administrative personnel who have been deemed authorized. The provided list indicates the following: *"Lieutenant's Office – Locations Viewing: Facility Wide, All Cameras: Yes, Review and Rewind: Yes, Live View: Yes".* I also possess an assigned username and password to access the indicated system.

   b. The indicated dissemination of the referenced letter is classified as an incident and the review of camera footage was in reference to official facility business (investigation of conduct inducive of insubordination or a hostile work environment). The use of camera footage has previously been used by administrative staff to substantiate violations of policy and/or procedure. *IE: Review of food*

**23**

**EXHIBIT 25**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

## PDC RESPONSE & CONCERNS
*SCHEDULED: 2/7/2019*

*services concerns, inappropriate safety procedures involving evidence, inappropriate behaviors by staff, sexual harassment complaint(s), etc.*

c. The review of footage was not relied upon in the determination to present the provided "retraction letter" to Darrin Paris; as every individual listed was responsible for its delivery. An emphasis on Paris was established following manipulative behavior on his part.

d. The only question asked of Director Annie Jackson in this matter was how I was aware that Paris delivered the indicated letter(s). No further questioning occurred in this matter and I was not focused on the received call. At the time, someone was in my presence and I was addressing a facility incident.

2. According to **THSMF Police Policy 203 "Lieutenant, Duties and Responsibilities of"**, I am responsible for "*enforcing State/Federal, local laws and the policies and procedures of the DMH, THSMF, and police services.*" The review of video footage was to ascertain the details of what occurred involving the incident. It should be considered that the indicated letter was also addressed to me via envelope ("LT. WILLIAMSON") by receipt of the 2nd shift box. Disciplinary action was drafted for presentation to Captain Jeremy Booth for numerous violations by the involved subjects (including Darrin Paris). In the event I wished to enforce the defamation law, the above policy supports that venue as well. The following are included as policy violations related to the disseminated letter:

**THSMF Police Policy 320 "Rules/Regulations/Conduct of THSMF Police Officers":**

"*4. Making a false report or knowingly enter or cause to enter any false or inaccurate, misrepresented or misleading information to questions or records, oral/written reports or investigations.*"

"*8. Insubordination, or serious breach of discipline, willful disobedience of a lawful order, request of a supervisor, higher ranking officer/official of the DMH.*"

"• *THSMF Officers will address others in a professional manner by rank, professional titles and name and be courteous to everyone they come in contact with in the course of their duties. THSMF Police Officers will be cordial and professional in the performance of their duties regardless of provocation that may arise.*"

**THSMF Police Policy 200 "Chain of Command"**

"*Taylor Hardin Secure Medical Facility (THSMF) Police Services has a clear and established Chain of Command that each officer (Police, Lieutenant, Communication) is to follow in relations to concerns, complaints or any problem involving staffing issues, personal issues or employment. Failure to utilize the Chain of Command will result in serious disciplinary actions ranging from a written reprimand to the termination of employment.*"

**THSMF Supplement to ADMH Policy 60-102(1)**

**24**

**EXHIBIT 25**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

**PDC RESPONSE & CONCERNS**

*SCHEDULED: 2/7/2019*

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

*"It shall be the policy of Taylor Hardin Secure Medical Facility (THSMF) to provide employees an opportunity to express their concerns about actions which they feel are detrimental to them. Opportunity is provided through the chain of command and/or the Employee Complaint Procedure, if appropriate. It is recommended that matters be handled and resolved at the lowest level possible."*

### ADMH Policy 70-5 "Employee Conduct & Accountability"

*"h. Insubordination"*
*"r. Disruptive or disorderly conduct of any kind"*
*"dd. Violation of specific Department/Division/Facility rules, regulations, and policies"*

The above list is not all inclusive and the drafted disciplinary action had not been referred yet. Captain Jeremy Booth specifically asked me what I wished to occur involving the incident after inquiring whether he had reviewed the defamatory letter. Booth was advised that I intended to meet with the group prior to my relocation to dayshift to ascertain concerns. Booth was advised that a witness would be present. Booth presented no orders involving the matter.

3. *"You requested a retraction of all details which represent hearsay... and you indicated the retraction was limited to 10 days and action had a two-year statute of limitations" Further, you indicated others would receive the same retraction request when they were identified. This was viewed as retaliatory in nature of an individual you perceived as having delivered the petitions to administrative staff. You signed the Retraction Request, Preceding Legal Action as Derrick James Williamson, Jr. Acting in a Personal Capacity."*

   a. The presentation of the indicated letter in a civil rights (personal) capacity was in accordance with **Alabama Code Alabama Code Title 6 Chapter 5 Article 11 – Defamation, Libel, Slander**. The use of the indicated procedure is a legal process afforded by the State of Alabama in defamation (libel/slander) cases. As a citizen and "public person", this action is afforded by the Alabama Legislature. Each individual who signed the indicated letter would have been asked to clarify their concerns in a similar "personal letter". Specific reasons for submitting the request to Paris were outlined in the "personal letter" you are in possession of. **Alabama Code Section 6-5-187** states the following:

