FILED

2019 Aug-16  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

2019 AUG 16  P 12: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| DERRICK JAMES WILLIAMSON, JR. PRO SE | |
| ***PLAINTIFF*** | CASE NO.: **7:19-CV-00669-LSC** |
| V. | |
| ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION ET AL | OPPOSED |
| ***DEFENDANTS*** | |

---

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT & SUPPORTING BRIEF

---

**COMES NOW**, the Plaintiff, Derrick James Williamson, Jr., and moves

for Partial Summary Judgment in accordance with Rule 56 of the Federal Rules

of Civil Procedure regarding the Defendants' First Amendment violations

through prior restraint and retaliation regarding discipline of 5/2/2018.

## TABLE OF CONTENTS

*I.    RESOLUTIONS (AGREEMENTS & DISAGREEMENTS)*

*II.    RELEVANT MATERIAL FACTS*

*III.    ARGUMENTS & LEGAL AUTHORITIES*

*A.  COLOR OF STATE LAW*

*B.  FIRST AMENDMENT PRIOR RESTRAINT*

*C.  ALABAMA DEPARTMENT OF MENTAL HEALTH POLICY 15-001*

*D.  ADVERSITY & DEFENDANTS' LIABILITY*

*E.  CLEARLY ESTABLISHED LAW*

*F.  FIRST AMENDMENT RETALIATION*

*G.  INJURY*

*IV.    CONCLUSION*

## I.   RESOLUTIONS (AGREEMENTS & DISAGREEMENTS)

1.     On 8/12/2019, Plaintiff contacted Defendants' counsel to confer

regarding this motion and advised that such motion relates to a First Amendment

violation by use of a prior restraint in reference to the reprimand issued upon

5/2/2019. On 8/13/2019, Defendants' counsel responded to the Plaintiff and

advised that response would be provided on 8/15/2019. On 8/15/2019,

Defendants' counsel responded and advised that they are opposed to the filing of

this motion without providing further insight on the constitutional violation. (Mo.

Ex. 1).

## II.   RELEVANT MATERIAL FACTS

2.     **UNDISPUTED**: On 1/22/2018, Jackson was notified of criminal

activity within Taylor Hardin Secure Medical Facility and Jackson advised that

officers should follow an administrative/non-criminal process in certain instances

instead of seeking criminal action. (Doc. 22, ¶ 17). **DISPUTED BUT**

**SUPPORTED:** Plaintiff notified that he filed criminal charges upon a patient

housed within the facility in which a warrant was issued for the patient's arrest

by the Tuscaloosa County District Attorney's Office. (Pl. Ex. 104, 211).

3.     **UNDISPUTED**: On 1/26/2018, the Plaintiff reported potential

ethical violations committed by Jackson. (Doc. 22, ¶ 18).

4.     **SUPPORTED:** On 2/20/2018, the Plaintiff submitted a draft of a bill for review to Defendants Jackson and Anderson as well as other subjects. Attorney Jason Manasco with the Alabama State Employees Association was copied on this communication. (Pl. Ex. 135, 208, 212).

5.     **DISPUTED BUT SUPPORTED:** On 5/2/2018, the Plaintiff received a written reprimand presenting the following statements:

> *"Lt. Williamson, you are not to send any information pertaining to the Department of Mental Health, Taylor Hardin Secure Medical Facility to any other agency, personal without the approval of the Director of Police Services and/or Facility Director.*

> *Lt. Williamson is to submit all information related to Department of Mental Health and/or Taylor Hardin Secure Medical Facility for review and approval by the Director of Police Services and/or Facility Director."*

(Pl. Ex. 26) (Doc. 22, ¶ 21, Assertions Denied as Written).

6.     **UNDISPUTED:** On 7/17/2018, Plaintiff filed an internal complaint regarding such reprimand. (Doc. 22, ¶ 31) (Pl. Ex. 49). **DISPUTED BUT SUPPORTED:** Such complaint was disseminated to Defendants Hubbard, Jackson, Long, and Anderson and the Plaintiff was denied relief and consideration of his rights. (Pl. Ex. 124, 140, 150).

