FILED

2019 Aug-16  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

2019 AUG 16  P 12: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| DERRICK JAMES WILLIAMSON, JR. PRO SE | |
| **_PLAINTIFF_** | CASE NO.: **7:19-CV-00669-LSC** |
| V. | |
| ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION ET AL | EVIDENTIARY SUPPORT & NOTICE |
| **_DEFENDANTS_** | |

---

## PLAINTIFF'S EVIDENTIARY MATERIALS IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

**COMES NOW**, the Plaintiff, Derrick James Williamson, Jr., and provides the following evidentiary material regarding this Partial Summary Judgment Motion:

Motion Exhibits (Exhibits regarding motion communications):

>    *1. Communications with Defendants' counsel*

Initial Disclosure Exhibits:

>    *26. Written Reprimand (Anderson)*

>    *47. Director Annie Jackson (Complaint)*

>    *49. Written Reprimand (Complaint)*

>    *50. Response from Hubbard (Email)*

*72. Form 40 (Job Responsibilities)*

*75. Performance Appraisal (All Signatures)*

*78. Policy 15-001 (Legislative Review)*

*80. Policy 40-010 (Computer Usage)*

*82. Policy 60-040 (Progressive Discipline)*

*86. Policy 60-102 (Employee Complaint Procedure)*

*103. Prison Contraband (Letter)*

*104. Patients Contraband (Letter)*

*107. Written Reprimand (ASEA No Assistance)*

*117. Defamatory Letter from Day-Shift*

*123. Letter to Commissioner Beshear*

*124. Response from Commissioner Beshear*

*135. Jackson's Receipt of Bill (Email)*

*139. Jackson's Notice of HR Procedures (Email)*

*140. Cannot File Complaint on Reprimand (Email)*

*141. Complaint Filing Regarding Jackson (Beshear & Hubbard)*

*150. Refuse to Rescind Reprimand (Jackson)*

*195. NSA Conditional Offer*

*196. NSA Record Response*

*208. State Mental Health Police Officer Bill*

*211. Patient Warrant*

*212. State Mental Health Police Officer Bill – Highlights*

*217. Culture of Patient Care Survey*

*229. Affidavit (Lori Leavelle)*

Initial Disclosure exhibit numbers have been retained to ensure appropriate

reference for further proceedings in this action.

Respectfully Submitted,

Derrick James Williamson, Jr., Pro Se
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405
**Cellphone:** (205) 422-9664
**Email:** aeonpctech@live.com

# CERTIFICATE OF SERVICE

I, Derrick James Williamson, Jr., certify that on 8/16/2019, I served a copy

of this document on:

### *EDWARD CARY HIXON*
Lead Attorney for Defendants
P.O. Box 301410
Montgomery, Alabama, 36130
*(Electronic Mailing)*

### *TERRI OLIVE TOMPKINS*
Attorney for Defendant(s)
1201 Greensboro Avenue
Tuscaloosa, Alabama, 35401
*(Electronic Mailing)*

### *THOMAS BAILEY KLINNER*
Attorney for Defendant(s)
P.O. Box 301410
Montgomery, Alabama, 36130
*(Electronic Mailing)*

Derrick James Williamson, Jr., Pro Se
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405
**Cellphone:** (205) 422-9664
**Email:** aeonpctech@live.com

# MOTION EXHIBIT 1

**Re: Williamson v ADMH**

Derrick Williamson

Thu 8/15/2019 3:07 PM

**To:** Terri Tompkins <TTompkins@pjgf.com>
**Cc:** Hixon, Eddie <Eddie.Hixon@mh.alabama.gov>

Good afternoon,

Thank you for your timely response regarding these matters. The motions will be filed on tomorrow most likely and regarding the subpoena to APOSTC, although I'm only required to provide notice, I also value opinions.

Thanks again,



**DERRICK JAMES WILLIAMSON, JR.**
Personal Phone: *1.205.422.9664*
*http://www.aeonpctech.com*
*http://www.facebook.com/aeonpctech*

---

**From:** Terri Tompkins <TTompkins@pjgf.com>
**Sent:** Thursday, August 15, 2019 3:04 PM
**To:** Derrick Williamson <aeonpctech@live.com>
**Cc:** Hixon, Eddie <Eddie.Hixon@mh.alabama.gov>
**Subject:** Williamson v ADMH

Mr. Williamson,

Regarding the Motion for Partial Summary Judgment, I am sure that the defendants will file an opposition to the motion. You may tell the court that the motion is opposed.

Regarding the subpoena to APOST, the court requires that you state whether a motion is opposed; you are not required to ask about discovery, such as a subpoena. We do not, however, oppose the issuance of the subpoena.

Terri Olive Tompkins
Phelps, Jenkins, Gibson & Fowler, LLP
1201 Greensboro Avenue
Tuscaloosa, AL 35401
Telephone: 205-345-5100
Telefax: 205-758-4394

1/3

# MOTION EXHIBIT 1

**Re: POSITION ON SUBPOENA: Regarding Alabama Peace Officer Standards and Training Commission**

Derrick Williamson

Tue 8/13/2019 4:19 PM

**To:** Terri Tompkins <TTompkins@pjgf.com>
**Cc:** tommy.klinner@mh.alabama.gov <tommy.klinner@mh.alabama.gov>; Hixon, Eddie <Eddie.Hixon@mh.alabama.gov>

Sounds good.

Thank you!



**DERRICK JAMES WILLIAMSON, JR.**
Personal Phone: *1.205.422.9664*
*http://www.aeonpctech.com*
*http://www.facebook.com/aeonpctech*

---

**From:** Terri Tompkins <TTompkins@pjgf.com>
**Sent:** Tuesday, August 13, 2019 4:18 PM
**To:** Derrick Williamson <aeonpctech@live.com>
**Cc:** tommy.klinner@mh.alabama.gov <tommy.klinner@mh.alabama.gov>; Hixon, Eddie <Eddie.Hixon@mh.alabama.gov>
**Subject:** RE: POSITION ON SUBPOENA: Regarding Alabama Peace Officer Standards and Training Commission

Mr. Williamson,
I am preparing for an all-day, out-of-town mediation that is tomorrow. I'll respond to your emails on Thursday.

Terri Olive Tompkins
Phelps, Jenkins, Gibson & Fowler, LLP
1201 Greensboro Avenue
Tuscaloosa, AL 35401
Telephone: 205-345-5100
Telefax: 205-758-4394

**From:** Derrick Williamson <aeonpctech@live.com>
**Sent:** Tuesday, August 13, 2019 3:41 PM
**To:** Terri Tompkins <TTompkins@pjgf.com>
**Cc:** tommy.klinner@mh.alabama.gov; Hixon, Eddie <Eddie.Hixon@mh.alabama.gov>
**Subject:** POSITION ON SUBPOENA: Regarding Alabama Peace Officer Standards and Training Commission
**Importance:** High

**2/3**

# MOTION EXHIBIT 1

Good afternoon,

Please review the attached third party subpoena and advise whether you will oppose such request of the court. I believe these records are vital to proving what occurred regarding the affidavit I filed with them regarding Anderson.
Please respond by Friday regarding this potential motion.

Thank you,



**DERRICK JAMES WILLIAMSON, JR.**
Personal Phone: *1.205.422.9664*
*http://www.aeonpctech.com*
*http://www.facebook.com/aeonpctech*

**3/3**

**EXHIBIT 26**

THSMF POLICE SERVICES

COUNSELLING FORM

| DATE | 03/13/2018 | SHIFT | 02pm-10pm |
|------|------------|-------|-----------|

**TYPE OF COUNSELLING BEING ISSUED**

| LETTER OF INFORMATION EDUCATION | | VERBAL | | WRITTEN WARNING | | WRITTEN REPRIMAND | X |
|---|---|---|---|---|---|---|---|

| NAME OF OFFICER RECEIVING COUNSELLING | Derrick Williamson, Lieutenant |
|---|---|

**REASON FOR COUNSELLING**

Violation DMH Policy 15-1 "Organizational Planning" #2 "b" states "The proposed legislation or request shall be submitted to the appropriate facility committee and the facility director for consideration". On serval occasions you have been instructed not to send anything to an outside agency that has not been reviewed and approved by the Director of Police Services and Facility Director. On February 20, 2018, 06:37pm, Lt. Williamson, you sent a "State Mental Health Police Officer Bill-8.31.17pdf" to Jason_Manasco@asea.org which violated the above policy. Lt. Williamson, you are not to send any information pertaining to the Department of Mental Health, Taylor Hardin Secure Medical Facility to any other agency, personal without the approval of the Director of Police Services and/or Facility Director.

**LIST CORRECTIVE ACTIONS TO BE TAKEN BY SUPERVISOR**

Lt. Williamson is to submit all information related to Department of Mental Health and/or Taylor Hardin Secure Medical Facility for review and approval by the Director of Police Services and/or Facility Director.

| SIGNATURE OF OFFICER | *Refused to Sign IBM* | DATE | 5/2/2018 |
|---|---|---|---|

| SIGNATURE OF SUPERVISOR | *Bobby Anderson* | DATE | 3/13/18 |
|---|---|---|---|

| PERSONNEL OFFICE | | DATE | |
|---|---|---|---|

Officer given Original

**Copies given to**

Personnel Office

Director Police

Supervisor File

1/1

# EXHIBIT 47





STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

## FORMAL COMPLAINT & INVESTIGATION
*REF: DIRECTOR ANNIE JACKSON*

Update: 5/3/2018 6:19 PM

## SUMMARY

Over several consecutive months here at Taylor Hardin Secure Medical Facility, several issues have risen that have been improperly addressed. In addition to inadequate solutions, ethical and potentially criminal issues have been noted. This report/complaint has been composed to present the following to address concerns which have developed regarding Director Annie Jackson.

## PROBLEMS AND/CONCERNS OF INTEREST

I.  Dictatorship: Ethical and supervision concerns have halted the progress of the police services division at Taylor Hardin Secure Medical Facility due to Jackson rendering improper control over law enforcement matters. Jackson has subjected several individuals to a hostile work environment.

II. Contraband: While employed at the facility from June 2017 until current, several concerns regarding contraband have potentially hindered the progress and treatment administered to patients. Jackson has hindered the ongoing investigation and/or progress of finding viable solutions to an ongoing and progressive contraband discrepancy. According to records, the following incidents have been documented by police services since May of 2017 after my arrival:

1.  7/10/17 @ 1603 – Lighter located by patient on the ACE Program behind a soap dispenser.
2.  7/23/17 @ 1036 – Patient requested another patient to "smoke" on the BEST Program.
3.  9/4/17 @ 2155 – Patients in possession of marijuana on BEST Program.
4.  9/13/17 @ 2338 – Patient found in possession of paraphernalia and smokeless tobacco on BEST Program. Smell of marijuana reported as well.
5.  9/14/17 @ 1330 – Patient found in possession of smokeless tobacco on BEST Program.
6.  11/10/17 @ 1811 – Patient found in possession of smokeless tobacco on CARE Program.
7.  11/26/17 @ 1735 – Patient found in possession of coffee grinds as well as tobacco on CARE Program.
8.  12/14/17 @ 1024 – Patient found to have tobacco residue in mouth and in possession of tobacco on BEST Program.
9.  12/14/17 @ 2137 – Patient found in possession of smokeless tobacco which he voluntarily turned in to Nurse's Station on ACE Program. The same patient requested nicotine patches for new found addiction.
10. 12/15/17 @ 1405 – Patient found smoking (cigarette) inside room on CARE Program. Patient was also in possession of matches, striker pad (for matches), and smokeless tobacco.
11. 12/20/17 @ 1940 – Patient found in possession of smokeless tobacco on CARE Program.
12. 12/27/17 @ 1603 – Patient found in possession of smokeless tobacco on CARE Program.
13. 1/5/18 @ 1410 – Patient found in possession of smokeless tobacco on CARE Program.
14. 1/15/18 @ 1656 - Patient found in possession of smokeless tobacco on CARE Program.
15. 1/15/18 @ 0052 – Patient noticed spitting in cup on BEST Program. Check revealed that patient was possibly using smokeless tobacco.

**1/17**

# EXHIBIT 47

16. 1/23/18 @ 1421 – Mental Health Worker I smelled of marijuana. Staff was in possession of cigarettes and also stated that the occupants of his vehicle were smoking marijuana.
17. 2/3/18 @ 1512 – Smell of marijuana in front of ACE Program. No smoke or staff in area.
18. 2/23/18 @ 1545 – Two patients found in possession of tobacco on CARE Program.
19. 2/23/18 @ 1515 – Two additional patients found in possession of tobacco on CARE program.
20. 3/5/18 @ 1203 – Patient found in possession of cigarette lighter on CARE program.
21. 3/6/18 @ 0109 – Staff entered facility smelling of marijuana and none was located upon a search.
22. 3/7/18 @ 1140 – Staff located two canisters of fresh tobacco inside a patient's room on ACE program.
23. 3/8/18 @ 1115 – Patient in possession of clear baggy of tobacco on ACE Program.
24. 3/15/18 @ 1345 – Patient found in possession of "blunt block" on BEST Program.
25. 3/16/18 @ 1948 – Tobacco found in trash can on CARE Program.
26. 3/16/18 @ 2040 – Patient found in possession of tobacco inside room and mouth on CARE Program.
27. 3/21/18 @ 2032 – Patient actively using smokeless tobacco on CARE Program in day area.
28. 3/22/18 @ 2149 – "Blunt Block" located in the room/area of a patient on BEST Program.
29. 3/26/18 @ 1745 – Tobacco located in possession of patient on CARE Program.
30. 3/27/18 @ 1713 – Tobacco canister found inside trash on CARE Program.
31. 3/29/18 @ 0922 – Tobacco remnants located in patient's room on BEST Program.
32. 4/10/18 @ 1715 – Patient found in possession of tobacco on CARE Program.
33. 4/18/18 – Potential narcotic located in patient's mail
34. 4/20/18 @ 1756 – Tobacco canister located inside trash can on CARE Program.
35. 4/22/18 @ 1938 – Staff entered secure area with smell of marijuana on clothing. Staff was seen on video and recorded smoking on property prior to entry.

III. Unethical Practices: In efforts to maintain the indicated dictatorship, Jackson has presented several unethical practices as means to maintain control. Such practices have limited the abilities of department leadership who provide expertise in pressing matters.

IV. Promotion of a Hostile Work Environment: Jackson has attempted to intimidate in efforts to prevent the transmission/dissemination of facility related information to appropriate governmental sources through illegal/unethical means.

## INCIDENTS OF CONCERN (NEWEST TO OLDEST)

I. 5/2/18 at approximately 5:44 PM, Director Annie Jackson sent out the following email after which the personal meeting occurred:

> *"In order to ensure the proper HR procedures are followed and that we use a standardized format for documentation, please work with Mr. Long on any written warnings, written reprimands, suspensions, and terminations. HR will ensure they are properly formatted and the standards are correct for which the discipline is being given. Verbal and memo of records can be provided without notice to HR and maintained in your files for verification of the next step of actions to be taken. If you have questions, please feel free to give me a buzz. I appreciate in advance your cooperation in this matter."*

This statement does not accurately reflect the actions of Jackson. Although violations of policy, procedures, and federal/state law occurred, Jackson stated "I'm not rescinding it if that's what you're asking".

II. 5/2/18 at approximately 1:45 PM, Major Anderson presented a written reprimand which indicated I violated ADMH Policy 15-1 indicating "The proposed legislation or request shall be submitted

**2/17**

**EXHIBIT 47**

to the appropriate facility committee and the facility director for consideration". The proposed bill had been forwarded to Anderson several months prior who indicated that it was okay to forward the bill to Director Annie Jackson. All information addressed in the proposed bill related to negotiating terms of employment of law enforcement officials within the department. Jackson responded several months ago stating that the bill would not be considered at that time because of other matters currently being reviewed in legislative session. According to this policy, no violation has occurred. The indicated policy does not state that external resources such as unions and/or collective bargaining resources cannot be used. Jason Manasco is an authorized employee who oversees legislative/legal matters under the Alabama State Employees Association (ASEA). The provided reprimand indicates that it was written on March 13th of 2018 in which Anderson stated that he has not had the time to issue the written warning which is false information. Anderson and I have met on numerous occasions since the listed date and the presented reprimand should have been issued weeks prior. Such information indicates potential retaliation by Jackson in which Anderson has stated on several occasions he had not completed a specific task she asked him to. According to Anderson, he had not completed several orders from Jackson based upon potential unethical concerns. Additionally, no written warning was placed in my personnel file indicating that previous behavior violated policy. According to ADMH Policy 60-80, "No material will be placed in an employee's file unless the employee receives a copy or has access to a copy or is notified that the material is being placed in his/her file" in which Jackson stated in a personal meeting on 5/2/18 that she had written notification based upon an email which does not comply with disciplinary standards. Nonetheless, the initial order would be perceived as illegal based upon policies and laws presented below.

Jackson specifically states on 5/2/18 during the indicated personal meeting that "you received notification that you are not to give anything to anybody outside this facility without going through Major Anderson and myself"

The following comment is listed in the "corrective actions to be taken" on the presented reprimand:

"Lt. Williamson is to submit all information related to Department of Mental Health and/or Taylor Hardin Secure Medical Facility for review and approval by the Director of Police Services and/or Facility Director." which additionally violates several policies, laws, and commission standards presented below:

Alabama Department of Mental Health Policy 60-77

*Hostile work environment/harassment is visual, verbal, or physical conduct that has the intent or effect of unreasonably interfering with an individual's or group's work performance, it includes speech or conduct that is severe or pervasive enough to create an intimidating, hostile, offensive, or abusive work environment. In order to validate a complaint under this policy it must be established that the offending party has brought into issue race, color, religion, sex, national origin, age, disability, or veteran status*

Alabama Department of Mental Health Policy 60-40

*Written Reprimand - a more serious approach to discipline which includes written documentation placed in the employee personnel files, including documentation on the Employee Performance Appraisal at the end of the employee's appraisal year. Notice of a reprimand is provided to the employee in writing. One or more reprimands result in seven (7) points being deducted in the disciplinary section affecting the outcome of the final annual appraisal score.*

Alabama Department of Mental Health Policy 60-110

**3/17**

# EXHIBIT 47

*Indicates that the Alabama Department of Mental Health "shall afford equal access to employees by employee organizations recognized by the DMH.*

United States National Labor Relations Act (29 U.S.C. §§ 151-169) - Allowing employees to engage in union-based organizations

*"It is declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self- organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."*

Alabama State Employee's Protection 36-26A-3

*A supervisor shall not discharge, demote, transfer, or otherwise discriminate against a state employee regarding the state employee's compensation, terms, conditions, or privileges of employment if the state employee, reports, under oath or in the form of an affidavit, a violation of a law, a regulation, or a rule, promulgated pursuant to the laws of this state, or a political subdivision of this state, to a public body.*

First Amendment Rights

*Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances*

Right to Contact Elected Officials

*Rights are afforded to citizens to contact any elected official of the state of Alabama in regard to concerns involving public matters in accordance with the First Amendment of the United States. Elected officials include the Attorney General, District Attorneys, and the Governor of the State of Alabama.*

Alabama Peace Officer's Standards & Training Commission: Criminal Investigations

*Officers who are employed within the department, may also, contact external sources when conducting lawful acts and/or investigations into the following incidents or other criminal violations:*

*(1) Abuse. The infliction of physical pain, injury, or the willful deprivation by a caregiver or other person of services necessary to maintain mental and physical health.*

*(2) Adult in need of protective services. A person 18 years of age or older whose behavior indicates that he or she is mentally incapable of adequately caring for himself or herself and his or her interests without serious consequences to himself or herself or others, or who, because of physical or mental impairment, is unable to protect himself or herself from abuse, neglect, exploitation, sexual abuse, or emotional abuse by others, and who has no guardian, relative, or other appropriate person able, willing, and available to assume the kind and degree of protection and supervision required under the circumstances.*

*(3) Caregiver. An individual who has the responsibility for the care of a protected person as a result of family relationship or who has assumed the responsibility for the care of the person voluntarily, by contract, or as a result of the ties of friendship.*

**4/17**

# EXHIBIT 47

*(4)  Court.  The circuit court.*

*(5)  Department.  The Department of Human Resources of the State of Alabama.*

*(6)  Emotional abuse.  The willful or reckless infliction of emotional or mental anguish or the use of a physical or chemical restraint, medication, or isolation as punishment or as a substitute for treatment or care of any protected person.*

*(7)  Employee of a nursing home.  A person permitted to perform work in a nursing home by the nursing home administrator or by a person or an entity with an ownership interest in the facility, or by both.  A person shall be considered an employee whether or not he or she receives compensation for the work performed.*

*(8)  Exploitation.  The expenditure, diminution, or use of the property, assets, or resources of a protected person without the express voluntary consent of that person or his or her legally authorized representative or the admission of or provision of care to a protected person who needs to be in the care of a licensed hospital by an unlicensed hospital after a court order obtained by the State Board of Health has directed closure of the unlicensed hospital.  For the purpose of this section and Sections 38-9-6 and 38-9-7, the term "unlicensed hospital" shall have the meaning ascribed to it in Section 22-21-33, and the term "licensed hospital" shall have the meaning ascribed to it in Section 22-21-20.*

*(9)  Intentionally.  A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his or her purpose is to cause that result or to engage in that conduct.*

*(10)  Interested person.  Any adult relative, friend, or guardian of a protected person, or any official or representative of a public or private agency, corporation, or association concerned with his or her welfare.*

*(11)  Misappropriation of property of a nursing home resident.  The deliberate misplacement or wrongful, temporary, or permanent use or withholding of belongings or money of a resident of a nursing home without the consent of the resident.*

*(12)  Neglect.  The failure of a caregiver to provide food, shelter, clothing, medical services, or health care for the person unable to care for himself or herself: or the failure of the person to provide these basic needs for himself or herself when the failure is the result of the person's mental or physical inability.*

*(13)  Nursing facility.  A facility which is licensed as a nursing home by the Alabama Department of Public Health pursuant to Article 2, Chapter 21, Title 22.*

*(14)  Other like incapacities.  Those conditions incurred as the result of accident or mental or physical illness, producing a condition which substantially impairs an individual from adequately providing for his or her own care or protecting his or her own interests or protecting himself or herself from physical or mental injury or abuse.*

*(15)  Person.  Any natural human being.*

*(16)  Physical injury.  Impairment of physical condition or substantial pain.*

*(17)  Protected person.  Any person over 18 years of age subject to protection under this chapter or any person, including, but not limited to, persons who are senile, people with intellectual*

**EXHIBIT 47**

*disabilities and developmental disabilities, or any person over 18 years of age that is mentally or physically incapable of adequately caring for himself or herself and his or her interests without serious consequences to himself or herself or others.*

*(18) Protective services. Those services whose objective is to protect an incapacitated person from himself or herself and from others.*

*(19) Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he or she is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk shall be of such nature and degree that its disregard constitutes a gross deviation from the standard conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware of that risk solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of Section 13A-3-2, acts recklessly with respect thereto.*

*(20) Senility. Organic brain damage caused by advanced age or other physical illness to the extent that the person so afflicted is substantially impaired in his or her ability to adequately provide for his or her own care.*

*(21) Serious physical injury. Physical injury which creates a risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, protracted loss of the function of any bodily organ, or the impairment of the function of any bodily organ.*

*(22) Sexual abuse. Any conduct that is a crime as defined in Sections 13A-6-60 to 13A-6-70, inclusive.*

Joint Commission Standard's Reporting

*Any individual, whether employed by a supervising entity or not, may report violations of joint commission standards in efforts to ensure patient safety and security.*

Title VII of the Civil Rights Act of 1964

*Any individual may report to external sources of any potential discrimination violating Title VII of the Civil Rights Act of 1964.*

Alabama Administrative Code 670-X-19 Employee Work Rules

*Insubordination - Failure to follow an order; disobedience; failure to submit to authority as shown by demeanor or words, with the one exception of not following an order which the employee has good reason to believe is unsafe or illegal*

III.    4/17/18, Tuscaloosa County Sheriff's Office was contacted to assist with a narcotics complaint which was received by credible sources within the facility. The source indicated that crystal meth was being smuggled to a current patient at the facility in which an investigation revealed that there was sufficient cause for immediate action on such information. Senior Special Agent Joseph Rittner was contacted to be informed that a narcotics canine had been scheduled by myself to come to the facility on 4/18/18 at 2:00 PM to complete a search of the patient property room. Director Annie Jackson was notified by myself and Associate Commissioner Diane Baugher was notified by Jackson. This was not the first time that such information was forwarded to Anderson, Jackson, and other key personnel for action. Lieutenant Jeremy Booth took control of the scheduled canine search and requested that they come earlier than the scheduled time. Booth was currently acting as Chief Law Enforcement Official in the absence of Major Robert Anderson according to Jackson. Booth was unable to get canines scheduled earlier. Jackson attended the

**6/17**

canine search on 4/18/18 in which canines did indicate that narcotics were previously present in the area. No narcotics were located at this time and any further action was to be halted according to Booth's order. On 4/18/18, after the search concluded, a leave slip was taken to Jackson requesting 4 hours of leave in which she approved but stated she wished to have a conversation. Jackson stated that I would "not be promoted and would not remain in a position for long" if I did not learn to follow protocols. Jackson was questioned about the protocols she was referencing and indicated that the protocols she was referencing were her own. Jackson was advised to place protocols in writing so that I may understand the errors which I have made. Jackson was unable to reference errors in the completion of tasks which I had completed. Jackson also expressed concerns by stating "what if you had found something" and expressed her concerns about external media sources and indicated that my duties do not include requesting a canine search within the facility. Additionally, a promotion which was applied for several weeks prior was not decided in my favor in which Central Office stated I did well but was not selected. It was noted that Jackson had advised that I would not receive a promotion or would not last in my current position, so the allegation exists that Jackson may have hindered such promotion. Anderson returned on 4/24/18, according to his statements, and located a small amount of potential narcotics housed inside a lotion bottle which was addressed to a patient at the facility. Anderson indicated that he had several witnesses when conducting the search. I composed a narcotic testing policy and requested the purchase of a narcotics testing kit several months prior to this event. Both were implemented by Anderson's and Jackson's approval. Anderson failed to use the kit to identify the narcotics and forwarded it to the Bureau of Special Investigations according to procedure. It should be noted that the employee performance appraisal indicates that a Mental Health Security Officer II (Lieutenant) is expected to take "proactive risk reduction" to maintain a safe and secure environment.

