FILED

2021 Feb-02 PM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION 2021 FEB -2 A II: 53

DERRICK JAMES WILLIAMSON, JR.
PRO SE

*PLAINTIFF*

V.

ALABAMA DEPARTMENT OF
MENTAL HEALTH & MENTAL
RETARDATION ET AL

*DEFENDANTS*

U.S. DISTRICT COURT
N.D. OF ALABAMA

CASE NO.: **7:19-CV-00669-LSC**

RESPONSE

---

## RESPONSE IN OPPOSITION TO DEFENDANT GRAHAM'S MOTION FOR SUMMARY JUDGMENT

---

**COMES NOW**, the Plaintiff, **DERRICK JAMES WILLIAMSON, JR.**, in

accordance with Uniform Initial Order Appendix II (Doc. 36), and files the

following **RESPONSE IN OPPOSITION** to Defendant Jacqueline Graham's

Motion for Summary Judgment.[1] (Doc. 242)

---

[1] In light of the complexity of this case, and the vast number of documents between the parties, the Plaintiff re-submits copies of all documents supporting this response which have already been previously provided to the court upon various alternate motions. The Plaintiff will cite to Defendant's submitted evidentiary material in support of her motion.

## INTRODUCTION & SUMMARY OF THE ARGUMENT [2]

The Plaintiff has alleged violations premised upon his factual, and true, classification as an Alabama Department of Mental Health (hereinafter *"ADMH"*) merit system employee and, thus, he is indeed subject to the protections of the State Merit System.[3] (Doc. 243, p. 3) Graham's willful disregard of the law subjects her to the Plaintiff's claims for relief.

First, Plaintiff's claims against Graham in her official capacity are not barred by either the Eleventh Amendment or state-agent immunity; as *Ex parte Young* and *Ex parte Cranman* exceptions apply. (Doc. 243, p. 3) Second, Plaintiff has established a property interest in placement or classification within the State Merit System; as the undisputed material facts reveal that Graham concedes that the Plaintiff is a merit system employee. (*Id.*) Third, Plaintiff has presented sufficient evidence for a jury to conclude that Graham was aware of any conspiracies, failed to act, and continues to disregard her duty as State Personnel Director. (*Id.*) Four, in closing, with the Plaintiff's lawful placement within the State Merit System, Graham has neglected her duties established by law to protect a former African

---

[2] For the Court's ease, the Plaintiff used similar headings proffered by Graham in response to her arguments.

[3] Alabama Administrative Code § 580-6-35-.01 specifies that "[c]lassification and pay plans for all positions in the classified services within the Department of Mental Health and Mental Retardation shall be maintained in accordance with the State Merit System Act; therefore, the Department of Mental Health and Mental Retardation is hereby adopting by reference the standards of State Personnel in reference to the State Merit System Act."

American employee working for the ADMH; this conduct is negligent and wanton.

(Doc. 243, p. 4) Graham's concerns for criminal law, are wasteful efforts. (*Id.*) The

Plaintiff may use evidence of violations of criminal code to show that state agent

immunity and intracorporate conspiracy doctrine should not apply in this case

under *Ex parte Cranman* and intracorporate conspiracy doctrine exceptions.

## JURISDICTION

Plaintiff agrees that this Court has original subject matter jurisdiction and

that the Court may exercise supplemental jurisdiction over the remaining state law

claims. (Doc. 243, p. 4)

## STANDARD OF REVIEW

Plaintiff agrees with the standard of review set forth by Graham regarding

this Court's review of a federal summary judgment motion. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff agrees with the procedural history as set forth by Graham. (Doc.

243, p. 6) However, the Court should take judicial notice that the Plaintiff has filed

a motion for summary judgment against Graham on the material issue of the

Plaintiff's placement outside the State Merit System within an adjacent state case.

*Williamson v. McCurry et al*, 63-CV-2020-900463.00 (May 15, 2020). The

Plaintiff is seeking a declaratory ruling on this matter. (*Id.* at Doc. 325)

## DISPUTES WITH CLAIMED UNDISPUTED FACTS

5. The Plaintiff objects to the statement of "such as the Plaintiff". Defendant has proffered no evidence to support this conclusory fact and it is therefore due to be stricken. The Defendant's subjective ideas cannot overcome the applicable law. (Doc. 36, p. 16, ¶ 1; Ala. Code § 22-50-41) [4]

6. The ADMH does not possess authority to appoint the Plaintiff to a particular classification; as his position, *i.e.*, office, precedes September 30, 1965. Mental Health Security Officer II isn't the position, it is the classification of a police officer appointed by Alabama Code § 22-50-21. (Ala. Code § 22-50-41, § 22-50-2, § 36-26-11; Doc. 244-1, p. 3, ¶ 5)

7. If Defendant is proffering the material fact that the Plaintiff is within an exempt classification, the assertation is denied; as the ADMH, nor does Graham, have authority to identify the Plaintiff as exempt in violation of clause two of Alabama Code § 22-50-41. (Ala. Code § 22-50-41)

12. The Plaintiff objects to the statement that "Plaintiff was an exempt employee". Defendant has proffered no evidence to support this conclusory fact and it is therefore due to be stricken. The Plaintiff's position continued under the State Merit System. (Doc 36, p. 16, ¶ 1; Ala. Code § 22-50-41, § 22-50-21)

## ADDITIONAL UNDISPUTED FACTS

---

[4] Hereinafter: "Pl. Ex." shall refer to Plaintiff's Exhibits; "Ala. Code" shall refer to Alabama Code; "Admin. Code" shall refer to Alabama's Administrative Code; "RFAs" shall refer to Requests for Admissions; "Int." shall refer to Interrogatories.

## *Plaintiff is a Merit System Employee*

13.     The ADMH, then "Insane Hospital" received authority to appoint police officers pursuant to Alabama Code § 22-50-21 within 1896. (Pl. Ex. A, p. 10; Ala. Code § 22-50-21)

14.     The ADMH employs law enforcement officers, pursuant to Alabama Code § 22-50-21, in the classifications of Mental Health Security Officers. (Doc. 145, p. 5, ¶ 15; Graham's Answer, p. 3, ¶ 15; Pl. Ex. D, p. 8; Ala. Code § 36-26-11, § 22-50-21)

15.     Alabama Code § 36-26-10 placed positions pursuant to Alabama Code § 22-50-21 within the classified service within 1939 by the establishment of the Merit System Act of 1939 through expressively advising that "[t]he Classified Service shall include all other officers and positions in the State Service." (Pl. Ex. B, p. 7; Graham's RFAs, p. 7, ¶ 16)

16.     The purpose of the Merit System Act of 1939 is "[t]o assure all citizens of demonstrated capacity, ability and training an equal opportunity to compete for service with the State of Alabama, to establish conditions in the state service which will attract officers and employees of character and capacity and to increase the efficiency of the governmental departments and agencies by the improvement of methods of personnel administration." (Doc. 244-1, p. 2, ¶ 2; Admin. Code § 670-X-1-.02; Pl. Ex. B, p. 2)

17.     Alabama Code § 22-50-41 of 1965, later providing authority to the
ADMH to establish certain positions within or outside the classified service of
the Merit System Act of 1939, expressively advises that "positions in such
department which were under a Merit System on September 30, 1965, or which
are placed under a Merit System by law after October 29, 1965, shall continue
under such Merit System". (Doc. 244-1, p. 3, ¶ 4; Pl. Ex. C, p. 2; Ala. Code §
22-50-41)

18.     Each police officer employed by the ADMH are required to be
sworn law enforcement officers of the State of Alabama with arrest authority.
(Doc. 145, p. 5, ¶ 16; Graham's Answer, p. 5, ¶ 16)

19.     Such police officers are additionally required to be certified as law
enforcement officers by the Alabama Peace Officer Standards & Training
Commission ("APOSTC"). (Doc. 145, p. 5, ¶ 16; Graham's Answer, p. 5, ¶ 16)

### *Graham's Willful Inaction & Neglect of Duty*

20.     On November 17, 2018 and December 18, 2018, the Plaintiff
requested appeal rights and Graham's assistance in compliance. (Doc. 244-3)

21.     Graham did not respond to the Plaintiff's submissions on
November 17, 2018 and December 18, 2018 or notify him of any findings.
(Doc. 244-1, p. 5, ¶ 8; Graham's RFAs, p. 2, ¶ 1)