      *"Truth of charges against public persons may be proved."*

      *"In civil actions for the publication of papers investigating the official conduct of officers or persons in public capacity or when the matter published is proper for public information, the truth thereof may be given in evidence."*

   b. The indicated letter was specifically signed as *"Derrick James Williamson, Jr. – Acting in a Personal Capacity"* to denote that I was not providing the letter as a representation of my official employment but invoking a civil right/action. The letter invoked a legal process to retract or modify the presented information and offers injunctive relief (process for a judge to order retraction and/or modification). A similar process has been used via the Equal Employment Opportunity Commission (EEOC) by use of **25**

**EXHIBIT 25**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**

**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR

**PDC RESPONSE & CONCERNS**

*SCHEDULED: 2/7/2019*

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

"charges" or "litigation". The department has been served with this civil action (EEOC) but has not taken the stance that it has been "retaliated" against for its filing. Evidence supporting civil action may be knowledge, testimony, and/or physical evidence.

   c.  The action taken was professional, considerate, and in accordance with applicable law.

      a.  Paris was given an opportunity to present factual and/or supported information to substantiate his claims.

      b.  Paris and, every other listed subject, were not provided with progressive discipline which was warranted based upon the presented circumstances.

      c.  Each subject was also provided with a professional and detailed letter regarding their concerns. Neither letter included "abusive or threatening language" but included what is blatantly listed in Alabama law.

      d.  Law provided that I use the indicated procedure to ensure factual and/or supported information was presented to repair damage incurred by the defamatory letter. Paris has not been sued at this time.

**4.** Discriminatory concerns exist in Officer Paris' distinct behavior. Several officers have expressed concerns for Officer Paris' interaction with the facilities African American population. The following has been noted:

      a.  Paris, while under the supervision of Antonio Washington (operating as Officer-in-Charge) rejected orders leading to a report directly to me. Paris was insubordinate when the matter was addressed.

      b.  Paris, while under my supervision, was insubordinate to requests. Paris advised, in the presence of fellow officers, that I "wanted" him to go to night shift and made confrontational verbal statements.

      c.  Paris has expressed to a fellow officer that he believes Officer Montoya Madden (African American) should have not been allowed to interview abruptly following most recent interviews. Paris advised the fellow officer that all immediate supervisors would then be African American as he was opposed to African American supervision.

      d.  It has been expressed by Special Agent McDaniel that Paris was involved in civil rights concerns at his former employer in which this employer was omitted from his official application for employment.

      e.  Facility staff have reported Paris as being confrontational and demeaning to African American Mental Health Workers.

**26**

**EXHIBIT 25**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

**PDC RESPONSE & CONCERNS**
*SCHEDULED: 2/7/2019*

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

f.  The letter addressed to myself and Director Annie Jackson is perceived as a basis to prevent my immediate supervision by relocation to day-shift, to ensure an opening for day-shift lieutenant for himself (following a recent application for Lieutenant), and prevent being supervised by an African American.

With several reports of concerning communication and potential discriminatory matters, a letter invoking a civil action by an African American being perceived as "retaliatory" is expected of Paris. As it appears, each and every decision made by an African American which has not supported Paris' stance has been personal and unfavorable in his eyes.

## CONCLUSION

As a supervisor operating as a Mental Health Security Officer II (Police Lieutenant), I recognize that civil rights exist in my personal capacity. I am a supervisor employed with the Alabama Department of Mental Health but this does not mean I relinquish my civil rights or causes of action in civil court. I was previously informed by a supervisor that civil action was "fine" and was informed by a Director of Human Resources to seek legal aid in matters. Involving Officer Darrin Paris; as a supervisor I adequately documented his conduct just as I do with all other subordinates in which Paris has enlisted efforts to circumvent the occurrence of my immediate supervision. Legal action in reference to the provided personal letter has not occurred. Although these events have not occurred, requesting that Paris present factual and/or supported details using a formal legal process should not be considered as retaliation. In the event the defamatory letter included factual and supported information, the defamation retraction process would have not been utilized. As indicated in the provided PDC notification, *"This was viewed as retaliatory in nature of an individual you perceived as having delivered the petitions to administrative staff"*. A formal response letter and request for retraction is not retaliatory when Paris operated contrary to department policies and procedures as well as state law. Paris was professionally requested to retract/modify statements and has not received disciplinary action.