7.     **SUPPORTED:** On 9/19/2018, Defendants' counsel presented a statement regarding the Plaintiff's actions to the Equal Employment Opportunity Commission (hereinafter "EEOC"). (Doc 39, Pl. Ex. 4, p. 2-3).

8.   Plaintiff asserts that numerous details regarding the contents of such documents have not been diligently admitted for the purposes of this Motion. Plaintiff asserts that the record and evidence reveal such details as opposed, although, supported by evidence.

### III.   ARGUMENTS & LEGAL AUTHORITIES

### A. COLOR OF STATE LAW

Pursuant to 42 U.S.C. § 1983, any person who:

*"under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."* (42 U.S.C. § 1983).

As expressed, 42 U.S.C. § 1983 provides a right of action to remedy a violation of a right secured by the Constitution or the laws of the United States.[1] Essentially, "1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *See also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979). "Traditionally, the requirements for relief under 42 U.S.C. § 1983 have been articulated as: (1) a violation of rights protected by the

---

[1] *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1447 (10th Cir. 1990).

Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). States are not persons for purposes of 42 U.S.C. § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997). State officials sued in their official capacity for injunctive relief, however, are persons for purposes of 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71 n.10; *Flint*, 488 F.3d at 825; *Doe*, 131 F.3d at 839. Essentially, "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). State officials sued in their personal capacity are persons for purposes of 42 U.S.C. § 1983. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiff, for this purpose, pursues the Defendants in their official and individual capacities. Liability in a personal/individual capacity suit can be established by showing that the public official caused the alleged constitutional injury. *See Id.* at 166. Finally, it is imperative to note that the capacity in which the public official acted when engaging in the alleged unconstitutional behavior does not determine the capacity in which the public official is sued. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) (Official capacity "is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury.")

Each individual Defendant listed within the initial pleading are state officials employed by the Alabama Department of Mental Health and Mental Retardation (Hereinafter referred to "Alabama Department of Mental Health" or "department"). All actions taken against the Plaintiff were pursuant to purported official duties and authority established under such department. (Doc. 23, "Parties" & Doc. 28, "Parties"). Each Defendant had sufficient authority to circumvent or reverse the instituted action by virtue of job created authority and supervisory oversight. Defendants have acted under color of state law through "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *See also Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981). Finally, for the purposes of the department in its entirety, Defendant Beshear is the "final policy making authority" and Defendant Jackson is the "final policy making authority" for Taylor Hardin Secure Medical Facility under such department. *See Pembaur v. Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

## B. *FIRST AMENDMENT PRIOR RESTRAINT*

In efforts to reduce the controversies in this Complaint before the Court, the Plaintiff seeks partial summary judgment on what can be clearly addressed at

this stage in the pleading. In the Plaintiff's Complaint, the First Cause of Action alleges that Defendants Beshear, Hubbard, Long, Jackson, and Anderson "imposed a prior restraint on his speech by requiring prior approval to disseminate information which was blatantly presented by the Plaintiff in regard to unlawful conduct. Such speech is of public interest." (Doc. 1, ¶ 87). Plaintiff furtherly states that "Defendants' true purpose for instituting the verbal counseling and written discipline was to silence the Plaintiff, prevent Whistleblower Activity, and impose limitations on external contact regarding unlawful/illegal activity occurring within THSMF, a facility under the department." (Doc. 1, ¶ 84).

The United States Supreme Court has held that "any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963). Further, a prior restraint on speech is classified as conduct that restricts or "chills" speech because of its content before its communication.[2] These areas commonly present that:

---

[2] *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1308 (10th Cir. 2009) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007)); *O'Connor v. City & Cnty. of Denver*, 894 F.2d 1210, 1220 (10th Cir. 1990) (quoting *Berg v. Health & Hosp. Corp. of Marion Cnty., Ind.*, 865 F.2d 797, 801 (7th Cir. 1989)) ("Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated.").