It should also be noted that a discrepancy with the continuance of package delivery was also addressed to Anderson. Anderson, according to officers working the 1400-2200 shift, indicated that Anderson had ordered the swift delivery of packages on several occasions following this event because patients were requesting these packages. (Patient safety and security concern)

Alabama Department of Mental Health Policy 60-77

*Hostile work environment/harassment is visual, verbal, or physical conduct that has the intent or effect of unreasonably interfering with an individual's or group's work performance, it includes speech or conduct that is severe or pervasive enough to create an intimidating, hostile, offensive, or abusive work environment"*

IV.    3/21/18, Mental Health Worker I Justin Gosa was arrested on Taylor Hardin Secure Medical Facility property for a traffic violation which led to his arrest. Gosa was in possession of a bag of marijuana, a scale for measuring portions of narcotics, and a loaded firearm. Jackson took no administrative action in regard to the matter according to the Human Resources department. Jackson was presented with a safety and security concern by Gosa being allowed to continue working within the facility and stated that she saw no significance to place Gosa on administrative leave. She additionally stated she wished to follow adequate protocol in the matter. On 4/17/18, it was reported directly to me by Mental Health Worker I Tony Hinton that he had been threatened by Gosa while working on the property the day prior. After investigating, witnesses and video footage revealed substance to the indicate harassment which was in turn forwarded administration for review. According to sources, Gosa has been allowed to continue working until his last day seeing that he submitted a resignation letter. As indicated above, marijuana has entered the facility prior to this occurrence and was found in the possession of patients. Jackson took no action and allowed an employee who is potentially selling illegal drugs to continue employment. It should be noted that facility law enforcement also responded to the traffic stop on the property and witnessed the possession. According to the University of Alabama Police Department, Gosa also

**EXHIBIT 47**

resisted arrest during the altercation by not following orders and had to be physically removed from his vehicle.

V.    2/1/18 it was confirmed that a potential sexual abuse case involving a Taylor Hardin Secure Medical Facility staff member was not referred to the Bureau of Special Investigations (BSI). According to several sources, an internal clinical investigation occurred several weeks prior referencing the staff member coming into work off duty, holding an undocumented group meeting, privately engaging a patient inside her assigned office, and being caught by another employee. It was reported that it took several moments for the accused staff to open the door and the witness advised that it sounded as if sexual contact was involved. The case was reviewed by the Incident Review Board in which Jackson ultimately decided to issue a written reprimand for the offense. According to the Director of Human Resources Joseph Long (2/1/18), there was no sufficient evidence in the case for criminal charges. The safety of the staff as well as the patients were referenced during this brief meeting. Former Clinical Investigator Jessica Tidmore advised that all ordered investigations were to be forwarded to BSI for separate investigation and that the case was forwarded to BSI from her knowledge. At approximately 5:50 PM on 2/1/18, Jackson called the police supervisors office inquiring whether there was any additional or new information in relation to the case. The assumption was made that Long had contacted Jackson in reference to my questioning and concern of the dissemination across the facility. Jackson was asked whether BSI was notified during this phone call and avoided the questioned. Senior Special Agent Joseph Rittner was notified on 2/1/18 at approximately 7:36 PM and stated he was unaware of the incident. Rittner had been notified of potential unethical behavior on 1/26/18 at approximately 3:26 PM due Jackson limiting law enforcement interaction.

Alabama Department of Mental Health Policy 80

1.   *The allegation or report of the following incidents or events shall be reported to the appropriate Associate Commissioner and BSI in order for an investigation to be conducted.*
    A. *Any allegation or suspicion of rape, sexual molestation or sexual abuse of an employee, visitor or other citizen (non-client).*
    B. *Any complaint of a crime alleged to have been committed by a facility director or Central Office employee.*
    C. *Facility director shall notify the Bureau of Special Investigations of evidence of any criminal conduct by employees discovered in facility investigations.*
    D. *All investigations shall be conducted within accepted law enforcement procedures and without interference from any source.*

According to the above listed policy, several violations have occurred which potentially relate to the following criminal charges established by Alabama law (minus potential ethical violations):

Alabama Criminal Code 13A-6-62: Rape in the Second Degree

*(a) A person commits the crime of rape in the second degree if:*

*(1) Being 16 years old or older, he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the member of the opposite sex.*

*(2) He or she engages in sexual intercourse with a member of the opposite sex who is incapable of consent by reason of being mentally defective.*

*(b) Rape in the second degree is a Class B felony.*

**8/17**

**EXHIBIT 47**

*Defined: Mentally defective. Such term means that a person suffers from a mental disease or defect which renders him incapable of appraising the nature of his conduct.*

Alabama Criminal Code 13A-6-67: Sexual Abuse in the Second Degree

*(a) A person commits the crime of sexual abuse in the second degree if:*

*(1) He subjects another person to sexual contact who is incapable of consent by reason of some factor other than being less than 16 years old; or*

*(2) He, being 19 years old or older, subjects another person to sexual contact who is less than 16 years old, but more than 12 years old.*

*(b) Sexual abuse in second degree is a Class A misdemeanor, except that if a person commits a second or subsequent offense of sexual abuse in the second degree within one year of another sexual offense, the offense is a Class C felony.*

Alabama Criminal Code 13A-10-43: Hindering Prosecution in the First Degree

*(a) A person commits the crime of hindering prosecution in the first degree if with the intent to hinder the apprehension, prosecution, conviction or punishment of another for conduct constituting a murder or a Class A or B felony, he renders criminal assistance to such person.*

*(b) Hindering prosecution in the first degree is a Class C felony.*

Alabama Criminal Code 13A-10-2: Obstructing Governmental Operations

*(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:*

*(1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or*

*(2) Intentionally prevents a public servant from performing a governmental function.*

*(b) This section does not apply to the obstruction, impairment or hindrance of the making of an arrest.*

*(c) Obstructing governmental operations is a Class A misdemeanor.*

Alabama Criminal Code 13A-10-82: Misuse of Confidential Information

*(a) A public servant commits the crime of misuse of confidential information if in contemplation of official action by himself or by a governmental unit with which he is associated, or in reliance on information to which he has access in his official capacity and which has not been made public, he:*

*(1) Acquires a pecuniary interest in any property, transaction or enterprise which may be affected by such information or official action;*

*(2) Speculates or wagers on the basis of such information or action; or*

*(3) Aids another to do any of the foregoing.*

**9/17**

**EXHIBIT 47**

*(b) Misuse of confidential information is a Class B misdemeanor.*

On several occasions Jackson advised to not consult or contact eternal agencies in efforts to seek resolution to cases involving the facility unless she authorized such activity. Concern was specifically for contacting officials working for ADMH or external law enforcement agencies.

Seeing that a fair percentage of individuals are aware of the circumstance involving this incident, many other decisions are being compromised;

1. Jackson has decided on several occasions to terminate individuals with far less cause.
2. Any further disciplinary actions will require careful review seeing that this incident may be referenced by a disgruntled employee.
3. The decision to issue a written reprimand rather than terminate the involved suspect presents several safety concerns for the suspect as well as the patients of the facility.
4. Patients making inappropriate references who are aware of the incident.

VI.  1/22/18, a warrant was obtained by myself on a patient for Promoting Prison Contraband in the Third Degree. The patient was found to be in possession of smokeless tobacco on three occasions which were adequately documented by staff. Several concerns assisted in determining that the patient had sufficient mental capacity to understand that said possession was against facility rules and unlawful:

1. Patient was notified on 12/15/17 that possession of the smokeless tobacco could potentially result in a charge of Promoting Prison Contraband in the Third Degree, indicated he would not "snitch", and informed an officer that "y'all can't charge me with that".
2. The patient was found attempting to conceal the indicated contraband on all instances.
3. Patient attempted to conceal and sneak pass officers to dispose of contraband after officers entered the CARE Program.
4. Patient agreed that he understood on 1/5/17 that possession of said contraband was wrong/illegal.

Promoting Prison Contraband 3rd Degree: Alabama Criminal Code 13A-10-38

*(a) A person is guilty of promoting prison contraband in the third degree if the person does any of the following:*

*(1) He or she intentionally and unlawfully introduces within a detention facility, or provides an inmate with, any contraband or thing which the actor knows or should know it is unlawful to introduce or for the inmate to possess.*

*(2) Being a person confined in a detention facility, he or she intentionally and unlawfully makes, obtains, or possesses any contraband.*

*(3) He or she intentionally introduces within a state detention facility operated by the Department of Corrections, or provides an inmate in a state detention facility operated by the Department of Corrections with, any currency or coin which the actor knows or should know is unlawful to introduce or the possession of which is not authorized by an inmate by the written policy of the Department of Corrections.*

*(4) Being a person in the custody of the Department of Corrections, he or she obtains or possesses any currency or coin, the possession of which is not authorized by the written policy of the Department of Corrections.*

*(b) Promoting prison contraband in the third degree is a Class B misdemeanor.*

**10/17**

**EXHIBIT 47**

<u>"Detention Facility" defined: Alabama Criminal Code 13A-10-30</u>

*(a)  The definitions contained in Section 13A-10-1 are applicable in this article unless the context requires otherwise.*

*(b)  The following definitions are also applicable to this article:*

*(1)  Custody.  A restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of court, but does not include mere supervision of probation or parole, or constraint incidental to release on bail.*

*(2)  Detention facility.  Any place used for the confinement, pursuant to law, of a person:*

*a.  Charged with or convicted of a criminal offense; or*

*b.  Charged with being or adjudicated a youthful offender, or a neglected minor or juvenile delinquent; or*
*c.  Held for extradition; or*

*d.  Otherwise confined pursuant to an order of court.*

*(3)  Penal facility.  Any security correctional institution for the confinement of persons arrested for, charged with or convicted of a criminal offense, including but not limited to the following security facilities:  the state penitentiary and any branch thereof or any county or city jail.*

*(4)  Contraband. Any article or thing which a person confined in a detention facility is legally prohibited from obtaining or possessing by statute, rule, regulation or order.*

Jackson was notified prior to said events that charges may be sought due to medical staff being uncooperative with the investigation. A request was submitted to Jackson by Major Robert Anderson to administer a visitation restriction as a consequence against the patient, but she refused to comply. The patient's treatment team advised the patient several days later that they would seek to charge the patient or administer visitation restrictions on a 4th occurrence. In this dissemination, the treatment team indicated they would be in control of deciding whether charges were sought which does not fall under their purview. Jackson was informed of the treatment team's decision which was made on 1/19/18 and informed by myself on 1/22/18 that the warrant had been issued. Jackson questioned what the contraband was and was advised the charge was in relation to smokeless tobacco possession. She additionally asked what "would they be doing with him" which she was informed nothing would occur until after the patient's stay at Taylor Hardin Secure Medical Facility (THSMF). Jackson's demeanor became defensive in which she exclaimed "I'll come back to you". Days prior, Jackson advised that she did not want to subject patients to the "system" which was assumed to be in reference to court process.

Jackson returned to ask additional questions on 1/22/18 nearly an hour later concerning law enforcement's role within mental health and stated she was referring the issued warrant to her lawyer. During nearly a 10-minute conversation Jackson referred to THSMF as "my facility". She additionally stated that the district attorney's office has "nothing to do with mental health". Jackson additionally states that criminal activity of minute status shall be handled through clinical processes and that Anderson was aware of this agreement. Such statement indicates that law enforcement officers employed by the facility shall not seek lawful prosecution of criminal acts which are not deemed "major" by Jackson.

<u>Alabama Code Title 22-50-21 authorizes the pursued action and states that following:</u>

**11/17**

**EXHIBIT 47**

*"The State Mental Health Officer may appoint or employ one or more suitable persons to act as police officers to arrest intruders, trespassers, and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals. Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings, or lands or arrest them and may, without warrant, arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant. Such police officer shall have authority to summon a posse comitatus."*

<u>Alabama Department of Mental Health Policy 70-5</u>

*"All Department employees are expected to cooperate with and to show respect for their co-workers at all times. Cooperation with co-workers is defined as the extent to which an employee works with and does not hinder co-workers to ensure that work unit goals and directives are accomplished."*

<u>Alabama Criminal Code 13A-10-2 prohibits any hindrance in such administration and states the following:</u>

*(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:*

*(1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or*

*(2) Intentionally prevents a public servant from performing a governmental function.*

*(b) This section does not apply to the obstruction, impairment or hindrance of the making of an arrest.*

*(c) Obstructing governmental operations is a Class A misdemeanor.*

<u>Alabama State Employee's Protection 36-26A-3</u>

*A supervisor shall not discharge, demote, transfer, or otherwise discriminate against a state employee regarding the state employee's compensation, terms, conditions, or privileges of employment if the state employee, reports, under oath or in the form of an affidavit, a violation of a law, a regulation, or a rule, promulgated pursuant to the laws of this state, or a political subdivision of this state, to a public body.*

V.      1/26/18 at approximately 3:00 PM, Anderson advised that I may no longer complete anything dealing with outside agencies and may only supervise my shift. The directive was administered by Jackson due the issued warrant which falls within the scope of my duties. Jackson additionally refused to sign a policy written by myself in efforts to address the narcotics testing kit (field drug identification) which she approved to be ordered, after being informed by myself, that I was requesting the kit. The written policy was also approved by Anderson prior to its submission. Based upon the above provided information, Jackson subjects herself to lawful action which could potentially include an arrest for the obstruction of governmental operations. The retrieved warrant was to offer leverage in efforts to resolve the issue of contraband entering the facility and if such behavior shall be authorized, revisions should be made to the following: **12/17**

**EXHIBIT 47**

*Program Rules: Indicating that "any other item considered to be contraband".*

*Facility Policy 170-5: Stating "Anyone who introduces tobacco products or associated paraphernalia, including lighters or matches, into the secure area or provides a patient with any such items is guilty of promoting contraband."*

*Department of Mental Health Policy 115-10: "The use of tobacco products in prohibited at all times. The policy applies to patients, employees, staff, contractors, and visitors."*

Seeing that the department has deemed smokeless tobacco as contraband even when in possession by patients, law enforcement officers who are employed by the department are authorized to pursue lawful action. In the event patients do not wish to comply with assisting in an ongoing investigation (mentally stable), the indicated charge should apply after reasonable opportunity to assist with the investigation. Warrants issued against uncooperative patients who conduct themselves as knowingly disobeying rules should be issued and such charges may be dropped if the patient assist with the investigation with the agreeance of the district attorney.

Alabama Department of Mental Health Policy 70-5

*"All Department employees are expected to cooperate with and to show respect for their co-workers at all times. Cooperation with co-workers is defined as the extent to which an employee works with and does not hinder co-workers to ensure that work unit goals and directives are accomplished."*

Alabama Criminal Code 13A-10-2 prohibits any hindrance in such administration and states the following:

*(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:*

*(1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or*

*(2) Intentionally prevents a public servant from performing a governmental function.*

*(b) This section does not apply to the obstruction, impairment or hindrance of the making of an arrest.*

*(c) Obstructing governmental operations is a Class A misdemeanor.*

VII.   1/18/18: In efforts to assist with the advancement of police services as associated with the Alabama Department of Mental Health, a NRA Foundation Grant (private) was submitted to obtain additional equipment to aid in the protection of patients, staff, visitors, and the facility. In a grant committee meeting which occurred on 1/18/18 at approximately 1:30 PM, Jackson advised that she wished for a bulletproof vest policy to be drafted after being informed by myself that one would be needed to apply for a different grant. The Bulletproof Vest Partnership Grant Foundation referred a model policy which was prepared and referred to Anderson, Jackson, Joe Long, Jacob Harrison, Kevin McDaniel, and Jeremy Booth. Jackson responded with a disparaging comment which stated "It would be better if I had the word document so I can enter my changes. You cannot make changes to the pdf". Seeing that Jackson has no prior law enforcement experience, the statement brought about several concerns about Jackson's capacity to modify law enforcement policy in relation to ballistic vest.

**13/17**

**EXHIBIT 47**

VIII.   1/9/18: After receipt of several complaints concerning the illegal use of handicap parking which is designated at the front of the facility, a purchase order was submitted to acquire additional handicap signs. The spots are currently and clearly labelled but signs are not posted in front of every parking area. On 1/11/18, I was informed that the request had been denied after Jackson inquired about the statement I provided on the request:

"IMPROPER USE OF HANDICAP PARKING SPACES HAS BEEN OBSERVED BY LAW ENFORCEMENT PERSONNEL OVER SEVERAL MONTHS. IN EFFORTS TO PROPERLY ENFORCE THE MISUSE OF THESE PARKING SPOTS, THE LISTED SIGNS WILL BE INSTALLED AND ENFORCED BY POLICE SERVICES - LT. WILLIAMSON"

A meeting occurred with Jackson on 1/12/18 in reference to the request in which she stated that she would not like to place employees within a "system". Jackson requested that facility tickets be issued which do not get submitted to courts for processing. Jackson was informed that illegal parking in handicap designated parking constituted a progressive fine (1st: $50, 2nd: $200, 3rd: $500) in which the operating officer would hold the decision to take enforcement action. Jackson proceeded by refuting the use of electronic official citations for these parking areas and informed Anderson she would like non-official enforcement action. Such request would also constitute Obstructing Government Operations (13A-10-2).

IX.   12/20/18: Jackson advised the following on the indicated date:

"Prior to request being submitted internally or externally as it relates to changes in process, operation or other, please ensure Major Anderson has signed off as noted by his signature. If you are doing the request via an email, please forward to him and he can forward to the next source noting he has approved and the impact of change requested.   Should you have questions related to this request please discuss with the Major."

Jackson refused to apply the statement to a particular incident and was advised that all materials which have gone beyond the facility were authorized by Anderson.

X.   12/18/17: In efforts to establish a current trespass form, the form was revised in efforts to match current trespass laws. The form was forwarded, after Anderson's approval, to be printed by Business Services. Jackson halted the printing of the form due to concerns in relation to the local facilities. The below statement was provided to address Jackson's concerns:

"It was the understanding at Bryce Hospital that if an individual was trespassed from Bryce Hospital they could not return to either property. ADMH police officers have the ability to trespass subjects from ADMH land as well as facilities so this is not a new understanding. It is our goal to protect the patients and staff in which this goal extends to all properties. Why would we allow someone to be trespassed from Taylor Hardin Secure Medical Facility then freely go onto Bryce Hospital property? These individuals are being trespassed because of their aggressive indifference to the ADMHs culture and for their own mistakes. Taylor Hardin has had very limited experience with trespassing subjects. In efforts to correct issues and to update the form to the current trespass laws, this form needs to be instituted. Information in relation to trespass notices should be shared between Bryce Hospital Police and Taylor Hardin Police. Seeing that this form was submitted months prior and I was informed it was submitted for printing, I was under the impression it was approved.

However, I do understand the need to share its validity with Bryce Hospital Police but it is also a matter of Alabama state laws which are entrusted to ADMH police officers to enforce and uphold. It shall be forwarded to Captain Noah Reaves to review as well."

**14/17**

**EXHIBIT 47**

Jackson responded, "Lt. Williamson, just ensuring you understand that any changes that affect other facilities requires their input and notification."

XI.    10/18/17: A police services meeting was conducted in which officers were able to review several comments submitted on an anonymous survey. The below comments were made by Jackson during said meeting which caused conflict and disparity amongst the department:

1.  "I'm the Police Commissioner" – Jackson advised that she had done research and became informed that Police Commissioners are not required to be law enforcement officials.
2.  "I tell Major what to do" – Jackson made it imperative that law enforcement officials at the facility understand that she is in charge of Major Anderson. Such information is not new amongst police at the facility but caused concerns about Jackson's impeding dictatorship over the department.

During the said meeting, several officers expressed concern over the presented comments. While Jackson's statement is true regarding police commissioners, police commissioners are typically sworn law enforcement officials, and all are well equipped to facilitate respective police departments by applicable experience or criminal justice education.