22.     Graham did receive these submissions; however, she asserts she

wasn't required to consult with anyone. (Doc. 244-1, p. 5, ¶ 8; Graham's RFAs, p. 3, ¶ 3)

23.     Graham is aware of the rules of the State Personnel Board but denied the Plaintiff's access to Alabama Administrative Code § 670-X-4-.03 procedures. (Doc. 244-1, pp. 2, 5, ¶¶ 2, 8; Graham's RFAs, p. 4, ¶ 7)

24.     Furthermore, Alabama Administrative Code § 670-X-4-.03 follows the hearing procedure outlined within Alabama Administrative Code § 670-X-5-.08. (Graham's RFAs, p. 8, ¶ 19)

25.     Alabama Administrative Code § 670-X-4-.03 provides a hearing for violations of Title VII of the Civil Rights Act of 1964. (Graham's RFAs, pp. 4, 8, ¶¶ 8, 19; Ala. Admin. Code § 670-X-4-.03)

26.     Apparently, Administrative Code § 670-X-4-.03 also provides a hearing for First Amendment Violations; as conspiratorial violations of the First Amendment are forbidden by 42 U.S.C. § 1985(3). (Graham's RFAs, pp. 5, 9, ¶¶ 11, 24; 42 U.S.C. § 1985(3), R.S. § 1980) [5]

27.     Alabama Code § 36-26A-3 provides protection for a classified service employee. (Graham's RFAs, p. 5, ¶ 10)

---

[5] Graham did not state that she made a reasonable inquiry pursuant to Rule 36(a)(4), therefore the Request for Admission should be deemed admitted. *Id.* ("The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.").

28.     Graham was not a part of the State Personnel Board; her duty was to refer her concerns to the State Personnel Board instead of making determinations upon her own fruition. (Graham's RFAs, pp. 2 – 3, 6 – 8, 10, ¶¶ 1, 3, 12, 18, 21, 28; Ala. Code § 36-26-8(11))

29.     Apparently, Graham concedes that her duty was "administering and enforcing State of Alabama Administrative Code § 670-X-4-.03, allocating each classified position in Alabama state Service, and making investigations into the effect of State of Alabama Administrative Code § 670-X-16." (Graham's RFAs, p. 9, ¶ 27)

30.     Graham has a legal team at her disposal under her employment as State Personnel Director. (Doc. 244-1, p. 2, ¶ 2; Graham's RFAs, pp. 6, 9, ¶¶ 13, 25)

31.     Graham also concedes that "the Plaintiff legally occupied/occupies his classification of Mental Health Security Officer II." (Graham's RFAs, p. 6, ¶ 15)

32.     The Plaintiff did not have a remedy under Alabama Code § 41-22-3(3); as his internal personnel actions were not subject to the Administrative Procedures Act. (Graham's RFAs, p. 9, ¶ 26; Ala. Code § 41-22-3(3))

33.     However, the Plaintiff would have been subject to these procedures if his concerns were reviewed by the State Personnel Board; as the board is

external to the ADMH. (Graham's RFAs, p. 9, ¶ 26; Ala. Code § 36-26-6, § 41-22-3(3))

34.     Graham asserts that she did not have to make an investigation pertaining to the Plaintiff's situation and did not have to report it to the State Personnel Board. (Graham's Int., Set Two, Amended Answer, p. 2, ¶ 6)

## ADDITIONAL DISPUTED FACTS

35.     Graham asserts she did not make an investigation pertaining to the Plaintiff's requests; however, she conducted a legal investigation into whether the Plaintiff was a merit system employee. (Doc. 244-1, p. 5, ¶ 8; Graham's Int., Set Two, Amended Answer, p. 2, ¶ 6; Graham's RFAs, pp. 10, ¶¶ 28 – 29)

36.     Graham asserts she did not communicate with ADMH employees, however, documents present joint signatures regarding personnel actions. (Doc. 244-6, p. 3, ¶¶ 7 – 8; Doc. 244-2, pp. 11 – 12) [6]

## ARGUMENTS

## I.    GRAHAM ISN'T DUE SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS PREMISED UPON 42 U.S.C. § 1983

The Plaintiff agrees he has brought claims for violations of the Fourteenth Amendment of the United States Constitution. (Doc. 243, pp. 11 – 12). These claims are specifically directed at Graham as well as other Defendants in this

---

[6] Graham doesn't argue that her signatures were unlawfully utilized in violation of Alabama Code §§ 13A-9-1 to 13A-9-21. Therefore, Graham consented to these communications.

action. Furthermore, Defendant may deprive the Plaintiff of a liberty interest pursuant to procedural due process under the procedural component as opposed to the substantive. *Duran v. Buckner*, 157 So. 3d 956, 970 (Ala. Civ. App. 2014).

## *A. THERE ARE VIOLATIONS OF THE DUE PROCESS CLAUSE*

In opening, the Plaintiff agrees that a "it is well settled that property interests are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Ex parte Craft*, 727 So. 2d 55, 60 (Ala. 1999) (*quoting Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). However, Graham's subjective opinion has no bearing on whether the Plaintiff is a merit system employee as a matter of law.

### *i. Plaintiff's Office Established in 1896*

As seen, Alabama Code § 22-50-21 "first appeared in the Alabama Code of 1896, § 2570, and was subsequently transferred to the Code of 1907, § 876; then to the Code of 1923, § 1461; then to the Code of 1940, T. 45, § 227; and finally, to the 1975 Code." *Ex Parte Alabama Department of Mental Health,* 819 So. 2d 591, 595 (Ala. 2001). Importantly, Graham has admitted the Plaintiff's employment was pursuant to this statute. (p. 5, ¶ 14) Illustratively, the law is clear that this position continued under the specified merit system.

### *ii. Plaintiff's Office Ratified to the Merit System*

#### *1. Ratification*

The State of Alabama Merit System Act was ratified upon March 2, 1939 to ensure that all citizens of demonstrated capacity, ability, and training have an equal opportunity to compete for service. ADMIN. CODE § 670-X-1-.02; ALA. CODE § 36-26-3.[7] Graham Agrees. (p. 5, ¶ 16) All positions referenced within such State Merit System are classified in three ways: the (1) classified service, (2) unclassified service, or (3) exempt service. ADMIN. CODE § 670-X-3-.01(f); ALA. CODE § 36-26-10. Administrative Code § 580-6-35-.01 establishes the classification and pay plans for all positions in the classified service shall be upheld in accordance with the Merit System Act of 1939. This rule corresponds to Alabama Code § 36-25-11.

## 2. *Class Designations*

The ADMH has designated the positions of Police Officer as "Mental Health Security Officer" and "Mental Health Special Agent" premised upon an internal classification plan mirroring that of the State of Alabama Personnel Department. ADMIN. CODE §§ 670-X-3-.01(d)(1), 670-X-7-.04, 580-6-34-.01. The ADMH's policy makes clear, and Graham has conceded, that the Plaintiff was appointed by Alabama Code § 22-50-21. (p. 5, ¶ 14) As expressed within § 670-X-7-.04(c), said class designations are not the positions. (p. 4, ¶ 6)

---

[7] "The rules of the State Personnel Department have the force and effect of law." *Sullivan v. Teague*, 424 So. 2d 574, 577 (Ala. 1982)

Apparently, "class specifications shall be construed as a general description of the kinds of work characteristic of *positions* allocated to a class and not as prescribing what the duties of any position shall be". *Id.* (emphasis added). The overall purpose of classifications is to designate: (1) supplementary duties; (2) educational requirements; and (3) salary/pay differences. "According to Graham, '[a] classification is a job grouping that groups positions together that are performing similar duties and responsibilities, require similar minimum qualifications, they have a similar examination, and they're also paid in the same pay range.'" *Green v. Taylor et al*, 2:15-cv-697-DAB (M.D. Ala., Sept. 20, 2017). The class titles of Mental Health Security Officer are not the positions.