Each and every officer within this department should be aware that their personal and official actions have potential consequences. The personal choice I made in this matter was indeed professional and according to applicable law and did not violate a directive. None of the presented policies prevent legal action outside of the place of employment involving a fellow co-worker. The personal letter presented to Officer Paris did not state what was relied upon in the determination that he delivered the referenced letter (IE: "You were seen on camera"). Nonetheless, it was apparent that each subject was "responsible for the delivery" of the referenced letter as denoted by their official signature aside from a review of camera footage supporting the drafting of undelivered progressive discipline. Regardless of the indicated letter not directly relating to reviewed camera footage, in the event of civil action, all supporting evidence is subject to being referenced in **27**

**EXHIBIT 25**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

## PDC RESPONSE & CONCERNS
*SCHEDULED: 2/7/2019*

testimony. In this instance, a "request for retraction preceding legal action" is also considered evidence to the civil practice referenced in **Alabama Code Alabama Code Title 6 Chapter 5 Article 11 – Defamation, Libel, Slander.** In a similar reference, in the event of an EEOC charge/complaint, written testimony of knowledge gained in an official capacity is not considered a violation of organizational policy and/or procedure. The complaint filed indicating "retaliation" for this civil action is perceived as discriminatory and an effort to limit a civil action by an African American (denoting my use of "personal capacity"). The referenced complaint directly resulted in the attended Pre-disciplinary Conference (PDC) during the presentation of this letter. If there are any other views and/or perceptions of concerns presented at this PDC, please present them so that I may be open to all interpretations.

Thank you for your consideration and review of this matter,

**DERRICK J. WILLIAMSON, JR., BS, AAS, AS, ALEC, LEC**
Police Lieutenant/MHSOII
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Work Cellular Phone:** (205) 792-2089
**Work Office Phone:** (205) 462-4554

**28**

**EXHIBIT 25**

# EXHIBIT 7

**29**

**EXHIBIT 25**

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**RSA UNION BUILDING**
100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

## ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
## EQUAL OPPORTUNITY EMPLOYER

**JOB TITLE:** Administrator II                                          **NUMBER:** 18-35
(Forensic Outpatient Services Coordinator/Court Liaison)

**JOB CODE:** A1500                                                      **DATE:** 10/19/2018

**SALARY RANGE:** 74 ($40,468.80 - $61,303.20)                          **PCQ#:** 8813370

**JOB LOCATION:** Department of Mental Health
RSA Union Building
100 North Union Street
Montgomery, AL 36130-1410

**MINIMUM QUALIFICATIONS:** Bachelor's degree in business administration, public administration, human services, criminal justice or related field. Experience (24 months or more) in the mental health field.

*Human services field includes the following disciplines: Social Work, Psychology, Criminal/Juvenile Justice, Special Education, Sociology, Speech Education, Rehabilitation, Counseling, Speech Pathology, Audiology, Nursing, Physical or Occupational Therapy, and any related academic disciplines associated with the study of Human Behavior, Human Skill Development, or Basic Human Care Needs*

**KIND OF WORK:** This is responsible professional administrative work serving as the Coordinator and Court Liaison for the Forensic Outpatient Services. This position will be responsible for providing administrative oversight to Department's Outpatient Forensics Program and assisting the Director of Forensics Outpatient Services in implementing and managing an effective and efficient statewide forensic outpatient program. The employee in this position will be responsible for coordinating the administrative process of requesting information needed from district attorneys, defense attorneys, juvenile probation officers, etc. to execute circuit court orders for outpatient forensic evaluations statewide. This position will routinely communicate with individuals and/or entities involved in the forensic outpatient evaluation process; prepare reports and provide defendant status updates to the courts, district attorneys and defense counsels. This position will also provide supervision of an administrative support assistant and/or temporary staff in the absence of the Director of Forensic Outpatient Services.

**REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:** Knowledge of the Code of Alabama, 1975 and the Alabama Rules of Criminal Procedure. Considerable knowledge and ability in utilizing personal computers, internet resources and using Microsoft Office products. Ability to capture and analyze data. Ability to make administrative decisions. Ability to organize, plan, prioritize and monitor work activities to achieve established goals. Ability to express ideas clearly and in a concise manner,

Serve • Empower • Support

**30**

**EXHIBIT 25**

Announcement #18-35
Administrator II (Forensic Outpatient
 Services Coordinator/Court Liaison)
Page 2

both orally and in writing. Ability to write clear and concise reports. Ability to establish and maintain effective working relationships with a broad range of individuals and organizations.

**METHOD OF SELECTION:**    Applicants will be rated on the basis of an evaluation of their education, training, and experience and should provide adequate work history identifying experiences related to duties and minimum qualifications as mentioned above. All relevant information is subject to verification. Drug screenings and security clearance will be conducted on prospective applicants being given serious consideration for employment and whose job requires direct contact with clients.

**HOW TO APPLY:**    Use an official application for Professional Employment (Exempt Classification) which may be obtained from this office, other Department of Mental Health Facility Personnel Offices, or visit our website at www.mh.alabama.gov. **Only work experience detailed on the application will be considered.** Additional sheets, if needed, should be in the same format as the application. Resumes will not be accepted in lieu of an official application. Applications should be returned to Human Resource Management, Department of Mental Health, P.O. Box 301410, Montgomery, Alabama 36130-1410 or RSA Union Building, 100 North Union Street, Montgomery, Alabama 36104. Copies of License/ Certifications should be forwarded with your application. An official copy of academic transcripts is required and must be forwarded by the school, college, or university to the personnel office at the above address.

**DEADLINE: November 16, 2018**

Click Here to Apply:
http://www.mh.alabama.gov/Downloads/ADHR/ADHR_ApplicationForEmploymentExemptClassification.pdf

**31**