> *"(1) the speaker must apply to the decision maker before engaging in the proposed communications; (2) the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves 'appraisal of facts, the exercise of judgment, and the formation of an opinion' by the decision maker."* [3]

The United States Supreme Court has long expressed that prior restraints are "the most serious and the least tolerable infringement" of First Amendment rights and, as such, are presumptively unconstitutional. *Nebraska Press Association v. Stuart*, 427 U.S. at 559, 96 S. Ct. 2791.

As presented within the record, Anderson, with the approval of his supervisor, Jackson, administered a written reprimand directly limiting the Plaintiff's First Amendment right to petition the government for a redress of grievances or to engage in free speech not impeded by governmental restraint. (Pl. Ex. 26). It is expressed that the "special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *See Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 390 (1973); *See also Vance v. Universal Amusement Co.*, 445 U.S. 308, 315–316 (1980) ("the burden of supporting an injunction against a future exhibition is even heavier than the

---

[3] *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2009) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975)).

burden of justifying the imposition of a criminal sanction for a past communication"). Such systems of prior restraint can, indeed, also apply to employment decisions and sanctions.[4] Prior to the implication of such prior restraint, the Plaintiff spoke on several matters of public interest/concern involving potential external reporting of unlawful conditions, directives, and/or protocols. Plaintiff furtherly attempted to resolve concerns regarding Taylor Hardin Secure Medical Facility's heightened contraband problem. (Pl. Ex. 229).

Furthermore, the right to petition the government for redress of grievances is fundamental in the First Amendment and commonly includes the right of every citizen to access to the courts. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L.Ed.2d 642 (1972). The clause also guarantees citizens the right to petition for redress of grievances via available procedures, any department of the government, and state administrative agencies. *See Gearhart v. Thorn*, 768 F.2d 1072 (9th Cir. 1985). The deliberate contents of the provided reprimand present an overly broad restriction upon the Plaintiff's right to speak on matters regarding the department. Such restriction

---

[4] *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (explaining that use of "informal sanctions," including "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," may give rise to a prior restraint); *Brammer-Hoelter*, 602 F.3d at 1185–87; 10 Bus. & Com. Litig. Fed. Cts. § 108:4 Types of Prior Restraints (3d ed. 2015) (citing *Multimedia Holdings Corp. v. Circuit Ct. of Fla., St. Johns County.*, 544 U.S. 1301, 1306 (2005)) ("A prior restraint may take many forms, including . . . informal procedures undertaken by officials intended to chill expression").

signifies a prior restraint in violation of the constitution and unduly restricts Plaintiff's speech regarding illegal, immoral, and/or unethical behavior outside his normal job duties regarding the department which are inherently protected; posing no concern for proposition.[5] *Also see Barone v. City of Springfield*, No. 17-35355 (9th Cir. 2018) (Where employer's subsequent action, following discipline, attempted to restrict the police officer's speech and was deemed unlawful). Defendants cannot present a viable and lawful reason supporting such overly broad restraint which imposes limitations and hindrances on what may be a protected public interest and refused to revise such reprimand when prompted by the Plaintiff on numerous occasions. Defendants had alternate and least restrictive means available which were not utilized. Defendants additionally superseded the avenue of administering a written warning prior to the issuance of this reprimand although the Plaintiff had received no prior written discipline with the department. (Pl. Ex. 82). Plaintiff's cannot adduce any written discipline prior to this occurrence. The record furtherly suggests that Defendant Jackson attempted to prevent the Plaintiff's access to the courts regarding unlawful criminal activity which was expressed not to be within his purview to address. (Pl. Ex. 103 – 104) (Doc. 22, ¶ 17). As expressed within the record, "inpatients