*Note: 11 facility police officers were present*

XII.   9/11/17: A meeting occurred between myself, Jackson, and Anderson on the indicated date. The meeting was to address documents forwarded to the Associate Commissioner for review. Prior to this meeting, Jackson had entered the police supervisor's office in an intimidating manner and fairly upset that documents had been forwarded to her supervisor. During the meeting that occurred on 9/11/17, Jackson iterated that all information involving Taylor Hardin Secure Medical Facility should be disseminated through her. Jackson was advised that State Mental Health Policy 60-22 did not state that the request had to follow a specific chain of command. Jackson was unaware of such policy and when advised that I felt it was okay to send documentation directly to the Associate Commissioner by policy (after receiving approval from Anderson). Jackson simply responded with "no" in reference to the statement. Jackson continues to state "I don't care what this policy say, there is no classification changes, no positions added to this facility, unless I make the request!" When questioned whether we are not following policy Jackson states "I am the CEO of this facility and as the CEO of this facility, you read the bylaws from the governing body, it says I hire, fire, and make a determination."

XIII.  9/4/17: Officers were watching the video surveillance system on the BEST Program and subsequently captured a patient in possession of marijuana. Promoting Prison Contraband in the Second Degree (13A-10-37) is defined below:

*(a) A person is guilty of promoting prison contraband in the second degree if:*

*(1) He intentionally and unlawfully introduces within a detention facility, or provides an inmate with, any narcotic, dangerous drug or controlled substance as defined in the "Alabama Controlled Substances Act," or any amendments thereto; or*

*(2) Being a person confined in a detention facility, he intentionally and unlawfully makes, obtains or possesses any narcotic, dangerous drug, or controlled substance as defined in Chapter 2 of Title 20 of this Code.*

*(b) Promoting prison contraband in the second degree is a Class C felony.*

Several recommendations were made in efforts to resolve contraband entering the facility which include:

**EXHIBIT 47**

1. Obtaining an X-Ray machine.
2. Conducting random searches by use of narcotics identifying canines (programs and parking).
3. Random pat searches of staff and patients (Terry vs. Ohio)
4. Drug screening of entire facility

According to credible sources, Jackson advised that a random drug screening should be completed but individuals of suspicion should be <u>added</u> to the <u>random</u> list. The report of such resulted in the investigating officer remitting his place as investigating officer. Additionally, such officer advised that he was told to close his investigation per Anderson. Jackson also refuted allowing West Alabama Narcotics enter the facility to assist with the investigation. The details and progress of this case were forwarded to the Attorney General's office according to the investigating officer.

In efforts to aid in the advancement of ADMH, THSMF, and the associated police divisions, we must be allowed to conduct official acts as outlined in Alabama Code 22-50-21 and the facilities provided Form 40 specifying job duties which include the enforcement of Alabama Title 13 and 32. Additionally, as a sworn law enforcement officer, it is my duty to provide for the safety and security of the facility, staff, patients, and public. Such power vested by the State of Alabama should not be limited by administrative staff who attempt to dictate my official actions and/or duties. I have offered considerable expertise within my approximate year and a half of employment with this agency and shall continue addressing safety and security concerns by official and lawful means. I can understand the departments concerns with a misdemeanor warrant being issued against a patient, but no advised methods of resolution have been sought. With the numerous occurrences listed at the beginning of this memorandum/complaint, it should be apparent and imperative that a solution be sought. Many individuals, administrative and clinical, have expressed grave concern for the safety of patients in such an environment.

In efforts to understand the remedy sought by myself, I encourage the review of the effects of smokeless tobacco. According to cancer.org and several other resources, "Overall, people who dip or chew get about the same amount of nicotine as regular smokers. They also get at least 30 chemicals that are known to cause cancer. The most harmful cancer-causing substances in smokeless tobacco are tobacco-specific nitrosamines (TSNAs). TSNA levels vary by product, but the higher the level the greater the cancer risk." While allowing additional health risks with mentally ill patients, treatment cannot be sufficiently affective. The enforcement of legal/lawful action, in efforts to gain leverage over this matter, is necessary if administrative/clinical staffing will not provide other means to address the issue. Additionally, we do not have the necessary equipment or appropriate procedures to address these concerns. Jackson, thus far, has hindered my and others investigation in such matters which should not be tolerated.

Please review the following as a reference:

1. Sadler vs. Morgan & Defendants
2. Horne vs. Morgan & Defendants
3. http://www.tampabay.com/projects/2015/investigations/florida-mental-health-hospitals/secrecy/

## RECOMMENDATIONS

- Meeting with the Alabama Department of Mental Health legal department to address concerns and unaddressed liabilities. Meeting should also include key personnel vital to combating the issue at hand.
- Personal meeting with Commissioner Lynn Beshear on presented matters and the inability to conduct lawful actions.
- Seeing that all concerns were discussed with Jackson prior, administrative action may be needed in efforts to ensure compliance with not impeding law enforcement investigations and/or duties.
- Completion of proposed changes in law enforcement structure and potential development of a chief law enforcement official (Associate Commissioner – Police Services, Facility Safety & Security). **16/17**

**EXHIBIT 47**

    1. Law enforcement officials are subordinate to ill-informed or unqualified individuals on law enforcement procedure which creates a civil and safety liability within the Alabama Department of Mental Health.

- Address hostile work environment concerns presented in relation to Director Annie Jackson in relation to law enforcement action (although several other complaints outside my personal complaint exist).
- Reasonable inquiry into whether criminal actions committed by staff and/or patients are being forwarded for prosecution when necessary.
- Reasonable inquiry into adequate dissemination of patient abuse to legal guardians and/or appropriate authorities.
  1. Social work department and psychology department (at Taylor Hardin Secure Medical Facility) have been limited on adequate information being delivered to legal guardians who may wish to seek legal action.

## CONCLUSION

Although this method of resolution is not standard and may not be favorable, the induction of a hostile work environment by coercing the administration of illegal, unethical, and immoral reprimands has created a substantial discontent. As a law enforcement officer, my oath of office and code of ethics have been challenged resulting in the filing of this complaint. If you should have any questions about the details presented in this complaint or need appropriate evidence, you may contact me at the personal communication options listed below.

Thank you for your assistance in this matter,

**DERRICK JAMES WILLIAMSON, JR.**
Police Lieutenant
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Personal Email:** aeonpctech@live.com
**Work Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Personal Phone:** (205) 422-9664
**Work Phone:** (205) 462-4554

**17/17**

**EXHIBIT 49**

## ALABAMA DEPARTMENT OF MENTAL HEALTH
## COMPLAINT FORM

**Employee:**  Williamson, Jr., Derrick James          **Facility:**  _Taylor Hardin Secure Medical Facility_

**Classification:** Mental Health Security Officer II/Police Lieutenant

**Department:**   Police Services/6090

**STATEMENT OF COMPLAINT:**

On 5/2/18 at approximately 1:45 PM, Major Anderson presented a written reprimand which indicated I violated ADMH Policy 15-1 indicating "The proposed legislation or request shall be submitted to the appropriate facility committee and the facility director for consideration". The proposed bill had been forwarded to Anderson several months prior who indicated that it was okay to forward the bill to Director Annie Jackson. See the proof provided below which shows the indicated bill was submitted to Jackson for consideration on 2/20/18:



Jackson, Annie

Williamson, Derrick
Tue 2/20  6:37 PM

State Mental Health Poli...
172 KB
Download

Good evening,

The attached bill (previously approved) is being re-forwarded to you in accordance with Alabama Department of Mental Health Policy 15-1. The previous submission was rescinded in efforts to maintain focus on legislative matters for 2017 (medical staff shortage) according to yourself and seeing that this is a new year, I request that the attached bill be revisited and forwarded to the appropriate Associate Commissioner. The current statute which is very vague requires a sufficient update indicating and clarifying questions which are asked on a regular basis. The attached bill may also be forwarded to the Alabama State Employees Association if we are in need of legislative assistance.

Thank you for your continued assistance,

The indicated policy does not prevent legislation from being submitted for review to the Alabama State Employees Association or any other entity. All information addressed in the proposed bill related to negotiating terms of employment of law enforcement officials within the department. Jackson responded several months ago stating that the bill would not be considered at that time because of other matters currently being reviewed in legislative session. According to this policy, no violation has occurred. The indicated policy does not state that external resources such as unions and/or collective bargaining resources cannot be used. Jason Manasco is an authorized employee who oversees legislative/legal matters under the Alabama State Employees Association (ASEA). The provided reprimand indicates that it was written on March 13th of 2018 in which Anderson stated that he has not had the time to issue the written warning which is false information. Anderson and I have met on numerous occasions since the listed date and the presented reprimand should have been issued weeks prior. Such information indicates potential retaliation by Jackson in which Anderson has stated on several occasions he had not completed a specific task she asked him to. According to Anderson, he had not completed several orders from Jackson

**1/6**

**EXHIBIT 49**

based upon potential unethical concerns. Additionally, no written warning was placed in my personnel file indicating that previous behavior violated policy. According to ADMH Policy 60-80, "No material will be placed in an employee's file unless the employee receives a copy or has access to a copy or is notified that the material is being placed in his/her file" in which Jackson stated in a personal meeting on 5/2/18 that she had written notification based upon an email which does not comply with disciplinary standards. Nonetheless, the initial order would be perceived as <u>illegal</u> based upon policies and laws presented below.

The following comment is listed in the "corrective actions to be taken" on the presented reprimand:

"Lt. Williamson is to submit all information related to Department of Mental Health and/or Taylor Hardin Secure Medical Facility for review and approval by the Director of Police Services and/or Facility Director." which additionally violates several policies, laws, and commission standards presented below:

Taylor Hardin Secure Medical Facility Supplement Policy 60-40

1.   *Before any disciplinary action is taken, the supervisor should review the types of disciplinary actions available and consider the following factors:*

   a.   *The seriousness of the offense and the circumstances;*
   b.   *The employee's length of service and past record;*
   c.   *The time lapse since the last disciplinary action was taken against the employee, and the severity of the last disciplinary action;*
   d.   *Past practices under similar circumstances;*
   e.   *Any mitigating circumstances.*

2.   *Supervisors must not allow policy violations (whether major or minor) to occur without taking appropriate action and providing education.*

3.   *The HR Director and Service Director shall be contacted and advised before any written disciplinary action is taken.  This is to ensure that the disciplinary action being taken is appropriate and in accordance with Facility and ADMH policies and procedures.*

As I have no prior written warnings, reprimands, or verbal counseling, the provided reprimand does not follow Alabama Department of Mental Health (THSMF) policy standards indicated in Section 1 of THSMF Supplement 60-40. Additionally, Anderson made no consolation with the Human Resources Director prior to administering the written reprimand.

Alabama Department of Mental Health Policy 60-77

*Hostile work environment/harassment is visual, verbal, or physical conduct that has the intent or effect of unreasonably interfering with an individual's or group's work performance, it includes speech or conduct that is severe or pervasive enough to create an intimidating, hostile, offensive, or abusive work environment. In order to validate a complaint under this policy it must be established that the offending party has brought into issue race, color, religion, sex, national origin, age, disability, or veteran status*

Alabama Department of Mental Health Policy 60-40

*Written Reprimand - a more serious approach to discipline which includes written documentation placed in the employee personnel files, including documentation on the Employee Performance Appraisal at the end of the employee's appraisal year. Notice of a reprimand is provided to the employee in writing. One or more reprimands result in seven (7) points being deducted in the disciplinary section affecting the outcome of the final annual appraisal score.*

**2/6**

**EXHIBIT 49**

Alabama Department of Mental Health Policy 60-110

*Indicates that the Alabama Department of Mental Health "shall afford equal access to employees by employee organizations recognized by the DMH.*

Alabama Administrative Code 670-X-19 Employee Work Rules

*Insubordination - Failure to follow an order; disobedience; failure to submit to authority as shown by demeanor or words, with the one exception of not following an order which the employee has good reason to believe is unsafe or illegal*

## REASONS AN EMPLOYEE MAY CONTACT EXTERNAL SOURCES (WITHOUT PERMISSION)

United States National Labor Relations Act (29 U.S.C. §§ 151-169) - Allowing employees to engage in union-based organizations

*"It is declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self- organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."*

Alabama State Employee's Protection 36-26A-3

*A supervisor shall not discharge, demote, transfer, or otherwise discriminate against a state employee regarding the state employee's compensation, terms, conditions, or privileges of employment if the state employee, reports, under oath or in the form of an affidavit, a violation of a law, a regulation, or a rule, promulgated pursuant to the laws of this state, or a political subdivision of this state, to a public body.*

Alabama Industrial Relations and Labor 25-8-57

*Discrimination prohibited against persons disclosing information, making charges, refusing to obey illegal orders, etc.*

*(b) No employer, agent of an employer, or any other person shall discharge or otherwise discipline, threaten, harass, blacklist, or in any other manner discriminate against an applicant, employee, former employee, or any other person because that individual disclosed any information not prohibited from disclosure by statute, refused to obey an illegal order, or in any other manner not prohibited by statute challenged or revealed any violation of this chapter.*

First Amendment Rights

*Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances*

Right to Contact Elected Officials

**3/6**

**EXHIBIT 49**

*Rights are afforded to citizens to contact any elected official of the state of Alabama in regard to concerns involving public matters in accordance with the First Amendment of the United States. Elected officials include the Attorney General, District Attorneys, and the Governor of the State of Alabama.*

## Alabama Peace Officer's Standards & Training Commission: Criminal Investigations

*Officers who are employed within the department, may also, contact external sources when conducting lawful acts and/or investigations (legally, no consent is needed according to applicable law) into the following incidents or other criminal violations (District Attorney, Attorney General, Alabama Peace Officer Standards & Training Commission). The requirement that consent is needed poses concerns and potentially constitutes Obstructing Governmental Operations:*

*(1) Abuse. The infliction of physical pain, injury, or the willful deprivation by a caregiver or other person of services necessary to maintain mental and physical health.*

*(2) Adult in need of protective services. A person 18 years of age or older whose behavior indicates that he or she is mentally incapable of adequately caring for himself or herself and his or her interests without serious consequences to himself or herself or others, or who, because of physical or mental impairment, is unable to protect himself or herself from abuse, neglect, exploitation, sexual abuse, or emotional abuse by others, and who has no guardian, relative, or other appropriate personable, willing, and available to assume the kind and degree of protection and supervision required under the circumstances.*

*(3) Caregiver. An individual who has the responsibility for the care of a protected person as a result of family relationship or who has assumed the responsibility for the care of the person voluntarily, by contract, or as a result of the ties of friendship.*

*(4) Court. The circuit court.*

*(5) Department. The Department of Human Resources of the State of Alabama.*

*(6) Emotional abuse. The willful or reckless infliction of emotional or mental anguish or the use of a physical or chemical restraint, medication, or isolation as punishment or as a substitute for treatment or care of any protected person.*

*(7) Employee of a nursing home. A person permitted to perform work in a nursing home by the nursing home administrator or by a person or an entity with an ownership interest in the facility, or by both. A person shall be considered an employee whether or not he or she receives compensation for the work performed.*

*(8) Exploitation. The expenditure, diminution, or use of the property, assets, or resources of a protected person without the express voluntary consent of that person or his or her legally authorized representative or the admission of or provision of care to a protected person who needs to be in the care of a licensed hospital by an unlicensed hospital after a court order obtained by the State Board of Health has directed closure of the unlicensed hospital. For the purpose of this section and Sections 38-9-6 and 38-9-7, the term "unlicensed hospital" shall have the meaning ascribed to it in Section 22-21-33, and the term "licensed hospital" shall have the meaning ascribed to it in Section 22-21-20.*

*(9) Intentionally. A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his or her purpose is to cause that result or to engage in that conduct.*

**4/6**

**EXHIBIT 49**

*(10) Interested person. Any adult relative, friend, or guardian of a protected person, or any official or representative of a public or private agency, corporation, or association concerned with his or her welfare.*

*(11) Misappropriation of property of a nursing home resident. The deliberate misplacement or wrongful, temporary, or permanent use or withholding of belongings or money of a resident of a nursing home without the consent of the resident.*

*(12) Neglect. The failure of a caregiver to provide food, shelter, clothing, medical services, or health care for the person unable to care for himself or herself; or the failure of the person to provide these basic needs for himself or herself when the failure is the result of the person's mental or physical inability.*

*(13) Nursing facility. A facility which is licensed as a nursing home by the Alabama Department of Public Health pursuant to Article 2, Chapter 21, Title 22.*

*(14) Other like incapacities. Those conditions incurred as the result of accident or mental or physical illness, producing a condition which substantially impairs an individual from adequately providing for his or her own care or protecting his or her own interests or protecting himself or herself from physical or mental injury or abuse.*

*(15) Person. Any natural human being.*

*(16) Physical injury. Impairment of physical condition or substantial pain.*

*(17) Protected person. Any person over 18 years of age subject to protection under this chapter or any person, including, but not limited to, persons who are senile, people with intellectual disabilities and developmental disabilities, or any person over 18 years of age that is mentally or physically incapable of adequately caring for himself or herself and his or her interests without serious consequences to himself or herself or others.*

*(18) Protective services. Those services whose objective is to protect an incapacitated person from himself or herself and from others.*

*(19) Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he or she is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk shall be of such nature and degree that its disregard constitutes a gross deviation from the standard conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware of that risk solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of Section 13A-3-2, acts recklessly with respect thereto.*

*(20) Senility. Organic brain damage caused by advanced age or other physical illness to the extent that the person so afflicted is substantially impaired in his or her ability to adequately provide for his or her own care.*

*(21) Serious physical injury. Physical injury which creates a risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, protracted loss of the function of any bodily organ, or the impairment of the function of any bodily organ.*

*(22) Sexual abuse. Any conduct that is a crime as defined in Sections 13A-6-60 to 13A-6-70, inclusive.*

Joint Commission Standard's Reporting

5/6

**EXHIBIT 49**

*Any individual, whether employed by a supervising entity or not, may report violations of joint commission standards in efforts to ensure patient safety and security <u>without consent</u>.*

Title VII of the Civil Rights Act of 1964

*Any individual may report to external sources of any potential discrimination violating Title VII of the Civil Rights Act of 1964.*

- *Have other employees been disciplined for using ASEA resources for the proactive advancement of the department?*

**ACTION REQUESTED:**

- Retraction of the presented written reprimand pending legal action (if deemed necessary)
- Disciplinary action for the institution of a written reprimand being issued based upon retaliation, unjust cause, ill faith efforts, and illegal orders violating several laws and/or policies.

**Employee Signature:** _____   **Date:** 5/3/2018

**RECEIVED BY:** _____   **Date:** _____

**Step 1: Immediate Supervisor**   **Date Received:** _____   **Meeting Date:** _____

_____
        **Name**                              **Comments:**

**Step 2: Personnel Office**   **Date Received:** _____   **Meeting Date:** _____

_____
        **Name**                              **Comments:**

**Step 3: Personnel Office**   **Date Received:** _____   **Meeting Date:** _____

_____
        **Name**                              **Comments:**

**Step 4: Personnel Office**   **Date Received:** _____   **Meeting Date:** _____

_____
        **Name**                              **Comments:**

**6/6**

**EXHIBIT 50**

DEPARTMENT OF MENTAL HEALTH

RSA UNION BUILDING

August 23, 2018

Derrick Williamson, Jr.
Mental Health Security Officer II
Taylor Hardin Secure Medical Facility

Dear Officer Williamson:

I have received your complaint of July 17, 2018, regarding the written reprimand you received on May 2, 2018. On May 3, you were informed via email from Joe Long, Director of Human Resources for Taylor Hardin Secure Medical Facility, that you cannot complain a written reprimand under ADMH Policy 60-102, Employee Complaint procedure.  Your reply to that email was "I understand what is stated in Policy 60-102. Maybe I'm using the wrong terminology but I'm filing a grievance against the fact that the written reprimand was issued out of violations in policy and law."

The referenced policy also states, under Definitions 1.e.: "The implementation and interpretation of policies is not subject to this procedure."

However, I did review the complaint and found no valid issue raised that would support your request to have the written reprimand rescinded.

Sincerely,

Lynn Hubbard

Lynn Hubbard
Director of Human Resources

Cc:  Annie Jackson, Facility Director
     Joe Long, Facility Personnel Manager

**EXHIBIT 72**

# POSITION CLASSIFICATION QUESTIONNAIRE
## STATE OF ALABAMA
Personnel Department

PCQ #: _____

1. Employee's Name: Derrick Williamson, Jr. _____ (For Dept Use Only)

2. Classification MH Security Officer II _____ 5. Division Secure Medical Facility _____

3. Working Title Lieutenant _____ 6. Section or Unit 6090 – Police _____

4. Department Mental Health _____ 7. Work Location Tuscaloosa _____

8. Name and Title of immediate supervisor (person who assigns you work) Captain, Director of Police Operations,

Ms. Annie D. Jackson, MSW, LICSW, PIP, MPA, CPM, Facility Director _____

9. Position is: Full-time __X__ part-time _____ permanent __X__ temporary _____

10. SUPERVISION EXERCISED: Only complete this section if you complete performance appraisals or actually participate in rating other employees. If you function as a lead worker and only assign work, then list that responsibility in item 11B as a duty.

   a. Total number of employees that you supervisor: _____
   b. Percentage of time spent on supervision and related duties: _____
   c. If you directly supervise 5 or less employees, give names and titles. If the DIRECTLY supervise 5 or more employees give the number and official classification of each.

| MH Security Officer I's – 5 | |
|---|---|
| | |
| | |
| | |

   d. As a supervisor, do you: (Check the activities you perform)

| | |
|---|---|
| Make daily work assignments? | X |
| Approve and Disapprove leave requests? | X |
| Reassign job duties on permanent basis? | |
| Interview and make hiring recommendations? | |
| Recommend disciplinary actions? | X |
| Prepare and conduct performance appraisals? | X |

11. DESCRIPTION OF DUTIES PERFORMED:

   a. In one or two sentences, describe the major purpose of this position.

Supervising Police Officers, Communications Officers, evaluating officers job performance; Ensure shift coverage; Maintain safe and secure environment for patients, staff and visitors; Ensure patients are transported to different out of facility appointments.

1/6

**EXHIBIT 72**

b.  Duty Statement (Complete Column C first)
- In Column A. indicate PERCENTAGE of time spent on each duty (total should not exceed 100%)
- In Column B. rate your duties as to their IMPORTANCE. VI-Very Important I-Important SI-Somewhat Important
- In Column C. describe in detail each of your permanent duties and responsibilities using our OWN words

| A * | B rating | Description of Duties |
|---|---|---|
| 1 | I | This employee routinely works with adult mentally ill patients; however, will be trained and competent to assess and treat geriatric patients and adolescents as assigned. |
| 20 | VI | Supervise staff assigned to shift. |
| 2 | VI | Insure adequate shift coverage. |
| 1 | I | Conduct security assessments. |
| 5 | I | Prepare Police Reports. |
| 5 | I | Conducts investigations. |
| 1 | I | Reviews reports written by police officers. |
| 8 | I | Conducts internal/external security checks. |
| 5 | I | Conducts security key checks. |
| 1 | SI | Conducts equipment checks. |
| 2 | I | Transports patients to outside facility appointments. |
| 2 | I | Communicate/Make reports to Director of Police Services. |
| 0 | SI | Serve legal documents to patients and staff. |
| 10 | I | Evaluates performance of officers. |
| 0 | SI | Does admissions and discharges. |
| 1 | I | Conducts patient searches, program searches, room searches. |
| 10 | I | Monitors other staff for safety and security |
| 5 | SI | Conducts in-service classes. |
| 1 | I | Performs emergency maintenance as required. |
| 20 | I | Does all duties listed in Security Officer I, Form 40. |

(Attach additional sheets if necessary)

**2/6**

12. DECISION MAKING: Give example(s) of the more important decisions you make while performing the duties of this position. Then list the possible effect of error(s) on the organization or general public.