### 3. *Plaintiff's Position Placed Under Merit System*

As an initial matter, Plaintiff's position was placed under the Merit System Act of 1939 when the Act was ratified. (p. 5, ¶ 15); ALA. CODE § 36-26-10(d) (not mentioning police officers of the ADMH, or the ADMH in general, but expressively advising that "[t]he classified service shall include all other officers and positions in the state service.").[8]

---

[8] Under the Merit System Act of 1939, a "position" is defined as "any office or place of employment in the state service". ALA. CODE § 36-26-2(7). No argument lies that the Plaintiff's position was not an office; as Alabama Code § 22-50-21 defines the Plaintiff's duties, powers, and authority. *Wright v. Turner*, 351 So. 2d 1, 4 (1977) (*citing State v. Stone,* 240 Ala. 677, 680, 200 So. 756, 758 (1941)) ("it seems to be well settled that one who performs a public function, and his authority is derived directly from the state by legislative enactment, and the law prescribes his duties, powers, and authority, such an one is a public officer of the state");

### iii. Plaintiff's Office Re-Designated to the Merit System

Within 1965, Alabama's legislature made clarifications so that the ADMH could exclude certain positions from the Merit System Act of 1939. (p. 6, ¶ 17) The legislature specified in § 36-26-61 that "[t]he employees of the state institutions enumerated in § 36-26-60 shall be governed by personnel Merit System rules and regulations, the same as other employees in state service, as administered by the State Personnel Department." The ADMH's hospitals and state controlled mental health facilities are state institutions. ALA. CODE § 22-52-1.1. In combination with this establishment, the legislature specified what positions and offices are excluded by § 36-26-61 within § 36-26-62. However, the Plaintiff's office as a police officer wasn't mentioned or included within this exclusion.

### iv. Plaintiff's Office Continued Under the Merit System

Correspondingly, the legislature also specified which offices were destined to continue under the Merit System Act of 1939. (p. 6, ¶ 17) Pursuant to Alabama Code § 22-50-41, an ADMH statute:

> "[1] Personnel policies may be established so as to include under the State Merit System certain positions in the Department of Mental Health and so as to exclude other positions; [2] however, employees of the Alabama Department of Mental Health and positions in such department which were under a Merit System on September 30, 1965,

---

*Harrington v. State*, 76 So. 422 (Ala. 1917) (discussing what "office" potentially means in a government context). Alternate statutes discuss what an office is for the purposes of state service and employment. ALA. CODE §§ 36-26-2(1), 36-26-2(10). A "place of employment" refers to a physical location. *See, e.g.*, ALA. CODE § 36-26-18(d), § 36-26-19, and § 36-26-26(a).

or which are placed under a Merit System by law after October 29, 1965, shall continue under such Merit System unless any such position is abolished by the Alabama Department of Mental Health."

As a matter of law: (1) the Plaintiff's office was already under an applicable merit system before, and on, September 30, 1965 pursuant to the Merit System Act of 1939 (p. 5, ¶ 15; Graham's RFAs, p. 7, ¶ 16); (2) the Plaintiff's office was re-designated as a merit system position by § 36-26-61 (*Id.*); and (3) the Plaintiff's office was never abolished, evidently, since he was indisputably operating within said office pursuant to Alabama Code § 22-50-21 (p. 5, ¶ 14; Doc. 244-2, p. 12).

Apparently, clause two of this statute isn't ambiguous. *Ex parte Alabama Department of Mental Health*, 207 So. 3d 743, 751 (Ala. 2016) ("There is a presumption that every word, sentence, or provision of a statute was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.") (citations omitted); *IMED Corp. v. Systems Eng'g Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992) (holding that, in construing a statute, "where plain language is used a court is bound to interpret that language to mean exactly what it says"); *James v. McKinney,* 729 So. 2d 264, 267 (Ala. 1998) ("When interpreting a statute, we must consider it as a whole and must construe it reasonably so as to harmonize all of its provisions.").

### *v. Brief Review of Defendant's Cited Cases*

No fact specific, or context-based cases, addressing this specific issue regarding legislatively defined offices under the ADMH exist. This is essentially because only the Commissioner under § 22-50-16 and ADMH police officers under § 22-50-21 operate under public offices specifically defined by the legislature. However, the most analogous cases are reviewed subsequently. [9]

## 1. *Vaughn v. Shannon*

*Vaughn v. Shannon*, 758 F.2d 1535 (1985), a due process violation case regarding the Fourteenth Amendment, is of no application. (1) Vaughn occupied the position of "Chief [of] Evaluation of Community Programs" not an appointment as police officer (*Id.* at 1536); (2) Vaughn's employment dates backward to 1974 with no evidence his position was placed within the Merit System prior to 1965 (*Id.*) and it is apparent the Court did not discuss the second clause of § 22-50-41 because the position did not predate 1965; (3) Vaughn did not occupy a position established by Legislature (*Id.*); (4) Vaughn's position was one of which was purely established under the Commissioner's own authority without applicable guidance implemented by the Legislature *(Id.)*; (5) the Commissioner possessed such authority pursuant to Alabama Code § 22-50-41 within 1965 to

---

[9] Even in establishing the Commissioner's legislative role, the legislature refers to the Plaintiff's position as an "office". ALA. CODE § 22-50-16 ("shall exercise supervision over all the *officers* and employees of the Mental Health Department and should any such *officer* or employee fail to perform faithfully any of the duties which are lawfully prescribed for him, or if he fails or refuses to observe or conform to any rule, regulation, or policy of the Mental Health Department, the Mental Health Commissioner may remove him from *office*.") (emphasis added).

apply discretion as to whether Vaughn would be within the Merit System as opposed to where such authority did not exist regarding the Plaintiff's office within the late 1890s; and (6) Vaughn presented no evidence, or argument, that his position was indeed already placed under the Merit System Act of 1939 and should continue under such system pursuant to clause two, nonetheless, he would not be able to bring such argument because his position did not pre-date 1965.

Police Officers are indeed appointed pursuant to an applicable statute governing their authority and ADMH, nor Graham, may not abolish said office without abolishing Alabama Code § 22-50-21 correspondingly; such evidence and law cannot be controverted. ALA. CODE § 22-50-41 ("…unless any such position is abolished by the Alabama Department of Mental Health.").

### vi. *Proper Case Law to Apply*

#### 1. *Wyatt v. Bronner*

Having reviewed *Vaughn*, it is only suiting that the Plaintiff review *Wyatt v. Bronner*, 500 F. Supp. 817 (M.D. Ala. 1980). Like the Alabama Building Commission within *Wyatt*, Graham, as the foundation of her defense, relies upon the ideal that police officers pursuant to Alabama Code § 22-50-21 "are those state employees outside the requirements of the state merit system relative to hiring and outside its protections regarding termination of employment." *Id.* at 818.

Case 7:19-cv-00668-LSC Document 244-3 Filed 02/02/21 Page 16 of 47

Apparently, the "employees of the Commission in the positions of [the

Plaintiffs had] been regarded as unclassified employees since at least 1945." *Id.* at

819; (Doc. 244-1, p. 3, ¶ 4). ADMH police officers have been in a similar state.

And most apparent regarding the similar discrepancies with police officers

appropriately under the Graham's classification system, "they were never given the

examination which is required of all merit system employees. They were not

placed on a list of eligibles as the result of any examination, and consequently,

they have never been certified for appointment from an eligible list." *Id.* at 819.

Premised upon *Wyatt*, the Alabama Building Commission too had the same

authority as the ADMH Commissioner to "fix by contract the fees or compensation

of all architectural and technical employees without regard to the Merit System

Act". *Id.* at 819; ALA. CODE § 22-50-40 (defining the Commissioner's authority

to set salaries of employees in disregard for Alabama Code § 36-6-5). The Plaintiff

presents that "irrespective of how [he, as an ADMH police officer, has] been

designated or treated in the past the only treatment which [he] can be accorded

consistent with the Alabama Merit System Act is as [a] classified employee[]." *Id.*

at 810. Graham's arguments have no merit.

### *vii. Promotion Selections*

Graham argues that she has no involvement in "ADMH disciplinary or

hiring/promotion decisions." (Doc. 243, p. 16) However, the Plaintiff's proper

placement within the State Merit System renders a different result. (pp. 7 – 8, ¶¶ 23

– 27, 29) Graham oversees the functions of personnel selection procedures,

although, she neglected and disregarded them in reference to the Plaintiff.[10]

Apparently, the Plaintiff has pointed this Court to a protected property

interest in promotion selections. *Grant v. Bullock County Bd. Of Educ.*, 895 F.

Supp. 1494, 1505 (M.D. Ala. 1995) (finding no procedural due process right in

promotion of a public employee *where there is no statute or rule* to support a claim

of entitlement to the promotion) (emphasis added); *cf. International Ass'n of*

*Firefighters*, *Local 2069 v. City of Sylacauga*, 436 F. Supp. 482 (N.D. Ala. 1977)

(acknowledging a property interest in a procedure which was established by

statutory entitlement). If the Plaintiff has been deprived of classified service

employee regulations, he has been deprived of the established property interests

specified in Alabama Code § 36-26-15, Alabama Code § 36-26-17, Alabama Code

§ 36-26-23, and Alabama Administrative Code § 670-X-9.