---

[5] *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742 (emphasis added); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

overdosing on illegal drugs... patients being abused by staff... non-existent communication channels" are among the various things employees within this "difficult" environment may wish to speak upon. (Pl. Ex. 229). Further concerns of a public interest are outlined in the facility's Culture of Patient Care Survey. (Pl. Ex. 217). Furthermore, Plaintiff expected if such review was to be conducted prior to his speech, such considerations would have been biased and against public interest based upon the foregoing discrepancies within the facility. Such restraint is "reasonably likely to deter" a citizen's protected speech under the First Amendment. *See Thomas*, 763 F.3d at 1168-69; *See also Coszalter v. City of Salem*, 320 F.3d at 974-75 ("The goal is to prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights.") (quoting Rutan, 497 U.S. at 73). Additionally, "threats of invoking legal sanctions and other means of coercion, persuasion, and intimidation" have the intention of chilling protected speech and constitutes a prior restraint.[6] Plaintiff anticipated that engaging in further protected speech, without governmental consent, shall result in suspension and/or termination. (Pl. Ex. 82). Furthermore, "a core concern of the First Amendment is the protection of the 'whistle-blower' attempting to expose government corruption." *Jr. Bryson, Plaintiff-appellant,*

---

[6] *See Se. Promotions Ltd. v. Conrad*, 420 U.S. 546, 558–59 (1975) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

*Cross-appellee, v. City of Waycross, C.b. Heys, W. Lynn Taylor, Defendants-appellees, Cross-appellants*, 888 F.2d 1562 (11th Cir. 1989). Plaintiff advised of unethical concerns, made contact with external governmental agencies to rectify apprehensions, and his speech was erroneously and unlawfully restricted. Such prior restraint furtherly prevented the Plaintiff's right to privacy and "chilled" his prompt protected speech.

## C. ALABAMA DEPARTMENT OF MENTAL HEALTH POLICY 15-001 "LEGISLATIVE REVIEW"

Plaintiff alleges that "by reason of the aforementioned restriction imposed by abridging the freedom of speech, freedom of association, access to the press, and ability to petition the government for a redress of grievances, Defendants have deprived the Plaintiff of his right to engage in the listed rights in violation of clauses set forth in the First Amendment." (Doc. 1, ¶ 83). Defendants have presented the ideal that Alabama Department of Mental Health Policy 15-001 (Pl. Ex. 78) bars the Plaintiff from seeking external review of legislation regarding the department. (Doc 39, Pl. Ex. 4, p. 2-3). In light of the presented contentions and the Defendants instituted policy, if such policy indeed bars the Plaintiff's associations, in the context of a citizen, such policy would be unlawful due to its breadth. Such policy reads, "All proposed legislation will be approved for submission to the Legislature by the Commissioner and submitted to the

Legislature by the Legislative Liaison." (Pl. Ex. 78, p. 2). As previously expressed, the "special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Id.* Defendants may not bar the Plaintiff's speech or any other employee's speech as a citizen in broad context. *See Pickering v. Board of Education, 391 U.S. 563 (1968). Also see* previously cited cases.[4] Defendants may revise such policy to expressively set aside clearly established exceptions to speech pursuant to the First Amendment or present "justification for the imposition of such a restraint." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971). Plaintiff, in the employer's context that "Policy 15-1 clearly establishes that priorities for proposed legislation on behalf of the Department are ultimately the prerogative of the Commissioner and have to be vetted through the Commissioner" (Doc 39, Pl. Ex. 4, p. 3), presents a broad constraint on legislative process and the ability to freely associate, petition, and assemble.[7]

### D. ADVERSITY & DEFENDANTS' LIABILITY

For the reference of the court, Defendant Robert Anderson, Jr. is the former supervisor and subject responsible for the issuance of the referenced reprimand

---

[7] As previously expressed, "the right to petition the government for redress" and the "right to petition" are grounded in the First Amendment as presented in *California Motor Transport Co.* and *Gearhart. Id.*

(Doc. 1, ¶ 9), Defendant Annie Jackson is the former supervisor of Anderson (Doc. 1, ¶ 7), Defendant Joe Long is the Personnel Manager of the facility the Plaintiff is employed within under the department (Doc. 1, ¶ 8), Defendant Lynn Hubbard is the Human Resources Director of the department (Doc. 1, ¶ 6), and Defendant Lynn Beshear is the Commissioner of the department (Doc. 1, ¶ 3, *See* Alabama Code § 22-50-16 (1975)).