Allowing individuals or items in secure area, also determining escape risk as this would create a breach in security by possible escape or injury to patients, visitors or staff.

13. FINANCIAL RESPONSIBILITY: If you have responsibility for controlling and/or authorizing the expenditure of funds, please describe and indicate approximate amount controlled.

N/A

14. WORK GUIDELINES: (Only include written guidelines) List the specific laws, regulations, instructions, manuals, or procedures that must be followed in performing the job and describe how you use them.

| LIST ITEM | HOW USED |
|---|---|
| SMF Policies | As guidelines |
| DMH Policies | As guidelines |
| Title 13A | Performing duties as Police Officer, make arrest, etc. |
| Title 32A | Performing duties as Police Officer, make arrest, etc. |
| FCC Regulations | Radio procedures, etc. |
| | |
| | |

15. SUPERVISION RECEIVED:
How is your work reviewed? (Check one)
_____ Supervisor reviews most or all of my work while it is being done.
_____ Supervisor spot checks my work as it is being done.
_____ Supervisor reviews most or all of my work after completion.
__X__ Supervisor spot checks my work after completion.
_____ Supervisor does not review my work.
_____ Other. (describe fully) General administrative review.

16. WORK CONTACTS: With whom, outside of co-workers in this unit, must this position regularly come in contact?

| Who Contacted | How (Phone/in person, etc. | Purpose of contact | How often |
|---|---|---|---|
| Doctors | Phone/in person | Codes | Daily |
| Nursing Staff | Phone/in person | Codes | Daily |
| Administrators | Phone/in person | Concerning patients | Daily |
| Psychologist | Phone/in person | Concerning security assessments | Weekly |
| Personnel | Phone/in person | Concerning, time/holidays, leave, etc. | Weekly |

EXHIBIT 72

**EXHIBIT 72**

17. EQUIPMENT USED: List any equipment used regularly in your work. Give percent of time spent in operation of each. For vehicles and construction and maintenance equipment operated, indicate capacity, e.g., tonnage, yardage.

| | |
|---|---|
| NCIC Computer | Metal detector |
| Switchboard | Patrol Car |
| Base Radio | TV monitors |
| Control Room Panel | Phone |

a. Does this position require typing?

   X  No
_____ YES—Give % of time spent typing____%

b. Does this position require taking shorthand?

   X  NO
_____ YES—Give % of time spent in shorthand _____%

## ITEMS TO BE COMPLETED BY IMMEDIATE SUPERVISOR AND/OR APPOINTING AUTHORITY

18. Are the statements of the employee accurate and complete? (Indicate inaccuracies and incomplete items)

Yes

19. If duties are for reallocation of position, what additional and/or more complex duties have been added to this position to warrant relocation.

No

20. List any required licenses, registrations, certifications, or special requirements necessary to perform the job.

Law Enforcement Academy, County Commission, Fire Arms Qualifications.

21. Check below the type of supervision provided by the immediate supervisor to this position.

_____ CLOSE/HANDS ON      OR       X  GENERAL/ADMINISTRATIVE

22. Additional information and comments (additional sheets may be attached, if necessary).

| Item # |
|---|
| |
| |
| |

### VERIFICATION - READ CAREFULLY BEFORE SIGNING

I hereby certify that I have read the above and verify that it is, to the best of my knowledge, correct and accurate. I understand that disciplinary action could be taken against anyone who knowingly provides false information.

| | |
|---|---|
| Signature of Incumbent     11/21/18   Date | 205 - 792 - 2089   Telephone # (ATTNET) |
| Signature of Supervisor   11/21/18   Date   Facility Director   Title/Classification | 205-462-4506   Telephone # (ATTNET) |
| Signature of Appointing Authority   11/21/18   Date   Facility Director | 205-462-4506   Telephone # (ATTNET) |

QUESTIONNAIRES NOT SIGNED BY ALL PARTIES WILL BE RETURNED

**4/6**

EXHIBIT 72

| | |
|---|---|
| **Form 13P**<br>**Revised (01/2006)** | **EMPLOYEE PERFORMANCE *PREAPPRAISAL***<br>**STATE OF ALABAMA**<br>**Personnel Department** |

Employee Name_____ DERRICK J WILLIAMSON, JR _____  Social Security Number: XXX-XX-8208 _____

Agency: 061/MENTAL HEALTH _____  Division: 206E/HARDIN SEC MED FAC _____

Classification: MH SECURITY OFFICER II _____  Class Code: S3000 _____

Period Covered From: 10/01/2017 To: 10/01/2018 ___  Position Number: 8836056 _____

**RESPONSIBILITIES/RESULTS:** Responsibilities and results on which an employee will be rated should be listed below. These factors should be discussed with the employee during the Preappraisal session at the beginning of each appraisal year. Please refer to the Performance Appraisal Manual for instruction on specifics of preparing, conducting, and completing the Preappraisal. Refer to the same manual for information concerning how to develop responsibilities and results.

## RESPONSIBILITIES/RESULTS

1. **Reviews reports/logs/files** to ensure that documentation is accurate and up-to-date in accordance with Facility and Police Departmental policies and procedures with no more than two (2) documented occasions of non-compliance.

2. **Supervise the operation/security** of the control room and control room equipment, and NCIC computer in accordance with Police Department policies and procedures with no more than two (2) documented occasions of non-compliance.

3. **Issues/responds** to emergency codes/alarms in accordance with Facility and Police Department policies and procedures by taking precautionary measures to maintain a safe and secure environment with no more than two (2) valid complaints.

4. **Attend meetings/training sessions** to ensure CEU's are maintained with no more than two (2) occasion of unexcused absences.

5. **Searches staff/visitors/patients** are conducted in accordance with Facility and Police Department policies and procedures so that a safe and secure environment is maintained with no more than two (2) valid document occurrences of non-compliance.

6. **Maintains shift efficiency** by ensuring that all appointments/rounds/checks and oral and written instructions are completed in accordance with Facility and Police Department policies and procedures so that the shift is operating in a efficient manner with no more than two (2) valid occurrences of non-compliance.

7. **Conducts annual appraisals** of officers assigned to the shift within the set timeframes with no documented occurrences of non-compliance.

8. **Maintains conduct** that is professional and courteous in accordance with standards set forth in Police Department policies with no more than two (2) valid documented complaints.

9. **Maintains a safe/secure environment** for patients/staff and visitors by complying with Facility and Police Department policies and procedures, and written instructions by taking a proactive risk reduction so that a safe and secure environment is maintained with no more than two (2) valid documented complaints.

10. **Ensure Director of Police Services is kept abreast** of assigned shift activities. Communicate/Report in a timely manner to the Director of Police Services all situations affecting the operation of the Facility or the operational efficiency of Police Services to include but not limited to; contacting outside agencies for assistance or before assigning other agencies (non-emergency), Restructuring department or facility policies/procedures, requesting materials on behalf of facility.

**EXHIBIT 72**

**WORK HABITS:** Provide a check in the appropriate space to document that the policies and procedures concerning the following areas have been discussed with the employee. For instructions, refer to the Performance Appraisal Manual and policies of the agency.

CHECK WHEN DISCUSSED:

| | |
|---|---|
| ☑ | Attendance |
| ☑ | Punctuality |
| ☑ | Cooperation with Coworkers |
| ☑ | Compliance with Rules |

**PREAPPRAISAL SIGNATURES:** Signatures are mandatory.

Date the Preappraisal Session was held with the employee: _____ 11-21-2018 _____

Employee Signature: (denotes discussion and receipt of form, not agreement) _____

Rater Signature: (denotes discussion and employee receipt of form) _____

Reviewer Signature _____

---

## EMPLOYEE PERFORMANCE *MIDAPPRAISAL*

Describe any employee's strength(s) in performing responsibilities and/or conducting work habits, as observed, during the first half of the appraisal period.

Describe any area(s) that the employee needs to improve in performance of responsibilities and/or work habits, as observed, during the first half of the appraisal period. Document any actions taken or the corrective action plan that was developed to improve the areas of weakness. If a plan has not been developed, it is appropriate for the rater to consider developing a plan at this time.

State the areas where the employee has performed in a fully competent manner during the first half of the appraisal period. Documentation in this area means that the employee performed to the expected level of performance as discussed in the Preappraisal session. If there is no documentation in the first two areas, this section should be completed.

A Midappraisal session has been held on this date and performance has been discussed: _____

Employee Signature: _____     Initial if comments attached: _____

Rater Signature: _____     Initial if comments attached: _____

Reviewer Signature: _____     Initial if comments attached: _____

(Signatures denote that a Midappraisal session has been held between the supervisor and employee. Signatures are mandatory. Employee signature does not denote agreement but discussion of the form and rater comments. Comments may be attached. The person attaching comments must initial in the appropriate space.)

**6/6**

**Form 13**      **EMPLOYEE PERFORMANCE *APPRAISAL***     **EXHIBIT 75**
**Revised (01/2006)**      **STATE OF ALABAMA**
         **Personnel Department**

Employee Name: <u>DERRICK J WILLIAMSON, JR</u>    Social Security Number: <u>xxx-xx-8208</u>

Agency: <u>061/MENTAL HEALTH</u>    Division: <u>206E/HARDIN SEC MED FAC</u>

Classification: <u>MH SECURITY OFFICER II</u>    Class Code: <u>S3000</u>   Position #: <u>8836056</u>

Period Covered From: <u>10/01/2017</u> To: <u>10/01/2018</u> Annual Raise Effective: <u>DECEMBER 2018</u>

---

**APPRAISAL SIGNATURES:** Signatures are to be provided after the form has been completed. Signatures denote supervisor and employee discussion and receipt of form. Employee signature does not denote agreement. All signatures are mandatory.

| Rating Supervisor | Employee | Reviewing Supervisor |
|---|---|---|
| SSN XXX-XX- _2512_ | | SSN XXX-XX-_1287_ |
| *Annie D Jackson* (Rater Signature) | *(signature)* | *Diane Baugher* (Reviewer Signature) |
| Annie D Jackson — Rater Printed Name | Employee Signature | Diane Baugher — Reviewer Printed Name |
| 10-18-17 — Date | 10/19/18 — Date | 10-24-18 — Date |
| Initial if comments attached | Initial if comments attached | Initial if comments attached |

---

**PERFORMANCE APPRAISAL SCORE:** Locate the Responsibility Score on the back of this form and write it in the appropriate space. Locate the Disciplinary Score, also on the back of this form, and write it in the appropriate space. The Disciplinary Score is subtracted from the Responsibility Score to derive the Performance Appraisal Score. Mandatory documentation is to be maintained in the agency's personnel files if a "Does Not Meet" or "Consistently Exceeds" rating is given.

   _21.11_    −    _7_    =    _14.11_
   Responsibility Score      Disciplinary Score      Performance Appraisal Score

This employee's work:

| Does Not Meet Standards (6.6 or below) | Partially Meets Standards (6.7 – 16.6) | Meets Standards (16.7 – 26.6) | Exceeds Standards (26.7 – 36.6) | Consistently Exceeds Standards (36.7 – 40) |
|---|---|---|---|---|
| ☐ | ☑ | ☐ | ☐ | ☐ |

---

**WORK HABITS:** Check the appropriate space for each Work Habit area. Work Habits pertain to conduct occurring in this Appraisal period. Provide an explanation below for marking any work habit as "Unsatisfactory." Attach additional sheets if necessary. No disciplinary action has to be taken to mark a Work Habit "Unsatisfactory."

| | Unsatisfactory | Satisfactory | |
|---|---|---|---|
| Attendance | ☐ | ☑ | |
| Punctuality | ☐ | ☑ | |
| Cooperation with Coworkers | ☑ | ☐ | See warning issued on 8/23/18 and also given reprimand 9/9/18 |
| Compliance with Rules | ☑ | ☐ | See warning issued 8/23/18 and reprimand issued for multiple violations 5/3/18 (dated 3/13/18) Written reprimand 9/19/18 Written reprimand |

1/5

**EXHIBIT 75**

***RESPONSIBILITIES:*** List an abbreviated version of the employee's responsibilities below as documented on and discussed during the Preappraisal. Record the appropriate rating in the box for each responsibility. Rating(s) of appropriate responsibilities should reflect any disciplinary action(s) that has been taken during this appraisal period.

| 0 | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Does Not Meet Standards | Partially Meets Standards | Meets Standards | Exceeds Standards | Consistently Exceeds Standards |

***Responsibility***                                                                                                                    ***Rating***

1. _____ Reviews reports/logs/files _____  $\boxed{3}$

2. _____ Supervise the operation/security _____  $\boxed{1}$

3. _____ Issues/responds _____  $\boxed{2}$

4. _____ Attend meetings/training sessions _____  $\boxed{4}$

5. _____ Searches staff/visitors/patients _____  $\boxed{2}$

6. _____ Maintains shift efficiency _____  $\boxed{2}$

7. _____ Conducts annual appraisals _____  $\boxed{2}$

8. _____ Maintains conduct _____  $\boxed{1}$

9. _____ Maintains a safe/secure environment _____  $\boxed{2}$

10. _____ Make report to Director of Police Services _____  $\boxed{NA}$

***RESPONSIBILITY SCORE:***

$$\underbrace{19}_{\substack{\text{Total of}\\\text{Responsibilities/Results}\\\text{Ratings}}} \div \underbrace{9}_{\substack{\text{Number of}\\\text{Responsibilities}}} = \underbrace{2.11}_{\substack{\text{Average}\\\text{Responsibility}\\\text{Rating}}} \times 10 = \underbrace{21.11}_{\substack{\text{Responsibility}\\\text{Score}}}$$

***DISCIPLINARY ACTIONS:*** Any disciplinary action taken with the employee during this appraisal period is to be documented below. Provide the number of disciplinary actions and steps taken with the employee during the appraisal year. If no disciplinary action has been taken, a "0" should be marked in each block provided. Attach a copy of the warning(s), reprimand(s), suspension(s) or demotion to the Appraisal.

| **Warning** | **Reprimand** | **Suspension** | **Demotion** |
|---|---|---|---|
| 1 | 2 | 0 | 0 |

***DISCIPLINARY SCORE:*** **This section should include the use of the discipline steps of reprimand, suspension, and demotion only**. The Disciplinary Score does not include scores for counseling and warnings. To calculate the Disciplinary Score, identify the most severe step of discipline taken with the employee during this appraisal period. If the most severe step was one or more reprimands, the Disciplinary Score will be 7. If the most severe step was one or more suspensions, the Disciplinary Score will be 17. If the most severe step taken with the employee in the appraisal year was one or more demotions, the Disciplinary Score will be 24. Otherwise, the Disciplinary Score will be 0.

**DISCIPLINARY SCORE:** _____ 7 _____

2/5

**EXHIBIT 75**

**10/1/2017 – 10/1/2018**
**Lt. Derrick Williamson**
**Attachment to Performance Evaluation**

1.   **Reviews reports/logs/files** to ensure that documentation is accurate and up-to-date in accordance with Facility and Police Departmental policies and procedures with no more than two (2) documented occasions of non-compliance.

2.   **Supervise the operation/security** of the control room and control room equipment, and NCIC computer in accordance with Police Department policies and procedures with no more than two (2) documented occasions of non-compliance.

     • LETS privileges were revoked based upon misuse of system per Lt. Williamson's Superior in the following areas: Failure to document in the ACJIS/NCIC Activity log of criminal histories ran; accessing and running histories on nurse which evening shift was not involved; running checks on visitors when warned against this practice. (6/18/2018)

3.   **Issues/responds** to emergency codes/alarms in accordance with Facility and Police Department policies and procedures by taking precautionary measures to maintain a safe and secure environment with no more than two (2) valid complaints.

     • Written reprimand issued on 9/19/18 for calling a Code Green prior to all appropriate interventions being completed.

4.   **Attend meetings/training sessions** to ensure CEU's are maintained with no more than two (2) occasion of unexcused absences.

     • As of 9/18/2018 you have completed in APOST 62 hours of CEUs where you are required to have only 12 per year to maintain certification.
     • You participated in the Facility wide meeting and provide valuable input as it relates to the re-organization of the Police Control area.
     • You have been Police Services Designee and several internal committee such as the safety committee.

5.   **Searches staff/visitors/patients** are conducted in accordance with Facility and Police Department policies and procedures so that a safe and secure environment is maintained with no more than two (2) valid document occurrences of non-compliance.

     • 4/17/2018 – Lt. Williamson requested support for drug detection dogs to enter the Taylor Hardin Secure Medical Facility without following proper protocol. When questioned on not following procedures, Lt. Williamson stated he did not know who was in charge," even though a memorandum was sent and received designating Lt. Booth as being in charge.

6.   **Maintains shift efficiency** by ensuring that all appointments/rounds/checks and oral and written instructions are completed in accordance with Facility and Police Department policies and procedures so that the shift is operating in a efficient manner with no more than two (2) valid occurrences of non-compliance.

1

**3/5**

**EXHIBIT 75**

- You were informed to notify BSI of criminal investigations needed and the Incident Management Plan related to notification was review (6/19/18).
- Medications refill buckets were not taken to the pharmacy per your shift assignment on 4/20/18, 7/4/18, 7/25/18, and 7/26/18. You made contact with the pharmacy about the refill buckets in which the pharmacy had to be informed the issue you presented to them was an internal issue and not a pharmacy issue.

7. **Conducts annual appraisals** of officers assigned to the shift within the set timeframes with no documented occurrences of non-compliance.

   - Completed 2 Annual appraisal timely and as scheduled during this period without additional follow up HR
   - Completed 1 probationary appraisal timely and as scheduled during this period without additional follow up HR
   - No outstanding appraisals due or in arrear

8. **Maintains conduct** that is professional and courteous in accordance with standards set forth in Police Department policies with no more than two (2) valid documented complaints.

   - You were discussing patient medical data with various individuals when you had no involvement in the care and treatment of the condition. You were warned about HIPPA regulations and patient care data (2/2/18).
   - As a professional Police Service staff, you were told by your direct supervisor not to discuss a criminal issue that was ongoing, and you failed to maintain professionalism by discussing the event with two other staff members. (5/2/18)
   - Written reprimand on Code Green including violation of cooperation with coworkers
   - 10/5/2017 After previously being counseled regarding questioning the professional judgment of clinical staff initiating a code red Lt. Williamson questioned a nurse as to why she was giving a shot during a code red, thereby questioning her professional judgment.
   - 2/14/18 – Despite having been instructed by the Facility Director (on 1/26/18) that his duties were not to exceed that of supervising the operations and employees of his shift, Lt. Williamson had to be counseled for issuing a written warning to a direct care staff not under his supervision.

9. **Maintains a safe/secure environment** for patients/staff and visitors by complying with Facility and Police Department policies and procedures, and written instructions by taking a proactive risk reduction so that a safe and secure environment is maintained with no more than two (2) valid documented complaints.

   - 1/15/18 – Lt. Williamson filed a warrant for arrest of a patient for prison contraband consisting of chewing tobacco and coffee grinds. This was in contradiction of the recommendation of his supervisor. Lt. Williamson later state, "the team would not work with him" and filed the warrant without coordinating with Taylor Hardin Facility Director. At a later date, ADMH Bureau of Special Investigations reviewed the warrant and interviewed Lt. Williamson. During the review and interview it

**4/5**

**EXHIBIT 75**

was determined that Lt. Williamson placed his supervisor's name on line 81 of a form, indicating Supervisor's Approval knowing his supervisor did not approve the filing of a warrant.

3

**5/5**

**EXHIBIT 78**

# State of Alabama
# Department of Mental Health

NUMBER:    15-1

SUBJECT:    Organizational Planning
TITLE:        Legislative Review and Submission

EFFECTIVE: 8/11/92        REVIEWED: 12/3/08        CHANGED: 01/16/16

RESPONSIBLE OFFICE:    Legislative Liaison

APPROVED:

## I.    POLICY:

The Department of Mental Health will propose needed legislation and will review, track, and respond to legislative bills introduced during regular and special sessions which are of interest or concern to the department, recipients and stakeholders.

## II.    STANDARDS:

1.    Providing responses or comments concerning proposed or introduced legislation:

   a.    The Legislative Liaison will monitor, analyze, track, and report on legislation and budget initiatives that impact or could impact the Department of Mental Health and keep appropriate internal stakeholders apprised of any related bill activity, movement or amendments.

      i.    During the legislative sessions, a Departmental Legislative Tracking Report will be distributed periodically on the status of bills of interest (House and Senate).

      ii.    Staff receiving this report will be encouraged to respond to the Legislative Liaison concerning bills relative to professional interest, or other areas of concern that impact the day to day operations or service delivery system.

   b.    The Legislative Liaison will maintain a library of all legislative bills (House and Senate) in which the Department has an interest and which are being tracked or reported.

**1/2**

**EXHIBIT 78**

DMH Policy 15-1

      i.      The Legislative Liaison will provide copies of legislative bills, upon request, to appropriate parties for review.

      ii.     Since the time allotted for response is frequently limited, proposed responses should be sent to the Legislative Liaison for coordination and action by the Commissioner. Each Division may establish an internal protocol concerning distribution of information copies of proposed responses.

2.    To initiate or submit Legislation:

    a.    Any employee may submit proposed legislation or a request that legislation be drafted for department consideration.

    b.    The proposed legislation or request shall be submitted to the appropriate facility committee and the facility director for consideration. Central Office employees shall submit to the appropriate committee or Office Director.

    c.    The receiving director will forward the proposed legislation, with comments to the appropriate Associate Commissioner or return it to the originator.

    d.    The Associate Commissioner or designee will review and comment on the proposed legislation and then forward it for further review to the other Associate Commissioners, Division committees, the Commissioner, and other staff with the expertise to be of assistance in review of the proposal. A copy of the proposed legislation will be submitted by the Legislative Liaison to the Management Steering Committee for review and comment.

    e.    The Associate Commissioner will place on the agenda for discussion and approval at the Commissioner's weekly staff meeting.

    f.    If the proposed legislation has been approved by the Commissioner, it will be submitted to the Governor's Office for review and comment.

3.    All proposed legislation will be approved for submission to the Legislature by the Commissioner and submitted to the Legislature by the Legislative Liaison.