## B. SECTION 1983 PROVIDES A REMEDY FOR VIOLATIONS OF FEDERALLY CREATED RIGHTS

Graham argues that the "Plaintiff cannot use § 1983 to seek any remedy for

alleged violations of federal law if he cannot articulate the violation of his federal

---

[10] Alabama Administrative Code § 670-X-6-.05, having the force and effect of law, states that it is Graham's duty to "hold examinations, evaluate the qualifications of applicants, and to establish registers as needed, and to certify names of eligibles to appointing authorities for filling vacancies in the classified service."

right." (Doc. 243, p. 17) However, the Plaintiff, *supra*, has articulated that the was a State Merit System employee therefore a deprivation of procedural due process exists. Graham's additional arguments, as expected, hinge upon this determination.

Apparently, Graham argues that she cannot be compelled to perform ministerial acts (Doc. 244-1, p. 4, ¶ 6), however, it is her duty to maintain such personnel records. ADMIN. CODE § 670-X-17-.01 ("The *Director shall maintain* a service file for each employee in the state service showing his name, title of the class of position held, salary rate, date of employment, personal history data, unit within the department to which assigned, changes in employment status, and such other information as he may consider pertinent.") (emphasis added). Graham also oversees the inspection of these records. ALA. CODE § 36-26-44.

Having control of these records, "the Eleventh Amendment bars suits against state officials [in their official capacity] in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). These requests are not barred. *See, e.g., Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986) ("[t]he injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment."); *Buckner v. Williamson*, 3:06-CV-79 (CDL), 2008 WL 2415265, at *8 (M.D. Ga.,

June 12, 2008) (expungement relief granted upon *Ex parte Young*); *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (Eleventh Amendment does not bar expunging records). Upon a procedural due process violation, the removal of these documents isn't simply upon them being "unflattering". (Doc. 243, p. 19)

## II. ELEVENTH AMENDMENT IMMUNITY DOES NOT BAR SUIT AGAINST DEFENDANT GRAHAM

### A. CLAIMS AGAINST DEFENDANT GRAHAM ARE NOT CLAIMS AGAINST THE STATE OF ALABAMA

Pursuant to the *Ex Parte Young* exception to the Eleventh Amendment's provision of sovereign immunity to state entities, and their state agents, the Plaintiff may sue state officials in their official capacities "seeking prospective equitable relief to end continuing violations of federal law." *Summit*, 180 F.3d at 1336 (emphasis omitted). The Eleventh Amendment doesn't "prohibit suits seeking only prospective injunctive or declaratory relief." *Id.* "Nor does the Eleventh Amendment preclude a damages award against [ADMH officials] in their individual capacities pursuant to section 1983." *Cross v. Alabama Department of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995) (citations omitted). The Plaintiff has shown this exception should apply; as it is "well-settled principle that the nature and scope of the remedy are to be determined by the violation, which means simply that federal-court decrees must directly address and relate to the constitutional violation itself." *Milliken v. Bradley*, 433

U.S. 267, 282 (1977) (citations omitted); *Lane v. Cent. Alabama Community Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014).

## *B. BECAUSE OF THE NATURE OF THE RELIEF SOUGHT, THE EX PARTE YOUNG EXCEPTION TO ELEVENTH AMENDMENT IMMUNITY DOES APPLY TO PLAINTIFF'S CLAIMS*

Graham argues that the Plaintiff has brought a claim for monetary damages in Graham's official capacity. (Doc. 243, p. 22) The Third Amended & Verified Complaint reveals a request for "legal damages, including compensatory and/or punitive damages provided by law, in addition to costs and expenses within the individual capacity of the Defendants." (Doc. 145, p. 101, ¶ 518) Although relief is allegedly encompassed within the Prayer for Relief, it is appropriately considered in combination with the allegations of the causes of action. (Doc. 145, p. 173) The Plaintiff would concede to any requests for monetary damages, in Graham's official capacity, as being barred by the Eleventh Amendment regarding § 1983 claims, if they were present.

### *i. Plaintiff's Requested Relief is Prospective*

Graham further argues that the Eleventh Amendment bars the litigation of past conduct. (Doc. 243, p. 23) Graham also states that the Plaintiff "also, as previously discussed, seeks injunctive relief compelling Defendant Graham to comply with the aforementioned inapplicable rule and also to remove certain documentation from his personnel file." (Doc. 243, p. 24) The Plaintiff concedes

that compelling the Defendant to comply with state law and state personnel rules are barred by the Eleventh Amendment, however, the Plaintiff's requested relief of *prospective* compliance with federal law affording procedural due process and for expungement aren't barred by the Eleventh Amendment. *See, e.g., Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (finding that requests for expungement of "F" grade and plagiarism conviction constitute a continuing injury to Plaintiff and relate to an ongoing violation of federal law); *Coakley v. Welch*, 877 F.2d 304, 307, n.2 (4th Cir. 1989) (holding that termination of Plaintiff's employment was state conduct that, "while no longer giving him daily attention, continues to harm him by preventing him from obtaining the benefits of [state] employment"); *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (affirming district court's decision to award prospective relief against Defendants in form of expungement of disciplinary records); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (finding negative entries in a student's university records stemming from an allegedly unconstitutional action presented a continuing violation sufficient to trigger the *Ex Parte Young* exception); *Painter v. Adams*, 2017 WL 4678231, at *3–5 (W.D. N.C. Oct. 17, 2017). *Hinds*, 786 F.2d 298 at 302; *Williamson*, 3:06-CV-79 (CDL), 2008 WL 2415265, at *8 (M.D. Ga. June 12, 2008); *Tigrett v. Rector & Visitors of Univ. of Va.*, 97 F. Supp. 2d 752, 756–57 (4th Cir. 2000); *Dwyer v. Regan*, 777 F.2d 825, 836 (2nd Cir. 1985); *Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016).

## ii. *Proper Hearings*

Finally, authority lies for Graham to be compelled to refer the Plaintiff's concerns for a proper hearing before the State Personnel Board. *Brown v. Georgia Dept. of Revenue*, 881 F. 2d 1018, 1024 (11th Cir. 1989) ("Under *Pennhurst*, however, the determinative question is not the relief ordered, but whether the relief was ordered pursuant to state or federal law. Despite the confusing procedural history of this case, it is clear that the district court ordered the hearing under federal law."). Graham has not escaped the authority of the Court.

## *C. THE EX PARTE YOUNG EXCEPTION CAN APPLY TO CLAIMS AGAINST DEFENDANT GRAHAM BECAUSE SHE HAS THE ABILITY TO GRANT AN EFFECTIVE REMEDY*

Graham argues that "Alabama law places the authority for the final determination as to the inclusion and exclusion of ADMH positions into the Merit System squarely with ADMH". (Doc. 243, p. 25) However, the ADMH did not, and never has, held this authority at the time of its exclusion of the Plaintiff. ALA. CODE § 22-50-41. Disregarding legislative enactments is forbidden within the state of Alabama. *See, supra, Ex parte Alabama Department of Mental Health*, 207 So. 3d at 751; *IMED Corp.*, 602 So. 2d at 346; *McKinney,* 729 So. 2d at 267. Nonetheless, Graham maintains absolute authority to grant the requested relief of proper inclusion in the State Merit System and expungement of documents under her control.

### *i. Graham's Duties*

Alabama Code § 36-26-8 specifically advises that "it shall be the duty of"
Graham to: (1) "[p]repare and recommend rules and regulations for the
administration of this article"; (2) "recommend and, on its adoption, establish,
administer, and execute a classification plan for the state service"; (3) "[c]onduct
tests, formulate employment registers, and certify persons qualified for
appointment, devise and administer employee service ratings and develop
employee welfare and training programs"; and (4) "[m]ake investigations
concerning the administration and effect of this article and the rules made
thereunder and report the findings and recommendations to the board." (pp. 8 – 9,
¶¶ 28 – 29, 34) Despite these legislative enactments, setting forth her duty to
establish and administer a proper classification plan pertaining to Alabama Code §
36-26-11, the Defendant argues that she does have authority to properly classify a
classified service employee such as the Plaintiff. These arguments are without
merit.