In the Plaintiff's attempt to resolve the constitutional violation internally, he was denied appropriate review on several occasions to include: (1) his notification and request for review of the unlawful reprimand (Pl. Ex. 140), (2) his direct request for Jackson's rescinding of the reprimand (Pl. Ex. 150 & 241), (3) his direct contact with Defendant Long and Long's responsibility for review (Pl. Ex. 139-140), (4) his request for review by Defendant Hubbard (Pl. Ex. 50), and, (5) his notices to Defendant Beshear (Pl. Ex. 47, 123-124, and 141). Plaintiff was additionally declined an appropriate review by the Alabama State Employees' Association (hereinafter "ASEA") (Pl. Ex. 107). The Plaintiff's complaint regarding the instituted reprimand placed Defendants on advance notice regarding such unlawful action although well-established law was available. (Pl. Ex. 49). As the key personnel and employment law leadership within the department, such responsibility to conduct a thorough review, along with the department's legal division, fell upon Defendants Hubbard and Long. Both officials referred to the

department's complaint procedure (Pl. Ex. 86) although placed on notice of legal contentions regarding its issuance. Any reasonable public official of supervisory capacity should be aware that such limitations would potentially "chill" the Plaintiff's speech and that such directive was beyond their scope of authority. *Id. Coszalter*.

Additional discrepancies are within the record and represent that the perceived and proffered legitimate reason for instituting the reprimand is pretextual. (1) The department's legislative review policy did not clearly impose a restraint on the Plaintiff's dissemination to the counsel of his association, if contextual, a prior restraint is also present within such policy (Pl. Ex. 78), (2) the Plaintiff had indeed submitted the legislation to the department and Jackson for review; controverting the implication that the Plaintiff had not (Pl. Ex. 136), (3) Plaintiff's speech upon business legislative concerns presents conflicting ideals as the department's computer usage policy provided that "communicating in a professional manner with parties outside of the department for business purposes" was "acceptable" (Pl. Ex. 80), and (4) Jackson's knowledge and directive of appropriate human resources procedures should have rendered revisions, at a minimum (Pl. Ex. 139). Additionally, Plaintiff's speech in regard to the disseminated "bill" also touched upon matters of public concern in addressing the expansion of jurisdiction to aid the public and by addressing ambiguities regarding

mental health police officer authority to arrest without warrant. Such bill is purported to be speech as a citizen rather than an officer of the department (Plaintiff's name does not represent his position of authority within this bill and legislative acts are not, in any way, a part of the Plaintiff's official duties). Such a task was not pursuant to any job duty established by the department and would have essentially clarified inefficiencies regarding the department's police officer statute. (Pl. Ex. 208 & 212) (Alabama Code § 22-50-21). Plaintiff was doing the department a service and sought to reduce liability regarding warrantless arrests and increase local safety regarding public perception of the facility. The Plaintiff covered his entire chain of command regarding the unlawfulness of this prior restraint and was afforded no recourse to reverse this constitutional violation. Even when the Defendant's legal counsel became abreast of the constitutional violation, such counsel attempted to justify the department's determination to impose such restraint. (Doc 39, Pl. Ex. 4, p. 2-3). In light of the circumstances regarding the presented record, a conspiracy to violate the Plaintiff's First Amendment rights shall be discussed within a subsequent motion for partial summary judgment following adequate discovery.