**2/2**

# State of Alabama
# Department of Mental Health

NUMBER:   40-10

SUBJECT:   Information Systems
TITLE:   E-Mail, Internet and other Network Service Usage

EFFECTIVE: 7/31/98          REVIEWED: 2/1/17          CHANGED: 7/15/14

RESPONSIBLE OFFICE:   Bureau of Information Technology Services

APPLICABLE TO:   All Divisions

APPROVED:

## I.   POLICY:

Employees, Staff, and data users shall adhere to proper usage of the Internet, e-mail, and other network services, to maintain the accuracy, security and confidentiality of personally identifiable information including Protected Health Information (PHI) and other sensitive data.

Network services are state-owned resources and are provided as business communication tools for the exclusive benefit of the State of Alabama. Usage of any network service is intended for governmental and public purposes.

All Internet, e-mail, or other network service communications and related logging events that are sent, received, or otherwise generated by a data user are the property of the State of Alabama and are subject to the provisions of applicable state and federal law regarding their maintenance, access and disposition. The misuse of these services may be a violation of the Alabama Computer Crime Act and/or the Alabama Ethics Act as well as HIPAA regulations. The State reserves the right to monitor and record the transmission, receipt or storage of Internet, e-mail, or other network service communications and to implement content filtering systems.

## II.   DEFINITIONS:

1.   Data User: Any individual that has been given access to State owned electronically stored data or processing systems.

2.   Staff: All persons actively employed by the State of Alabama or who are under contractual obligation to provide services for the State of Alabama.

3.   Employee: All persons who directly work for and are paid by the State of

**EXHIBIT 80**

DMH Policy 40-10

Alabama.

4. Network Services: Any software application or utility owned or licensed by the State of Alabama that is designed to access, pass data to/from other network attached systems, or display shared information via a network connection. This includes but is not limited to Internet Browser access, e-mail, instant messaging, and file transfer protocol (FTP).

## III.  STANDARDS:

1. This policy is applicable to all DMH employees, staff, and data users. Any violation is subject to appropriate sanctions in accordance with DMH Policy 60-40, "Progressive Discipline", or other contractually defined sanctions and/or remedies.

2. The employee must complete and sign the "Network Services Usage Policy - Acceptance of Personal Responsibility" form which will be filed in the employee's personnel folder.

3. All staff will be given access to policies regarding proper usage of network services. The responsibility for compliance with these policies and restrictions necessarily rests with the individual.

4. The Department of Mental Health only supports the installation and usage of approved data access clients (such as e-mail clients and internet browsers).

5. Usernames will be assigned by the Bureau of Information Technology Services or designees and will reflect internally accepted naming conventions.

6. Acceptable Uses-The following list of activities is a non-exhaustive list of activities that are deemed to be appropriate and acceptable usage of State owned e-mail, internet, and other network services.
   a. Communicating in a professional manner with other departmental staff about work-related matters.
   b. Communicating in a professional manner with parties outside of the department for business purposes.
   c. Personal communications that are brief and do not interfere with work responsibilities, network securities, or network availability.  Although personal usage of State-owned systems (such as the use of e-mail and web browsers) is allowed on a limited basis, staff must be aware that such allowed usage does not imply a guarantee of privacy regarding those communications.  The department explicitly reserves the right to monitor, record, reproduce, maintain, and dispose of any such records of such personal communications, as allowed by law.

**2/7**

DMH Policy 40-10

   d. Staff are allowed to access personal e-mail accounts on a limited basis, without disrupting business responsibilities. Access can be gained only by using the browser. Use of e-mail specific protocols, such as POP3 and IMAP4, is prohibited because they introduce additional security risks to the network.

   e. Electronic messages are frequently inadequate in conveying mood and context. Staff should carefully consider how the recipient might interpret a message before composing or sending the message.

   f. All staff will ensure that e-mails they initiate that contain client information or protected health information or other confidential information will contain a Department approved confidentiality statement.

7. Unacceptable Usage: The following list of activities contains examples of improper or unacceptable use and is neither exhaustive nor all-inclusive. This list serves as a guide to the user so they may avoid certain activities and actions while utilizing the e-mail, Internet, network services or other technological resources provided by DMH. If any staff member is unsure about whether an activity would be considered unacceptable, he or she should discuss the issue with their supervisor.

   a. Staff shall not submit, display, store, archive, transmit or access files that:

      i. violate or infringe on the rights of any other person, including the right to privacy;

      ii. contain defamatory, false, inaccurate, abusive, obscene, pornographic, profane, sexually oriented, threatening, racially offensive, religiously offensive, or otherwise biased, discriminatory or illegal material;

      iii. violate agency or departmental regulations prohibiting sexual harassment;

      iv. encourage the use of controlled substances or use the system for the purpose of criminal intent; or

      v. use the system for any illegal or unethical purpose.

   b. Staff will not create or exchange information that is in violation of copyright or any other law. The department is not responsible for any staff's use of e-mail that breaks laws.

   c. Staff will not initiate personal communication that interferes with work responsibilities.

   d. Staff will not open file attachments from an unknown or untrustworthy source, or with a suspicious or unexpected subject line.

   e. Staff will not send confidential information or PHI to unauthorized people or otherwise violate the department's data protection policies or HIPAA guidelines, or otherwise increases the department's legal or regulatory liabilities.

DMH Policy 40-10

f.  Staff will not initiate electronic communications in a manner that unduly strains the department's network or other systems. Staff will not access streaming audio or video from the internet, nor will download music or video files from the internet, unless such activity is strictly business related and approved by a supervisor and appropriate security manager.

g.  Staff will not send communications using distribution lists when there is only a marginal interest to certain members or when a personal reply is sufficient.

h.  Staff will not send e-mail communications that do not have a clear expressed, and coherent, purpose with an identifiable subject line.

i.  Staff will not use any e-mail system, other than State e-mail system, for department related communications.

j.  Staff will not circulate chain letters and/or unsolicited commercial offerings.

k.  Staff will not circulate unprotected healthcare data and personally identifiable consumer data that would violate U.S. Federal HIPAA regulations. Data users must encrypt e-mail messages or attachments containing confidential or sensitive information, including client information, PHI, or personal identifying information to any party outside the Alabama Consolidated Email(ACE) system using encryption methodologies approved by the DMH Chief Information Officer or designee.

l.  Staff will not use State owned network services to promote or publish political or religious views, operate a business, or for any undertaking that offers personal gain.

m.  Staff shall not use the facilities and capabilities of network services to:
    i.   conduct any non-management-approved business;
    ii.  conduct for-profit activities not permitted by agency policy or relevant law;
    iii. conduct private business outside of agency guidelines;
    iv.  solicit the performance of any activity that is prohibited by law;
    v.   transmit material, information, or software in violation of any local, state or federal law;
    vi.  conduct any religious or political activity;
    vii. conduct any non-governmental related fund raising or public relations activities;
    viii. make any unauthorized purchases.

n.  Staff shall not use the Internet or e-mail to transmit information about and individual's personnel matters. This includes data such as performance reviews.

o.  Staff may not attempt to probe computer interfaces or security mechanisms at DMH or other intranet or internet sites unless part of an audit approved by the DMH Chief Information Officer or designee.

DMH Policy 40-10

8. Access control:
   a. Staff may not use any other user's password or other authentication credentials to access any network service.
   b. All DMH users and computers connected to the State network will participate in Domain security. All users will authenticate to the State network using domain user accounts. Non-domain accounts on agency computers connected to the State network are solely for the use of IT staff during configuration and troubleshooting. No account, other than those used only where necessary and solely by IT staff, will be assigned rights above the standard user level (e.g., Power User or Administrator). Any accounts with administrator rights will be accessed exclusively by IT staff.
   c. Staff may not intercept or disclose, or assist in intercepting and disclosing, e-mail communications.
   d. Staff attempting to establish a connection with DMH network through an Internet Service Provider or other public communications site (outside of the DMH workplace), must successfully authenticate themselves using their personally assigned user id and password before gaining access.
   e. Staff may not establish modems, Internet, or other external network connections that could allow unauthorized users to access DMH's system or information without the prior approval of the DMH Chief Information Officer or designee.
   f. Staff may not establish or use new or existing internet connections to establish new communications channels without the prior approval of the DMH Chief Information Officer or designee.

9. Agencies and persons who wish to become providers of Internet services such as web sites or access to databases must be certified by Department of Finance Information Services Divisions (ISD) to operate these services. All requests for certification approval to operate an Internet service must be submitted to ISD through the Bureau of Information Technology Services and be approved by the Commissioner.

10. Staff will report suspected security violations or other breaches of confidentiality, and any violations of this or other DMH policies and procedures occurring during the use of network services in accordance with DMH's Incident Reporting Procedures.

11. Suspected violations of any laws or regulations involving the improper use of network services will be reported to the Commissioner for investigation.

12. All staff will ensure that their use of any network service is done in compliance with policies and standards set forth by the Finance Department, Information Services Division, in Policy 630-01: System Use. This policy

DMH Policy 40-10

may be accessed electronically at the following URL:
http://cybersecurity.alabama.gov/documents/Policy_630_System_Use.pdf

### III.    REFERENCES:

1. Health Insurance Portability and Accountability Act of 1996.
2. U. S. Department of Health & Human Services security and privacy regulations.
3. DMH Policies 40-1, 40-15, 40-17.
4. DMH Internet Use Policy, Acceptance of Personal Responsibility Form
5. ISD Policy 630-01: System Use
6. DMH Recommended Confidentiality Statement

**EXHIBIT 80**

DMH Policy 40-10

## DMH Recommended Confidentiality Statement

This electronic mail transmission may contain legally privileged and/or confidential information.  This message and/or any files transmitted with it are intended solely for the use of the addressee(s).  This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent.  If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it.  You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**EXHIBIT 82**

# State of Alabama
# Department of Mental Health

NUMBER:   60-40

SUBJECT:   Personnel/Payroll
TITLE:   Progressive Discipline

EFFECTIVE: 4/4/88          REVIEWED:  10/3/12          CHANGED: 9/16/15

RESPONSIBLE OFFICE:   Personnel

APPROVED:

## I.  POLICY:

The Department of Mental Health shall use Progressive Discipline as a management tool.

## II.  DEFINITIONS:

1.  Disciplinary Action is action taken with an employee who fails to act in good faith, commits an act of non-compliance, or commits an act not in keeping with DMH standards of conduct or accountability in which a written warning, written reprimand, suspension, or termination process is applied.

2.  Progressive Discipline: is a series of sequential disciplinary steps, corrective in nature, taken to provide employees the opportunity to improve on job performance and/or comply with departmental policies, rules, and regulations.

## III. STANDARDS:

1.  Disciplinary steps shall generally be progressive to ensure that the employee has the opportunity to correct his or her performance or behavior.  The sequence of steps is as follows:

    a.  Verbal counseling - a cooperative attempt with the employee in determining and correcting a problem.  This step involves written documentation of the discussion or session with the employee outlining a problem area, including development and implementation of a corrective action plan.  Documentation is maintained by the supervisor, but <u>not</u> in the employee personnel file, <u>nor</u> a copy provided to the employee.

**1/2**

**EXHIBIT 82**

DMH Policy 60-40

   b. Written Warning - formal notification with written documentation of an unacceptable behavior maintained in the employee's formal personnel file and documented on the Employee Performance Appraisal at the end of the appraisal year. Notice of a warning is provided to the employee in writing. Although documented, disciplinary points <u>are not</u> deducted under the "disciplinary score" on the Employee Performance Appraisal.

   c. Written Reprimand - a more serious approach to discipline which includes written documentation placed in the employee personnel files, including documentation on the Employee Performance Appraisal at the end of the employee's appraisal year. Notice of a reprimand is provided to the employee in writing. One or more reprimands result in seven (7) points being deducted in the disciplinary section affecting the outcome of the final annual appraisal score.

   d. Suspension - a severe and extremely serious step involving due process, usually resulting in the loss of work and pay for a specified number of hours or days. Written notification is provided to the employee, as well as maintained in the personnel file. A suspension is documented on the Employee Performance Appraisal at the end of the employee's appraisal year. One or more suspensions result in seventeen (17) points being deducted in the disciplinary section affecting the outcome of the final annual appraisal score.

   e. Termination – a documented involuntary personnel action applied by the appointing authority based on a serious violation(s) or repeated violation(s) of departmental rules or policies, or uncorrected conduct preceded by due process procedure.

2. Progressive discipline shall be applied in the order as specified above. However, it is recognized that depending upon the nature of the infraction, a more severe disciplinary action or step may be warranted upon a first offense. Any step or steps of the disciplinary process may be passed over based on investigation and/or analysis of the situation.

## III. REFERENCES:

1. "Progressive Discipline" training manual – The State of Alabama Personnel  Department Training Division

2. State of Alabama Performance Appraisal Manual, The State of Alabama Personnel Department Training Division

3. State Personnel Board Rules

**2/2**

**EXHIBIT 86**

# State of Alabama
# Department of Mental Health

NUMBER:   60-102

SUBJECT:   Personnel/Payroll
TITLE:       Employee Complaint Procedure

EFFECTIVE: 9/7/1988          REVIEWED:  4/7/2004          CHANGED: 09/16/14

RESPONSIBLEOFFICE:        Administration /Personnel

APPROVED:

## I.      POLICY:

The Department of Mental Health provides a standardized procedure through which employees may seek a resolution to their complaints.

The normal chain of supervision/command should be used to resolve specific problems at the lowest level possible prior to *proceeding with* the formal complaint procedure *(Step 1, Step 2, Step 3, and Step 4)*.

## II.      APPLICATION:

1.      Any employee of the Department of Mental Health.

## III.      DEFINITIONS:

1.      The term "complaint" includes and is limited to the following:

    a.      Safety considerations excluding factors inherent in the performance of an individual's job duties.

    b.      Violations of the complaint procedure by department personnel.

    c.      Suspensions.

    d.      Working out of classification except that the following rights are reserved for the Department:
        i.      Employees are expected to be fully occupied in work activities for their entire assigned shift; and

        ii.      Employees are expected to perform duties as required including those which may be outside their classification, when they are

Page 1 of 6

**1/6**

**EXHIBIT 86**

DMH POLICY 60-102

not fully occupied performing duties that are of an emergency nature, or when personnel with the proper classification are busy performing other duties within their classification.

    iii.    Employees are required to work out of classification as necessary, should an emergency condition exist.

    e.    The implementation and interpretation of policies is not subject to this procedure.

    2.    *The hearing officer is either the Commissioner or his /her designee.*

## IV.    TO FOLLOW THE FORMAL COMPLAINT PROCEDURE:

Step 1:

| | What: | Who: |
|---|---|---|
| 1. | A written complaint must be presented on a properly completed official form (obtained from any supervisor or Personnel Office), within ten (10) working days from the date of the action forming the basis for such complaint to his/her immediate supervisor for consideration and possible settlement. | Any Employee |
| 2. | A copy of the complaint shall be furnished to the Personnel Officer and the Department/Division Head or equivalent on the day such complaint is presented to the supervisor. | Immediate Supervisor |
| 3. | Meets with the employee to discuss the matter and renders his/her decision in writing within five (5) working days of the date the complaint was received. The written decision is addressed to the employee with a copy to the Personnel Director of the Facility/Department. | Immediate Supervisor |

Step 2:  In the event the complaint is not resolved at Step 1:

| | What: | Who: |
|---|---|---|
| 4. | A complaint may be filed on a properly completed official form with the Facility/Department Personnel Director within five (5) working days (defined as days the employee is at work) thereafter, or five working days after the expiration of the period within which the Step 1 answer is due to be given if no Step 1 answer is timely made. | Employee |

**2/6**

**EXHIBIT 86**

DMH POLICY 60-102

| | | |
|---|---|---|
| 5. | Within ten (10) working days from receipt of the complaint, a meeting is held with the employee and the employee's Department/Division Director or equivalent for consideration of complaint. | Personnel Director |
| 6. | Within five (5) working days after the meeting, (defined as days the Department/Division Director or equivalent is at work) the decision is to be rendered in writing, addressed to the employee, with a copy to the Personnel Director. | Department/ Division Director |
| 7. | A copy of the decision on the complaint shall be forwarded to the Director, and a copy shall be placed in the employee's personnel file. | Personnel Director |

Step 3: In the event the employee's complaint is not resolved at Step 2:

What:                                                                       Who:

| | | |
|---|---|---|
| 8. | A written request on a properly completed official form may be filed with the appropriate Personnel Director for a meeting with: | Employee |

    (a)   Facility - Facility Director or designee
    (b)   Central Office - Appropriate Associate Commissioner, The Commissioner or designee.

Such requests must be filed within five (5) working days (defined as days the employee is at work) after the day the Step 2 decision has been rendered or within five (5) working days following the expiration of the period within which Step 2 decision was required to be given if no Step 2 answer is timely given.

| | | |
|---|---|---|
| 9. | A meeting will be scheduled before the appropriate official (as defined in 8 (a) and (b) above) to be held within ten (10) working days (defined as days that the official or their designee is at their place of work) of the day a timely request is received. | Personnel Director |

A list of the witnesses needed by the employee will be provided to the Personnel Director no later than five (5) business days (Monday through Friday) prior to the meeting for notification of the date, time, and place of the meeting.                                    Employee

**3/6**

**EXHIBIT 86**

DMH POLICY 60-102

| | | |
|---|---|---|
| 10. | The appropriate official will have ten (10) working days (defined as days that official or their designee is at work) following the date of the Hearing to render a written decision. The written decision will be addressed to the employee with a copy to the appropriate Personnel Director. | Facility Director or Designee, or Assoc Comm. or Designee, or Commissioner or Designee |

Step 4: In the event the employee's complaint is not resolved at Step 3:

| | What: | Who: |
|---|---|---|
| 11. | Within five (5) working days (defined as days the employee is at work) following the Step 3 decision, or within five (5) working days after the expiration of the period within which the Step 3 decision was due to be given if no Step 3 answer is timely given, file a notice through the appropriate Personnel Director requesting a Hearing with the Commissioner or designee. | Employee |
| | A list of the witnesses needed by the employee will be provided to the Personnel Director no later than five (5) business days (Monday through Friday) prior to the meeting for notification of the date, time, and place of the meeting. | Employee |
| 12. | The Commissioner or designee will conduct a hearing within 45 days. A written decision will be submitted to the Employee/Facility Director. | Commissioner or Designee |
| 13. | The Commissioner or designee's decision is final. | Commissioner or Designee |

**V.   STANDARDS:**

1.   This procedure is applicable for complaints which have not been reviewed by other grievance/complaint procedures.

2.   The complaint procedure is to be used for the purpose of fact finding and is not to be used as an adversarial procedure.

3.   The complaint shall deal with a specific issue and the employees must sign the written complaint.

4.   An employee filing a complaint must have been involved in the incident and must appear in person at each scheduled hearing throughout the complaint process.

**4/6**

**EXHIBIT 86**

DMH POLICY 60-102

5.  Employees exercising their right to use the complaint procedure shall be free from interference, coercion, intimidation or reprisal.

6.  At any level in this procedure, an employee may be represented or accompanied by the representative of his/her choice.

7.  Disciplinary action may be taken against an employee who falsifies or otherwise willfully or intentionally misrepresents facts during any step of the complaint procedure.

8.  Failure on the part of any employee to pursue the complaint at any step of the procedure will have the effect of nullifying the complaint.

9.  Any evidence or testimony relevant to the resolution of a complaint must be introduced at a point in the complaint procedure prior to an appeal for a hearing before the Commissioner or designee.

10.  Evidence, which may be relevant to the resolution of a complaint, withheld either by an employee or the Department in the complaint procedure, will not be admissible at a hearing before the Commissioner or designee.  Newly discovered evidence will be admissible only on showing as to its prior unavailability.

11.  All hearings shall be closed to the public.

12.  All parties shall be given reasonable notice of the time and place of the hearing and hearings will proceed as scheduled. However, the Hearing Officer has the discretion to reschedule a hearing provided that an advance written request to reschedule is received prior to the original hearing date.  The written request to reschedule must specify the extraordinary circumstances which prompt the request. The Hearing Officer may grant the request to reschedule the hearing at his/her discretion.

13.  Either party may call witnesses to present statements of facts and information concerning the complaint to the Hearing Officer.  The Hearing Officer may limit *the* witnesses to a reasonable number whose testimony is not unduly repetitive and who have direct knowledge of the situation in question.

14.  The Hearing Officer may decline to hear witnesses that are repetitive as to character or to identical facts.

15.  Step 4 Hearings shall be conducted as follows:

   a.  The employee shall present his/her claim and evidence to support the claim, unless the complaint is regarding the employee's suspension, in which case the department's representative shall first present evidence

Page 5 of 6

**5/6**

**EXHIBIT 86**

DMH POLICY 60-102

to establish the charges(s).

    b.    The Facility/Central Office representative, or, in the case of a suspension, the employee, may present evidence to sustain their respective position(s).

    c.    The Hearing Officer shall follow accepted legal procedures insofar as is practical, but shall not be bound by the technical rules of evidence observed in courts of law.

    d.    Hearsay testimony, depositions, and affidavits may be accepted if such testimony is material and relevant to the issues.

16.    The employee will be given a reasonable opportunity to present the relevant aspects of his/her complaint.

17.    The Director/Hearing Officer at Step 3 and Step 4 may exclude other witnesses from the hearing while testimony is given.

18.    A record shall be kept by the Director/Hearing Officer of all Step 3/Step 4 Hearings.

**EXHIBIT 103**





STATE OF ALABAMA
# DEPARTMENT OF MENTAL HEALTH
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA  35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

12/27/2017

Due to an increase in contraband found within past several months and the delicacy of such in a secure medical facility, an official incident/offense report has been completed for this incident. The information contained has been labelled confidential in order to protect the rights of the patient and to abide by HIPAA regulations. Although this is an official state report, the report has been labelled as closed by exceptional clearance (decline of prosecution due to the patient's documented mental state). Please reference the following to assist in understanding the relation to the Promoting Prison Contraband Charge listed on the report:

### Alabama Criminal Code 13A-10-1

(a) The definitions contained in Section 13A-10-1 are applicable in this article unless the context requires otherwise.

(b) The following definitions are also applicable to this article:

(1) Custody. A restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of court, but does not include mere supervision of probation or parole, or constraint incidental to release on bail.

(2) Detention facility.  Any place used for the confinement, pursuant to law, of a person:

a.   Charged with or convicted of a criminal offense; or

b.   Charged with being or adjudicated a youthful offender, or a neglected minor or juvenile delinquent; or

c.   Held for extradition; or

d.   Otherwise confined pursuant to an order of court.

(3) Penal facility.  Any security correctional institution for the confinement of persons arrested for, charged with or convicted of a criminal offense, including but not limited to the following security facilities:  the state penitentiary and any branch thereof or any county or city jail.

(4) Contraband. Any article or thing which a person confined in a detention facility is legally prohibited from obtaining or possessing by statute, rule, regulation or order.

1/2

**EXHIBIT 103**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

### Alabama Criminal Code 13A-10-38

(a) A person is guilty of promoting prison contraband in the third degree if the person does any of the following:

(1) He or she intentionally and unlawfully introduces within a detention facility, or provides an inmate with, any contraband or thing which the actor knows or should know it is unlawful to introduce or for the inmate to possess.