Importantly, Graham has conceded that she maintains "unflattering" records
regarding the Plaintiff. (Doc. 244-1, p. 4, ¶ 6; Doc. 243, p. 19; Doc. 244-2)
Apparently, Administrative Code § 670-X-17-.01 places the control of the
Plaintiff's service file, as she has proffered as an evidentiary submission (*Id.*),
under her control. ADMIN. CODE § 670-X-17-.01 ("The *Director shall maintain*

a service file for each employee in the state service") (emphasis added). The

Plaintiff's service file is his public personnel file maintained by the Alabama

Personnel Department. (Doc. 244-1, pp. 3 – 4, ¶¶ 5 – 6) As a matter of law, this

rule has the force and effect of law which cannot be whimsically disregarded by

Graham, particularly, when she can prepare and recommend these rules herself.

*Sullivan v. Teague*, 424 So. 2d 574, 577 (Ala. 1982). Graham isn't due summary

judgment on these matters.

## *D. QUALIFIED IMMUNITY DOES NOT PROTECT DEFENDANT GRAHAM FROM PLAINTIFF'S CLAIMS AGAINST HER IN HER INDIVIDUAL CAPACITY PURSUANT TO § 1983 FOR CONSTITUTIONAL VIOLATIONS*

In her opening remarks, Graham states that "[i]t is unclear whether Plaintiff

seeks relief against Defendant Graham in her individual capacity on his § 1983

claims". (Doc. 243, p. 26) However, the Plaintiff hasn't excluded Graham within

the Third Amended & Verified Complaint from "legal damages, including

compensatory and/or punitive damages provided by law" within her individual

capacity. (Doc. 145, pp. 101, 129, ¶¶ 518, 662) Graham isn't entitled to qualified

immunity on several grounds as expressed subsequently.

### *i.  Graham Was Outside Her Discretionary Authority*

As an initial matter, Graham "must first prove that [she] was acting within

the scope of his discretionary authority when the allegedly wrongful acts

occurred." (Doc. 243, p. 27) Graham cannot prove that she had discretionary

authority to disregard the Plaintiff's communications because her investigation was required to be reported to the State Personnel Board of which she was not a member. (p. 8, ¶ 28) In effort to avoid liability, Graham asserts that she didn't conduct an investigation, however, she disregards the general definition of an investigation. (p. 9, ¶¶ 34 – 35) As a matter of law, investigation is a "[a] term that means to examine and to look at carefully, discover the factor, make a legal inquiry". BLACK'S LAW DICT. This is exactly what Graham did. (*Id.*) At least, there is a genuine dispute of material fact.

As a matter of law, Graham was not acting within her discretionary authority. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11ᵗʰ Cir. 2004) (the first prong of the qualified immunity analysis requires that Graham be "performing a function that, but for the alleged unconstitutional infirmity, would have fallen within [her] *legitimate* job description") (emphasis added). If Graham was acting for a proper purpose, it would not be within her authority to stifle the Plaintiff's access to the State Personnel Board regarding the investigation she made because her authority required a dissemination to the State Personnel Board (*Id.*) and for her to appropriately classify the Plaintiff (p. 8, ¶ 29). She maintained no duty to decide for herself upon her willful disregard and misapplication, however, the contrary was within her job description according to legislative enactment.

Furthermore, Graham is aware that her violations are prohibited according to

her job description. ALA. CODE § 36-26-39 ("No person shall make any false

statement, certificate, mark, rating or report with regard to any test, certification or

appointment made under any provision of this chapter or in any manner commit or

attempt to commit any fraud preventing the impartial execution of this chapter and

the rules").[11] Graham's job description encompasses "any other act required under

this article or required by the board which may be necessary to effect its purposes

and spirit" to include a job description to "administer and enforce the provisions of

the Act and of these rules". ALA. CODE § 36-26-8(13); ADMIN. CODE § 670-X-

6-.03(3). This also encompassed her job description to "allocate each classified

position to its appropriate job class in the classification structure". ALA. CODE §

670-X-6-.04(1). Graham testifies that she is familiar with these laws. (Doc. 244-1,

p. 2, ¶ 2)

As established, Graham was not within her discretionary authority to decline

the Plaintiff's access to these procedures which rendered a criminal violation; her

job description required that following the applicable rules and not commit a

misdemeanor violation. Graham has conceded that, if the Plaintiff is truly a merit

system employee, she has committed a criminal violation premised upon her

___

[11] Alabama Code § 36-26-47 also specifies that "[a] willful violation of any provision of this article shall be deemed a misdemeanor. Any person who is convicted of a misdemeanor under this article shall, for a period of five years, be ineligible for appointment to or employment in a position in the state service and, if he is an officer or employee of the state, shall forfeit his office or position." Accordingly, if the Plaintiff is correct, Graham is due to forfeit her office.

familiarity with these rules. (pp. 5 – 9, ¶¶ 13 – 36) A Defendant has no discretionary authority to commit criminal violations as proscribed by a legislative and administrative job description having the full force and effect of law.

### *ii. Even if Discretionary Authority Existed, Immunity is Precluded*

For sake of defending against Graham's arguments, if Graham was acting within her discretionary authority, "[q]ualified immunity protects all but the plainly incompetent or those who knowingly violate federal law; it does not extend to one who knew or *reasonably should have known* that his or her actions would violate the Plaintiff's federal rights." *Gaines v. Wardynski*, 871 F.3d 1203, 1207 (11th Cir. 2017) (citations omitted). The question turns upon whether Graham should have reasonably known whether declining the Plaintiff's access to procedural due process under the Merit System Act of 1939 would violate his Fourteenth Amendment rights.

As clearly established, "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) (citation omitted). The purpose of the Merit System Act of 1939, corresponding with the Fourteenth Amendment, is to protect the Plaintiff from "from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Graham has conceded to this correlation. (p. 5, ¶ 16) Having established and elaborate procedures, all

having the force and effect of law, these circumstances are not wooden absolutes to be judged by Graham. *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir. 1970) ("the standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved.").

Graham argues that the "Plaintiff cannot point to any action by Defendant Graham that amounts to a violation of a constitutional right... Plaintiff fails to create any actionable constitutional claims against Defendant Graham as a matter of law." (Doc. 243, p. 29) However, the Plaintiff has shown that Graham has "refuse[d] to provide a process sufficient to remedy the procedural deprivation[s]" and he wasn't provided with the applicable procedures or a hearing if determined to be required. *Cotton v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir. 2000). Law establishes that this procedural due process violation was complete. *Johnston v. Borders*, 17-10642 (11th Cir. 2018). The Plaintiff received absolutely no notifications.[12] (Doc. 244-1, p. 5, ¶ 8)

The Plaintiff agrees that "ADMH differs from other executive branch state entities" (Doc. 143, p. 29), however, this legislative authority has been

---

[12] Even Defendant Beshear, the ultimate authority of the ADMH as Commissioner, declined the Plaintiff's further due process. (Pl. Ex. 124) This was apparently under her authority pursuant to Alabama Code § 22-50-11(15) ("It is authorized and directed to provide hearings for anyone claiming to be damaged by decisions of its employees or agents, and it may delegate the holdings of such hearings to administrative hearing officers."). However, Beshear isn't upon review in this matter.

expressively limited. ALA. CODE § 22-50-41 ("however, employees of the
[ADMH] and positions in such department which were under a Merit System on
September 30, 1965, or which are placed under a Merit System by law after
October 29, 1965, shall continue under such Merit System..."); *Wyatt*, 500 F.
Supp. 817 at 822 ("this Court has found them to be classified employees and hence
entitled to such a hearing").

### *iii. Clearly Established Law*

#### *1. Barnhart v. Ingalls (2018)*

In *Barnhart v. Ingalls*, 275 So. 3d 1112 (2018), "current and former officers
of the Alabama Space Science Exhibit Commission" petitioned the Supreme Court
of Alabama. *Id.* at 1116. The Commissioner was "required by law to maintain
records of its revenue and expenditures and to periodically make those records
available for audit by the Department of Examiners of Public Accounts". *Id.* An
agency "concluded that the Commission had not been complying with § 36-6-11(a)
inasmuch as it had not increased the annual longevity bonuses paid to Commission
employees". *Id.* at 1117. Defendants argued their contentions:

"Commission notified DEPA that they disagreed with the finding that
the Commission had not complied with § 36-6-11(a) and § 1-3-8
(hereinafter referred to collectively as 'the benefits statutes') because,
they argued, the legislation pursuant to which the Commission was
created, § 41-9-430 et seq., Ala. Code 1975, *removed* the Commission
from the *purview of certain state employment laws*".