## E. CLEARLY ESTABLISHED LAW

The law concerning the unconstitutionality of prior restraints has well been clearly established. *See Hammerhead*, 707 F.2d at 39; *Okwedy*, 333 F.3d at 344;

*Fairley*, 578 F.3d at 525. *Also see Bantom Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Numerous other cases substantiated that the use of prior restraints is unlawful even in the employment context.[4] Furthermore, Qualified immunity shields a public official from liability unless he/she violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). In *Barone v. City of Springfield*, No. 17-35355 (9th Cir. 2018), the 9th Circuit reviewed a similar circumstance in which a community service officer was required to sign a last chance agreement preventing her dissemination of negative information pertaining to her department. The 9th Circuit ruled that such last chance agreement constituted a prior restraint. *Moonin v. Tice*, 868 F.3d 853 (9th Cir. 2017) also presented a similar circumstance on more specified speech. The Plaintiff in this instant action, to the contrary, has no assigned job duties which involve public dissemination or community access, offering greater protection under the First Amendment. Finally, as foundational as *Pickering*, it was clear that employees' sentiments about the proper way to oversee government agencies, when conveyed in an employee's capacity as a private citizen, constituted protected speech and external legislative concerns would conclude a similar ideal. *See Pickering*, 391 U.S. at 571–72, 88 S. Ct. 1731. *See also Muller v. Conlisk*, 429 F.2d 901 (1970) (Where an officer's reprimand based upon

unlawful policy was reversed along with his performance appraisal). Such reprimand also presents concerns for First Amendment retaliation review of this Court.

### F. FIRST AMENDMENT RETALIATION

A First Amendment claim of retaliation must include facts presenting (1) that the employee's speech involved a matter of public concern, (2) that the employee suffered an adverse employment action for exercising his First Amendment rights, and (3) that the employee's exercise of free speech was a substantial or motivating factor in the adverse employment action. *See Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). Adverse actions for the purpose of First Amendment violations are "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Department of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)). *Also see Coszalter*. Plaintiff's issued reprimand falls well within this category. Furthermore, Plaintiff's speech may be classified as a matter of public concern "when the speech can be `fairly considered as relating to any matter of political, social, or other concern to the community." *Fikes*, 79 F.3d at 1084 (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. at 1690). The Plaintiff's bill proposal undoubtably touched upon such

public interest and may indeed contain a mixture of public and private interest.[8] Plaintiff has furtherly shown that such retaliatory action is "reasonably likely to deter" protected speech and it is blatantly evident that his speech was the substantial factor in instituting such discipline. *Thomas*, 763 F.3d at 1168-69; *See also Coszalter. Id.* Indisputably, "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Id.* Subsequently, the Plaintiff's job description presents whether such action taken by him was within his official duties; it was not. (Pl. Ex. 72). Finally, (1) whether the speech at issue impeded the government's ability to perform its duties effectively; (2) the manner, time and place of the speech; and (3) the context within which the speech was made" must also be reviewed. *Fikes*, 79 F.3d at 1084. The Defendants cannot adduce that copying a union official on a departmental email impeded the government's interest in effectively administering its duties in any lawful manner. *See* Alabama Code §§ 22-50-9, 22-50-11. The time, condition, and context of such speech also presented no alarm, concern, and sparked no interest at the time of its dissemination until such Defendants found an appropriate time to utilize such act taken by the Plaintiff. (Pl. Ex. 135). Plaintiff professionally and consciously presented such bill; presented within a sensible context according to department

---

[8] *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 463-65 (5th Cir. 1990)

policy. Defendants' statement of prior directives, in conflict with their policy, is

reviewed in the preceding prior restraint analysis although the Plaintiff was not

disciplined prior to this reprimand. Policies and procedures within the facility

have also been "altered to fit extenuating circumstances". (Pl. Ex. 229). Finally,

a reasonable jury may conclude that the delayed administration of such discipline

was pretextual; as such discipline was drafted and signed on "03/13/2018" by

Defendant Anderson and issued upon "5/2/2018". (Pl. Ex. 26). Plaintiff initially

was hesitant to sign until permitted to speak with his counsel who advised him to

do so. Defendant Anderson ("Bobby") initially signed "refused to sign" for the

Plaintiff. As a matter of law, Plaintiff is entitled to judgment; as a reasonable jury

would make no other conclusion besides Defendants retaliated in violation of the

First Amendment. Such retaliation has been clearly established. *Id. Connick.*

*Also see Flood v. State of Alabama Department of Industrial Relations*, 948.

F.Supp.1535 (M.D. Ala 1996).