(2) Being a person confined in a detention facility, he or she intentionally and unlawfully makes, obtains, or possesses any contraband.

(3) He or she intentionally introduces within a state detention facility operated by the Department of Corrections, or provides an inmate in a state detention facility operated by the Department of Corrections with, any currency or coin which the actor knows or should know is unlawful to introduce or the possession of which is not authorized by an inmate by the written policy of the Department of Corrections.

(4) Being a person in the custody of the Department of Corrections, he or she obtains or possesses any currency or coin, the possession of which is not authorized by the written policy of the Department of Corrections.

(b) Promoting prison contraband in the third degree is a Class B misdemeanor.

(c) Any currency or coin contraband found on or in the possession of any inmate in any state detention facility operated by the Department of Corrections, the possession of which is not authorized by the written policy of the Department of Corrections, shall be confiscated and liquidated after notice and a hearing as provided by departmental policy and the proceeds shall be deposited in the general operating fund of the department.

**2/2**

**EXHIBIT 104**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

1/15/2018

Referenced Dates: 12/15/2017, 1/5/2018, 1/15/2018
Referenced Contraband: Cigarette, Tobacco, Matches, Match Striker Pad
Contraband of Major Concern: Cigarette, Tobacco

On the above dates, the defendant, ▮▮▮▮▮▮▮▮ has been found to be in possession of several items considered contraband within Taylor Hardin Secure Medical Facility (Alabama Department of Mental Health). Patients who are temporarily housed at the facility are provided with "Program Rules" which indicate that items to be considered "contraband" (CARE's Program Rules: Page 12) are not allowed in patient rooms or the secure area. In the event that patients are unaware of what is considered "contraband" and are in a sufficient mental state to request such details, they are expected to inquire by means of Registered Nurse, Physician, Law Enforcement Officer, and/or sufficient personnel.

On 12/15/2017, ▮▮▮ was advised that his possession of such contraband (cigarette and tobacco) creates the potential of him being charged with Promoting Prison Contraband 3rd Degree (13A-10-38). ▮▮▮ stated that he understood that such possession was wrong/unlawful but stated to the responding law enforcement officers "y'all can't charge me with that". Based upon ▮▮▮'s continued behavior to possess and subject other patients to contraband, warrants are being sought in two of these instances. The question of ▮▮▮'s mental capacity shall be reviewed by the court upon the serving of such warrants. It is documented that ▮▮▮ presented sufficient information and action to understand that such possession of contraband is wrong and illegal according to program rules and state law. ▮▮▮ admitted to the possession of a cigarette and concealed contraband was found on 12/15/2017, attempted to conceal coffee grinds and concealed other contraband on 1/5/2018, and concealed contraband on 1/15/2018. His attempts to conceal such items indicates to law enforcement personnel that he is aware that such possession is wrong or unlawful.

Reports referencing such incidents have been included in this investigative memo.

**DERRICK JAMES WILLIAMSON, JR.**
Police Lieutenant
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Personal Phone:** (205) 422-9664
**Work Phone:** (205) 462-4554

**1/2**

**EXHIBIT 104**



KAY IVEY
GOVERNOR

STATE OF ALABAMA
# DEPARTMENT OF MENTAL HEALTH
## TAYLOR HARDIN SECURE MEDICAL FACILITY

1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA  35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

**2/2**

**EXHIBIT 107**

# ASEA

## ALABAMA STATE EMPLOYEES ASSOCIATION

Promoting and protecting the interests of state employees

July 17, 2018


Lt. Derrick Williamson
8816 Old Greensboro Road #20104
Tuscaloosa, AL  35405

Re: March 13, 2018 Written Reprimand

Dear Lt. Williamson:

I am writing to you concerning your request for the status of disputing the written reprimand that you received in March 2018. I understand your strong disagreement with Mental Health's choice to use this level of progressive discipline, but it could have actually been worse.

Based upon the written reprimand and the information you provided on the DMH complaint form, it appears that you used DMH property (computer) during work time to engage in political action in sending the proposed legislation to me. The rules of the Office of Information Technology prohibit this action. Many agencies have policies that prohibit this activity, but DMH did not charge you with violating a computer usage policy. The Ethics law provides that you may not use equipment, time, materials, or public property for private benefit. The law does allow you to contact ASEA if it is not during work time or using agency property. If you had sent the legislation to me from a private computer while not at work you could not have been disciplined.

Based on the foregoing, I do not believe there are any defenses that would justify the DMH to remove the written reprimand from your personnel file. Additionally, there is no due process available to challenge a written reprimand. Finally, if after reading this letter questions remain, please contact me at the number below.

Kindest regards,

Jason Manasco
General Counsel ASEA


MAC MCARTHUR, Executive Director

110 N. Jackson Street, Montgomery, Alabama 36104

334-834-0965   1-800-252-7063   Fax 334-834-0904

WWW.ASEA.ORG

1/1

**EXHIBIT 117**

TO: Annie Jackson (THSMF Director)

From: All Dayshift Officers

Regarding: Dayshift Lieutenant Position

     In Regards to the Dayshift Lt. Position, we as first shift have no confidence in leadership of Lt. Williamson. He does not exhibit qualities of a leader and does not work well with other Officers. Williamson has shown poor judgement in several areas. He has been vindictive towards Officers and not always truthful. We know he has been written up and received numerous complaints from staff and administrators. We feel him coming to our shift would be a detrimental mistake and interfere with our mission in serving the facility. We as a shift have no confidence in Lt. Williamson.

1/1

**EXHIBIT 123**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



LYNN T. BESHEAR
COMMISSIONER

KAY IVEY
GOVERNOR

## LETTER OF CONCERN

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

**Date:** 2/14/2019 5:47 PM
**To:** Commissioner Lynn Beshear
**Reference:** Hostile Work Environment & Whistle-Blower Protection

As I have followed the appropriate chain of command and have not received response from Associate Commissioner Diane Baugher and/or Director Lynn Hubbard regarding a *Hostile Work Environment (60-77)* and a denial of *Whistle-Blower Protection (19-12)* grievance filed on 10/19/2018, I'm forwarding a letter of concern to you in regards to these matters as a final step in hierarchy. These concerns were also forwarded to my immediate supervisor and were not addressed. I have perilously attempted to resolve concerns within the department but have not been able to make progress. Please review the contents of this letter at your discretion. *Reference: THSMF Supplement to 60-102(1): "If an employee has a complaint or problem involving employment, he/she may seek resolution by going first to his/her immediate supervisor. If it is not resolved to the employee's satisfaction at this level, then the employee may proceed up the administrative structure. Employees may bypass a supervisory step if they believe that it would be detrimental for them to express their concerns to that individual."*

- On 5/2/2018, I received a written reprimand for contacting Alabama State Employees Association (ASEA) to dispute salary indifferences within the Police Services Division (6090). A former supervisor (Robert Anderson, Jr.) advised that I may not contact external agencies in reference to the department. This was determined to violate rights established by the National Labor Relations Act, Civil Rights Act of 1964, and several other federal laws. His request stemmed from my efforts to correct illegal actions occurring within the facility and concerns of discrimination. The reviewing parties failed to acknowledge these rights and refused to consider the removal of this reprimand. A verbal notification of discrimination had been made and a written notice was made following this reprimand. The written reprimand was requested by Director Annie Jackson and was administered by Former Captain Robert Anderson, Jr. following his advisement to her.

- On 8/23/18, several days following the filing of an EEOC charge, I received a written warning for several infractions for prior incidents in which several were misunderstandings and not violations of department policy. The written warning was administered by Director Annie Jackson.

- On 9/19/2018, a written reprimand was issued for calling a Code Green (All Clear) for a situation which was deemed to be under control and interventions had been completed. Director Jackson failed to consider the facts presented to dispute the report made by a single disgruntled staff member. The indicated interventions that were listed as a basis for the reprimand did not actually occur. I was not questioned in regards to this matter prior to disciplinary action. The written reprimand was administered by Director Jackson.

- On 10/11/2018, a written warning was issued for neglect in a situation where I was not personally responsible for the direct care of the indicated patient. I advised a 1:1 staff member of the details indicated in the ADMH Incident Management Plan following his inquiry in which he misunderstood, left the 1:1 care of the patient, and I was made to be at fault for not instructing the staff member to return to his post prior to me leaving the presence of the patient. This staff member was not under my

**1/3**

**EXHIBIT 123**



STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

## LETTER OF CONCERN

supervision and I had been previously advised not to instruct direct care staff directly but to notify their supervisors. Although, the Taylor Hardin Police Policy advises that I will enforce the policies and procedures of the facility. There have been numerous contradictory directives which do not follow department policy. The written warning was issued by Director Annie Jackson.

- On 12/31/2018, I received a letter disputing my re-assignment to day shift which included un-factual information (libel). Six officers, not under my supervision, had signed the indicated letter. Initially, the presented signatures were questioned so video footage was reviewed to ascertain who had delivered the indicated letter. This was an initiation of preliminary criminal investigation for Forgery in the Third Degree (the review of video footage has commonly been used for this purpose). Four of the officers on day-shift who signed the letter had malicious motives; each wished to obtain an open supervisor's position but wished to remain on day shift. There was only currently one open supervisory spot and I sought to relocate to day-shift. The filing of the indicated letter also constituted a potential ethics violation. The remaining two officers were peer pressured into also signing; one has circumvented written disciplinary action and the other was forced to resign his position for unlawful conduct (not in relation to the signed letter). It should be noted that no personal incidents between me and the signed officers had occurred so there were no mutual personal motives to present the indicated letter. Officers utilized department gossip to present the indicated letter which included no detailed events.

Officer Darrin Paris, on 12/13/2018, had advised that he had no problem with me due to my previous and appropriate supervision prior to his probationary period. Paris had been suspected of delivering the indicated letter to individuals who received it. In order to clear my name, a state law procedure was utilized to request that appropriate information be delivered to the recipients. The personal letter presented to Paris incorporated no reference to the review of camera footage although prior knowledge could be used to substantiate a legal action. Director Jackson was advised that my personal knowledge of the matter and receipt of the letter (addressed to me by envelope) was utilized in legal action to retract defamatory information. Jackson was advised that in EEOC proceedings, personal knowledge of a working environment is also used in legal action. The provided response also presented discriminatory concerns involving Officer Paris and was considered a report of discrimination for the review of the department. I am being suspended for this matter which I will attempt to dispute in a formal complaint which has also been filed on today.

In my personal and professional opinion, I am being penalized (retaliation) for my involvement in EEOC activities, advocating for legal/civil rights, and the use of legal remedies. As I've utilized the department's policy to conduct several of the disciplined actions as well as state law, I believe these resolutions and outcomes are unfair and retaliatory. Officers who presented defamatory information were considered to have filed a "petition" and were not subjected to disciplinary action following their numerous policy violations in presenting the letter and violations of state law. It is apparent that there is internal opposition to my employment and my actions are being highly scrutinized.

**2/3**

**EXHIBIT 123**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

## LETTER OF CONCERN

As previously stated, I am not perfect seeing that I am human but I uphold ethical, moral, and legal principles in making all decisions. Prior to my discriminatory concerns with a former supervisor who was forced to retire, I received high performance appraisals and was a valued asset of the department. I received a recommendation and an honorary mention by a former captain before his retirement. Following my complaint of discrimination and a review of inconsistencies between African American officers and Caucasian officers, I have been targeted for insufficient and inappropriate disciplinary action to ruin my career in law enforcement. As the EEOC continues to investigate matters and I feel I am continuously harassed; conditions at Taylor Hardin Secure Medical Facility have become unbearable. I work fairly hard to do what is right and to follow orders which are legal, moral, and ethical to be continuously subjected to a hostile work environment.

As I know matters involving my circumstances may be trivial within a department with several hundred employees, I wish to continue to serve this department under conditions which are fair and consider my professional and personal opinions. I have been unable to defend my actions and the reasoning for my actions have not been appropriately considered. Additionally, in matters which have been scrutinized, no ill intentions or malice was of concern. Although numerous employees have circumvented disciplinary action within Taylor Hardin Secure Medical Facility, I have been a center of concern within law enforcement services at this facility. I believe the foundation of that concern has not been properly reviewed. At this time, seeing that a requested meeting was declined by department counsel on 11/19/2018, I would like to forward these concerns of quality and heightened scrutiny via this letter. This may be the only way I can present my stance at this time. With the amount of correspondence between myself and department at this point, it is not expected that you will review the vast amount of documentation but please consider this letter as a genuine expression.

Thank you,

**DERRICK J. WILLIAMSON, JR., BS, AAS, AA, ALEC, LEC, NP**
Police Lieutenant/Mental Health Security Officer II
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Work Cellular Phone:** (205) 792-2089
**Work Office Phone:** (205) 462-4554

**3/3**

**EXHIBIT 124**



STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
### RSA UNION BUILDING

100 NORTH UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410
WWW.MH.ALABAMA.GOV



**KAY IVEY**
**GOVERNOR**

February 28, 2019

**LYNN T. BESHEAR**
**COMMISSIONER**

Lt. Derrick Williamson, Jr.
8816 Old Greensboro Road
Apt. 20104
Tuscaloosa, AL 35405

*RE:*    *Letter of Concern*

Dear Lt. Williamson,

I have received your letter of concern, dated February 14, 2019, addressed to me as the Commissioner of the Department of Mental Health. I also am aware of your five day suspension by the Facility Director of Taylor Hardin Secure Medical Facility, Annie Jackson, for "your repetitive policy violations".

It is my understanding that your previous concerns prior to this suspension have been reviewed by the Associate Commissioner of Mental Illness and Substance Abuse, Diane Baugher, and those concerns will not be addressed repetitively. It is further my understanding that you have filed four Equal Employment Opportunity Commission (EEOC) charges and that those filings are still under review by the EEOC. For these reasons, no further due process hearings will be provided to you for your past allegations and/or complaints. However, your appeal of your suspension by the Facility Director will be heard by my designee at the appropriate time and place. You will be hearing from my designee, Eric Carpenter, in the near future to set up a date and time.

Sincerely,

Lynn T. Beshear
Commissioner

cc:    Diane Baugher
       Annie Jackson
       Eric Carpenter
       Tommy Klinner

1/1

**EXHIBIT 135**

7/31/2019                                  Mail - Derrick.Williamson@Hardin.mh.alabama.gov

# RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

### Jackson, Annie

Fri 2/23/2018 1:40 PM

To:Williamson, Derrick <Derrick.Williamson@Hardin.mh.alabama.gov>;

Cc:Anderson, Bobby <Bobby.Anderson@hardin.mh.alabama.gov>;

I have forwarded your request to the Facility Rep

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
**Taylor Hardin Secure Medical Facility**
**Tuscaloosa, Alabama  35404**
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**From:** Williamson, Derrick
**Sent:** Thursday, February 22, 2018 4:57 PM
**To:** Jackson, Annie
**Cc:** Anderson, Bobby
**Subject:** Re: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

Good afternoon,

I have attached a memo showing the current and new statutes relating to the proposed bill.

Thank you,



**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*

EXHIBIT 135

7/31/2019                          Mail - Derrick.Williamson@Hardin.mh.alabama.gov

**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Phone:** (205) 462-4554
**Personal Phone:** (205) 422-9664

"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.
You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**From:** Jackson, Annie
**Sent:** Thursday, February 22, 2018 12:37:38 AM
**To:** Williamson, Derrick
**Subject:** RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
**Taylor Hardin Secure Medical Facility**
**Tuscaloosa, Alabama  35404**
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**From:** Williamson, Derrick
**Sent:** Thursday, February 22, 2018 12:35 AM
**To:** Jackson, Annie
**Subject:** RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

Will handle that on tomorrow... shouls be easy to resolve. Thank you.

Get Outlook for Android

**From:** Jackson, Annie
**Sent:** Thursday, February 22, 2018 12:34:11 AM
**To:** Williamson, Derrick
**Subject:** RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

2/5

**EXHIBIT 135**

You started the original and do strikethroughs and additions so that it is clear what the original was and what is being deleted and added or reworded.

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
**Taylor Hardin Secure Medical Facility**
**Tuscaloosa, Alabama  35404**
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**From:** Williamson, Derrick
**Sent:** Thursday, February 22, 2018 12:32 AM
**To:** Jackson, Annie
**Subject:** RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

The bill has the original clauses and what they are being changed to. Are you wanting them highlighted to make that clear?

Get Outlook for Android

**From:** Jackson, Annie
**Sent:** Thursday, February 22, 2018 12:29:38 AM
**To:** Williamson, Derrick
**Subject:** RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

Need to have the original with the changes reflected

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
**Taylor Hardin Secure Medical Facility**
**Tuscaloosa, Alabama  35404**
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**From:** Williamson, Derrick
**Sent:** Thursday, February 22, 2018 12:28 AM

EXHIBIT 135

7/31/2019                                                      Mail - Derrick.Williamson@Hardin.mh.alabama.gov

To: Jackson, Annie
Subject: RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

Will do when I return on tomorrow.

Get Outlook for Android

---

From: Jackson, Annie
Sent: Thursday, February 22, 2018 12:27:21 AM
To: Williamson, Derrick
Cc: Anderson, Bobby; Booth, Jeremy; McDaniel, Kevin; Reaves, Noah
Subject: RE: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

Derrick before I submit this could you highlight or use the modification functions to indicate what you are proposing to change?

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
Taylor Hardin Secure Medical Facility
Tuscaloosa, Alabama  35404
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

From: Williamson, Derrick
Sent: Tuesday, February 20, 2018 6:37 PM
To: Jackson, Annie
Cc: Anderson, Bobby; Booth, Jeremy; McDaniel, Kevin; jason_manasco@asea.org
Subject: Legislative Review: Defining Statutes and Provisions Governing State Mental Health Police

Good evening,

The attached bill (previously approved) is being re-forwarded to you in accordance with Alabama Department of Mental Health Policy 15-1. The previous submission was rescinded in efforts to maintain focus on legislative matters for 2017 (medical staff shortage) according to yourself and seeing that this is a new year, I request that the attached bill be revisited and forwarded to the appropriate Associate Commissioner. The current statute which is very vague requires a sufficient update indicating and clarifying questions which are asked on a regular basis. The attached bill may also be forwarded to the Alabama State Employees Association if we are in need of legislative assistance.

Thank you for your continued assistance,

EXHIBIT 135



**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Phone:** (205) 462-4554
**Personal Phone:** (205) 422-9664

"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.
You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**EXHIBIT 139**

## Simpler, Amber

| | |
|---|---|
| **From:** | Jackson, Annie |
| **Sent:** | Wednesday, May 2, 2018 5:44 PM |
| **To:** | Anderson, Bobby; Hunt, Deborah; Long, Joe; Thomas, Rebecca (DMH); Burns, Andrea; Harbin, Rickey; Glenn, Marie; Booth, Jeremy; Chaney, Curtis; de los Reyes, Jovencio; Dean, Marlene; Doss, Jacky; Eatmon, Sheila; Ellard, Lori; Harrison, Jacob; Hobson, Mary; Irvine, Daphne; Kent, Karen; Leavelle, Lori; McDaniel, Kevin; Montz, Rachel; Richey, Lenoise; Simpler, Amber; White, Tamara |
| **Cc:** | Porter, Jennifer |
| **Subject:** | Disciplinary Actions |

In order to ensure the proper HR procedures are followed and that we use a standardized format for documentation, please work with Mr. Long on any written warnings, written reprimands, suspensions and terminations. HR will ensure they are properly formatted and the standards are correct for which the discipline is being given. Verbal and memo of records can be provided without notice to HR and maintained in your files for verification of the next step of actions to be taken. If you have questions, please feel free to give me a buzz. I appreciate in advance your cooperation in this matter.

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
**Taylor Hardin Secure Medical Facility**
**Tuscaloosa, Alabama  35404**
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**1/1**

Mail - Derrick.Williamson@Hardin.mh.alabama.gov                    **EXHIBIT 140**

# Re: Written Reprimand: Violation of Policy 15-1 (Request for Formal Proceeding)

### Williamson, Derrick

Thu 5/3/2018 11:31 AM

Sent Items

To:Long, Joe <Joe.Long@hardin.mh.alabama.gov>;

Cc:Jackson, Annie <Annie.Jackson@hardin.mh.alabama.gov>; Anderson, Bobby <Bobby.Anderson@hardin.mh.alabama.gov>; Prewitt, Marphus <Marphus.Prewitt@hardin.mh.alabama.gov>; Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>;

I understand what is stated in Policy 60-102. Maybe I'm using the wrong terminology but I'm filing a grievance against the fact that the written reprimand was issued out of violations in policy and law. If this issue cannot be handled at the facility level, the entire complaint shall be immediately forwarded to Associate Commissioner Diane Baugher on today and appropriate legal authorities. An illegally issued written reprimand should not be placed in my personnel file although I have a sufficient rebuttal.

A meeting is being requested with everyone in receipt of this email or at least all facility members listed.

Thank you,



**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone**: (205) 792-2089
**Personal Phone:** (205) 422-9664

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.

**1/3**

You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**From:** Long, Joe
**Sent:** Thursday, May 3, 2018 10:39:15 AM
**To:** Williamson, Derrick
**Cc:** Jackson, Annie; Anderson, Bobby; Prewitt, Marphus; Hubbard, Lynn
**Subject:** RE: Written Reprimand: Violation of Policy 15-1 (Request for Formal Proceeding)

I am in receipt of your email dated 5-3-18 at 1:46 am. According to ADMH Policy 60-102, Employee Complaint Procedure, you cannot file a complaint for a Written Reprimand. You can however write a rebuttal to the reprimand and it will be placed with the reprimand and put in your personnel file. Thanks.

Joe Long
Director of Human Resources
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, AL 35404
Phone: 205-462-4511
Fax: 205-462-4502
joe.long@hardin.mh.alabama.gov

Confidentiality Notice: This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**From:** Williamson, Derrick
**Sent:** Thursday, May 03, 2018 1:46 AM
**To:** Long, Joe <Joe.Long@hardin.mh.alabama.gov>
**Cc:** Jackson, Annie <Annie.Jackson@hardin.mh.alabama.gov>; Anderson, Bobby
<Bobby.Anderson@hardin.mh.alabama.gov>; Prewitt, Marphus <Marphus.Prewitt@hardin.mh.alabama.gov>; Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>
**Subject:** Written Reprimand: Violation of Policy 15-1 (Request for Formal Proceeding)

Good morning,

A formal proceeding is being requested on 5/4/2018 between 1400 - 1600 (2:00 PM - 4:00 PM) regarding the reception of an illegal written reprimand received on 5/2/2018 at approximately 1:45 PM. It is requested that all copied individuals be present if possible. A formal and redacted complaint (excluding other concerns to be addressed outside facility oversight), specifically referencing this issue, has been composed and will be hand delivered to you (Human Resources) on 5/3/2018 prior to my normal operating shift. Lynn Hubbard shall be forwarded a complaint complaint detailing all issues of concern by 5/4/2018.

If you are in need of additional time prior to a formal meeting please advise. In efforts to address this particular issue without regress, my attorney will not be attending at this time.