*Id.* at 1118 (emphasis added). Graham has proffered no argument regarding clause

two of Alabama Code § 22-50-41 and has arguably conceded that the Plaintiff is a
State Merit System employee. (pp. 5 – 9, ¶¶ 13 – 36) The Alabama Supreme Court
in *Barnhart* specifically advised that "if the [state] statutes obligated the
Commission officers to pay the named plaintiffs compensation they were not paid,
the Commission officers had *no discretion* to avoid that requirement; obedience to
the statute is mandatory." *Id.* at 1125. Graham's "simple reading" of this case
offers no support but other than showing she isn't entitled to qualified immunity;
as she had "no discretion[ary]" authority according to her own cited case. (Doc.
243, p. 30)

As expressed by the Court, "[a]ny confusion the Commission officers might
have had regarding the interpretation of the benefit statutes, however reasonable, is
ultimately immaterial because that confusion cannot serve as the basis for avoiding
a statutory requirement." *Id.* Conclusively, "[d]ue to the specific language in the
Code of Alabama regarding ADMH employees" as cited within Alabama Code §
22-50-41 (Clause Two), the Plaintiff has overcome this allegedly "similar barrier".
(Doc. 243, p. 31) Graham's argument fails as a matter of law.

## 2. *Green v. Graham (2017)*

Apparently, Graham has been previously sued for similar conditions. In
*Green v. Graham*, 906 F.3d 955 (2018), the Plaintiffs were "employees of the
Alabama Law Enforcement Agency". *Id.* at 959. The Plaintiff alleged that were

Case 7:19-cv-00669-LSC Document 43-3 Filed 02/02/21 Page 32 of 47

"entitled to participate in the state-policeman plan based on the statutory definition". *Id.* at 959. "They asserted a federal equal-protection claim for declaratory and injunctive relief, 42 U.S.C. § 1983, and a parallel state-law claim." *Id.* In the lower court, "[t]he district court denied Graham and Taylor's motion for summary judgment. It concluded that plaintiffs' claims fall within the *Ex parte Young* exception to state sovereign immunity for prospective relief to redress ongoing violations of constitutional rights." *Id.* at 959.

The District Court went upon an illustrative review of the State Personnel Department's classification system regarding the Plaintiff's classifications. *Green v. Hall Taylor et al*, 2:15-cv-697-DAB at * 3 – 5 (M.D. Ala., September 20, 2017). There, Plaintiffs argued that "they have a recognized property interest by virtue of their employment, and that interest is in state policeman retirement benefits." *Id.* at *13. Apparently, "a procedural due process claim, the constitutional violation becomes actionable when the State fails to provide due process." *Id.* at *14 (*citing Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). The Plaintiffs contended that "the *State Personnel Board* directed Plaintiffs be excluded from state policeman retirement." *Id.* at *15 (emphasis added). Graham, premised upon this case, was aware of a requirement that her discretionary authority required the State Personnel Board to make the decision. (p. 8, ¶ 28) The District Court opined that "[t]he evidence above, coupled with the fact Defendants have not identified legal

Case 7:19-cv-00666-LSC Document 243-3 Filed 02/22/21 Page 33 of 47

authority to classify Plaintiffs otherwise, suggests Plaintiffs have been

misclassified as a matter of state law, arguably implicating substantive due process

and equal protection concerns as matters of federal law." *Id.* at *16. The same is

due in this Plaintiff's case.

### 3. *Blount County Commission v. Sherrell (2010)*

Apparently, it is common for Graham to assert the defense that Plaintiff law

enforcement officers are not merit system employees contributing to inference of

an intent against the latter. In *Blount County Commission v. Sherrell*, 77 So. 3d

1196 (Ala. 2010), the following argument was made:

> "(1) Sherrell was exempt from the merit system; (2) on its face, § 36-
> 26-36, which allows employees governed by the merit system to collect
> partial payment for their unused sick leave, did not apply to Sherrell;
> and (3) even if Sherrell were subject to the merit system, the State of
> Alabama was obligated to pay Sherrell for his unused sick leave, not
> Blount County."

*Id.* at 1198. There "Graham likewise stated that Sherrell was not subject to the

merit system. She said that pursuant to a 'long-established policy,' deputy sheriffs

were considered exempt from the state merit system." *Id.* In this Plaintiff's case, he

wasn't the alter ego of a Sheriff but had specifically defined legislative authority.

Similar to this case, "it is true that § 36-26-10 does not explicitly state that

[Plaintiffs' offices] are exempt from the merit system, [the Court's] inquiry

requires [it] to go beyond a simple reading of the statute." *Id.* at 1200. Apparently,

Graham relies upon an attorney general opinion in her defense in this case as

Case 7:19-cv-00669-LSC Document 243-3 Filed 02/22/21 Page 34 of 47

expressed, *supra*. Opinions thereof are not binding authority. *Id.* at n.2 ("state attorney general [are] not binding precedent, we note that the attorney general also has concluded that deputy sheriffs are exempt from the state merit system.").

### 4. *Brown v. Georgia Department of Revenue (1989)*

In *Brown v. Georgia Department of Revenue*, 881 F. 2d 1018 (11th Cir. 1989) as cited, *supra*, Lafayette Brown was "was a classified employee covered by the Georgia Merit Systems Act". *Id.* at 1020. The Act is similar in respects to the Alabama Merit System Act of 1939. Brown "received a letter [] he was deemed to have abandoned his job []. The letter did not indicate whether Mr. Brown had any right to review of the decision." *Id.* at 1020. However, the Plaintiff in this case received absolutely nothing. (p. 6, ¶ 21) Apparently, Brown "received a letter stating that he had no right to an appeal." *Id.*

Brown, according to this case, alleged violations of his Fourteenth Amendment rights similar to the Plaintiff in this case. *Id.* at 1021. The Plaintiff has already incorporated the *Pennhurst* concern, *supra*. (p. 23) The Eleventh Circuit, in this case, began its review of procedural due process by determining whether "the Personnel Board informing Mr. Brown that he had no right to a hearing violated procedural due process." *Id.* at 1024. The Court determined that Brown was "a permanent employee governed by the Georgia Merit Systems Act" and looked to Merit System Act laws to determine whether Brown had a property interest. *Id.*

Similar to this case, "the purpose of the Act was to establish a career service in government and personnel administration based on merit." (p. 5, ¶ 16) This similar Merit System Act also specified a "systematic classification of positions based on merit". *Id.* at 1025; (p. 5, ¶ 15). Graham cannot argue this isn't fair notice that the Merit System Act of 1939 didn't provide the Plaintiff, truly a classified service employee, a right to procedural due process. (*Id.*) The Eleventh Circuit concluded that "since the Merit System Act… and the Personnel Board regulations" required particular acts, the Plaintiff had a property interest. *Id.*

The Alabama Merit System Act of 1939 "makes clear that a public employee governed by the Merit Systems Act and the State Board Personnel Rules has a property interest in his job entitling him to the protections of due process." *Id.* at 1028. Just as Brown "never received any notice of his right to review. Indeed, the Plaintiff's uncontradicted testimony established that [Graham] led him to believe he had no appeal rights" by not responding. *Id.* (p. 6, ¶ 21) Graham was on sufficient notice.

## III. DEFENDANT GRAHAM DID NEGLECT TO PREVENT ANY WRONGS UNDER 42 U.S.C. § 1986

As cited by Graham, "Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or

refuses so to do.'" *Park v. City of Atlanta*, 120 F.3d 1157, 1159 (11th Cir. 1997).

Graham begins her review by defending alternate Defendants. (Doc. 243, p. 32) ("the only defendants whom the Plaintiff charges with engaging in a conspiracy are employees of ADMH. Thus, the intra-corporate doctrine applies and the § 1985 conspiracy claim fails."). These arguments are due no consideration; however, the Plaintiff has properly pleaded an exception to the intracorporate conspiracy doctrine.