### *G. INJURY*

As a result of the issuance of such unlawful discipline, Plaintiff has

suffered emotional distress, actual damages in relation to an issued performance

appraisal (Doc. 1, ¶ 47) (Pl. Ex. 75), injury to his reputation (Doc. 1, ¶ 61),

continuing violations of his civil rights, foreclosure of external employment

opportunities (Doc. 1, ¶ 44), and other forms of harm listed within his complaint.

(Doc. 1, ¶ 211-212). Basic actual damages are currently at the amount of $676.00 representing half of monetary loss as a result of the referenced performance appraisal. Plaintiff additionally asserts an actual damage of $14,952 regarding the non-selection for a National Security Agency position. (Pl. Ex. 195-196). Plaintiff had no other employment discrepancies which should have affected the consideration of this opportunity other than disciplinary action enacted by the department. Numerous other agencies have been provided knowledge of such reprimand through required waivers when the Plaintiff has sought external employment. It is "implied that those in law enforcement careers are not required to make the same showing of public disclosure because such a career often requires confidentiality waivers and extensive background investigations. " *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1130 (9th Cir. 2001), as amended (Mar. 14, 2001) (citing *Lubey v. City and Cnty. of San Francisco*, 98 Cal. App. 3d 340, 347 (1979); *Murden v. Cnty. of Sacramento*, 160 Cal. App. 3d 302, 308 (1984)). The record additionally shows that the Plaintiff's reputation among his peers was also affected by such instituted discipline. (Doc. 1, ¶ 61) (Pl. Ex. 117). Plaintiff furtherly sets forth the amount of $643.47 for costs and fees; as the issuance of this reprimand launched the foundation and basis of this pleading and is the initial unlawful disciplinary action of the department. Plaintiff cannot speculate on damages which should be determined by the trier of

fact and cannot determine the loss of benefits in his current employment (including the relation to adverse considerations for promotions). Such reversal of benefits or other tedious amounts subject to the reversal of this reprimand should be directed to the Defendants to correct.

## IV.   CONCLUSION

**WHEREFORE,** Plaintiff respectively requests this Honorable Court and your Honor conclude, based upon a matter of law with the absence of disputed material facts, that the Defendants violated the Plaintiff's First Amendment rights and grant the following or other appropriately determined remedies:

1. Directed verdict against Defendants Anderson, Jackson, Long, Hubbard, and/or Beshear based upon evidence of record.

2. Declaratory judgment asserting that Defendants violated the Plaintiff's First Amendment rights by and through the issued reprimand.

3. Enjoin Defendants from any further violations of the First Amendment regarding the employment of the Plaintiff and other employees of the department.

4. Injunction ordering the reversal, removal, and non-dissemination (verbally/physically) of the referenced written reprimand of record.

5. Injunction ordering the reversal of the referenced performance appraisal.

6. Injunction ordering appropriate revisions of Alabama Department of Mental Health Policy 15-001

7. Award appropriate damages (compensatory, punitive, nominal, etc.) pursuant to 42 U.S.C. § 1983 in Defendants' personal capacity.

Respectfully Submitted,

Derrick James Williamson, Jr., Pro Se
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405
**Cellphone:** (205) 422-9664
**Email:** aeonpctech@live.com

# CERTIFICATE OF SERVICE

I, Derrick James Williamson, Jr., certify that on 8/16/2019 I served a copy of this document on:

**EDWARD CARY HIXON**
Lead Attorney for Defendants
P.O. Box 301410
Montgomery, Alabama, 36130
*(Electronic Mailing)*

**TERRI OLIVE TOMPKINS**
Attorney for Defendant(s)
1201 Greensboro Avenue
Tuscaloosa, Alabama, 35401
*(Electronic Mailing)*

**THOMAS BAILEY KLINNER**
Attorney for Defendant(s)
P.O. Box 301410
Montgomery, Alabama, 36130
*(Electronic Mailing)*

Derrick James Williamson, Jr., Pro Se
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405
**Cellphone:** (205) 422-9664
**Email:** aeonpctech@live.com