Thank you,



**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone**: (205) 792-2089
**Personal Phone:** (205) 422-9664

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.
You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**EXHIBIT 141**

# Formal Complaint: Director Annie Jackson

### Williamson, Derrick

Thu 5/3/2018 6:33 PM

To:Hubbard, Lynn <Lynn.Hubbard@mh.alabama.gov>;

Cc:Baugher, Diane <Diane.Baugher@mh.alabama.gov>; Beshear, Lynn <lynn.beshear@mh.alabama.gov>;

🖉  1 attachments (434 KB)

Formal Complaint - Director Annie Jackson.pdf;

Good evening,

Please review the attached formal complaint detailing several documented issues with Director Annie Jackson. I've presented/made significant improvements to this department (police services) and have distinguished myself among my peers. Now being subjected to a hostile work environment, I have compiled a thorough complaint and investigation involving matters relating to Director Jackson (several of which I am personally involved).

*Please also be advised that the attached report has been forwarded to Attorney General Steve Marshall.*

Thank you for your review of this matter,



**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone**: (205) 792-2089
**Personal Phone:** (205) 422-9664

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient

**1/2**

EXHIBIT 141

5/16/2018                                          Mail - Derrick.Williamson@Hardin.mh.alabama.gov

of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.

You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

# RE: Formal Grievance: Reprimand Received in May

### Jackson, Annie

Mon 7/16/2018 9:44 AM

To: Williamson, Derrick <Derrick.Williamson@Hardin.mh.alabama.gov>;

Cc: Long, Joe <Joe.Long@hardin.mh.alabama.gov>;

Then I will follow up with Central Office to see what their response was

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
Taylor Hardin Secure Medical Facility
Tuscaloosa, Alabama 35404
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**From:** Williamson, Derrick
**Sent:** Monday, July 16, 2018 8:07 AM
**To:** Jackson, Annie
**Cc:** Long, Joe
**Subject:** Re: Formal Grievance: Reprimand Received in May

Yes, you did make that notification but as the reprimand violates several policies, it should be forwarded to HR as you stated you had sent it to Central Office for review.
The response to the filed grievance/complaint is already well pass notification constraints.

Thank you,



**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*

**Alabama Department of Mental Health**

Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone:** (205) 792-2089

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.

You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**From:** Jackson, Annie
**Sent:** Monday, July 16, 2018 8:02:54 AM
**To:** Williamson, Derrick
**Cc:** Long, Joe
**Subject:** RE: Formal Grievance: Reprimand Received in May

I believe you met with me and I inform you that I was not going to rescind it. Did you send me one to send to HR?

**Thanks a Million!**

**Annie D. Jackson, MSW, LICSW/PIP, MPA, CPM**
**Facility Director,**
**Taylor Hardin Secure Medical Facility**
**Tuscaloosa, Alabama  35404**
annie.jackson@hardin.mh.alabama.gov
(205) 462-4506

*This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe you are not the intended recipient of this communication or have received this email in error please (1) advise me immediately, (2) delete it and any files transmitted from your system, and (3) destroy any hard copies of it. You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.*

**From:** Williamson, Derrick
**Sent:** Sunday, July 15, 2018 7:34 PM
**To:** Jackson, Annie
**Cc:** Long, Joe
**Subject:** Formal Grievance: Reprimand Received in May

Good evening,

I've received several responses to grievances filed but have yet to receive one in reference to the reprimand that was issued against state policy. Please provide an update on the status of this grievance ASAP.

Thank you,



**Derrick J. Williamson, Jr., BS, AS, AAN**
*Police Lieutenant/MHSOII*
**Alabama Department of Mental Health**
Taylor Hardin Secure Medical Facility
1301 Jack Warner Parkway NE
Tuscaloosa, Alabama, 35404-1060
**Email:** derrick.williamson@hardin.mh.alabama.gov
**Work Office Phone:** (205) 462-4555
**Work Cellular Phone:** (205) 792-2089

*"Blessed are the peacemakers: for they shall be called the children of God" - Matthew 5:9*

This electronic mail transmission may contain legally privileged and/or confidential information. This message and/or any files transmitted with it are intended solely for the use of the addressee(s). This communication is to be treated as confidential and the information in it may not be used or disclosed except for the purpose for which it was sent. If you have reason to believe that you are not the intended recipient of this communication or have received this email in error, please contact the sender immediately, delete it, any attachments, and all copies of it from your system, and destroy any hard copies of it.

You are hereby notified that disclosing, copying, distributing, or taking any action on the contents, attachments, or information herein is strictly prohibited.

**EXHIBIT 195**



NATIONAL SECURITY AGENCY

CENTRAL SECURITY SERVICE

Fort George G. Meade, Maryland 20755-6000

July 6, 2018

Derrick Williamson
8816 Old Greensboro RD
20104
Tuscaloosa, AL 35405

Dear Derrick Williamson:

Congratulations! We are pleased to extend a conditional offer of employment with the National Security Agency (NSA) as a NSA Police Officer, GG-0500, NSA Police Officer Special Salary Rate, Grade 07 at $40,634.00 base salary, plus a special rate pay of $14,786.00 for a total of $55,420.00 per annum.

Candidates under consideration for NSA positions must meet the employment eligibility standards previously discussed with you. If, as a result of the employment process, it is determined that you do not meet these standards, NSA will withdraw its conditional offer of employment.

To begin your employment processing and remain competitive it is critical that you complete security forms. Visit our website at www.IntelligenceCareers.gov and select NSA from the Job Search/Apply tab. Click on the arrow and sign in using the username and password you created when you originally applied. Once you are logged in, click on the "My Forms" tab and follow the instructions to download your forms. Once you have completed the Security forms, you must upload them (only the Security forms) using the upload link, then print both the HR and Security Forms, sign and mail them to us using the enclosed return envelopes within 15 business days.

This job offer is contingent upon receipt of official documentation of your degree(s) and/or certificates as appropriate. Should you need to submit transcripts directly from your school, please use the following address: National Security Agency, 9800 Savage Rd, Attn: A3312, Suite 6779, Ft. Meade, MD 20755

While pending receipt of your transcripts, do not delay mailing your Security forms and 2 copies of your DD-214 (Member 4), one with your Security package and one with your Human Resources package.

As a result of the high personal and professional standards required of all employees, and the significant attrition rate during our pre-employment screening process, several job offers may be made to fill one position. Individuals who received a conditional offer of employment may be notified the position has been filled, their offers of employment may be withdrawn, and all employment screening activities underway for the current position may cease. In addition, the NSA may rescind a conditional offer of employment at any time without prior notice if adequate funding is not available or if other legal reasons prevent the NSA from maintaining the position for which the conditional offer was made.

**1/2**

**EXHIBIT 195**

The NSA is committed to maintaining an ethical culture and upholding the principles of ethical conduct. As an NSA employee, you will be subject to the Standards of Ethical Conduct for Employees of the Executive Branch as well as the criminal conflict of interest statutes. As a new employee, you will be required to receive initial ethics orientation within 3 months of appointment. In addition, you may be required to file the Confidential Financial Disclosure Report (OGE450) within 30 days of your appointment. If you have any questions about these requirements, or any government ethics issue, you should contact the NSA Office of the General Counsel, Administrative Law & Ethics Practice Group at (410) 854-3910.

Again, we congratulate you on this conditional offer of employment. Please do not hesitate to call us at (866) NSA-HIRE if you have any questions. If, at any time, you wish to terminate your interest in NSA employment, please notify us immediately.

Sincerely,

Lt. Halph

National Security Agency
Office of Recruitment

**2/2**

**EXHIBIT 196**



**NATIONAL SECURITY AGENCY**
FORT GEORGE G. MEADE, MARYLAND 20755-6000

16 January 2019

<u>RESTRICTED DELIVERY</u>

Derrick J. Williamson, Jr.
8816 Old Greensboro Road
Apartment 20104
Tuscaloosa, Alabama 35405

Dear Mr. Williamson,

This letter replies to your recent correspondence, which requests information pertaining to the decision to discontinue your employment processing with the National Security Agency (NSA). NSA has established standards for employment to promote the efficiency of the service. As a result of your unfavorable work history, we have determined that you do not currently meet our standards for employment.

This decision is final and is not subject to appeal; however, it does not preclude you from reapplying in the future. Should you decide to reapply, please do so at <u>www.nsa.gov</u>. Please keep in mind that information gathered during your processing will be evaluated to determine your eligibility for a position of trust at NSA.

If you would like to obtain a copy of your records, which includes information relied upon to make this decision, please submit your written request to our Freedom of Information Act (FOIA)/Privacy Act (PA) office at: NSA/CSS FOIA/PA, National Security Agency, 9800 Savage Road, Suite 6932, Ft. Meade, Maryland 20755-6932. If you have questions pertaining to your records or the FOIA/PA process, please contact the FOIA/PA office directly at (301) 688-6527. Please be aware that the FOIA/PA Office is experiencing a significant backlog in requests.

I hope the above information is helpful and responsive to your request, and I wish you much success in your employment endeavors.

Sincerely,

Personnel Evaluation Panel

**1/1**

**EXHIBIT 208**

1    *Draft*

2    *Draft*

3    By: Derrick Williamson, Jr.

4    RFD: Public Safety & Homeland Security

5    First Read:

**1/5**

1    REFERENCE: *Draft*

2

3          SYNOPSIS: This bill would revise Alabama Code Title 22. Health, Mental Health, and

4    Environmental Control Section 22-50-21. Provisions and powers listed within such code are no

5    longer sufficient, vague, and have not been reviewed since 1940. Alabama Mental Health Police

6    Officers are responsible for the safety and security of mental health facilities by protecting

7    patients, citizens, and staff. Such officers are state certified law enforcement officers and often

8    transport patients who are criminally committed upon various charges including murder and

9    aggravated assault. Such officers are also responsible for maintaining order at state mental health

10   facilities and often assist mental health staff in affecting their duties. The following changes would

11   clarify powers vested to such officers and clarify the potential reception of law enforcement

12   funding to assist in departmental advancement. Alabama Mental Health Police Officers would also

13   be given the extended ability of traffic enforcement at such facilities in efforts to prevent

14   unauthorized individuals and circumvent violations of Alabama Code Title 32. Jurisdictional

15   matters will also be addressed from the listed changes and include such officers within Alabama

16   Code Section 36-21-2 allowing subsistence pay.

17

18                                   A BILL

19                              TO BE ENTITLED

20                                  AN ACT

21

22          Defining Statutes and Provisions Governing State Mental Health Police

23

24               BE IT ENACTED BY THE LEGISLATURE OF ALABAMA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Section 1. Alabama Code 22-50-21 to be revised from the following:

The State Mental Health Officer may appoint or employ one or more suitable persons to act as police officers to arrest intruders, trespassers, and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals.   Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings, or lands or arrest them and may, without warrant, arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant.   Such police officer shall have authority to summon a posse comitatus.

To the following:

The State Mental Health Commissioner may appoint or employ suitable persons to act as police officers to arrest trespassers, persons guilty of improper or disorderly conduct, and other offenses established in Alabama Criminal Code on the property of state mental health facilities or hospitals. Such police officers shall be charged with all the duties and vested with all the powers of state police officers.

    (a) Every police officer appointed or employed pursuant to this section must be certified by the Alabama Peace Officers Standards and Training Commission or shall achieve such certification within 6 months of employment.

    (b) Such officers may arrest with probable cause, without warrant, in the following instances in addition to Alabama Code 15-10-3:

**3/5**

**EXHIBIT 208**

1        (1) When any person is found guilty, with sufficient evidence, of abuse of a patient to include

2            harassment, assaults, or offenses presenting bodily harm.

3        (2) When any misdemeanor occurs on the lands or premises of mental health hospitals by any

4            individual not classified as a patient.

5        (c) Such officers may enforce traffic laws and engage traffic stops on state mental health

6            premises or properties. Officers may also exercise such power to enforce traffic violations

7            outside mental health premises in regard to public safety.

8        (1) If probable cause is found for a violation of Alabama Code Section 32, such officer shall

9            complete a Uniform Traffic Ticket just as a municipal or county officer and appear before

10           a district court judge or authorized representative to swear to such charges for the

11           violation.

12        (d) Any individual found guilty, upon probable cause, and arrested shall be taken before a

13           district court judge or other officer charged with trial of such offenders, before whom,

14           upon proper affidavit charging the offense, the person so arrested shall be tried.

15        (1) An individual who is arrested by such officer shall be housed by any local jail or prison at

16           the discretion of the officer.

17        (e) Such officer shall have authority to summon a posse comitatus in the event of an

18           elopement, escape, or other event constituting an emergency in requirement of additional

19           assistance.

20        (f) Such officer shall also have state-wide jurisdiction, such as other state law enforcement

21           agencies, to enforce violations of Alabama Criminal Code (Title 13) when operating

22           outside established jurisdiction.

23        (g) Such officer may also assist other state law enforcement agencies in mental health crises

24           anywhere within the state of Alabama.

**4/5**

**EXHIBIT 208**

1     (h) The Alabama Department of Mental Health Police may receive state or federal funding

2           appropriated for law enforcement agencies. Such responsibility shall be placed upon

3           departmental finance managers in the event funds are needed.

4        Section 2. Alabama Code 36-21-2(a) to be revised to the following:

5     (a) Any law enforcement officer of the State of Alabama who is employed by the Department of

6     Public Safety, Department of Industrial Relations, Department of Conservation and Natural

7     Resources, Alabama Alcoholic Beverage Control Board, Department of Agriculture and

8     Industries, Alabama Department of Forensic Sciences, the Transportation Enforcement Division

9     of the Alabama Public Service Commission, Alabama Liquefied Petroleum Gas Board, the

10    Alabama Criminal Justice Information Center, the Alabama Peace Officers' Standards and

11    Training Commission, the Alabama Securities Commission, the State Port Authority, probation

12    and parole officers of the Alabama Board of Pardons and Paroles, fire marshals of the Department

13    of Insurance, revenue enforcement officers of the Department of Revenue, law enforcement

14    officers of the State Capitol Police, any investigator employed by the Alabama Ethics

15    Commission, any investigator employed by a district attorney on a full-time basis, the marshal or

16    any deputy marshal of the state appellate court, correctional officers of the Department of

17    Corrections, or <u>police officers employed by the Department of Mental Health</u> shall receive a

18    subsistence allowance of twelve dollars ($12) for each working day of a pay period while engaged

19    in the performance of the duties as a law enforcement officer. This allowance shall be in addition

20    to all other compensation, expenses, and allowances provided those officers.

21        Section 3. This act shall become effective on the first day of the third month following its

22    passage and approval by the Governor, or it's otherwise becoming law.

**5/5**

**EXHIBIT 211**

---

# W A R R A N T

COPY

STATE OF ALABAMA                    TUSCALOOSA COUNTY            DISTRICT   COURT

AGENCY NUMBER: 180115001MHTH            WARRANT NUMBER: WR 2018 000379.00
                                        OTHER CASE NBR:                    .

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY COMMANDED TO ARREST ▮▮▮▮▮▮▮▮▮ AND BRING
HIM/HER BEFORE THE DISTRICT   COURT OF TUSCALOOSA COUNTY TO ANSWER THE STATE
OF ALABAMA ON A CHARGE(S) OF:
            PROMOT PRISON CONTRA   CLASS: B   TYPE: M   COUNTS: 001
AND HAVE YOU THEN AND THERE THIS WRIT WITH YOUR RETURN   THEREON.

YOU WILL RECEIVE UNTO YOUR CUSTODY AND DETAIN HIM/HER UNTIL THE
_____ DAY OF _____, OR UNTIL LEGALLY DISCHARGED.

DATED THIS 22 DAY OF JANUARY, 2018.

BOND SET AT: (1) |          $500.00   BOND TYPE:
             (2) |_____
             (3) |_____

JUDGE/CLERK/MAGISTRATE OF DISTRICT   COURT

---

CHARGES: PROMOT PRISON CONTRA   13A-010-038        M   MISDEMEANOR

---

NAME: ▮▮▮▮▮▮▮▮▮▮▮               ALIAS:
ADDRESS: 1301 JACK WARNER PKWY NE        ALIAS:
ADDRESS:
CITY: TUSCALOOSA          STATE: AL      ZIP: 35404 0000
                                         PHONE: 205 462 4500 EXT: 000

EMPLOYMENT:
DOB: ▮▮▮▮▮▮    RACE: W   SEX: M       HAIR: BLK
EYE: BRO  HEIGHT: 5'09"   WEIGHT: 175
SID: 000000000  SSN: ▮▮▮▮▮▮   DL NUM:

---

# E X E C U T I O N

EXECUTED THE WITHIN WARRANT BY ARRESTING THE DEFENDANT AND

( )  PLACING DEFENDANT IN THE TUSCALOOSA COUNTY JAIL

( )  RELEASING DEFENDANT ON APPEARANCE BOND

_____

THIS _____ DAY OF _____

                    SHERIFF _____

                    BY _____

---

COMPLAINANT:   WILLIAMSON
               TAYLOR HARDIN
               1301 JACK WARNER PKWY
               TUSCALOOSA   AL   35404

OPERATOR: KEJ      DATE: 01/22/2018

---

1/4

**EXHIBIT 211**

COPY

```
ALABAMA JUDICIAL INFORMATION SYSTEM
     * * * IN THE DISTRICT COURT OF TUSCALOOSA COUNTY * * *
AGENCY NUMBER: 180115001MHTH          WARRANT NUMBER: WR 2018 000379.00
                                      OTHER CASE NBR:              .
                    C O M P L A I N T
BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT  COURT OF
TUSCALOOSA COUNTY, ALABAMA, PERSONALLY APPEARED  WILLIAMSON
WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR
BELIEVING, AND DOES BELIEVE THAT ████████████            DEFENDANT,
WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE
NAMED COUNTY AND

(XX)  DID ON OR ABOUT 1-15-2018, BEING A PERSON CONFINED IN A
DETENTION FACILITY, TO-WIT: TAYLOR HARDIN SECURE MENTAL HEALTH FACILIT , HE
INTENTIONALLY AND UNLAWFULLY MAKES, OBTAINS OR POSSESSES ANY CONTRABAND,
TO-WIT: TOBACCO
IN VIOLATION OF 13A-010-038               OF THE CODE OF ALABAMA,
AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.
```

COMPLAINANT'S SIGNATURE

```
SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 22 DAY OF JANUARY, 2018.


JUDGE/CLERK/MAGISTRATE OF DISTRICT   COURT
CHARGES: PROMOT PRISON CONTRA  13A-010-038        M  MISDEMEANOR
----------------------------------------------------------------------
WITNESS FOR THE STATE

WILLIAMSON/TAYLOR HARDIN/1301 JACK WARNER PKWY/TUSCALOOSA/35404



OPERATOR: KEJ    DATE: 01/22/2018
```

**2/4**

**EXHIBIT 211**

## COPY

| State of Alabama<br>Unified Judicial System<br>Form CR-57 (front)   Rev.8/98 | **DEPOSITION** | Warrant/Summons Number<br>WR18-379<br>Case Number<br>1801 15001 |
|---|---|---|

IN THE_____ **DISTRICT** _____ **COURT OF** _____ **TUSCALOOSA** _____, **ALABAMA**
(Circuit, District, or Municipal)                    (Name of Municipality or County)

☑ **STATE OF ALABAMA**
☐ **MUNICIPALITY OF** _____ v. _____
                                                                              **Defendant**

### INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED

| Name of Accused (or Alias) | | | | | Telephone Number<br>205-462-4500 | |
|---|---|---|---|---|---|---|
| Social Security Number | Driver's License Number | | Date of Birth | Age<br>29 | Race<br>W | Sex<br>M |
| Height<br>5'9" | Weight<br>175 | Hair<br>BLK | Eyes<br>BRO | Complexion<br>LIGHT | | |

| Address of Accused (or Alias)<br>1301 JACK WARNER PKWY NE (THSMF) | City<br>TUSCALOOSA | State<br>AL | Zip Code<br>35404 |
|---|---|---|---|
| Name of Employer<br>N/A | | Employer's Telephone Number<br>N/A | |
| Address of Employer<br>N/A | City<br>N/A | State<br>N/A | Zip Code<br>N/A |

### INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE

Offense: __PROMOTING PRISON CONTRABAND 3RD DEGREE__

Date and Time of Offense: __1/15/2018 @ APPROXIMATELY 5:00 PM__

Place of Occurrence: __TAYLOR HARDIN SECURE MEDICAL FACILITY (1301 JACK WARNER PKWY NE. 35404)__

Person Attacked or Property Damaged: __N/A__

How Attacked: __N/A__

Was accused under the influence of alcohol or a controlled substance? ☐ Yes ☑ No

Any law enforcement agency contacted? ☐ Yes ☑ No

If yes, which one? _____

Did Accused Possess or Use a Weapon? ☐ Yes ☑ No          Types: _____

Did you go to the hospital? ☐ Yes ☑ No

Damage Done or Injuries Received: __N/A__

Value of Property: __N/A__

Details of Offense: __On 1/15/2018 at approximately 5:00 PM, a random living area search was conducted on the suspect who__
__is currently housed on the CARE Program located at Taylor Hardin Secure Medical Facility. A pat search was conducted by__
__in efforts to check for potential weapons. No weapons were located on his person and the living area search commenced.__
__Upon searching the suspects wardrobe, a sock containing coffee grinds was located. Officers additionally located two__
__plastic cups containing chewing tobacco, plastic wrapping containing a small amount of tobacco, and a small amount of__
__tobacco in the suspects laundry basket. The suspect had previously been made aware that such items constituted contraband__
__according to facility policy and rules.__

☐ Check if additional pages are necessary.

**3/4**

**EXHIBIT 211**

COPY

| Form CR-57 (back)   Rev.8/98 | DEPOSITION |
|---|---|

Any Law Enforcement Agency Contacted? ☐ Yes ☑ No
If yes, which one? _____

I make this statement for the purpose of securing a WARRANT/SUMMONS against the named of accused. I understand that I am instituting a criminal proceeding and cannot dismiss this case. I further understand that if any of the foregoing facts are perjury, I may, in addition to any other punishment provided by law, be taxed with court costs in the proceeding.

Sworn to and Subscribed before me this

**22** _____ day of

**Jan** , **2018** .

_____
Judge/Clerk/Magistrate

_____
Complainant     DERRICK WILLIAMSON

_____
Social Security Number

**1301 JACK WARNER PKWY, TUSCALOOSA, AL., 35404**
Address

## WITNESSES

| Name | Address | Telephone Number |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## MAGISTRATE NOTES

Warrant or Summons issued? ☐ Yes ☐ No        Warrant Number: _____

**4/4**

**EXHIBIT 212**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA  35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

**STATUTE 22-50-21 & 36-21-2 REVISIONS**

5/16/2018 5:59 PM

**CURRENT:** Alabama Code Title 22. Health, Mental Health, and Environmental Control: 22-50-21

The State Mental Health Officer may appoint or employ one or more suitable persons to act as police officers to arrest intruders, trespassers, and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals. Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings, or lands or arrest them and may, without warrant, arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant.   Such police officer shall have authority to summon a posse comitatus.