## *A. INTRACORPORATE CONSPIRACY DOCTRINE IS INAPPLICABLE*

The "intracorporate conspiracy doctrine does not apply to alleged intracorporate criminal conspiracies" regarding 42 U.S.C. § 1985. *McAndrew v. J.A. Blackwell, Jr., T.A. Graham, et al.*, 206 F.3d 1031, 1035–36 (2000). The Plaintiff has also properly pleaded these actions were for personal purposes, outside the regulations of the ADMH. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (applying the intracorporate conspiracy doctrine to plaintiffs' § 1985(3) claims alleging defendant supervisors conspired to deprive plaintiffs of their First Amendment and equal protection rights but finding the claims fell within an exception to the doctrine which arises when corporate employees act for their own personal purposes). "[With] a conspiracy, there is [a] claim under § 1986". (Doc. 243, p. 32) Graham's argument fails.

## *B. THERE IS SUFFICIENT EVIDENCE THAT GRAHAM HAD KNOWLEDGE*

Graham contends, upon false assertations, that "there is no evidence before this Court that Defendant Graham had any knowledge, personal or constructive, of any of the alleged wrongs Plaintiff claims he has suffered." (Doc. 243, p. 33) However, she has introduced evidence presenting the Plaintiff's reports. (Doc. 244-3, pp. 2 – 6, 9 – 16) Graham further argues that the Plaintiff's proffered complaints were "devoid of information that would place Defendant Graham on notice of a § 1985 conspiracy among the ADMH defendants." (Doc. 243, p. 33) This argument is whimsical at best.

According to the undisputed evidence, the Plaintiff reported in one instance: (1) the applicable merit system law (Doc. 244-3, pp. 2 – 3); (2) "Baugher and Jackson have failed to acknowledge inappropriate and unlawful procedures implemented in the facility's administration of performance appraisals and disciplinary action" (Doc. 244-3, p. 3); (3) "Facility Director Annie Jackson and Associate Commissioner Baugher placed Jeremy Booth within an Interim role as Director of Police Services... Booth has attempted to impose disciplinary action" (*Id.*); (4) that Defendants had formerly engaged in unlawful selection procedures (*Id.*); (5) "Long allowed Jackson to complete a performance appraisal" with false information and Jackson and Baugher "refused to correct falsified information" (Doc. 244-3, p. 4); (6) Hubbard disregarded a "hostile work environment" of Defendant Anderson (*Id.*); (7) "unwillingness to correct unlawful behavior" (*Id.*);

and (8) "violation of records keeping procedures as outlined in the Merit System Act" (*Id.*). The Plaintiff even attached personnel records. (Doc. 244-3, p. 7)

In separate occurrence, the Plaintiff reported: (1) that department deprived him of rights through active discrimination and retaliation for EEOC activity (Doc. 243, pp. 9, 15); (2) Defendants were illegally controlling an ACJIC/LETS record system (Doc. 243-3, p. 10); (3) Defendants' disregard of investigations of sexual abuse of a patient (Doc. 244-3, p. 12); and (4) even collective "due process" violations at "Taylor Hardin Secure Medical Facility" (Doc. 244-3, p. 16).

Apparently, Graham is aware that violations of the State Merit System are illegal activity. (Doc. 244-1, p. 2, ¶ 2) The law already placed her on notice that the criminal conspiracy exception to the intracorporate conspiracy doctrine, *supra*, existed regardless of whether these actions were between multiple ADMH employees; state law violations are no bar. *Newsome v. Lee County, Ala.*, 431 F. Supp. 2d 1189, 1205 (M.D. Ala. 2006).[13] As Graham has admitted to receiving and reviewing documents received directly to her email by the Plaintiff (p. 6, ¶¶ 21 –

---

[13] Exclaiming that "it should make little difference that the illegal actions violated state rather than federal law… Newsome has relied only on state law to substantiate the criminal conspiracy exception, the Court does note that the Defendants' purported actions may also have violated federal law. Under 18 U.S.C. § 242, it is a crime to 'under color of any law . . . willfully subject any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States.' In addition, 18 U.S.C. § 241 criminalizes conspiracies that intentionally deprive one of these same rights." These violations are "statutorily protected non-merit factor[s]". ADMIN. CODE § 670-X-4-.01. Graham has conceded that the Plaintiff did report First Amendment violations between several Defendants in this action. (p. 7, ¶ 26)

Case 7:19-cv-00066-LSC Document 246-3 Filed 02/22/21 Page 39 of 47

22), "it was []possible for Defendant Graham to have any knowledge, or to be aware, of any alleged § 1985 conspiracy". (Doc. 243, p. 34) For these reasons, Graham is not entitled to summary judgment on the Plaintiff's § 1986 claim.

## IV. PLAINTIFF'S CLAIMS OF NEGLIGENCE OR WANTONNESS DO NOT FAIL

Graham opens by conceding to certain affirmative duties established for her employment. (Doc. 243, p. 35) Graham further asserts that "there is no language in either § 36-26-8 or ALA. ADMIN. CODE r. 670-X-4-.03 compelling Defendant Graham to 'acknowledge as well as oversee' an appeal brought under this section, much less an 'appeal' from a person not subject to the SPB Rules codified in the Alabama Administrative Code." (*Id.*) The Plaintiff has already clarified his appropriate appointment pursuant to the State Merit System, *supra*. Furthermore, Graham asserts she had no responsibility to acknowledge as well as oversee a 670-X-4-.03 appeal. This assertation is also without merit.

### A. GRAHAM MAINTAINS NUMEROUS DUTIES TO THE PLAINTIFF

Graham has already conceded that an appeal pursuant to this statute follows procedures under Alabama Administrative Code § 670-X-5-.08.[14] Apparently, Graham ignores that Alabama Administrative Code § 670-X-5-.07 has the full force and effect of law as expressed earlier in this response. This portion of the

---

[14] This portion of the Alabama Administrative Code sets forth detailed rules for applying an appeal hearing as upon a checklist; precluding state-agent immunity as expressed subsequently.

code specifies that "[i]f an officer, employee or citizen feels that any of these rules are working or apt to work a hardship upon him… then the person may request a hearing upon the matter and then appear before the Board at its regular meeting. This written request will be *made to the Director*." (*Id.* at ¶ 1) (emphasis added). This is exactly what the Plaintiff did and was declined a review, response, or consideration by Graham. (p. 6, ¶ 21) Furthermore, under this provision, "[t]he hearing shall be before a special agent [] *appointed for the purpose by the Director*." (*Id.* at ¶ 2) (emphasis added). It further specifies that the "Director shall have the authority to assign any or all appeals for hearing before the Board". (*Id.* at ¶ 5) As a matter of law, the Plaintiff could only obtain such a hearing through Graham whose duty it was to "direct and supervise all its administrative and technical activities" of the State Personnel Department. ALA. CODE § 36-26-8(a).[15]

Immunity only attaches to "conduct involving the 'formulation of plans or policies,' and to conduct involving the discharge of governmental duties imposed 'by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent *performs the duties in that manner.*'" *Howard,* 887 So. 2d 201, 204–05 (Ala. 2004) (citations omitted); *Ex*

---

[15] This statute also specifies that it is Graham's affirmative duty to "[p]erform any other act required under this article or required by the board which may be necessary to effect its purposes and spirit." ALA. CODE § 36-26-8(13).

*parte City of Selma*, 249 So. 3d 494, 498 (Ala. 2017) ("One of the ways in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed 'to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'").

The terms of the State Merit System Act "are sufficiently detailed under Alabama law to create a genuine issue of material fact". *Hill v. Cundiff*, 797 F. 3d 948, 983 (11th Cir. 2015). Graham isn't due summary judgment.

## B. *INDIVIDUAL CAPACITY CLAIMS AGAINST DEFENDANT GRAHAM FOR NEGLIGENCE AND WANTONNESS ARE IMPROPER*

Graham further argues a concern of improper capacity allegations within the Plaintiff's Third Amended & Verified Complaint. (Doc. 243, p. 36) These concerns are of first impression for the Plaintiff, however, as *Pro Se* Plaintiff, the Plaintiff's complaint is due to be construed liberally as a matter of law. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

In *Anthony v. Datcher*, No. 1190164 (Ala. 2020) as cited by Graham, the Defendants argued "that, even if the instructor plaintiffs are properly included in Group B, the trial court erred in awarding the instructor plaintiffs retrospective relief, *i.e.*, backpay, for the period following Anthony's reclassification of the them, during which they were classified as Group A." *Id.* Apparently, "[t]he Court in *Barnhart* then concluded that the Commission officers were not entitled to State immunity. In doing so, this Court determined that, if the benefits statutes required

the former employees to be paid the compensation that they had not been paid, the Commission officers simply had to follow that requirement". *Id.* This case, as cited by Graham, specifies that she is due to pay monetary damages in her official capacity. *Id.* ("If he was acting within his discretion in doing so, the college defendants would be entitled to State immunity regarding the claims for backpay... Because the college defendants lacked discretion to classify the instructor plaintiffs as Group A, the claims for backpay against them in their official capacities are not barred by the doctrine of State immunity."). The Court should, if appropriate, render the Plaintiff's claims not barred by state-agent immunity and apply them to Graham's official capacity, if capacity is of concern.