**NEW:** Alabama Code Title 22. Health, Mental Health, and Environmental Control: 22-50-21

The State Mental Health Commissioner may appoint or employ suitable persons to act as police officers to arrest trespassers, persons guilty of improper or disorderly conduct, and other offenses established in Alabama Criminal Code on the property of state mental health facilities or hospitals. Such police officers shall be charged with all the duties and vested with all the powers of state police officers.

(a) Every police officer appointed or employed pursuant to this section must be certified by the Alabama Peace Officers Standards and Training Commission or shall achieve such certification within 6 months of employment.

(b) Such officers may arrest with probable cause, without warrant, in the following instances in addition to Alabama Code 15-10-3:

(1) When any person is found guilty, with sufficient evidence, of abuse of a patient to include harassment, assaults, or offenses presenting bodily harm.

(2) When any misdemeanor occurs on the lands or premises of mental health hospitals by any individual not classified as a patient.

(c) Such officers may enforce traffic laws and engage traffic stops on state mental health premises or properties. Officers may also exercise such power to enforce traffic violations outside mental health premises in regard to public safety.

(1) If probable cause is found for a violation of Alabama Code Section 32, such officer shall complete a Uniform Traffic Ticket just as a municipal or county officer and appear before a district court judge or authorized representative to swear to such charges for the violation.

(d) Any individual found guilty, upon probable cause, and arrested shall be taken before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried.

(1) An individual who is arrested by such officer shall be housed by any local jail or prison at the discretion of the officer.

(e) Such officer shall have authority to summon a posse comitatus in the event of an elopement, escape, or other event constituting an emergency in requirement of additional assistance.

**1/4**

EXHIBIT 212



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

**STATUTE 22-50-21 & 36-21-2 REVISIONS**



(f) Such officer shall also have state-wide jurisdiction, such as other state law enforcement agencies, to enforce violations of Alabama Criminal Code (Title 13) when operating outside established jurisdiction.

(g) Such officer may also assist other state law enforcement agencies in mental health crises anywhere within the state of Alabama.

(h) The Alabama Department of Mental Health Police may receive state or federal funding appropriated for law enforcement agencies. Such responsibility shall be placed upon departmental finance managers in the event funds are needed.

**CURRENT:** <u>Subsistence allowance for certain law enforcement officers: 36-21-2</u>

(a) Any law enforcement officer of the State of Alabama who is employed by the Department of Public Safety, Department of Industrial Relations, Department of Conservation and Natural Resources, Alabama Alcoholic Beverage Control Board, Department of Agriculture and Industries, Alabama Department of Forensic Sciences, the Transportation Enforcement Division of the Alabama Public Service Commission, Alabama Liquefied Petroleum Gas Board, the Alabama Criminal Justice Information Center, the Alabama Peace Officers' Standards and Training Commission, the Alabama Securities Commission, the State Port Authority, probation and parole officers of the Alabama Board of Pardons and Paroles, fire marshals of the Department of Insurance, revenue enforcement officers of the Department of Revenue, law enforcement officers of the State Capitol Police, any investigator employed by the Alabama Ethics Commission, any investigator employed by a district attorney on a full-time basis, the marshal or any deputy marshal of the state appellate court, or correctional officers of the Department of Corrections shall receive a subsistence allowance of twelve dollars ($12) for each working day of a pay period while engaged in the performance of the duties as a law enforcement officer. This allowance shall be in addition to all other compensation, expenses, and allowances provided those officers.

(b) The subsistence allowance shall not be subject to any income or other taxes levied by the State of Alabama or the federal government.

(c) The act adding this amendatory language regarding the Department of Corrections correctional officers shall be phased-in in the amount of one dollar ($1) per fiscal year for the 12 years beginning October 1, 1995. In any year that it is determined by Senate Joint Resolution or House Joint Resolution enacted by both houses and signed by the Governor that because of fiscal emergency the implementation of the one dollar ($1) per fiscal year shall be suspended for that year only, this subsistence allowance, or any portion thereof, may be suspended.

(d) The subsistence allowance to law enforcement officers at the Alabama Criminal Justice Information Center shall be paid from its Special Revenue Fund and not from General Fund appropriations to the center. The subsistence allowance to law enforcement officers at the Peace Officers' Standards and Training Commission shall be paid from the Peace Officers' Standards and Training Fund and the subsistence allowance paid to Securities Commission Officers shall be paid from the Securities Commission Fund.

**2/4**

**EXHIBIT 212**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA 35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV

KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

**STATUTE 22-50-21 & 36-21-2 REVISIONS**

(e) The subsistence allowance for law enforcement officers employed by the State Port Authority provided in subsection (a) shall be phased in as follows:

(1) For the remainder of the fiscal year ending September 30, 2006, the subsistence allowance shall be six dollars ($6) per day.

(2) For the fiscal year commencing October 1, 2006, the subsistence allowance shall be nine dollars ($9) per day.

(2) For the fiscal year commencing October 1, 2007, and thereafter, the subsistence allowance shall be the amount provided in subsection (a).

**NEW:** Subsistence allowance for certain law enforcement officers: 36-21-2

(a) Any law enforcement officer of the State of Alabama who is employed by the Department of Public Safety, Department of Industrial Relations, Department of Conservation and Natural Resources, Alabama Alcoholic Beverage Control Board, Department of Agriculture and Industries, Alabama Department of Forensic Sciences, the Transportation Enforcement Division of the Alabama Public Service Commission, Alabama Liquefied Petroleum Gas Board, the Alabama Criminal Justice Information Center, the Alabama Peace Officers' Standards and Training Commission, the Alabama Securities Commission, the State Port Authority, probation and parole officers of the Alabama Board of Pardons and Paroles, fire marshals of the Department of Insurance, revenue enforcement officers of the Department of Revenue, law enforcement officers of the State Capitol Police, any investigator employed by the Alabama Ethics Commission, any investigator employed by a district attorney on a full-time basis, the marshal or any deputy marshal of the state appellate court, or correctional officers of the Department of Corrections, or police officers employed by the Department of Mental Health shall receive a subsistence allowance of twelve dollars ($12) for each working day of a pay period while engaged in the performance of the duties as a law enforcement officer. This allowance shall be in addition to all other compensation, expenses, and allowances provided those officers.

(b) The subsistence allowance shall not be subject to any income or other taxes levied by the State of Alabama or the federal government.

(c) The act adding this amendatory language regarding the Department of Corrections correctional officers shall be phased-in in the amount of one dollar ($1) per fiscal year for the 12 years beginning October 1, 1995. In any year that it is determined by Senate Joint Resolution or House Joint Resolution enacted by both houses and signed by the Governor that because of fiscal emergency the implementation of the one dollar ($1) per fiscal year shall be suspended for that year only, this subsistence allowance, or any portion thereof, may be suspended.

(d) The subsistence allowance to law enforcement officers at the Alabama Criminal Justice Information Center shall be paid from its Special Revenue Fund and not from General Fund appropriations to the

**3/4**

**EXHIBIT 212**



STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH**
**TAYLOR HARDIN SECURE MEDICAL FACILITY**
1301 JACK WARNER PARKWAY NORTHEAST
TUSCALOOSA, ALABAMA  35404-1060
205-462-4500
WWW.MH.ALABAMA.GOV



KAY IVEY
GOVERNOR

LYNN T. BESHEAR
COMMISSIONER

**STATUTE 22-50-21 & 36-21-2 REVISIONS**

ANNIE D. JACKSON
MSW, LICSW, PIP, MPA, CPM
FACILITY DIRECTOR

center. The subsistence allowance to law enforcement officers at the Peace Officers' Standards and Training Commission shall be paid from the Peace Officers' Standards and Training Fund and the subsistence allowance paid to Securities Commission Officers shall be paid from the Securities Commission Fund.

(e) The subsistence allowance for law enforcement officers employed by the State Port Authority provided in subsection (a) shall be phased in as follows:

(1) For the remainder of the fiscal year ending September 30, 2006, the subsistence allowance shall be six dollars ($6) per day.

(2) For the fiscal year commencing October 1, 2006, the subsistence allowance shall be nine dollars ($9) per day.

(1) For the fiscal year commencing October 1, 2007, and thereafter, the subsistence allowance shall be the amount provided in subsection (a).

**DERRICK JAMES WILLIAMSON, JR.**
Police Lieutenant
Taylor Hardin Secure Medical Facility
Alabama Department of Mental Health
**Email:** Derrick.Williamson@hardin.mh.alabama.gov
**Personal Phone:** (205) 422-9664
**Work Phone:** (205) 462-4554

4/4

# Comments:

| | |
|---|---|
| 1 | This is a very stressful environment, seems like more work keeps getting assigned but more restraints are being added (no comp/flex, having to use (flex) in a certain time) to get work done.  Nursing and direct care staff are tired from working so much overtime so they are leaving to find other jobs.  Seems like when there is a problem nothing is done about it. |
| 2 | I do not feel safe as an employee and do not believe we are doing all we can to keep our patients safe: Staff do not get properly searched before entering the facility; we don't have enough staff; we don't fire staff who engage in improper conduct; staff are not providing a therapeutic environment for patients. We have communication problems (several months when phone, paging and internet were down) and security problems (cameras not working/staff not being kept up to date on the status of the cameras). The safety is alarming, concerning and appalling.  We need help and intervention for safety. We lack the resources to do our job. Staff consistently report feeling burned out, are held over and expected to produce without support and resources from the administration. Administration does not follow policy.  We do not properly vet new staff.  New staff are either not properly trained or proper procedures are not enforced. |
| 3 | Incidents are not reported.  Follow up to incidents and preventative/corrective action is not reported.  There are insufficient staff to prevent and monitor for safety concerns, or report/document them.  Staff are not sufficiently trained to promote safety/incident prevention.  Contraband is permitted in the facility (security does not check for contraband-glancing in bags and a metal detector that does not work are not sufficient and there is insufficient staffing to properly check for these items).  There are staff assigned to prevent/monitor for safety concerns who are 1) overworked 2) not sleeping, so they are sleeping on the job 3) cannot perform their job (to read/write notes on behaviors and incident reports).  Management does not appear to enforce consequences to behavior that threatens staff/patient safety (staff bringing personal items on the units, staff are permitted to keep working after clear violations: abuse, even physical abuse).  The facility and units are not designed to house max security patients (e.g. the furniture, lights, trash cans, utensils, writing instruments, etc.).  Video surveillance cannot be adequately monitored in real time and often does not work.  There is insufficient accountibility for items given to patients (e.g. utensils, paper, phone cards, etc.).  The movies and books shown to patients are rated R and promote violence including: physical violence, rape, child sexual offending, kidnapping, etc.  Facility is currently operating under a culture of blame/reactive stance which puts people on the offensive /defensive rather than reporting problems and working together to fix them. |
| 4 | There appears to be a lot of dysfunctional relationships here at this facility.  Staff who are not receptable (receptive) or accepting of change.  These individuals continue to do underminding things to hinder the progress of the facility.  Many people continues to ignore or turn their head from these individuals.  This is Toxic and unsafe behavior, causing an unsafe environment.  These individuals don't get reprimanded or discipline at all making others resent and feel uncomfortable working with them: They are not held accountable for their TOXIC behavior.  If the goal is progress, change and move forward how is this possible with this type of individuals a part of this agency.  It is time for those major changes in order for progress to happen!!! |
| 5 | Too much is swept under the rug-particularly regarding patient safety |
| 6 | This place is becoming very dangerous to work at.  Seems like no one is trying to help manage this issue |
| 7 | Why don't we work with Bryce to get help with nursing staff or schedule contract RN's to fill in scheduling gaps? |
| 8 | Not adequate staff to fully implement safety measures |

EXHIBIT 217

# Comments:

| | |
|---|---|
| 9 | Patient safety and care continue to decline as concerns related to work environment and staff shortages continue to increase without any form of intervention.  Because of staff shortages and immense workloads, staff are having to work long hours and do jobs of multiple people.  Therefore, issues fall between the cracks.  In addition, the amount of hours that staff are required to work impede their ability to be proactive and handle safety issues appropriately.  In my opinion, patient safety only becomes a priority when negative attention has been brought to ADMH or THSMF administration.  Patient safety is usually an afterthought, a technicality, and we approach the subject of patient safety in a reactive rather than proactive manner. |
| 10 | Patient safety is definitely at risk, as well as staff safety!  Due to excessive work hours (mandatory overtime) required by staff it has gotten to a critical point.  It has been declining (number of staff for patient areas) and no one has done anything abotu it.  Very poor leadership and lack of concern for patient and staff safety is obvious. |
| 11 | Patient care has gotten so bad in this facility I am ashamed to say that I work here. |
| 12 | Patient safety is overlooked at this facility.  FTs are on units sleeping instead of watching patients.  The morale is horrible because no one is held accountable for their actions.  No one takes their job seriously.  We have FTs getting chased into parking lots and arrested with illegal drugs and come back to work the next day and take care of patients.  Doesn't sound safe to me. |
| 13 | If staff do a good job they receive more responsibility or have higher expectations placed on them.  For those who do not perform at a higher level, less expectation and less work (transferred) happens.  There seems to be little accountability for those who do not do their job.  When one member/group is not performing it impacts All groups.  Stress levels are very high.  Frustration is high.  All of this can impact work with patients and the overall quality and accuracy of work done. |
| 14 | Understaffing is a serious issue at this facility and upper management does not care!!!  We are alone.  Exhausted people make errors and we are all exhausted (the people that are in direct care).  There are nurses that have cute little offices up front that should be ashamed of themselves because they could help but never do. |
| 15 | I have Never worked in a hospital (including Ers, ICUs, Dialysis units) where Management is allowed to manage from offices in such critical nurse staffing shortages…with an RN III begging, pleading, consistently attempting to notify management (Nurses that have 1st in their credentials the Responsibility as RN then RN Manager or Director of Nursing or Director).  I've worked in nursing shortages much like this one we're experiencing now and managers, directors, department heads put lab coats on, stethoscopes etc and came to the units!!!  They did not have the luxury to simply look at the text or screen the call then look away.  Karma?  Not unless you believe in Hinduism and Buddism.  I, like many of my co-workers, am Christian are we live by His word and some of His work says: To whom much is given, from him much is expected (exact quote from Luke 12:48-For unto whomsoever much is given, of him shall be much required).  He is going to straighten this proverbial "crooked road."  I serve a just God.  I'm leaving "management" and their lack of it in His hands.  I forgive them, He tells me to, and judgement is not mine…just answering the survey. |

EXHIBIT 217

# Comments:

| | |
|---|---|
| 16 | This facility is terribly understaffed and they are steadily firing staff behind one patient, when the staff should just be moved to another unit. |
| 17 | No teamwork.  For safety purposes on DREAM the doors should have windows so staff can see in the room before entering, especially at night when the rooms are very dark. Staff feel like mistakes are held against them most of the time, they are even possibly terminated.  Mistakes have staff scared to do their jobs/assignments due to fear of losing their job.  No matter what you do it's not good enough.  I would like to see all staff work together as a team and try to accomplish one goal and that is to work together to come up with the best solutions and ideas to help the patients instead of staff throwing eachother under the bus and rather than using job titles to determine how much work we do and how much we care. |
| 18 | Secure Facility is a loose term here.  There is no secure with the half fast security measures.  Restrictions on searches, etc.  The constant hiring of young males with criminal records to sit with patients.  The fact that administrators, nurses and social workers call them patients instead of inmates or prisoners is part of the problem.  We first have to acknowledge they are felons and they realize  the security that needs to be in place to prevent drugs, tobacco and weapons from entering the facility. |
| 19 | Shortage of nursing staff has crippled this facility and caused hazard unnecessarily due to manditory work policy.  This policy makes a full time staff position unbearable to qualified personnel.  It also jeapordizes quality of care each time a worker is forced to stay an extra 8 hours when their scheduled 8 hours are over.  This happens weekly and sometimes twice a week to nurses and Forensic Technicians.  When an employee sees how little their personal well-being means to this facility, they look for a better opportunity. |
| 20 | We work in a very unsafe climate because of staff shortages, staff not getting along (some bullies and some passive-aggressiveness), discrimination based on race (both ways), gender, and education level; an administration that obviously does not care about staff or patients (administrators who run departments and those departments are crumbling need to be fired).  Administrators try to cover up incidents and accidents and put on a show for commissioner and/or surveyors.  This place is full of errors, accidents, etc that are waiting to happen because morale is at an all time low.  And when morale is low, it means people don't care.  And when people don't care, our patients aren't safe.  Period. |
| 21 | While staff may feel like they are being written up, rather than the incident being written up when an event is reported the process is a discrete and improving process.  We may use more agency/temp staff than is ideal, but the alternative would be doing with even less staff which would definitely be dangerous for the patients.  Patient safety problems on the units are inherent to patient volitility on admission.  Our procedures and systems are good at preventing errors from happening as evidenced by reduction in med errors. |
| 22 | It is my impression that safety is a top priority and changes to policy/procesdure are made in response to events.  I know that several education classes are developed and taught every year to prevent events/incidents from re-occurring. |
| 23 | Poor facility patient safety.  Poor incident reporting and decision making amongst key administration staff. |
| 24 | Way underpaid, understaffed, unappreciated, and disrespected.  No days to properly rest.  Cannot request time off for a mental break. |
| 25 | We are already working 16 hour days be being mandated-just make it two 12 hour shifts.  More money would definitely keep workers, especially the ones that are already here. |
| 26 | I am really pleased with Dr. Glen-her thoughtfulness and hard work.  Ms. Jackson is doing an excellent job with all the changes. |

EXHIBIT 217

# Comments:

| | |
|---|---|
| 27 | We are working too short of staff too many hours for the safety of patietns and co-workers.  Staff is never praised for a job well done.  Professional staff never listen to the staff htat work hands on with the patients daily.  Staff fear reporting things for fear of losing theri jobs or being wrote up.  No respect is given to direct care staff.  Hiring too many young staff.  Nurses downgrade the FTs often.  This place has gone to the dogs. |
| 28 | We do not have enough staff to handle the workload.  Staff work longer hours then what is best for patients-16 hours 2 days straight or back to back 12 hour shifts.  We never do things to improve patient safety  because we are understaffed.  We need more agency/temp staff.  We work in crisis mode all the time and no one up front comes down and helps answer the door/phone.  We are in a dangerous situation now with work getting done.  My supervisor doesn't consider staff suggestions, just delegates more work.  My supervisor wants us to work faster, even if it means taking more shortcuts all of the time.  My supervisor doesn't care about patient safety problems.  Not everything gets reported because not enough staff to report everything that happens with the patients.  Management doesn't care.  Actions of management DO NOT show that patietn safety is a priority.  Something needs to be done around here before we all walk out of this place and management up front will be on the floor working with these patients.  Tired of long hours.  We have no time with our families or our kids and we continuously work the overtime then get punished for sleeping or for forgetting to do something.  Time for a change around here. |
| 29 | Mental Health Workers are underpaid and we work entirely too much overtime. |
| 30 | Working on CARE with only one nurse is very unsafe when we are having to answer phones, doors, do FT's work along with pulling meds.  Then we have one patient over there that needs our one-on-one attention, not fair to other patients and they tell us that we are showing favoritism to him.  But when he starts acting up the whole program starts getting disruptive.  We need more nurses and FT's.  We are working very unsafe.  I have been hit by this patient as well. |
| 31 | I think we should have a time clock so all staff can keep up with his or her hours worked.  I also think we should be paid be the hour and have rotating shifts for example: one week you work 12 hours all week and the next week you work 16 hours all week.  Therefore you will know the hours you have to do before doing them.  I also feel in my opinion that control should help us out in the Dining Room whenever a unit goes to eat, at least one person from control would help make things go a little more smoother. |
| 32 | *Forensic Techs are *Under-Paid*  *Forensic Techs are *Under-Paid* *Under-Paid* *Under-Paid* *Under-Paid* *Under-Paid*  This facility is understaffed.  The staff is overworked and any little think or mistake that is made by a FT is always under investigation that could cost us our job or moved off programs.  Our FT's have no say so in anything that goes on in this facility.  We are be-littled and talked down on.  Our FT's are under paid, but we have the toughest job. |
| 33 | State needs to pay more for FTs.  You will hire good people and keep them. |
| 34 | We are very short of staff which is not safe for the patients or staff and it's like if you make a mistake your job is on the line. |
| 35 | The RN III does a good job, she gives positive feedback.We are short staffed.  Safety is being jeapordized due to staff exhaustion.  Patients are not being held accountable for program violations and behavior-It's out of control. |
| 36 | Everyone should not be able to access every door in clinical services, unless they are the clinical director. |

EXHIBIT 217

**EXHIBIT 229**

To whom it may concern:

I started my employment with The Department of Mental Health in December of 2017. My official title is Director of Foodservice, Dietitian II Position. I assumed my position with all the responsibilities to protect the State of Alabama Assets as well as oversee the contract between the State of Alabama and the Contract Foodservice Company. I have had the pleasure of working with Derrick Williamson for twenty months at Taylor Hardin Secure Medical Facility. This facility is a very difficult environment to work in. My personal observation of Taylor Hardin includes policies and procedures not being followed (employee work schedules, policies and procedures being altered to fit extenuating circumstances-reviewing cameras), staff providing food to patients from outside sources, employees not following the chain of command for direction (employees make decisions without reviewing them with their Supervisors), habitual Staff and Patient Safety issues observed (employees asleep on the job, one RN in the entire building, inpatients overdosing on illegal drugs, patients being abused by staff), discrimination as well as non-existent communication channels.

Mr. Williamson and I have worked closely together regarding the Nutritional Services Department. He is the only person in Control that I trust to accomplish task and accomplish task truthfully. One issue that I worked directly with Mr. Williamson was of Contract Staff being observed taking assets away from the facility for personal use. Mr. Williamson successfully monitored employees, reviewed cameras, issued warrants for the employees arrest, arrested the employees, and made sure restitution was completed. The policies and procedures had not been being monitored nor enforced and the Nutritional Services Department continued to have issues with contract employees removing food and inventory from the facility, to their personal vehicles. I considered the accomplishment for Mr. Williamson as a true asset for the State of Alabama to stop/reduce theft and protecting the assets of the facility. However, other officers in the building approached me and did not believe the situation was handled correctly. I was approached by numerous officers informing me that "Williamson should have allowed the staff to resign" and "the situation should have been handled differently." Upon hiring orientation, employees sign a form acknowledging cameras usage onsite, policies and procedures, as well as information state property. The employees arrested had signed numerous competencies acknowledging their understanding of removing state property from site and camera usage. I personally was shocked to see the various thought processes about this issue, which also included the Director of the Facility. Policies, procedures and rules are created for compliance, not to alter as per the situation. Alterations continue to occur routinely here. Unfortunately, this stressful environment continues to encourage employee turnover and turnover will continue until an outside source becomes the governing body of this facility and monitors the behavior at Taylor Hardin. I have heard many stories from senior employees here of "how it used to be, when it was run correctly" and I have held on to the positive thoughts of the facility changing back into that great environment. I just hope for the patients/residents it does quickly.

LORI LEAVELLE

DATE: 8/15/19

Sworn to and subscribed before me this the 15th day of August, 2019.

NOTARY PUBLIC

**Julie H. Howard**
Notary Public, State of Alabama
My Commission Expires
8-28-2022

1/1