## C. DEFENDANT GRAHAM ISN'T IMMUNE FROM LIABILITY FOR VIOLATIONS OF ALABAMA LAW IN HER INDIVIDUAL CAPACITY

Graham acknowledges that she isn't immune in her individual capacity when she acts "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.... [,] acts beyond authority and is therefore not immune when [] she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist." (Doc. 243, p. 40) Obviously, this is exactly what the Plaintiff has shown, *supra*.

It is clearly, genuinely, disputed that Graham was engaged in willful conduct not protected by *Cranman* immunity. (Doc. 243, p. 40) The gist of her actions against the Plaintiff presents ample evidence that she acted "willfully",

"fraudulently, in bad faith", "beyond her authority", and under mistaken

interpretations of law. *Ex Parte Wilcox County Board of Education*, 279 So. 3d

1135, 1141 (Ala. 2018). Graham conveniently omitted the mistaken interpretation

of law exception. (*Id.*) The Plaintiff need not rely upon Graham's "wanton

behavior" with her willful, fraudulent, bad faith, and mistaken interpretation of law

behavior. (Doc. 243, p. 41) Graham's conduct was also illegal.

Graham argues that "[t]he evidence clearly demonstrates that Defendant

Graham was simply following clearly established state law." (Doc. 243, p. 41)

However, she cited to absolutely no evidence to support this assertation. Graham

further argues that "the record shows that [she] was not aware of any provision of

state law, policy, or other legal authority indicating that Plaintiff's position would

be anything but in the ADMH exempt service." (Doc. 243, p. 41) A genuine

dispute of material facts exists; it is undisputed that the Plaintiff presented Graham

with the applicable law when he submitted communications to her. (Doc. 244-3, p.

2 – 3) She urges that the Plaintiff cannot "demonstrate that she acted willfully,

maliciously, fraudulently, in bad faith, or beyond her authority", however, the

Plaintiff has done so, *supra*. This precludes entry of summary judgment.

## *D. DEFENDANT GRAHAM DID OWE THE PLAINTIFF A DUTY TO RESPOND AND TO INVESTIGATE*

Graham argues that these claims can be "quickly dispensed", however, the

Plaintiff has shown that he is indeed a State Merit System employee, *supra*. (Doc.

Case 7:19-cv-00665-LSC Document 246-3 Filed 02/22/21 Page 34 of 47

243, p. 42) Graham has proffered no fact specific case regarding the Plaintiff's legislatively defined office pursuant to Alabama Code § 22-50-21; she isn't due summary judgment. The remainder of these arguments, premised upon her willful and continued misapplication of the law, are due no consideration.

The Plaintiff agrees that "wanton misconduct is characterized by the state of mind of consciously taking an action with knowledge that 'the doing or not doing of [the act] will likely result in injury....'" *McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1239 (N.D. Ala. 2015). There is ample evidence for a reasonable jury to conclude that Graham was aware, premised upon the Plaintiff's own complaints, that her inaction would lead to the Plaintiff's injury. (Doc. 244-1, p. 2, ¶ 2; Doc. 244-3) Graham states that the Plaintiff "does not provide any citations to these purported cases" establishing she was aware of her responsibility. The Plaintiff directs the statements to cases in which Graham has argued misapplication of these principles. *See, e.g., Tindol v. Alabama Department of Revenue*, 3:06-cv-00845 (M.D. Ala., January 23, 2015); *Harville v. State Personnel Board*, 2:13-cv-00092 (M.D. Ala. 2006).

Graham is particularly aware of a classified employee's right of access to appeal rights under Alabama Administrative Code § 670-X-4. Graham's conclusory arguments, without citation to evidence, are due no consideration; as she cannot present conclusory statements regarding her motive within a motion for

summary judgment without citation to, or proffered, evidence of record.

## V. PLAINTIFF CAN ASSERT VIOLATIONS OF THE CRIMINAL CODE IN A CIVIL ACTION TO ESTABLISH UNLAWFUL CONDUCT OR INTRACORPORATE CONSPIRACY EXCEPTIONS

As stated, "[t]he existence of the conspiracy must often be *inferentially* and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action." *O'Dell v. State of Alabama ex rel. John Patterson,* 270 Ala. 236, 117 So. 2d 164, 168 (1960) (emphasis added). The underlying criminal acts support the abrogation of immunity. *Prill v. Marrone,* 23 So. 3d 1, 11 (Ala. 2009) ("an act that constitutes a crime can also be the basis of a civil action") (*citing Martinson v. Cagle,* 454 So. 2d 1383 (Ala. 1984)). Here, "if the acts complained of violate the legal rights of the Plaintiff, constitute a breach of duty owed to the Plaintiff, or constitute some cause of action for which relief may be granted", the Plaintiff appropriately states a claim. This illegal conduct precludes Graham, and any Defendant in this action, from proffering state-agent immunity. *Phillips,* 555 So. 2d at 83 ("… illegally, fraudulently, in bad faith, beyond his authority").

## CONCLUSION

This Honorable Court should **DENY** Graham's Motion for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. First, Graham isn't immune because she has disregarded clearly established law, acted

willfully, fraudulently, in bad faith, under mistaken interpretations of law, and

illegally. Second, because she isn't immune and the Plaintiff has properly shown

his property interest, her motion is due to be **DENIED**. Third, the Plaintiff has

easily shown Graham had a duty, disregarded it, and absolutely refuses to admit

her wrong. Finally, the Plaintiff's assertations of violations of state criminal

statutes support abrogation of any immunity protections and the intracorporate

conspiracy doctrine.

    **WHEREFORE**, Plaintiff respectfully requests this Honorable Court and

your Honor **DENY** the Graham's Motion for Summary Judgment; as she has not

shown, beyond disputed material facts, that she is entitled to relief.


Respectfully Submitted,


**DERRICK JAMES WILLIAMSON, JR.**, *Pro Se*
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405-8854
**Cellular Phone:** (205) 422-9664
**Email:** aeonpctech@live.com
**Secondary Email:** CEO@aeonpctech.com
**E-Fax:** aeonpcinno@hpeprint.com

# CERTIFICATE OF SERVICE

I, Derrick James Williamson, Jr., hereby certify that on Tuesday, February 2, 2021, I mailed or presented the foregoing to be conventionally filed by the Clerk of the Court which will send notification of such filing to the following via the CM/ECF system:

### EDWARD CARY HIXON
### THOMAS BAILEY KLINNER

Attorneys for State Defendant
ALABAMA DEPARTMENT OF
MENTAL HEALTH
100 North Union Street, Suite 536
P. O. Box 301410
Montgomery, Alabama, 36130-1410
Eddie.Hixon@mh.alabama.gov
Tommy.Klinner@mh.alabama.gov
Fax: (334) 242-0924

### TERRI OLIVE TOMPKINS

Attorney for ADMH Defendants
ROSEN HARWOOD, P.A.
2200 Jack Warner Parkway, Suite 200
Tuscaloosa, Alabama, 35401-1014
TTompkins@rosenharwood.com
Telephone: (205) 344-5000
Fax: (205) 758-8358

### ALICE ANN BYRNE
### LAURY BASWELL MORGAN
### TARA SMELLEY HETZEL

Attorneys for Defendant Jacqueline Graham
STATE OF ALABAMA PERSONNEL DEPARTMENT
64 North Union Street, Suite 316
Montgomery, Alabama, 36130-4100
AliceAnn.Byrne@personnel.alabama.gov
Laury.Morgan@personnel.alabama.gov
Tara.Hetzel@personnel.alabama.gov
Fax: (334) 242-1110

**DERRICK JAMES WILLIAMSON, JR.**, *Pro Se*
8816 Old Greensboro Road, APT 20104
Tuscaloosa, Alabama, 35405-8854
**Cellular Phone:** (205) 422-9664
**Email:** aeonpctech@live.com
**E-Fax:** aeonpcinno@hpeprint.com